1  Lincoln D. Bandlow (SBN: 170449)
   Lincoln@BandlowLaw.com
2  Rom Bar-Nissim (SBN: 293356)
   Rom@BandlowLaw.com
3  **Law Offices of Lincoln Bandlow, P.C.**
   1801 Century Park East, Suite 2400
4  Los Angeles, CA 90067
   Telephone: 310.556.9680
5  Facsimile: 310.861.5550

6  Attorneys for Defendants
   Penske Media Corporation
7  and Dirt.com, LLC

8

9                  **UNITED STATES DISTRICT COURT**

10                 **CENTRAL DISTRICT OF CALIFORNIA**

11

12  BRANDON VOGTS, an individual,          Case No.:  2:22-cv-01153-FWS-PVC

13                    Plaintiff,
                                           **THE PMC DEFENDANTS'**
14                                         **RESPONSE TO PLAINTIFF'S**
        v.                                 **CIVIL L.R. 56-1 STATEMENT OF**
15                                         **UNDISPUTED FACTS IN SUPPORT**
                                           **OF PLAINTIFF'S MOTION FOR**
16  PENSKE MEDIA CORPORATION,              **PARTIAL SUMMARY JUDGMENT**
    a Delaware Corporation; DIRT.COM,
17  LLC, a Delaware Limited Liability      [Concurrently-filed with Notice of
    Company; MOVE, INC., a Delaware        Motion; Memorandum of Points and
18  Corporation, d/b/a Realtor.com; and    Authorities; Declarations of Lincoln
    DOES 1 through 10,                     Bandlow, Mark David Voss and James
19                                         McClain; Separate Statement;
                    Defendants.            Opposition to RJN; and [Proposed]
20                                         Judgment]
21
                                           Assigned to: Hon. Fred W. Slaughter
22
                                           Date: May 4, 2023
23
                                           Time: 10:00 a.m.
24                                         Courtroom: 10D
25

26

27

28

Pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 56(c), the Local Rules for the Central District of California Rule 56-1 and this Court's Standing Order Rule IX.e.i., Defendants Penske Media Corporation ("PMC") and Dirt.com, LLC ("Dirt") (collectively, "PMC Defendants") herby submit their Response to the Civil L.R. 56-1 Statement of Undisputed Facts (Dkt. No. 44-44) in Support of the Motion for Partial Summary Judgment (Dkt. No. 44) of Plaintiff Brandon Vogts ("Vogts").

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
| --- | --- |
| 1. **Brandon Vogts, his photos, and his business.** | |
| 2. Brandon Vogts is a Los Angeles-based photographer specializing in residential and commercial interiors, luxury real estate, and architecture. Vogts Decl. ¶ 2. | Undisputed. |
| 3. Vogts' photos have been featured in publications such as the *Wall Street Journal*, *People Magazine*, *Los Angeles Times*, *New York Post*, *Architectural Digest*, *California Home + Design*, *Curbed LA*, *Daily Mail*, *Elle Décor*, *Entertainment Tonight*, *Forbes*, *Life &* | Undisputed. |

| | |
|---|---|
| *Style*, and *PopSugar*. Vogts Decl., ¶ 3. | |
| 4. Vogts' clients include real estate companies, real estate agents, and interior designers. Vogts Decl., ¶ 4. | Undisputed. |
| 5. Vogts' clients receive a license for limited authorized uses of Vogts' photos. Unless otherwise specified, any use of Vogts' photos beyond the original scope of the granted license requires additional permission by Vogts. Vogts Decl., ¶ 5. | Undisputed. |
| 6. In other instances where Vogts has authorized his clients to use his photos in connection with the sale of a property, Vogts has subsequently provided a separate limited license to media publications who sought permission to use those photos in articles about those properties. Vogts. Vogts Decl., ¶ 6. | Undisputed. |
| 7. Vogts requires permission and particular terms for any use of his photos on social media. Vogts Decl., ¶ 6. | Undisputed. |
| 8. Vogts has previously received | Disputed insofar as this fact implies |

| | |
|---|---|
| requests from websites such as *Redfin* (redfin.com), *Zillow*, *Daily Mail*, and the *Wall Street Journal* seeking permission to use Vogts' photos in articles on those websites that discussed the properties depicted in Vogts' photos, including requests concerning properties owned by entertainers Kathy Griffin and Neil Patrick Harris. Vogts Decl. ¶ 8, Ex. 4. | that there were other instances besides Neil Patrick Harris (in 2014) and Kathy Griffin (in 2016).  Declaration of Lincoln Bandlow ("LB Decl."), ¶ U (Deposition of Brandon Vogts ("Vogts Depo"), pp. 61:14-67:22, 152:12-156:6, 188:5-192:25, 198:3-199:24, 220:1-221:23; LB Decl., ¶ 10, Ex. CC (the Zillow Email) |
| 9. Vogts authorized limited uses of those photos on the conditions that he be provided photo credits in all versions of the articles that were published, and that the narratives of the articles were not adverse to his clients. Vogts also specified that no further uses were permitted. Vogts Decl. ¶ 9, Ex. 4. | Undisputed. |
| 10. Vogts' belief and understanding is that one of the reasons he is able to maintain his client relationships is because he takes care to limit subsequent licensing of his photos to uses that his clients would approve of. Vogts Decl. ¶ 10. | Undisputed. |
| 11. Vogts took and owns the Subject | Undisputed. |

| | |
|---|---|
| Photographs (i.e. the 53 photos asserted in this case. Dkt. No. 1, ¶ 22, Dkt. 1-1; Dkt. 42 ¶ 1; Vogts Decl., ¶ 11. | |
| 12. While Vogts did not stage the properties reflected in the Subject Photographs, he made all creative decisions in creating those Photographs—including composition, lighting, framing and perspective, angles, lines, depth, foreground and background, equipment, etc. Vogts Decl., ¶ 12. | Undisputed. |
| 13. The Subject Photographs are original to Vogts and are registered with the U.S. Copyright Office. Vogts Decl. ¶ 13, Ex. 1 (Reg. No. VA 2-213-119 and Subject Photographs 1-20 in Dkt. 1-1), Ex. 2 (Reg. No. VA 2-227-873 and Subject Photographs 21-38 in Dkt. 1-1), Ex. 3 (Reg. No. VA 2-230-981 and Subject Photographs 39-53 in Dkt. 1-1). | Undisputed. |
| 14. Vogts authorized certain of his real estate agent clients to make limited use the Subject Photographs—specifically, by displaying them on a Multiple Listing Service ("MLS") database, on | Undisputed. |

| | |
|---|---|
| the agents' real estate agency websites, in the agents' property brochures, and on the properties' listings on real estate listing aggregator websites such as redfin.com and realtor.com—to market the properties depicted therein for lease, sale, or purchase. No other uses were authorized. Vogts Decl., ¶ 14. | |
| 15. The PMC Defendants accessed the Subject Photographs through the websites redfin.com and realtor.com. Dkt. No. 22 ¶¶ 24-25, 32; Dkt. 42 ¶ 2; Doniger Decl., Ex. 1 (Dirt Resp. to RFAs 3-4, 13), Ex. 2 (PMC Resp. to RFAs 3-4, 13). | Undisputed. |
| 16. The PMC Defendants copied, displayed, and distributed the Subject Photographs without seeking or receiving Vogts' authorization. Vogts Decl. ¶ 15; Dkt. 42 ¶ 3; Doniger Decl. Ex. 1 (Dirt Resp. to RFAs 1-2, 9), Ex. 2 (PMC Resp. to RFAs 1-2, 9), Ex. 3 (Dirt Resp. to ROG 3), Ex. 5 (McClain Dep. 109:8-20, 112:3-113:10). | Undisputed. |
| 17. The copies of the Subject Photographs displayed and distributed by the PMC Defendants were | Disputed insofar as this fact omits that the cover picture for the three articles superimposed a picture of the public |

| | |
|---|---|
| essentially verbatim reproductions of the Subject Photographs, but for minor cropping. Dkt. 1-1; Dkt. 22 ¶¶ 24-25, 32; Doniger Decl. Ex. 1 (Dirt Resp. to RFAs 3-4, 13), Ex. 2 (PMC Resp. to RFAs 3-4, 13); *see infra*, ¶¶ 54, 58, 62. | figure who owns the property depicted in the Subject Photographs. Declaration of Mark David Voss ("Voss Decl."), ¶¶ 11, 14, 18, 21, Exs. F-G, M-N; Declaration of James McClain ("McClain Decl."), ¶¶ 13, 16, Ex. R |
| 18. The PMC Defendants' unauthorized uses of the Subject Photographs were the type of uses that Vogts reserves the right to control licensing of. If left unchecked, the PMC Defendants' uses of the Subject Photographs would essentially destroy the licensing market for Vogts' photos. Vogts Decl., ¶ 16. | Disputed: (1) as to a licensing market for the Subject Photographs; and (2) as to the following sentence because it cannot be presented in a form that would be admissible in evidence as it is argumentative and a legal conclusion/opinion: "If left unchecked, the PMC Defendants' uses of the Subject Photographs would essentially destroy the licensing market for Vogts' photos." Federal Rule of Civil Procedure ("F.R.C.P.") Rule 56(c)(2); LB Decl., ¶ 2, Ex. U, pp. 61:4-13, 77:3-13, 112:5-10, 132:25-134:20, 149:19-152:11, 158:5-159:2, 125:2-12, 164:20-165:2, 176:5-21 & 211:3-15; LB Decl., ¶ 5, Ex. X (the O'Dowd Invoice); LB Decl., ¶ 7, Ex. Z (Text Exchange); LB Decl., ¶ 8, Ex. AA (the Williams Invoice); LB Decl., ¶ 12, Ex. EE (Responses to Interrogatories) No. 6, p. |

| | |
|---|---|
| | 7:9-27; LB Decl., ¶ 13, Ex. FF (Invoices).<br><br>Immaterial. *Burch v. Regents of University of California*, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006) ("objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself. … Instead of ***objecting***, parties should simply ***argue*** that the facts are not material." (original emphasis). |
| 19. **PMC, its business, and its brands, including Dirt.** | |
| 20. PMC is one of the largest digital media and publishing companies in the world. PMC reaches hundreds of millions of consumers monthly, and owns and publishes more than 20 brands, including *The Hollywood Reporter*, *Variety*, *Billboard*, *Robb Report*, and *Rolling Stone*. Request for Judicial Notice ("RJN") Ex. 1. | Undisputed. |
| 21. In 2014, PMC launched "Dirt, a | Disputed. The press release: |

| | |
|---|---|
| new section focused on high-end digs," as a column in *Variety*. PMC promoted *Variety's* new "Dirt" column as "a fun and juicy read, meant to entertain above all else." RJN Ex. 2; Doniger Decl. Ex. 6 (Dirt Dep. 10:16-18), Ex. 7 (PMC Dep. 24:22-30:24). | (1) referred to "The Real Estalker column"; (2) stated that "The Real Estalker is a fun and juicy read, meant to entertain above all else"; and (3) stated "The Real Estalker will feed the voracious appetites of today's entertainment industry watchers with glimpses into the finest properties owned by celebrities and industry executives, highlighting major selling points and property values, and, when called for, snarking about poor décor choices or the sordid details of why certain individuals might be moving or selling." RJN, Ex. 2 |
| 22. In 2015, PMC entered into an agreement with Shutterstock, Inc., a "provider of high-quality licensed photographs," granting Shutterstock "an exclusive worldwide right and license to PMC's archive, including images" from *Variety*, to "market and license the imagery to the world's media." RJN, Ex. 3. | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs. *Ochoa v. City of Mesa*, 26 F.4th 1050, 1055-56 (9th Cir. 2022); The PMC Defendants' Opposition to Plaintiff's Requests for Judicial Notice in Support of Plaintiff's Motion for Partial Summary ("Opp. to RJN"), Section II. 17 U.S.C. § 107; Federal Rule of Evidence ("F.R.E.") 401; *Burch*, 433 F.Supp.2d at 1119 |

| | |
|---|---|
| | Disputed as the material cited cannot be presented in a form that would be admissible in evidence. F.R.C.P. Rule 56(c)(2); Opp. to RJN, Section II. |
| 23. PMC's understanding of, and reason for entering into, that agreement was that without PMC's permission, Shutterstock had no right to use PMC's photos. Doniger Decl. Ex 7 (PMC Dep. 68:7-70-23). | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs. *Ochoa*, 26 F.4th at 1055-56; 17 U.S.C. § 107; F.R.E. 401; *Burch*, 433 F.Supp.2d at 1119.<br><br>Disputed as the material cited cannot be presented in a form that would be admissible in evidence. F.R.C.P. Rule 56(c)(2); Opp. to RJN, Section II. |
| 24. Also in 2015, PMC hired a "chief photographer" for PMC's "editorial images business." That individual was "a photojournalist with Getty Images for more than 10 years" and was "tasked with driving the creation of entertainment imagery and video assets for Variety and other PMC brands" to "build upon PMC's deep photo archives currently held by Variety." RJN, Ex. 4. | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs. *Ochoa*, 26 F.4th at 1055-56; Opp. to RJN, Section III; 17 U.S.C. § 107; F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119.<br><br>Disputed: (1) insofar as this assertion implies that the PMC Defendants could have photographed the properties at issue; and (2) as the material cited |

| | cannot be presented in a form that would be admissible in evidence. F.R.C.P. Rule 56(c)(2); Opp. to RJN, Section III; Voss Decl., ¶ 6; McClain Decl., ¶ 6. |
|---|---|
| 25. In 2018, PMC expanded its "licensing efforts" for *Variety* to leverage PMC's "photography access, which produces more than 10,000 images daily." RJN, Ex. 5. | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs. *Ochoa*, 26 F.4th at 1055-56; Opp. to RJN, Section IV; 17 U.S.C. § 107; F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119.<br><br>Disputed as the material cited cannot be presented in a form that would be admissible in evidence. F.R.C.P. Rule 56(c)(2); Opp. to RJN, Section IV. |
| 26. Between 2014-18, PMC observed that "the page views that that content generated," referring to *Variety*'s Dirt column, "were good," and wanted to determine if it could spinoff the column into a website with "and monetize it[.]" Doniger Decl. Ex. 5 (McClain Dep. 34:1-11), Ex. 7 (PMC Dep. 24:22-30:24). | Undisputed. |
| 27. PMC wanted more "Dirt" content | Undisputed. |

| | |
|---|---|
| because "[t]he more content that you create, the more potential page views you can reach," and page views generate revenue for PMC. Doniger Decl. Ex. 5 (McClain Dep. 34:1-11), Ex. 7 (PMC Dep. 24:22-30:24). | |
| 28. Thus, PMC made Dirt its wholly owned subsidiary and added "Dirt.com" to its portfolio of "brands." Dkt. 22 ¶¶ 5-6; Doniger Decl. Ex. 2 (PMC Resp. to RFA 21), Ex. 5 (McClain Dep. 34:1-11, 42:25-43:4), Ex. 6 (Dirt Dep. 9:13-21). | Undisputed. |
| 29. **The PMC Defendants' unauthorized copying, display, and distribution of the Subject Photographs.** | |
| 30. The PMC Defendants own, operate, and control the website dirt.com and its related/affiliated subdomains, mobile websites, and applications (collectively, the "PMC Defendants' Website"). Dkt. 22 ¶ 6; RJN Ex. 7; Doniger Decl. Ex. 5 (McClain Dep. 34:1-11, 42:25-43:4), Ex. 6 (Dirt Dep. 65:5-15). | Undisputed. |
| 31. The PMC Defendants' Website is commercial and features real estate- | Undisputed. |

THE PMC DEFENDANTS' RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT

| | |
|---|---|
| related content. Dkt. 22 ¶ 6; RJN (Dkt. No. 45) Ex. 7; Doniger Decl. Ex. 5 (McClain Dep. 34:1-11, 42:25-43:4), Ex. 6 (Dirt Dep. 65:5-15). | |
| 32. The revenue the PMC Defendants generate from the PMC Defendants' Website is from advertising and syndication. Advertisements appear across the PMC Defendants' Website, including alongside posts. Dkt. 22 ¶ 35; Doniger Decl. Ex. 5 (McClain Dep. 169:23-170:10), Ex. 7 (PMC Dep. 31:4-32:3, 39:4-41:13, 60:9-22) | Undisputed. |
| 33. The posts displayed on the PMC Defendants' Website include "sponsored links from Taboola." RJN Ex 6; *see e.g.* Doniger Decl. Ex 8 (at VOGTS000520-523). | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs. *Ochoa*, 26 F.4th at 1055-56; Opp. to RJN, Section V; 17 U.S.C. § 107; F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119.

Disputed: (1) insofar as this assertion implies that sponsored links by Taboola appeared on the posts at issue; and (2) as the material cited cannot be presented in a form that would be admissible in evidence. F.R.C.P. Rule 56(c)(2); Opp. |

| | |
|---|---|
| | to RJN, Section V; Voss Decl., ¶¶ 11, 18, Exs. E-G, L-N; McClain Decl., ¶ 13, Exs. Q-R. |
| 34. Since 2014, PMC has partnered with Taboola to include "content recommendations" (i.e. the "sponsored links") on PMC's brands' websites, including the PMC Defendants' Website, to "generate revenue." RJN Ex. 6. | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs. *Ochoa*, 26 F.4th at 1055-56; Opp. to RJN, Section V; 17 U.S.C. § 107; F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119<br><br>Disputed: (1) insofar as this assertion implies that sponsored links by Taboola appeared on the posts at issue; and (2) as the material cited cannot be presented in a form that would be admissible in evidence. F.R.C.P. Rule 56(c)(2); Opp. to RJN, Section V; Voss Decl., ¶¶ 11, 18, Exs. E-G, L-N; McClain Decl., ¶ 13, Exs. Q-R. |
| 35. The posts on the PMC Defendants' Website displaying the Subject Photographs generated page views. Doniger Decl. Ex. 1 (Dirt Resp. to RFA 7), Ex. 2 (PMC Resp. to RFA 7), Ex. 4 (PMC Resp. to ROG 6), Ex. 7 (PMC Dep. 19:22-20:9), Ex. 9-10. | Undisputed. |

| | |
|---|---|
| 36. Those page views resulted in advertising revenue. Doniger Decl. Ex. 1 (Dirt Resp. to RFA 7), Ex. 2 (PMC Resp. to RFA 7), Ex. 4 (PMC Resp. to ROG 6), Ex. 7 (PMC Dep. 19:22-20:9), Ex. 11. | Undisputed. |
| 37. The PMC Defendants' Website is run through and powered by, and the posts that appear on the PMC Defendants' Website are created in and published from, PMC's WordPress account. Dkt. 22 ¶ 6; RJN Ex. 7; Doniger Decl. Ex. 5 (McClain Dep. 34:1-11, 42:25-43:4), Ex. 6 (Dirt Dep. 65:5-15). | Undisputed. |
| 38. The PMC Defendants will "run articles with no pictures" on the PMC Defendants' Website. That is, not every story published on the PMC Defendants' Website has a "gallery" (explained below). Doniger Decl. Ex. 5 (Dirt Dep. 59:3-64:5, 66:3-67:9, 73:18-75:22, 87:20-88:2, 88:24-89:3, 101:21-103:2), Ex. 7 (PMC Dep. 31:25-32:3, 33:9-35:3); *see, e.g.*, Doniger Decl. Ex. 8. | Disputed insofar as this fact implies that the articles referenced had no pictures in the first instance. Voss Decl., ¶ 8, McClain Decl., ¶ 8. <br><br> Immaterial to whether the PMC Defendants made a fair use of the Subject Photographs. *Ochoa*, 26 F.4th at 1055-56; 17 U.S.C. § 107; F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119. |
| 39. However, the posts that do include | Disputed insofar as this fact implies |

| | |
|---|---|
| photos are made up of two "sides"—a "text side" and an "image side"—which are separately created and published in WordPress. The "image side" is called a "gallery." Doniger Decl. Ex. 5 (Dirt Dep. 59:3-64:5, 66:3-67:9, 73:18-75:22, 87:20-88:2, 88:24-89:3, 101:21-103:2), Ex. 7 (PMC Dep. 31:25-32:3, 33:9-35:3); *see e.g.*, Doniger Decl. Ex. 12 (at DIRT00277, 287-311), Ex. 13 (at DIRT00240-59, 267); *see also, e.g.*, Vogts Decl. Ex. 5-7. | that the "image side" can exist without the "text side." Voss Decl., ¶ 8, McClain Decl., ¶ 8. |
| 40. When a gallery is created in WordPress, it has its own title, date and time stamp, and web address—distinct from the "text side" it is linked to—and each of the photos displayed in the gallery has its own web address. Doniger Decl. Ex. 5 (Dirt Dep. 59:3-64:5, 66:3-67:9, 73:18-75:22, 88:24-89:3), Ex. 7 (PMC Dep. 31:25-32:3, 33:9-35:3); *see e.g.*, Doniger Decl. Ex. 12 (at DIRT00278), Ex. 13 (at DIRT00240), Ex. 14-16. | Disputed insofar as the gallery can be accessed without the text side absent knowing the image's web address. Voss Decl., ¶ 8, McClain Decl., ¶ 8. |
| 41. Each web address generates revenue for PMC when it is viewed. Doniger Decl. Ex. 5 (Dirt Dep. 59:3- | Disputed insofar as: (1) it includes web addresses – such as a gallery of images – that do not contain advertisements; |

| | |
|---|---|
| 64:5, 66:3-67:9, 73:18-75:22, 88:24-89:3), Ex. 7 (PMC Dep. 31:25-32:3, 33:9-35:3, 39:4-41:13, 60:9-22). | (2) it implies the galleries for the articles at issue contained advertisements; and (3) the material cited does not establish the fact asserted.  F.R.C.P. Rule 56(c)(1). |
| 42. There is no text in the galleries, the copy of a post is contained in the "text side." Doniger Decl. Ex. 5 (Dirt Dep. 59:3-64:5, 66:3-67:9, 73:18-75:22, 88:24-89:3), Ex. 7 (PMC Dep. 31:25-32:3, 33:9-35:3); *see e.g.*, Doniger Decl. Ex. 12 (at DIRT00278-80), Ex. 13 (at DIRT00268-69). | Disputed: (1) the material cited does not establish the fact asserted; (2) insofar as it implies the galleries for the articles at issue could be accessed without the "text side" absent knowing the image's URL. F.R.C.P. Rule 56(c)(1); Voss Decl., ¶ 8, McClain Decl., ¶ 8. |
| 43. In the gallery, a user can zoom in on the photos and make them larger, as the photos displayed in the gallery are high-resolution. Doniger Decl. Ex. 5 (Dirt Dep. 59:3-64:5, 66:3-67:9, 73:18-75:22, 88:24-89:3), Ex. 7 (PMC Dep. 31:25-32:3, 33:9-35:3); *see e.g.*, Doniger Decl. Ex. 12 (at DIRT00277, 287-311), Ex. 13 (at DIRT00240-59, 267); *see also, e.g.*, Vogts Decl. Ex. 5-7. | Undisputed. |
| 44. Each of the posts on the PMC Defendants' Website displaying the Subject Photographs consisted of a | Disputed insofar as it implies the "image side" can be accessed separately from the "text side" absent |

| | |
|---|---|
| "text side" and an "image side," each of which was created and published separately. Doniger Decl. Ex. 5 (Dirt Dep. 59:3-64:5, 66:3-67:9, 73:18-75:22, 88:24-89:3), Ex. 7 (PMC Dep. 31:25-32:3, 33:9-35:3), Ex. 12-17. | knowing the URL. Voss Decl., ¶ 8, McClain Decl., ¶ 8. |
| 45. Each "image side" of those posts was "a gallery of images," and those "images" were the Subject Photographs. Doniger Decl. Ex. 5 (Dirt Dep. 59:3-64:5, 66:3-67:9, 73:18-75:22, 88:24-89:3), Ex. 7 (PMC Dep. 31:25-32:3, 33:9-35:3), Ex. 12 (at DIRT00277, 287-311), Ex. 13 (at DIRT00240-59, 267), Ex. 14-16. | Undisputed. |
| 46. The "text side" of the posts on the PMC Defendants' Website starts with a "header photo" that includes an inset headshot of the individual discussed in the post superimposed over a "feature image" of the property discussed in the post. Doniger Decl. Ex. 2 (PMC Supp. Resp. to RFA 5), Ex. 5 (McClain Dep. 72:11-73:25, 84:2-85:24, 95:2-13), Ex. 6 (Dirt Dep. 103:10-104:6); *see, e.g.,* Doniger Decl. Ex. 12 (at DIRT00277), Ex. 13 (at DIRT00267). | Disputed: (1) the text side begins with the headline of the article that identifies the individual discussed in the article, the name of the author and the date and time it was published; and (2) the material cited does not support that the text side began with the header photo. F.R.C.P. Rule 56(c)(1); Voss Decl, ¶¶ 8, 11, 18, Exs. E-G, L-N; McClain Decl., ¶¶ 8, 13, Q-R. |

| | |
|---|---|
| 47. The PMC Defendants obtain those inset headshots from Getty Images, and are authorized to use those inset headshots pursuant to a license agreement between PMC and Getty. Doniger Decl. Ex. 5 (McClain Dep. 72:11-73:25, 84:2-85:24, 95:2-13), Ex. 6 (Dirt Dep. 103:10-104:6), Ex. 7 (PMC Supp. Resp. to RFA 5). | Undisputed. For clarity, the posts as issue used photographs licensed from the Associated Press and not Getty Images. *See infra* ¶¶ 50-52. |
| 48. PMC entered into "an exclusive global partnership with Getty Images," which "maintains one of the largest and best privately-owned photographic archives in the world with millions of images." Pursuant to the agreement, Getty is "the exclusive global distribution partner for PMC's unique collection of photographic content from their most iconic brands," including *Variety*. "The agreement also includes a Getty Images licensing subscription to give PMC access to Getty Images' unmatched photo and video content." RJN Ex. 1. | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs. *Ochoa*, 26 F.4th at 1055-56; Opp. to RJN, Section I; *Infra* ¶¶ 50-52; F.R.E. Rule 401.<br><br>The material cited cannot be presented in a form that would be admissible in evidence. F.R.C.P. Rule 56(c)(2); Opp. to RJN, Section I. |
| 49. PMC admonishes users of the PMC Defendants' Website that "Getty Images still images and visual | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs. |

| | |
|---|---|
| representations (including, without limitation, Getty Images wholly-owned images and visual representations, as well as the collections licensed through Getty Images) may not be republished, retransmitted, reproduced, downloaded or otherwise used, except for downloading for personal, non-commercial use." RJN Ex 7. | *Ochoa*, 26 F.4th at 1055-56; Opp. to RJN, Section VI; 17 U.S.C. § 107; F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119.<br><br>The material cited cannot be presented in a form that would be admissible in evidence. F.R.C.P. Rule 56(c)(2); Opp. to RJN, Section VI. |
| 50. Prior to PMC's agreement with Getty Images, PMC had an agreement with Associated Press that was essentially the same—i.e., the PMC Defendants' were authorized to use the inset headshots from Associate Press pursuant to PMC's agreement with Associate Press. Doniger Decl. Ex. 5 (McClain Dep. 72:11-73:25, 84:2-85:24, 95:2-13, 110:2-111:8), Ex. 6 (Dirt Dep. 80:5-85:5, 89:8-91:21, 103:10-104:6), Ex. 7 (PMC Dep. 64:1-65:13). | Undisputed. |
| 51. Subject Photographs 1, 32, and 40 were the "feature image[s]" used in the "header photo[s]" in the text sides of the posts on the PMC Defendants' Website that displayed the Subject | Undisputed. |

THE PMC DEFENDANTS' RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT

| | |
|---|---|
| Photographs. Doniger Decl. Ex. 5 (McClain Dep. 72:11-73:25, 84:2-85:24, 95:2-13, 110:2-111:8), Ex. 6 (Dirt Dep. 80:5-85:5, 89:8-91:21, 103:10-104:6), Ex. 7 (PMC Dep. 64:1-65:13), Ex. 12 (at DIRT00277), Ex. 13 (at DIRT00267), Ex. 22 (at DIRT00005), Ex. 30. | |
| 52. Dirt obtained the inset headshots of the individuals that were discussed in the text sides of those posts—which were superimposed over the "feature image[s]" of Subject Photographs 1, 32, and 40—from Associated Press. Doniger Decl. Ex. 5 (McClain Dep. 72:11-73:25, 84:2-85:24, 95:2-13, 110:2-111:8), Ex. 6 (Dirt Dep. 80:5-85:5, 89:8-91:21, 103:10-104:6), Ex. 7 (PMC Dep. 64:1-65:13), Ex. 12 (at DIRT00277), Ex. 13 (at DIRT00267), Ex. 22 (at DIRT00005), Ex. 30. | Undisputed. |
| 53. On or around August 7, 2020, Mark Voss, real estate editor for the PMC Defendants' Website, accessed copies of Subject Photographs 1-20 (*see* Dkt. 1-1) on realtor.com. Doniger Decl. Ex. 3 (Dirt Resp. to ROGs 2, 4-5), Ex. 4 | Undisputed. |

| | |
|---|---|
| (PMC Resp. to ROGs 2, 4-5), Ex. 6 (Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 108:7-12, 109:3-110:15), Ex. 18. | |
| 54. Mr. Voss copied Subject Photographs 1-20 from realtor.com by right-clicking on them, saving them, cropping out MLS watermarks from the bottom righthand corners of them, changing their file names, and then uploading them to the PMC Defendants' media servers. Doniger Decl. Ex. 3 (Dirt Resp. to ROGs 2, 4-5), Ex. 4 (PMC Resp. to ROGs 2, 4-5), Ex. 6 (Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 108:7-12, 109:3-110:15), Ex. 15, Ex. 18. | Undisputed. |
| 55. On August 7, 2020 at 12:24 p.m., Mr. Voss published a gallery of Subject Photographs 1-20 on the PMC Defendants' Website and titled the gallery "'Scandal' Star Darby Stanchfield Sheds Glendale Home." Doniger Decl. Ex. 3 (Dirt Resp. to ROGs 2, 4-5), Ex. 4 (PMC Resp. to ROGs 2, 4-5), Ex. 6 (Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5- | Undisputed. |

| | |
|---|---|
| 107:2, 108:7-12, 109:3-110:15), Ex. 12, Ex. 15; Vogts Decl. Ex. 5. | |
| 56. That same day at 12:45 p.m., Mr. Voss published the text side (i.e., an article) linked to that gallery and titled the text side "Darby Stanchfield Sells Secluded Glendale Traditional." Doniger Decl. Ex. 3 (Dirt Resp. to ROGs 2, 4-5), Ex. 4 (PMC Resp. to ROGs 2, 4-5), Ex. 6 (Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 108:7-12, 109:3-110:15), Ex. 12, Ex. 15; Vogts Decl. Ex. 5. | Undisputed. |
| 57. On or about September 15, 2020, Mr. Voss accessed copies of Subject Photographs 21-38 on redfin.com. Doniger Decl. Ex. 3 (Dirt Resp. to ROGs 2, 4-5), Ex. 4 (PMC Resp. to ROGs 2, 4-5), Ex. 6 (Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 111:5-112:13), Ex. 19. | Undisputed. |
| 58. Mr. Voss copied Subject Photographs 21-38 from redfin.com by right-clicking on them, saving them, cropping out MLS watermarks from the bottom righthand corners, changing their file names, and uploading them to | Undisputed. |

| | |
|---|---|
| the PMC Defendants' media servers. Doniger Decl. Ex. 3 (Dirt Resp. to ROGs 2, 4-5), Ex. 4 (PMC Resp. to ROGs 2, 4-5), Ex. 6 (Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 111:5-112:13), Ex. 16, Ex. 19. | |
| 59. On September 15, 2020 at 4:52 p.m., Mr. Voss published a gallery of Subject Photographs 21-38 on the PMC Defendants' Website and titled the gallery "Look Around Chris O'Dowd's L.A. Bungalow." Doniger Decl. Ex. 3 (Dirt Resp. to ROGs 2, 4-5), Ex. 4 (PMC Resp. to ROGs 2, 4-5), Ex. 6 (Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 111:5-112:13), Ex. 13, Ex. 16; Vogts Decl. Ex. 6. | Undisputed. |
| 60. That same day at 4:55 p.m., Mr. Voss published a text side linked to that gallery and titled the text side "Chris O'Dowd, Dawn O'Porter List Melrose District Bungalow." Doniger Decl. Ex. 3 (Dirt Resp. to ROGs 2, 4-5), Ex. 4 (PMC Resp. to ROGs 2, 4-5), Ex. 6 (Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 111:5-112:13), Ex. 13, Ex. 16. | Undisputed. |

THE PMC DEFENDANTS' RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT

| | |
|---|---|
| 61. On or about March 10, 2021, James McClain, editor at large for the PMC Defendants' Website, accessed copies of Subject Photographs 39-53 on redfin.com. Doniger Decl. Ex. 3 (Dirt Resp. to ROGs 2, 4-5), Ex. 4 (PMC Resp. to ROGs 2, 4-5), Ex. 5 (McClain Dep. 97:15-98:8, 101:6-22, 103:5-10, 104:3-10, 105:3-5, 107:3-20, 108:5-19, 115:2-9, 117:14-118:1, 119:10-23, 123:18-124:15), Ex. 6 (Dirt Dep. 67:16-72:5, 91:17-92:2), Ex. 20. | Undisputed. |
| 62. Mr. McClain copied Subject Photographs 39-53 from redfin.com by right-clicking them, saving them, cropping out MLS watermarks from the bottom righthand corners, changing their file names, and uploading them to the PMC Defendants' media servers. Doniger Decl. Ex. 3 (Dirt Resp. to ROGs 2, 4-5), Ex. 4 (PMC Resp. to ROGs 2, 4-5), Ex. 5 (McClain Dep. 97:15-98:8, 101:6-22, 103:5-10, 104:3-10, 105:3-5, 107:3-20, 108:5-19, 115:2-9, 117:14-118:1, 119:10-23, 123:18-124:15), Ex. 6 (Dirt Dep. 67:16-72:5, 91:17-92:2), Ex. 14. | Undisputed. |

THE PMC DEFENDANTS' RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT

| | |
|---|---|
| 63. On March 10, 2021, Mr. McClain published a gallery of Subject Photographs 39-53 on the PMC Defendants' Website. Doniger Decl. Ex. 3 (Dirt Resp. to ROGs 2, 4-5), Ex. 4 (PMC Resp. to ROGs 2, 4-5), Ex. 5 (McClain Dep. 97:15-98:8, 101:6-22, 103:5-10, 104:3-10, 105:3-5, 107:3-20, 108:5-19, 115:2-9, 117:14-118:1, 119:10-23, 123:18-124:15), Ex. 6 (Dirt Dep. 67:16-72:5, 91:17-92:2), Ex. 14; Vogts Decl. Ex. 7. | Undisputed. |
| 64. That same day at 2:59 p.m., Mr. McClain published a text side linked to that gallery and titled the text side "Robin Williams' Son Zak Buys French Country-Inspired L.A. Villa." Doniger Decl. Ex. 3 (Dirt Resp. to ROGs 2, 4-5), Ex. 4 (PMC Resp. to ROGs 2, 4-5), Ex. 5 (McClain Dep. 97:15-98:8, 101:6-22, 103:5-10, 104:3-10, 105:3-5, 107:3-20, 108:5-19, 115:2-9, 117:14-118:1, 119:10-23, 123:18-124:15), Ex. 6 (Dirt Dep. 67:16-72:5, 91:17-92:2), Ex. 17. | Undisputed. |
| 65. Dirt testified that the Subject Photographs were used in the galleries | Disputed: (1) as it omits reference to what was discussed in the article; and |

| | |
|---|---|
| "for people to look at" as "a visual representation of . . . some of the things we've talked about in the article[s]." Doniger Decl. Ex. 6 (Dirt Dep. 87:20-88:2, 101:21-103:2). | (2) insofar as it asserts that this was the only reason. Voss Decl., ¶¶ 2, 5, 11-12, 14-15, 18-19, 21-22, Exs. E-G, L-N; McClain Decl., ¶¶ 2, 5, 13-14, 16-17, Exs. Q-R. |
| 66. Each of the above-referenced text sides (i.e., articles) include digressions away from the subject individuals and properties that discuss "information that [Dirt thought] would be interesting or fun or relevant or supports the information that [Dirt] put in the article[s]." Doniger Decl. Ex. 6 (Dirt Dep. 128:13-23, 129:5-9, 131:2-24, 135:5-24), Ex. 12 (at DIRT00278-80), Ex. 13 (at DIRT00268-69), Ex. 17 (at 2, 3, and 12 of 13). | Disputed insofar as the "digressions" did not concern the subject individuals and properties. Voss Decl., ¶¶ 9-14, 16-20, Exs. E, L, O-P; McClain Decl., ¶¶ 9, 12-15, Exs. Q, S-T. |
| 67. Digressions in the August and September 2020 text sides were links to other posts on the PMC Defendants' Website that displayed no photos. Doniger Decl. Ex. 6 (Dirt Dep. 128:13-23, 129:5-9, 131:2-24, 135:5-24), Ex. 8 | Disputed insofar as the "digressions" to "other posts" never contained photos. Voss Decl., ¶ 8; McClain Decl., ¶ 8. |
| 68. **The PMC Defendants' further unauthorized uses of the Subject Photographs in newsletters, social media posts, and syndicated content.** | |

THE PMC DEFENDANTS' RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT

| | |
|---|---|
| 69. Certain posts from the PMC Defendants' Website are promoted in Dirt newsletters that are distributed to subscribers of the PMC Defendants' Website. Doniger Decl. Ex. 5 (McClain Dep. 57:5-58:21, 61:6-12). | Undisputed. |
| 70. Those newsletters contain the header photos from, and links to, particular posts on the PMC Defendants' Website. Doniger Decl. Ex. 5 (McClain Dep. 57:5-58:21, 61:6-12). | Undisputed. |
| 71. The newsletters contain the posts that performed well and attracted users on the PMC Defendants' Website. Doniger Decl. Ex. 5 (McClain Dep. 57:5-58:21, 61:6-12). | Disputed: (1) insofar as this fact implies that the articles at issue performed well; and (2) the material cited does not establish that the articles at issue performed well. F.R.C.P. Rule 56(c)(1); McClain Decl., ¶ 18. |
| 72. Not every post from the PMC Defendants' Website is promoted in Dirt newsletters. Doniger Decl. Ex. 5 (McClain Dep. 57:5-58:21, 61:6-12). | Undisputed. |
| 73. The PMC Defendants distribute the Dirt newsletters via email to the subscribers of the PMC Defendants' Website. Doniger Decl. Ex. 5 (McClain | Disputed as the newsletter is sent for free to individuals who subscribe to the newsletter and not the PMC Defendants' Website. McClain, ¶ 19. |

THE PMC DEFENDANTS' RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT

| | |
|---|---|
| Dep. 97:15-98:8, 101:6-22, 123:18-124:15, 133:24-134:15, 144:1-146:6), Ex. 21-23. | |
| 74. The posts on the PMC Defendants' Website displaying the Subject Photographs were promoted in Dirt newsletters on August 11, 2020; September 18, 2020; and March 12, 2021. The newsletters contained links to, and displayed the header photos from, those posts. Doniger Decl. Ex. 5 (McClain Dep. 97:15-98:8, 101:6-22, 123:18-124:15, 133:24-134:15, 144:1-146:6), Ex. 22-23. | Undisputed. |
| 75. Those posts were included in Dirt newsletters because they attracted users and performed well on the PMC Defendants' Website. Doniger Decl. Ex. 5 (McClain Dep. 57:5-58:21, 61:6-12). | Disputed: (1) as to the assertion that the articles at issue performed well; and (2) that the material cited does not establish that the articles at issue performed well. F.R.C.P. Rule 56(c)(1); McClain, ¶ 18. |
| 76. The newsletter dated August 11, 2020 displayed a copy of Subject Photograph 1. Doniger Decl. Ex. 5 (McClain Dep. 97:15-98:8, 101:6-22, 123:18-124:15, 133:24-134:15, 144:1-146:6), Ex. 23 (at DIRT00217). | Undisputed. |
| 77. The newsletter dated September 18, | Undisputed. |

| | |
|---|---|
| 2020 displayed a copy of Subject Photograph 32. Doniger Decl. Ex. 5 (McClain Dep. 97:15-98:8, 101:6-22, 123:18-124:15, 133:24-134:15, 144:1-146:6), Ex. 23 (at DIRT00229). | |
| 78. The newsletter dated March 12, 2021 displayed a copy of Subject Photograph 40. Doniger Decl. Ex. 5 (McClain Dep. 97:15-98:8, 101:6-22, 123:18-124:15, 133:24-134:15, 144:1-146:6), Ex. 22 (at DIRT00005). | Undisputed. |
| 79. The PMC Defendants distributed those newsletters via email to the subscribers of the PMC Defendants' Website. Doniger Decl. Ex. 5 (McClain Dep. 97:15-98:8, 101:6-22, 123:18-124:15, 133:24-134:15, 144:1-146:6), Ex. 21-23. | Disputed because: (1) the newsletters were sent to subscribers of the newsletter; and (2) the material cited does not establish the newsletter was sent to the subscribers of the PMC Defendants' Website.  F.R.C.P. Rule 56(c)(1); McClain, ¶ 19. |
| 80. Certain posts from the PMC Defendants' Website are also promoted on Dirt's social media channels. Doniger Decl. Ex. 5 (McClain Dep. 57:5-58:21, 61:6-12). | Undisputed. |
| 81. Like the newsletters, the social media posts contain the header photos from, and links to, particular posts on the PMC Defendants' Website. Doniger | Undisputed. |

| | |
|---|---|
| Decl. Ex. 5 (McClain Dep. 57:5-58:21, 61:6-12). | |
| 82. The social media posts link to the posts on the PMC Defendants' Website that performed well and attracted users. Doniger Decl. Ex. 5 (McClain Dep. 57:5-58:21, 61:6-12). | Disputed as (1) the articles at issue did not perform well; and (2) the material cited does not establish that the articles at issue performed well. F.R.C.P. Rule 56(c)(1); McClain, ¶ 18. |
| 83. Not every post from the PMC Defendants' Website is promoted on Dirt's social media channels. Doniger Decl. Ex. 5 (McClain Dep. 57:5-58:21, 61:6-12). | Undisputed. |
| 84. On March 12, 2021, Dirt posted on the Dirt Twitter and Facebook webpages a link to the March 10, 2021 post on the PMC Defendants' Website displaying Subject Photographs 39-53. Those social media posts displayed a copy of Subject Photograph 40. Doniger Decl. Ex. 3 (Dirt Resp. to ROG 5), Ex. 4 (PMC Resp. to ROG 5), Ex. 24 | Undisputed. |
| 85. PMC syndicates content from the PMC Defendants' Website to other brands within PMC's portfolio as well as PMC's third-party syndication partners. Doniger Decl. Ex. 5 (McClain | Undisputed. |

THE PMC DEFENDANTS' RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT

| | |
|---|---|
| Dep. 79:2-80:11, 170:12-173:22), Ex. 6 (Dirt Dep. 43:15-48:17), Ex. 7 (PMC Dep. 39:11-41:25, 104:3-17). | |
| 86. PMC, not Dirt, distributes content to PMC brands and, pursuant to syndication agreements, to PMC's third-party syndication partners. Doniger Decl. Ex. 5 (McClain Dep. 79:2-80:11, 170:12-173:22), Ex. 6 (Dirt Dep. 43:15-48:17), Ex. 7 (PMC Dep. 39:11-41:25, 104:3-17), Ex. 25-27. | Undisputed. |
| 87. Those agreements contain limitations on the distribution of photos to PMC's syndication partners. Doniger Decl. Ex. 5 (McClain Dep. 79:2-80:11, 170:12-173:22), Ex. 6 (Dirt Dep. 43:15-48:17), Ex. 7 (PMC Dep. 39:11-41:25, 104:3-17), Ex. 25-27. | Disputed as the material cited does not establish the fact asserted. F.R.C.P. Rule 56(c)(1). |
| 88. Dirt "do[es]n't have anything to do with [syndication]," is not a signatory to any of those agreements, and has no syndication agreements of its own. Doniger Decl. Ex. 5 (McClain Dep. 79:2-80:11, 170:12-173:22), Ex. 6 (Dirt Dep. 43:15-48:17), Ex. 7 (PMC Dep. 39:11-41:25, 104:3-17), Ex. 25-27. | Undisputed. |
| 89. PMC, not Dirt, earns revenue from | Undisputed. |

| | |
|---|---|
| syndicating content from the PMC Defendants' Website. Doniger Decl. Ex. 5 (McClain Dep. 79:2-80:11, 170:12-173:22), Ex. 6 (Dirt Dep. 43:15-48:17), Ex. 7 (PMC Dep. 39:11-41:25, 104:3-17), Ex. 25-27. | |
| 90. Not all content from the PMC Defendants' Website is or can be syndicated. The PMC Defendants have previously declined to syndicate content when the owner of the photos displayed in connection with that content "didn't want it there[.]" Doniger Decl. Ex. 6 (Dirt Dep. 43:15-48:17). | Disputed as the evidence cited does not demonstrate that the "owner" objected but "the agent or somebody who's involved with the – the property." F.R.C.P. Rule 56(c)(1). |
| 91. PMC distributed the posts displaying the Subject Photographs to other PMC brands, as well as PMC's syndication partners pursuant to its syndication agreements. Doniger Decl. Ex. 7 (PMC Dep. 120:10-124:19, 125:8-127:20, 128:5-129:8), Ex. 28-30 | Undisputed. |
| 92. PMC distributed the August 7, 2020 text side and gallery, which displayed copies of Subject Photographs 1-20, to *Variety* and PMC's third-party syndication partners Yahoo and | Undisputed. |

THE PMC DEFENDANTS' RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT

| | |
|---|---|
| Newsbreak. Doniger Decl. Ex. 7 (PMC Dep. 120:10-124:19, 125:8-127:20, 128:5-129:8), Ex. 28. | |
| 93. PMC distributed the September 15, 2020 text side and gallery, which displayed copies of Subject Photographs 21-38, to *Variety* and PMC's third-party syndication partner Yahoo. Doniger Decl. Ex. 7 (PMC Dep. 120:10-124:19, 125:8-127:20, 128:5-129:8), Ex. 29. | Undisputed. |
| 94. PMC distributed the March 10, 2021 text side and gallery, which displayed copies of Subject Photographs 39-53, to PMC's third-party syndication partners Newsbreak and Microsoft. Doniger Decl. Ex. 7 (PMC Dep. 120:10-124:19, 125:8-127:20, 128:5-129:8), Ex. 30. | Undisputed. |
| 95. None of the PMC Defendants' uses of the Subject Photographs credited or otherwise identified Vogts as the source of the Subject Photographs, mentioned Vogts or the Subject Photographs, treated Vogts himself or the Subject Photographs themselves as the story, or commented on or critiqued Vogts | Disputed as the articles at issue provide critique and commentary of the contents of the Subject Photographs; Voss Decl., ¶¶ 9-22, Exs. E-G, K-N, McClain Decl., ¶¶ 9, 12-17, Exs. Q-R. |

| | |
|---|---|
| himself or the Subject Photographs themselves. Dkt. 22 ¶¶ 24-25, 32; Doniger Decl. Ex. 1 (Dirt Resp. to RFAs 3-4, 13), Ex. 2 (PMC Resp. to RFAs 3-4, 13), Ex. 3 (Dirt Resp. to ROG 5), Ex. 4 (PMC Resp. to ROG 5), Ex. 5 (McClain Dep. 97:15-98:8, 101:6-22, 123:18-124:15, 133:24-134:15, 144:1-146:6), Ex. 12-13, Ex. 17, Ex. 22-24, Ex. 28-30. | |
| 96. Dirt has previously sought and obtained permission to use photos in articles "reporting on the property depicted in the photograph[s]," and in such circumstances has previously been authorized to use such photos on the condition that a photo credit be attached. Doniger Decl. Ex. 1 (Dirt Supp. Resp. to RFA 5), Ex. 2 (PMC Supp. Resp. to RFA 5), Ex. 6 (Dirt Dep. 146:14-148:15). | Disputed: (1) as the evidence cited does not support the proposition that Dirt previously "sought" permission to use photos in its articles; and (2) Dirt was provided the real estate listing photographs by the real estate agents for use in Dirt articles. F.R.C.P. Rule 56(c)(1); Voss Decl., ¶ 7; McClain Decl., ¶ 7. |
| 97. On September 22, 2021, Vogts sent, and the PMC Defendants received, a cease-and-desist letter regarding the unauthorized display of copies of the Subject Photographs in the three articles. The PMC Defendants | Immaterial to whether the PMC Defendants made a fair use of the Subject Photographs. *Ochoa*, 26 F.4th at 1055-56; 17 U.S.C. § 107; F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119. |

| | |
|---|---|
| confirmed that they read and understood that letter. Dkt. 22 ¶ 28; Doniger Decl. Ex. 1 (Dirt Resp. to RFA 10), Ex. 2 (PMC Resp. to RFA 10), Ex. 5 (McClain Dep. 157:8-15). | |
| 98. The PMC Defendants eventually removed the unauthorized copies of the Subject Photographs from the articles. However, the articles remain up, advertisements still appear alongside those articles, and the articles have continued to generate page views and revenue for PMC. Doniger Decl. Ex. 7 (PMC Dep. 60:23-61:3), Ex. 9-10. | Undisputed. |
| 99. The PMC Defendants withdrew their second affirmative defense that "Vogts' claims fail (in whole or in part) because the Penske Defendants secured the appropriate license for Vogts copyrighted works." Doniger Decl. Ex. 3 (Dirt Resp. to ROG 10), Ex. 4 (PMC Resp. to ROG 10). | Undisputed. |

THE PMC DEFENDANTS' RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT

Dated:  March 23, 2023                                    **Law Offices of Lincoln Bandlow**

                                              By _____
                                                 LINCOLN D. BANDLOW
                                                 ROM BAR-NISSIM
                                                 Attorneys for Defendants
                                                 Penske Media Corporation and
                                                 Dirt.com, LLC

THE PMC DEFENDANTS' RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT