Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

BRANDON VOGTS,

Plaintiff,

v.

PENSKE MEDIA CORPORATION;
DIRT.COM, LLC; et al.,

Defendants.

Case No. 2:22-cv-01153-FWS-PVC
_Hon. Fred W. Slaughter Presiding_

**PLAINTIFF'S OPPOSITION TO THE PMC DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**[Separate Statement of Undisputed Material Facts, Memorandum of Point and Authorities, and Declarations submitted concurrently]**

# **TABLE OF CONTENTS**

I.      INTRODUCTION .........................................................................- 1 -

II.     STATEMENT OF FACTS ...........................................................- 1 -

  A.    Vogts' registrations covering the Subject Photographs (among many other individual photos). ........................................................................- 1 -

  B.    Vogts' publication of each of the Subject Photographs (among other photos) and their availability for licensing on a per-photo basis. ......................- 2 -

  C.    The PMC Defendants selected each Subject Photograph because each captured different subject matter, and each generated separate revenue for the PMC Defendants. ...............................................................................- 3 -

III.    ARGUMENT ..............................................................................- 4 -

  A.    One award per individual work is a foundational tenet of copyright law.. - 5 -

  B.    Under the statutory definition, each Subject Photograph is one work.....- 6 -

  C.    Each Subject Photograph has independent economic value. .................- 12 -

  D.    Vogts' registrations affirm the availability of a separate statutory damages award per Subject Photograph. ........................................................- 16 -

IV.     CONCLUSION ..........................................................................- 21 -

## TABLE OF AUTHORITIES

Page(s)

Cases

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*,
   747 F.3d 673 (9th Cir. 2014) ................................................................. 20

*Arista Recs. LLC v. Lime Grp. LLC*,
   2011 WL 1311771 (S.D.N.Y. Apr. 4, 2011) ...................................... 11

*Arpin v. Santa Clara Valley Transp. Agency*,
   261 F.3d 912 (9th Cir. 2001) ................................................................ 4

*Brown v. McCormick*,
   23 F. Supp. 2d 594 (D. Md. 1998)....................................................... 10

*Bryant v. Media Right Prods., Inc.*,
   603 F.3d 135 (2d Cir. 2010) ............................................................ 5, 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................... 4

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
   106 F.3d 284 (9th Cir. 1997) ........................................................... 5, 12

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
   259 F.3d 1186 (9th Cir. 2001) ..................................................... 5, 7, 12

*Cormack v. Sunshine Food Stores, Inc.*,
   675 F. Supp. 374 (E.D. Mich. 1987) ............................................. 14, 15

*Energy Intel. Grp., Inc. v. CHS McPherson Refinery, Inc.*,
   300 F. Supp. 3d 1356 (D. Kan. 2018)................................................. 16

*Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, LP*,
   2017 WL 363004 (S.D. Tex. Jan. 24, 2017)...................................... 14

*Gamma Audio & Video, Inc. v. Ean-Chea*,
   11 F.3d 1106 (1st Cir. 1993)........................................................Passim

*Grady v. Nelson*,
   2014 WL 7143852 (D. Colo. Dec. 15, 2014) ........................... 14, 15, 17

*Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*,
   399 F. Supp. 3d 120 (S.D.N.Y. 2019) ................................................ 18

*Kashi v. McGraw-Hill Glob. Educ. Holdings*,
   2018 WL 5262733 (E.D. Pa. Oct. 23, 2018) ...................................... 18

*Kennedy v. Gish, Sherwood & Friends, Inc.*,
   143 F. Supp. 3d 898 (E.D. Mo. 2015) ................................................ 16

*Krist v. Scholastic, Inc.*,
   415 F. Supp. 3d 514 (E.D. Pa. 2019) ................................................. 18

*Ma v. Ashcroft*,
   361 F.3d 553 (9th Cir. 2004) .............................................................. 20

*MCA Television Ltd. v. Feltner*,
   89 F.3d 766 (11th Cir. 1996) ......................................................... 5, 13

*Monge v. Maya Mags., Inc.*,
    688 F.3d 1164 (9th Cir. 2012) ........................................................... Passim
*Playboy Enterprises Inc. v. Sanfilippo*,
    1998 WL 207856 (S.D. Cal. Mar. 25, 1998) ....................................... 13
*Sullivan v. Flora, Inc.*,
    936 F.3d 562 (7th Cir. 2019) ........................................................ 8, 12
*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*,
    996 F.2d 1366 (2d Cir. 1993) ............................................................ 13
*VHT, Inc. v. Zillow Grp., Inc.*,
    461 F. Supp. 3d 1025 (W.D. Wash. 2020) .................................... Passim
*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) .................................................. 6, 7, 21
*Walt Disney Co. v. Powell*,
    897 F.2d 565 (D.C. Cir. 1990) ............................................................ 5
*Warner Bros. Recs. Inc. v. Hentz*,
    2007 WL 2481289 (S.D. Ill. Aug. 29, 2007) ........................................ 9
*WB Music Corp. v. RTV Commc'n Grp., Inc.*,
    445 F.3d 538 (2d Cir. 2006) ................................................................ 9
*Xoom, Inc. v. Imageline, Inc.*,
    323 F.3d 279 (4th Cir. 2003) .............................................................. 5
*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
    795 F.3d 1255 (11th Cir. 2015) ........................................................ 20

Statutes

17 U.S.C. § 101 .............................................................................. 6, 8, 11
17 U.S.C. § 412 ........................................................................................ 6
17 U.S.C. § 504(c) .......................................................................... 7, 12, 17, 21
17 U.S.C. § 504(c)(1) ...................................................................... Passim

Rules

Fed. R. Civ. P. 56(a) ............................................................................... 4

Other Authorities

6 William F. Patry, *Patry on Copyright § 22:185* (2012 ed.) ........................... 9, 14
L.R. 11-6.2 ............................................................................................. 22

1

## MEMORANDUM OF POINT AND AUTHORITIES

2

## I.   INTRODUCTION

3      The PMC Defendants infringed Vogts' copyrights in his 53 individual

4  Subject Photographs. Specifically, they selected those photos, one by one, based on

5  the different contents and characteristics of each. They then showed them off in

6  galleries, created a separate webpage for each, generated separate revenue from

7  each, and did not use each in the same way. Yet they now argue that the 53 Subject

8  Photographs are merely three "compilations" based on little more than the

9  generalization that they concern three different properties. But the undisputed facts

10  and controlling authority compel the conclusion that each Subject Photograph is

11  one work in light of the statutory definition of "compilation," each Subject

12  Photograph has independent economic value, and the registrations covering the

13  Subject Photographs (among many other photos) affirm the availability of a

14  separate statutory damages award per Subject Photograph.

15      A foundational tenet of copyright law is that each individual work is entitled

16  to its own award. Because each Subject Photograph is a discrete work, Vogts is

17  entitled to a separate statutory damages award for each Subject Photograph, and

18  the PMC Defendants' motion must be denied.

19

## II.   STATEMENT OF FACTS

20

### A. Vogts' registrations covering the Subject Photographs (among many

21      other individual photos).

22      The Subject Photographs are 53 individual photos registered under three

23  group registrations: Reg. Nos. VA 2-213-119 (Subject Photographs 1-20), VA 2-

24  227-873 (Subject Photographs 21-38), and VA 2-230-981 (Subject Photographs

25  39-53). Registration VA 2-213-199 covers 187 individual photos of six unrelated

26  properties, 44 of which—including Subject Photographs 1-20—depict different

27  aspects of a property located at 601 Seclusion Lane. Registration VA 2-227-873

28  covers 558 individual photos of 15 unrelated properties, 36 of which—including

Subject Photographs 21-38—depict different aspects of a property located at 713 North Alta Vista Boulevard. And Registration VA 2-230-981 covers 544 individual photos of 23 unrelated properties, 26 of which—including Subject Photographs 39-53—depict different aspects of a property located at 4047 Dixie Canyon Avenue. Opp. SSUMF (i.e., Vogts additional undisputed material facts in opposition to the PMC Defendants' statement of facts) ¶¶ 26-55.

The titles of the photos have no significance other than to help Vogts stay organized and for ease of referencing particular photos given the large number of photos that Vogts generally registers, and to comply with the Copyright Office's administrative requirements for group registrations. If Vogts titled all photos on a group registration as, e.g., "Kitchen 2" or "Bathroom 1," or "IMG_7057," identifying a particular photo would be exceedingly difficult, if not functionally impossible. Opp. SSUMF ¶¶ 56-58.

**B. Vogts' publication of each of the Subject Photographs (among other photos) and their availability for licensing on a per-photo basis.**

Vogts captured his photos of the above-identified properties in one day, respectively—and initially delivered his photos to his clients in one download link, respectively—for efficiency's sake only. The value of those photos would not change if Vogts took those photos on different days, or sent separate download links per photo. The photos Vogts created of those properties were not initially published to his clients in any required order or arrangement, and his clients were authorized to use those photos—whether it was one, some, or all—in whatever selection, order, or arrangement they preferred to market the properties. Opp. SSUMF ¶¶ 34, 44, 54, 67-69.

Vogts invoiced his photos of different aspects of 601 Seclusion Lane, 713 North Alta Vista Boulevard, and 4047 Dixie Canyon Avenue, respectively, by listing them as line items. With respect to invoicing the photos of 601 Seclusion Lane and 713 North Alta Vista Boulevard, respectively, Vogts' clients requested

and paid for twilight photos—different expressions of those properties—to portray those properties under different lighting and environmental conditions. The respective five twilight photos of 601 Seclusion Lane and nine twilight photos of 713 North Alta Vista Boulevard—only four of which the PMC Defendants copied (i.e., Subject Photographs 20, 32-33, and 36)—were itemized and priced separately. The Subject Photographs do not include any of the aerial drone photos or 3D walkthroughs. Opp. SSUMF ¶¶ 60-66.

Vogts' photos, including each Subject Photograph, are available for licensing individually, based on different focal points of a particular property or different properties, and more. For example, on his website, Vogts promotes a "portfolio" of selections of his photos categorized into "exteriors," "interiors," and "details," each of which showcases different properties as captured by Vogts. Opp. SSUMF ¶¶ 70-74.

**C. The PMC Defendants selected each Subject Photograph because each captured different subject matter, and each generated separate revenue for the PMC Defendants.**

The Subject Photographs were part of larger groups of Vogts' photos of 601 Seclusion Lane, 713 North Alta Vista Boulevard, and 4047 Dixie Canyon Avenue that were lawfully displayed online at realtor.com and redfin.com. The PMC Defendants selected the Subject Photographs from those listings (1-20 from realtor.com, 21-38 and 39-53 from redfin.com) because each showed a particular aspect of the depicted property in a way the PMC Defendants thought would interest their readers. And the PMC Defendants chose to use Subject Photographs 1, 32, and 40 specifically as "feature images" because of their respective angles. Opp. SSUMF ¶¶ 81-89.

Separate from the posts at issue, the PMC Defendants also publish posts about particular or single aspects of a property, such as posts about kitchens (displaying one photo per selected property), posts about offices (displaying one

photo per property), and posts about architects (displaying one photo per building). Opp. SSUMF ¶¶ 90-92.

In this case, the PMC Defendants concede using the Subject Photographs on their Website and beyond, and that each Subject Photograph generated discrete page views and revenue for them. Those uses were in articles and separate galleries displaying the Subject Photographs which had their own web addresses. And each Subject Photograph displayed in those galleries had its own web address. Thus, viewers could click on however many or whichever Subject Photographs they wanted to see, and each Subject Photograph generated revenue independently when it was viewed. The PMC Defendants used Subject Photographs 1, 32, and 40—with no other Subject Photographs—as "feature images." Opp. SSUMF ¶¶ 75-80, 93-96. And PMC distributed the posts displaying the Subject Photographs 1-20, 21-38, and 39-53, respectively, to syndication partners pursuant to revenue-share agreements. Opp. SSUMF ¶ 97.

## III. ARGUMENT

The 53 individual Subject Photographs were registered as individual works, each has independent economic value, and each generated revenue and was used differently by the PMC Defendants. Because the undisputed facts and controlling authority demonstrate that the PMC Defendants infringed 53 standalone "works," each of which is entitled to a separate statutory damages award, their motion should be denied.

Summary judgment is appropriate when the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the burden of demonstrating entitlement to judgment as a matter of law and the absence of any genuine dispute of material fact. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

As set forth below, that the Subject Photographs generally concern three properties is insufficient to allow the PMC Defendants to justifiably convert 53 individual photos into only three works.

**A. One award per individual work is a foundational tenet of copyright law.**

A copyright owner is entitled to recover "an award of statutory damages for all infringements involved in the action, with respect to any one work[.]" 17 U.S.C. § 504(c)(1); *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc. ("Columbia Pictures II")*, 259 F.3d 1186, 1193–94 (9th Cir. 2001) ("[E]ach work infringed may form the basis of one award."). Section 504(c)(1) also provides that "[f]or the purposes of this subsection, all the parts of a compilation or derivative work constitute one work." 17 U.S.C. § 504(c)(1). "Although the Copyright Act does not define the term 'work,' courts approach the definition depending on the specific issue, for example, . . . calculating statutory damages." *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1180 n.10 (9th Cir. 2012).

Different circuits have historically applied different approaches in interpreting what constitutes a "work" or a "compilation" for purposes of Section 504(c)(1). The Second and Fourth Circuits have looked at the available commercial promotion or distribution of each work as well as how each work is registered.[1] And the First, Ninth, Eleventh, and D.C. Circuits have applied a "functional test" to determine whether each work has "independent economic value."[2]

---

[1] *See Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 140 (2d Cir. 2010); *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 285 (4th Cir. 2003).

[2] *See Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1116-17 (1st Cir. 1993); *Columbia Pictures Television, Inc. v. Krypton Broad. ("Columbia Pictures I")*, 106 F.3d 284, 295 (9th Cir. 1997); *Columbia Pictures II*, 259 F.3d at 1193; *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990); *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996).

However, in *VHT, Inc. v. Zillow Grp., Inc. ("VHT I")*, 918 F.3d 723, 747–48 (9th Cir. 2019), a case also involving the unauthorized use of property photos on a commercial website, the Ninth Circuit clarified that those inquiries are non-dispositive factors that "inform[] our analysis" of determining the number of statutory damages awards for "the photo[s]" at issue, and that "[u]ltimately, what counts is the statutory definition." *Id*.

A "compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101.

There is no dispute that Vogts owns a valid copyright in each of the 53 Subject Photographs or that the PMC Defendants copied, displayed, and distributed each of those Photographs without authorization from Vogts. *See* Dkt. 42. And there is no dispute that the Subject Photographs are eligible for statutory damages awards. *See* 17 U.S.C. § 412. The only dispute is whether the PMC Defendants infringed 53 works or just three. It is the PMC Defendants' burden to establish that the 53 Subject Photographs are only three "compilations." *See Monge*, 688 F.3d at 1179–80. The PMC Defendants cannot meet their burden.

**B. Under the statutory definition, each Subject Photograph is one work.**

The PMC Defendants' argument regarding the statutory definition rests entirely on their assertion that Subject Photographs 1-20, 21-38, and 39-53, respectively, are each of one property and that Vogts "issued" them "as a unit." *See* Dkt. 43-1 at 8-9 (internal citations omitted). That assertion misses the mark.

The number of copyright violations, and thus the number of statutory damages awards, turns on the nature of the "works infringed" by the PMC

1    Defendants,[3] not the issuance of those works. *See VHT I*, 918 F.3d at 747-48

2    (stating that VHT's "damages award hinges on whether VHT's photos used on

3    Digs are part of a 'compilation' or if they are individual photos"); *VHT, Inc. v.*

4    *Zillow Grp., Inc. ("VHT II")*, 461 F. Supp. 3d 1025, 1044–45 (W.D. Wash. 2020)

5    ("[T]he question is not whether [VHT] stores its photos in a database, . . . the

6    question is whether the 'works infringed' make up a compilation or not."). If the

7    "one work" that is infringed is a compilation, the copyright holder is limited to a

8    single award; otherwise, each individual work infringed warrants a separate award.

9    *See* 17 U.S.C. § 504(c). Thus, the proper inquiry is whether or how the Subject

10   Photographs—the particular photos that the PMC Defendants downloaded,

11   displayed, and distributed—are selected, coordinated, or arranged (if at all). *See*

12   *VHT II*, 461 F. Supp. 3d at 1044 (considering "how VHT's images are 'selected,

13   coordinated, or arranged' in analyzing whether they constitute a compilation.").

14       The PMC Defendants do not even attempt to identify the original selections,

15   coordinations, or arrangements of preexisting materials that are the supposed

16   compilations here. Nor do they even suggest that the order of the Subject

17   Photographs on the registrations, as published to Vogts' clients, on the realtor.com

18   and redfin.com listings, and on the PMC Defendants' Website were the same. The

19   Subject Photographs are not preexisting materials that Vogts merely organized in a

20   particular order—Vogts created each one. Opp. SSUMF ¶ 65. Each of the Subject

21   Photographs are individually copyrighted works regardless of whether or however

22   they may be grouped, selected, coordinated, arranged, ordered, or organized. *See*

23   *supra*, Section II.B. Because a "compilation" only extends to the original selection,

24   coordination, or arrangement of "the collection and assembling of preexisting

25

26

27   _____

     [3] *See also Columbia Pictures II*, 259 F.3d at 1193 ("[E]ach work infringed may

28   form the basis of one award[.]").

materials" (*see* 17 U.S.C. § 101), the Subject Photographs are, by definition, not compilations.

Moreover, Vogts' clients were granted limited authorization to use however many of Vogts' photos of 601 Seclusion Avenue, 713 North Alta Vista Boulevard, and 4047 Dixie Canyon Avenue, respectively, that they believed was best to market those properties for sale, purchase, or lease—whether it was one, some, or all—in whatever selection, coordination, arrangement, grouping, or order they preferred. *See supra*, Section II.B. And the PMC Defendants do not attempt to argue that those "protected works have value *only* in and through their composite whole[.]" *See Sullivan v. Flora, Inc.*, 936 F.3d 562, 571–72 (7th Cir. 2019) (emphasis added). Thus, those photos—including the "subset" thereof which is the Subject Photographs (for no reason other than that *they are the particular photos that the PMC Defendants chose to copy*)—cannot fairly be termed compilations.

Notably, the PMC Defendants also do not identify what they contend to be the purported compilations. Each Form VA registration? All photos of each property that Vogts initially provided his clients? The photos that his clients displayed on the realtor.com and redfin.com listings? The smaller subset that the PMC Defendants took?

If the PMC Defendants contend that the groups of photos registered or published together are the compilations, it was incumbent on them to present those groups of photos to this Court, and their failure to do so is reason alone to reject their contention (among the many other reasons herein).[4] *See Monge*, 688 F.3d at 1179–80 (9th Cir. 2012) ("Maya did not even submit for the record the other

---

[4] It does not appear that the PMC Defendants even put the Subject Photographs into the record. The PMC Defendants state that the Subject Photographs are submitted in connection with Ex. A to the Bandlow Decl. (*see* Dkt. 43-2 ¶¶ 1, 9, 17, referring to Exs. 4, 7, and 11), but Ex. A only consists of excerpts of a deposition transcript (*see* Dkt. 43-4).

material on the storage disk and nothing in the record supports a finding regarding compilation. Indeed, it would take an act of legal clairvoyance to deem the material on the disk a copyrighted compilation without ever seeing it.").

If the PMC Defendants contend that what *they* infringed constitutes a compilation, that contention is dead on arrival: "[w]here defendant copies separate works without permission into an infringing compilation, the last sentence of Section 504(c)(1) does not apply, and separate awards are available." 6 PATRY ON COPYRIGHT § 22:185 (citing *WB Music Corp. v. RTV Commc'n Grp., Inc.*, 445 F.3d 538, 539–41 (2d Cir. 2006) ("[D]efendants' infringement of thirteen copyrights by copying thirteen songs onto seven distinct CD products warrants thirteen statutory damage awards."), *and Warner Bros. Recs. Inc. v. Hentz*, No. 06-CV-685, 2007 WL 2481289, at *4 (S.D. Ill. Aug. 29, 2007) (downloading and making available songs from multiple albums justifies separate awards)). The PMC Defendants cannot copy individual photos, group them together, and then benefit (i.e., massively reduce the consequences of their infringements) from their own groupings.

Similarly, the PMC Defendants' argument that Vogts published the Subject Photographs as three "unit[s]" conflates the statutory definition with the independent economic value test, is factually wrong for the reasons discussed *infra*, Section III.C, and is a sleight of hand. The PMC Defendants exploited individual photos that they obtained *not* from what Vogts initially published to his commissioning clients, but from the licensed uses of Vogts' photos on realtor.com and redfin.com. The photos that Vogts respectively published of different aspects of the above-referenced properties *included more than just the 53 photos at issue in this case. See supra*, Sections II.A-B. Indeed, the PMC Defendants' uses of *only* Subject Photographs 1, 32, and 40, respectively, as "feature images" in newsletters—and with respect to Subject Photograph 40, in social media posts— reinforces the individual nature and characteristics of each Subject Photograph. *See*

1    *Brown v. McCormick*, 23 F. Supp. 2d 594, 609–10 (D. Md. 1998) ("The

2    defendants, too, demonstrated the individual nature of the guilt block patterns: for

3    example, Ms. McCormick allegedly copied just one block, the 'Wedding' block, to

4    create the 'Marriage' block for 'Where Love Resides'; and in the book projects,

5    the defendants frequently picture individual blocks to illustrate individual

6    motifs.").

7        All of this goes to show that the PMC Defendants' "characterization of the .

8    . . photos as a 'compilation' misapprehends the meaning of this term[.]" *Monge*,

9    688 F.3d at 1179–80. In *Monge*, where "private photos were taken on Monge's

10   camera on the wedding day and Maya published six of those images," the Ninth

11   Circuit held, based on the statutory definition, that "there is absolutely no evidence

12   that the multiple images were in any way 'selected, coordinated, or arranged' to

13   create 'an original work of authorship[.]'" *Id*. There is no such evidence here

14   either. *See VHT II*, 461 F. Supp. 3d at 1045.

15       The PMC Defendants' heavy reliance on *Bryant*, which is out-of-circuit and

16   predates *VHT I* and *II*, is misplaced. In *Bryant*, 603 F.3d at 138-41, the Second

17   Circuit held that where sound recordings were *only* issued and *could only* be

18   purchased in album form rather than as individual tracks, the copyright holders

19   could only seek separate statutory damages awards per album. Unlike in *Bryant*,

20   the Subject Photographs are not selected, coordinated, or arranged in any particular

21   order (as are songs on an album), and can be licensed separately (among numerous

22   types of licensing arrangements). *See supra*, Sections II.A-B. It thus appears that

23   the PMC Defendants are suggesting an interpretation of 17 U.S.C § 504(c)(1)  that

24   *any* issuance of a photo as part of a group or series prevents that photo from ever

25   being an individual work. Such an interpretation is illogical and unprecedented.

26   *See, e.g.*, *Gamma Audio & Video*, 11 F.3d at 1117 n.9 ("If the distributor of

27   the *Rocky* series of motion pictures required video stores to purchase all five of the

28

movies, or alternatively, packaged the movies as a boxed set for resale, the five movies would not suddenly become one 'work' for the purpose of damages.").

Nothing in the Copyright Act or *Bryant* bars a photographer from recovering a statutory damage award per photo simply because that photographer, at some point in time, also included that photo as part of a group or series. *See, e.g.*, *Arista Recs. LLC v. Lime Grp. LLC*, No. 06CV5936, 2011 WL 1311771, at *3-4 (S.D.N.Y. Apr. 4, 2011). The Copyright Act does *not* say that all related works (e.g., a series of photos depicting different aspects of the same property) are per se a compilation, or that any photo included in such a group or series does not and cannot exist as a separate, independent work. *See, e.g.*, *id*. at *4. Rather, the opposite is true. *See Gamma Audio & Video*, 11 F.3d at 1117 (holding that a work is individual, and eligible for its own statutory damages award, when it "*can* live their own copyright life") (emphasis added). Unlike in *Bryant*—where plaintiffs issued their sound recordings *only* in album form (i.e., there was no other way to obtain the sound recordings at issue)—Vogts' photos, including the Subject Photographs, are not *only* available as a group (*see supra*, Sections II.A-B). The Subject Photographs are individual works, and the PMC Defendants' infringed Vogts' copyrights in each Subject Photograph.

*VHT II* reinforces this conclusion. In *VHT II*, the court construed *Columbia Pictures I*, *Columbia Pictures II*, *Bryant*, and *Monge*, and held, as a matter of law, that VHT's photos at issue were not a "compilation" under 17 U.S.C. § 101, and that each infringed photo warranted a separate statutory damages award, because "VHT *licenses its images on a per-image or per-property basis*." 461 F. Supp. 3d at 1044-45 (emphasis added). That applies with full force here: Vogts' photos of the above-referenced properties—including the Subject Photographs—are available for licensing on per-photo and per-property bases. *See supra*, Sections II.A-B.

1    As a result, based on the statutory definition, the Subject Photographs are

2  not three compilations. Instead, each Subject Photograph has "standalone value at

3  the level of 'one work,'" *Sullivan*, 936 F.3d at 571; and each qualifies for a

4  separate statutory damages award under Section 504(c).

5    **C. Each Subject Photograph has independent economic value.**

6    Each Subject Photograph is a distinct work that has its own independent

7  economic value. *See VHT II*, 461 F. Supp. 3d at 1043–44 ("If VHT's images . . .

8  [have] independent economic value[], . . . they cannot be a 'compilation[.]'");

9  *Monge*, 688 F.3d at 1179–80 (finding that "[e]ach of the individual wedding

10 photos" had independent economic value).

11   "[S]eparate copyrights" are "distinct works" when "they can live their own

12 copyright life." *See Columbia Pictures II*, 259 F.3d at 1193. Photos "can live their

13 own copyright life" when each "has an independent economic value and is, in

14 itself, viable." *See Gamma Audio & Video*, 11 F.3d at 1117; *Columbia Pictures II*,

15 259 F.3d at 1193–94 ("[E]ach episode in a television series constitutes a separate

16 work[.]").

17   This case is a prime example of "[a] possibility Congress made available in

18 § 504(c)(1)"—i.e., "a situation where a copyright holder encounters infringement

19 on multiple works available in the market as a group but where discernable value

20 lies at the level of a particular individual work—for example, at the level of a

21 particular photo." *See Sullivan*, 936 F.3d at 571–72. In *Gamma Audio & Video*, 11

22 F.3d at 1115–18, the First Circuit held that each episode of a television series was

23 entitled to a separate award—even though Gamma sold and rented only complete

24 sets of the series—because "[a] distributor's decision to sell or rent complete sets

25 of a series to video stores in no way indicates that each episode in the series is

26 unable to stand alone," "viewers . . . may rent as few or as many tapes as they

27 want, may view one, two, or twenty episodes in a single sitting, and may never

28 watch or rent all of the episodes," and each episode could be aired "independently

from the preceding and subsequent episodes." *See also Columbia Pictures I*, 106 F.3d at 295–96 (holding that episodes were separate works for similar reasons, and because episodes could be repeated, rearranged, and/or broadcast in different orders, at the option of the broadcaster). And in *Playboy Enterprises Inc. v. Sanfilippo*, No. 97-0670, 1998 WL 207856, at *5 (S.D. Cal. Mar. 25, 1998), the court held that the copyright holder could recover separate awards for each of the 5,776 photos at issue: "[T]hese images are subject to re-use and redistribution in accordance with various licensing arrangements . . . . The fact that many of these images appeared together should not detract from the protection afforded to each individual effort."

Under that controlling authority, the PMC Defendants' argument that each Subject Photograph has no independent economic value (*see* Dkt. 43-1 at 10-12) fails. First, that the "throughline" in Subject Photographs 1-20, 21-38, and 39-53, respectively, is the same property (albeit with a different aspect depicted in each Photograph) (*see* Dkt. 43-1 at 10-11) makes no difference. *See Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1380–81 (2d Cir. 1993) ("The author of eight scripts for eight television episodes is not limited to one award of statutory damages just because he or she can continue the plot line from one episode to the next[.]"). To the contrary, in *VHT II*, the court held that, as here, property photos licensed on a per-photo or per-property basis are eligible for separate awards in part because they "**are akin to the television episodes in *Twin Peaks*.**" 461 F. Supp. 3d at 1045 (emphasis added).

Second, that Subject Photographs 1-20, 21-38, and 39-53 were respectively published to Vogts' initial clients on one invoice and through one download link (*see* Dkt. 43-1 at 10) "in no way indicates that each [Subject Photograph] . . . is unable to stand alone." *See MCA Television*, 89 F.3d at 768–70 ("[T]he decision of a distributor of television programs to sell television series as a block, rather than as individual shows, in no way indicates that each episode in a series is unable to

stand alone.").[5] Vogts is unaware of any authority—and the PMC Defendants cite none—standing for the proposition that making individual photos available for download via a single folder renders each photo in that folder inviable on its own. Plus, the PMC Defendants omit that the five twilight photos of 601 Seclusion Lane and nine twilight photos of 713 North Alta Vista Boulevard—only four of which the PMC Defendants copied (i.e., Subject Photographs 20, 32-33, and 36)—were itemized and priced *separately*. *See supra*, Section II.B.

Third, the PMC Defendants' contention that "Vogts did not license (nor did anyone attempt to license) any of the Subject Photographs after they were initially used to facilitate the sale of the property depicted in the Subject Photographs" (*see* Dkt. 43-1 at 10) ignores the *availability* of licensing arrangements, and that "[a] protected work has standalone value if the evidence shows that work has distinct and discernable value to the copyright holder." 6 PATRY ON COPYRIGHT § 22:185. Vogts' photos, including the Subject Photographs, are available for licensing on a per-photo basis, among numerous other licensing arrangements. *See supra*, Section II.B; *see also Cormack*, 675 F. Supp. At 376–79 ("[B]usinesses could find a use for one of the tests but not the other[.]"). And Vogts' website offers viewing access to his photos individually and by their characteristics, not by property. *See supra*, Section II.B; *see Grady v. Nelson*, No. 12-CV-03004, 2014 WL 7143852, at *8–9

---

[5] *See also Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, LP*, No. CV H-14-1903, 2017 WL 363004, at *2–3 (S.D. Tex. Jan. 24, 2017) ("The decision to sell works by subscription does not combine several works into one any more than allowing payment in installments divides one work into several. A compilation is . . . not the mere byproduct of choosing a sales or distribution model."); *See Cormack v. Sunshine Food Stores, Inc.*, 675 F. Supp. 374, 376–79 (E.D. Mich. 1987) (stating that it is not the case that "merely because two copyrighted works are sold to the same purchaser, pursuant to a single agreement, they are thereby 'compiled into a single work'").

1   (D. Colo. Dec. 15, 2014) ("Plaintiff offers viewing access to photographs and

2   videos on an individual basis to members of his website[.]").

3       Even the PMC Defendants cannot deny that a photo of an aspect of a

4   property has value independent of other photos of other aspects of the same

5   property. The PMC Defendants themselves publish posts about single rooms in

6   properties—i.e., the kitchen or the office—for which they only display one photo

7   of each selected property which shows that room. *See supra*, Section II.D. The

8   PMC Defendants also publish posts about architects that display a single photo of

9   the exterior of a property or building designed by that architect. *See id*. The context

10  in which the PMC Defendants may arbitrarily decide to use a photo—whether a

11  post about different aspects of a property, a post about a single aspect of multiple

12  properties, or a post about a person—does not change the standalone value of the

13  photo.

14      Finally, and perhaps most notably, the PMC Defendants fail to mention that

15  *they* treated the Subject Photographs "as separate entities" in this case, and that

16  each Subject Photograph generated revenue for them. *See Cormack*, 675 F. Supp.

17  at 376–79 ("[T]hese defendants treated the tests as separate entities."). The PMC

18  Defendants intentionally selected the Subject Photographs for what each showed

19  (i.e., a particular aspect of the depicted property that the unselected photos did not,

20  and that the PMC Defendants thought would interest readers). *See supra*, Section

21  II.C. The PMC Defendants used *only* Subject Photographs 1, 32, and 40,

22  respectively, as "feature images," and did so because of their respective angles. *See*

23  *id*. And when displayed in the galleries (each of which had its own web address),

24  each Subject Photograph had its own web address, and page views of each web

25  address generated revenue for the PMC Defendants. *See id*. The PMC Defendants'

26  selective use of certain photos—i.e., particular photos *they chose* from the

27  available photos on the realtor.com and redfin.com listings—and not others shows

28  the disingenuousness of the PMC Defendants' argument.

Each of the Subject Photographs is a single, copyrightable effort which involved Vogts entering a different room and setting up a different shot of a different aspect of the photographed properties. And each Subject Photograph has independent economic value. That the PMC Defendants decided to exploit those particular photos together on their Website "should not detract from the protection afforded to each individual effort." *See Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898, 915 (E.D. Mo. 2015). Consequently, each Subject Photograph is entitled to a separate statutory damages award.

**D. Vogts' registrations affirm the availability of a separate statutory damages award per Subject Photograph.**

Defendants' argument that the Subject Photographs are compilations based on how they are registered with the U.S. Copyright Office (*see* Dkt. 43-1 at 12-13) "confuse[s] group registration with compilation formation. Under the [PMC Defendants'] theories," the Subject Photographs are three compilations "simply because [Vogts] placed them together for group registration[s] . . . . [but] [t]he U.S. Copyright Office has made clear that '[c]opyright owners who use a group registration option may be entitled to claim a separate award of statutory damages for each work . . . that is covered by the registration[.]'" *See Energy Intel. Grp., Inc. v. CHS McPherson Refinery, Inc.*, 300 F. Supp. 3d 1356, 1369–71 (D. Kan. 2018); *see also* U.S. COPYRIGHT OFFICE, U.S. COPYRIGHT OFFICE PRACTICES § 1112.3 (3d ed. 2021), https://www.copyright.gov/comp3/docs/compendium.pdf (last accessed March 23, 2023) ("[T]he registration covers each photograph in the group, but the group itself is not considered a compilation. Therefore, any claim for infringement of those photographs would not be subject to the limitation set forth in Section 504(c)(1) of the Copyright Act.") (internal citations omitted).

The Copyright Office explains why the PMC Defendants' argument is meritless:

A registration for . . . a group of photographs . . . covers the copyrightable authorship in each work that is submitted for registration, and each one is registered as a separate work . . . .

[I]t would be anomalous for works registered under a group registration option to be given less protection than if they had been registered with separate applications . . . .

[T]he group as a whole is not considered a compilation . . . .

[T]he selection of works is based solely on the regulatory requirements for the relevant group registration option, and the combination of those works is merely an administrative accommodation that exists solely for the purposes of registration and the convenience of the applicant . . . .

Copyright owners who use a group registration option may be entitled to claim a separate award of statutory damages for each work . . . that is covered by the registration, because a group registration covers each work or each issue that is submitted for registration . . . .

COMPENDIUM (THIRD) § 1105.4 (internal citations omitted).

Numerous courts have followed this guidance. In *Gamma Audio & Video*, 11 F.3d at 1115–18, where the episodes at issue were covered by a single registration, the First Circuit held that there is nothing "that precludes a copyright owner from registering the copyrights in multiple works on a single registration form while still collecting an award of statutory damages for the infringement of each work's copyright." In *Grady*, 2014 WL 7143852 at *8–9, the court held that "Defendant's infringement of the [106] Works from the six copyrights constitutes 106 separate infringements as provided by 17 U.S.C. § 504(c)(1)." The court found that although "[t]he photographs were related," they were "not a compilation" in part because "[t]he Plaintiff did not register the works as compilations when registering the copyrights and the prima facie evidence of this choice is found on the copyright registration certificates[.]" *Id.* And in *VHT II*, 461 F. Supp. 3d at 1040–45, the court held that the photos at issue were entitled to separate statutory damages

awards, even though "VHT group-registers its images as 'compilations,'" in part because VHT also "registers . . . its individual images[.]"

Here, the same result holds. Vogts registered the Subject Photographs as individual photos on group registrations for efficiency and cost-effectiveness. *See supra*, Section II.A. That is exactly what the group registration procedure is for: to prevent the overwhelming practical problems copyright owners like Vogts, and the Copyright Office, would face if full copyright protection for photographers required registration of their photos one-by-one; and to provide the only practical way to register large volumes of photos. A registration method developed for administrative convenience cannot be transformed into a mechanism for people or entities who blanketly copy other people's works, like the PMC Defendants, to claim a hefty discount on the price they would otherwise pay for their takings. *Contra* Dkt. 43-1 at 12-13.

Courts have even consistently held that copyright owners who register their photos *only* as part of a group database can seek separate awards for each infringed photo. *See, e.g.*, *Krist v. Scholastic, Inc.*, 415 F. Supp. 3d 514, 527, 536-37 (E.D. Pa. 2019) (permitting separate awards for each individual photo registered as part of compilation); *Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, 399 F. Supp. 3d 120, 130-35, 148-60 (S.D.N.Y. 2019) (photographer who registered photos only as part of "database" could recover 67 awards for each infringed photo); *Kashi v. McGraw-Hill Glob. Educ. Holdings*, 2018 WL 5262733, at *1, 7-8 (E.D. Pa. Oct. 23, 2018) (photographer who registered works "as part of a collection" could recover separate awards per individual photo infringed). It would be anomalous to permit the recovery of statutory damages awards per individual photo infringed in those cases but not here.

Ignoring this body of law, the PMC Defendants again argue that "Vogts issued the Subject Photographs in three units" (Dkt. 43-1 at 12-13), but that assertion is wrong (explained *supra*, Sections III.B-C) and irrelevant to the

registration label inquiry. The PMC Defendants' contention that Vogts registered the Subject Photographs as collections (Dkt. 43-1 at 13) is also wrong. Vogts' photos are registered as individual photos and are organized on those registrations by the month in which they were published. *See supra*, Section II.A. The PMC Defendants do not even attempt to identify the titles of the purported "collections" apart from the titles of individual photos—because there are no such collections. Instead, the registrations just "contain [a] complete list of titles that correspond to *the individual photographs included in this group*." *See, e.g.*, Dkt. 44-33 at 4 of 13 (emphasis added). Vogts titled and registered the photos as he did only for purposes of organization, efficiency, and compliance. *See supra*, Section II.A.

The PMC Defendants emphasize that Vogts took all photos on those registrations and published them in the same year, but the Copyright Office *requires* that all photos on such a group registration be "created by the same author" and "published in the same calendar year[.]" *See, e.g.*, Dkt. 44-33 at 5 of 13. And the PMC Defendants' contention that Vogts' photos of the three properties were respectively "published on the same date" (Dkt. 43-1 at 13) has no bearing. Indeed, Vogts' photos of 713 North Alta Vista Boulevard (which include Subject Photographs 21-38) were published on the same day as photos he took of a property located at 10540 Santa Monica Street; and Vogts' photos of 4047 Dixie Canyon Avenue (which include Subject Photographs 39-53) were published on the same day as photos he took of a property located at 13434 Moorpark Avenue. *See* Dkts. 44-35, 44-38. That multiple photos on a single registration were published on the same date is of no consequence.

The PMC Defendants are thus left to argue that the photos share the "same subject matter," but that glosses over the fact that each photo captures a different aspect of the property. Taking that sort of general description to its logical conclusion, Vogts' photos of 713 North Alta Vista Boulevard and 10540 Santa Monica Street—and Vogts' photos of 4047 Dixie Canyon Avenue and 13434

Moorpark Avenue—could be compilations, according to the PMC Defendants, because they were taken by the same photographer, published on the same day, and generally concern the same properties (i.e., Los Angeles homes, California homes, United States homes, etc.). But that would be an absurd result. *See Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004) ("[S]tatutory interpretations which would produce absurd results are to be avoided.").

The PMC Defendants' heavy reliance on *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1276–82 (11th Cir. 2015)—an out-of-circuit opinion which predates *VHT I* and *II*, and which no court within the Ninth Circuit has relied on to hold that works asserted in a case are compilations—is similarly unavailing. First, the copyright holder in that case registered the photos at issue *as collections* and listed the titles of the collections and not the individual photos, whereas Vogts registered his photos as *individual photos* and listed the titles of those individual photos. Second, the copyright holder in *Yellow Pages* used registration labeling specifically for customer appeal and revenue generation, which is inapplicable here. And third, the copyright holder in *Yellow Pages* described each of the collections at issue in his complaint as a single "work," which is also inapt (hence, the "Subject Photograph*s*"). *Yellow Pages Photos* has no bearing on this case.

The PMC Defendants' position would disallow separate statutory damages awards whenever a copyright holder accepts the invitation of the Copyright Office to register individual photos as a group, and would require registration photo-by-photo for no apparent purpose. Such a position ignores that "[t]he livelihoods of photographers . . . have long been founded on their compliance with the Register's reasonable interpretation of the statute." *Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 686 (9th Cir. 2014). It makes no sense to treat infringement of multiple photos differently depending on whether a registrant follows the Copyright Office's group registration process. Nor does it make sense

to allow an infringer to cap the damages for its liability for stealing 53 individual photos if those photos are registered on a group registration, but not if those photos were registered individually. Defendants' position invites more infringement, not less—and would deter registrants from using processes designed by the Copyright Office to improve efficiency for all.

In the end, this court can avoid such inequitable results by applying Section 504(c)'s plain language and its directive to base statutory damages on the "works infringed." The PMC Defendants' selected 53 particular photos and exploited them. Those 53 photos are not a compilation (*see VHT I*, 918 F.3d at 747-48); as demonstrated in part by the PMC Defendants plucking them out of other available photos. Each Subject Photograph is an individual "work," and Vogts is entitled to a separate award for each.

## IV. CONCLUSION

The PMC Defendants understand that the 53 Subject Photographs are separate works entitled to separate statutory damage awards. Indeed, in September 2020, PMC filed a copyright infringement lawsuit against Shutterstock, Inc. for the unauthorized exploitation of 2,300 "images from various 'red carpet' events" which it registered *as seven collections, not as individual photos, on group registrations*, and sought "to recover from Defendant statutory damages . . . which would range from approximately \$5,750,000 [i.e., <u>2,300</u> x \$2,500] to \$57,500,000 [i.e., <u>2,300</u> x \$25,000]"—that is, PMC sought damages for each individual photo infringed. *See Penske Media Corporation v. Shutterstock, Inc.*, Case No. 1:20-cv-04583, Dkt. 29 ¶¶ 47-54, 73, 79; Dkts. 29-1 through 29-4 (emphasis added). Its sudden change in position is disingenuous.

In this case, the Subject Photographs were registered not as compilations or collections, but as individual photos on group registrations of numerous unrelated property photos taken and published on different days. Neither the registrations, nor any uses of those photos by Vogts or his authorized licensees, called for or

required a selection, coordination, or arrangement of those photos in any particular order or format. Each Subject Photograph shows different content, exists as a standalone work, and has independent value. And each of them independently generated revenue for the PMC Defendants. As a result, the PMC Defendants cannot establish that the 53 individual Subject Photographs are anything other than 53 works, and this motion must be denied.

Respectfully submitted,

Dated: March 23, 2023          By:    */s/ Stephen M. Doniger*
                                      Stephen M. Doniger, Esq.
                                      Benjamin F. Tookey, Esq.
                                      DONIGER / BURROUGHS

                                      Attorneys for Plaintiff

## L.R. 11-6.2. Certificate of Compliance

The undersigned certifies that this memorandum of points and authorities complies with the type-volume limitation of L.R. 11-6.1. This certification is made relying on the word count of the word-processing system used to prepare the document.

The undersigned, Plaintiff's counsel of record, certifies that this brief contains fewer than 7,000 words, and complies with the word limit of L.R. 11-6.

Dated: March 23, 2023          By:    */s/ Stephen M. Doniger*
                                      Stephen M. Doniger, Esq.