1  Lincoln D. Bandlow (SBN: 170449)
   Lincoln@BandlowLaw.com
2  Rom Bar-Nissim (SBN: 293356)
   Rom@BandlowLaw.com
3  **Law Offices of Lincoln Bandlow, P.C.**
   1801 Century Park East, Suite 2400
4  Los Angeles, CA 90067
   Telephone: 310.556.9680
5  Facsimile: 310.861.5550

6  Attorneys for Defendants
   Penske Media Corporation
7  and Dirt.com, LLC

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12  BRANDON VOGTS, an individual,         Case No.: 2:22-cv-01153-FWS-PVC

13                 Plaintiff,
                                          **THE PMC DEFENDANTS' REPLY**
14                                        **BRIEF IN SUPPORT OF THEIR**
                                          **MOTION FOR PARTIAL**
15       v.                               **SUMMARY JUDGMENT**

16  PENSKE MEDIA CORPORATION,
    a Delaware Corporation; DIRT.COM,     [Concurrently-filed with Response
17  LLC, a Delaware Limited Liability     Separate Statement and Opp. to RJN]
    Company; MOVE, INC., a Delaware
18  Corporation, d/b/a Realtor.com; and   Assigned to: Hon. Fred W. Slaughter
    DOES 1 through 10,
19                                        Date: May 4, 2023
                   Defendants.            Time: 10:00 a.m.
20                                        Courtroom: 10D

21

# TABLE OF CONTENTS

I. INTRODUCTION………………………………………………………..1

II. LEGAL ARGUMENT ……...…………………………….……….....2

    A. Vogts Fails to Refute that he is Entitled to Only Three Statutory Damages Awards Under the Statutory Definition Test …………...2

    B. The Independent Economic Value Factor Further Supports that Vogts is Only Entitled to Three Statutory Damages Awards....5

    C. The Manner of Registration Factor Further Supports That Vogts is Entitled to Only Three Statutory Damages Awards….....8

III. CONCLUSION ……………………………………………………10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arista Records LLC v. Lime Group*,
  2011 WL 131171 (S.D.N.Y 2011) ..................................................................4*

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing*,
  747 F.3d 673 (9th Cir. 2014) ........................................................................10*

*Brown v. McCormick*,
  23 F.Supp.2d 594 (D. Md. 1998) ...................................................................4*

*Bryant v. Media Right Productions, Inc.*,
  603 F.3d 135 (2d Cir. 2010) ..........................................................................2*

*Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*,
  259 F.3d 1186 (9th Cir. 2001) .......................................................................7*

*Cormack v. Sunshine Food Stores, Inc.*,
  675 F.Supp. 374 (E.D. Mich. 1987) ...............................................................7*

*Energy Intelligence Group, Inc. v. CHS McPherson Refinery, Inc.*,
  300 F.Supp.3d 1356 (D. Kan. 2018) ........................................................9, 10*

*Energy Intelligence Group, Inc. v. Kanye Anderson Capital Advisors, LP*,
  2017 WL 363004 (S.D. Tex. 2017) ................................................................7*

*Gamma Audio & Video, Inc. v. Ean-Chea*,
  11 F.3d 1106 (1st Cir. 1993) ................................................................3, 7, 10*

*Georgia v. Public.Resources.Org., Inc.*,
  140 S.Ct. 1498 (2020) ....................................................................................9*

*Grady v. Nelson*,
  2014 WL 7143852 (D. Colo. 2014) ............................................................5, 7*

*Jose Luis Palaez, Inc. v. McGraw-Hill Global Education Holdings*,
  399 F.Supp.3d 120 (S.D.N.Y. 2019) ............................................................10*

*Kashi v. McGraw-Hill Global Education Holdings*,
  2018 WL 5262733 (E.D. Penn. 2018) ..........................................................10*

*Kennedy v. Gish, Sherwood & Friends, Inc.*,
   143 F.Supp.3d 898 (E.D. Mo. 2015) ................................................................. 7*

*Krist v. Scholastic, Inc.*,
   415 F.Supp.3d 514 (E.D. Penn. 2019) ............................................................. 10*

*Lee v. 162 D & Y Corp.*,
   2023 WL 199288 (E.D.N.Y. 2023) ................................................................... 5*

*MCA Television Ltd. v. Feltner*,
   89 F.3d 766 (11th Cir. 1996) ............................................................................ 7*

*Monge v. Maya Magazines, Inc.*,
   688 F.3d 1164 (9th Cir. 2012) .......................................................................... 4*

*Playboy Enterprises, Inc. v. Sanfilippo*,
   Case No. 97-0670-IEG (LSP), 1998 WL 207856 (S.D. Cal. Mar 24,
   1998) ................................................................................................................ 7*

*Sony Music Entertainment v. Cox Communications, Inc.*,
   464 F.Supp.3d 795 (W.D. Va. 2020) ................................................................ 6*

*Stross v. Centerra Homes of Texas*,
   -- F.Supp.3d --, 2022 WL 17825893 (W.D. Tex. 2022) ................................... 6*

*Sullivan v. Flora*,
   936 F.3d 562 (7th Cir. 2019) ........................................................................ 3, 7*

*Twin Peaks Productions, Inc. v. Publishing International Ltd.*,
   996 F.2d 1366 (2d Cir. 1993) ........................................................................ 2, 8*

*VHT, Inc. v. Zillow Group, Inc.*
   461 F.Supp.3d 1025 (W.D. Wash. 2020) ........................................ 1, 2, 7, 8, 10*

*VHT, Inc. v. Zillow Group, Inc.*,
   918 F.3d 723 (9th Cir. 2019) ............................................................................ 1*

*Warner Bros. Records, Inc. v. Hentz*,
   2007 WL 2481289 (S.D. Ill. 2007) ................................................................... 4*

*WB Music Corp. v. RTV Communications Group, Inc.*,
   445 F.3d 548 (2d Cir. 2006) ............................................................................. 2*

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
   795 F.3d 1255 (11th Cir. 2015) ..................................................................... 8, 9*

**Statutes**

17 U.S.C. § 101 ......................................................................................................... 2*

17 U.S.C. § 504(c)(1) ............................................................................................... 5*

**Other Authorities**

Compendium of U.S. Copyright Office Practices, Third Edition, §§
    111601116.7 (Dec. 22, 2014) ............................................................................ 9*

H.R. Rep. No. 1476, 94th Cong., 2d Sess. 162, *reprinted in* 1976
    U.S.C.C.A.N. 5659 ........................................................................................... 5*

Ninth Circuit YouTube, 22-35147 VHT, Inc. v. Zillow Group, Inc.,
    https://youtu.be/j4Qklauq2iU?t=393 ................................................................ 1*

# REPLY BRIEF

## I. INTRODUCTION

Vogts' Opposition (the "Opposition" or "Opp.") confirms the Motion should be granted. First, Vogts concedes that to determine whether the Subject Photographs constitute three compilations for statutory damages, the statutory definition of "compilation" controls. That dispositive test squarely shows there are only three works at issue here. Second, Vogt concedes that the "independent economic value" and "manner of registration" factors are probative of the question. Finally, Vogts does not meaningfully dispute the facts which show that *all* these factors favor the PMC Defendants and demonstrate that there are only three works at issue: he admits that as to the Stanchfield, O'Dowd and Williams Photographs: (1) each of these three sets were taken by him; (2) each of these three sets depict a single location (*i.e.*, the Stanchfield, O'Dowd and Williams properties); (3) each of these three sets were taken in a single day; (4) he only issued the Stanchfield, O'Dowd and Williams Photographs in three separate units to real estate agents for them to sell the properties shown in those photographs; and (5) the photographs were *never offered for license again, nobody ever sought to license them and they were never licensed again*.

Having made these fatal concessions, Vogts is left to misrepresenting the law and facts. The most egregious examples (all are detailed below) include asserting that the statutory definition test focuses on the PMC Defendants' *use* of the Subject Photographs, when his authority states the opposite (*i.e.*, the focus is on how Vogts issued them). Another is nonsensically asserting that using only part of a compilation results in additional statutory damages when the statute and its legislative history state the opposite (*i.e.*, they are to be treated as one work for statutory damages). Vogts also misrepresents having made the Subject Photographs available for individual licensing: the evidence he cites includes no information about licensing (in general) or about the Subject Photographs (in particular) at all.

Accordingly, the PMC Defendants request that the Motion be granted.

## II. LEGAL ARGUMENT

### A. Vogts Fails to Refute that he is Entitled to Only Three Statutory Damages Awards Under the Statutory Definition Test

Vogts wrongly relies on *VHT, Inc. v. Zillow Group, Inc.* ("*VHT I*"), 918 F.3d 723, 747-48 (9th Cir. 2019), and the trial court's decision on remand, to contend that that the statutory definition of compilation examines how the PMC Defendants used the Subject Photographs. *See* Opp., pp. 6:24-7:1, 7:9-11. The ***opposite*** is true: the statutory definition test solely examines how Vogts' issued the Subject Photographs.

In *VHT,* the plaintiff, VHT, managed a database of photographs of various properties and alleged that the defendant, Zillow, "infringed upon 28,125 of VHT's photographs." *VHT, Inc. v. Zillow Group, Inc.* ("*VHT II*"), 461 F.Supp.3d 1025, 1030 (W.D. Wash. 2020)). The photographs were registered across 11 "group registration[s]" and the parties disputed the number of statutory damage awards VHT could be awarded. *Id.* at 1131. In remanding to the trial court, the Ninth Circuit stated that the determinative question was whether ***VHT's photos*** were a "compilation" under the statutory definition – ***not*** how Zillow used the photos:

> The size of the damages award hinges on whether VHT's photos used on [Zillow's website] are ***part of a "compilation" or if they are individual photos***. This distinction makes a difference. If the ***VHT photo database is a "compilation,"*** and therefore ***one "work"*** for the purposes of the Copyright Act, then VHT would be limited to a ***single award*** of statutory damages for Zillow's use of thousands of photos on [Zillow's website]. 17 U.S.C. § 504(c)(1). But if the ***database is not a compilation***, then VHT could seek damages for ***each photo that Zillow used***.

*VHT I,* 918 F.3d at 747 (emphasis added).[1]

That is exactly how the trial court interpreted the Ninth Circuit's ruling on remand. As the trial court explained, "the Ninth Circuit's instruction and the statutory text . . . require the court to consider how ***VHT's images*** are 'selected,

---

[1] As discussed in the Motion, *VHT II* was appealed to the Ninth Circuit. During oral argument, Judge Margaret G. McKeown made clear that, to decide the statutory definition test, "the perspective you have to look from is the ***copyright holder not the copyright infringer***." Ninth Circuit YouTube, "22-35147 VHT, Inc. v. Zillow Group, Inc. (Feb. 27, 2023) at 6:33: https://youtu.be/j4Qklauq2iU?t=393.

coordinated, or arranged' in analyzing whether ***they constitute a compilation***." *VHT II*, 461 F.Supp.3d at 1044 (emphasis added). The trial court turned to the Second Circuit's decision in *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135 (2d Cir. 2010) for guidance – noting that the Ninth Circuit cited the decision with approval. *VHT II*, 461 F.Supp.3d at 1044 & fn. 11.

> In *Bryant*, the Second Circuit analyzed whether the songs on an album each constituted separate works or a single compilation. [603 F.3d] at 140. The *Bryant* court focused on whether '***the plaintiff—the copyright holder—issued its works separately, or together as a unit***." *Id.* at 141. The court noted that in two prior cases, a series of television shows and a series of songs were not 'compilations' ***because the plaintiff issued each episode or show separately***." Id (citing *Twin Peaks Productions, Inc. v. Publishing International Ltd.*, 996 F.2d 1366, 1381 (2d Cir. 1993); *WB Music Corp. v. RTV Communications Group, Inc.*, 445 F.3d 548, 541 (2d Cir. 2006)). The *Bryant* court then contrasted those facts from the facts before it, in which ***the copyright holders decided to issue their songs in album form*** and concluded that the albums constituted "compilations." [*Bryant*, 603 F.3d at 141].

*VHT II*, 461 F.Supp.3d at 1044.

The trial court found that "the *Bryant* court's method of determining whether something is a 'compilation' is ***persuasive***" because "*Bryant's* focus on how ***the copyright holder*** arranges its own materials hews closely to the statutory language that address how the materials at issue are 'selected, coordinated, or arranged.'" *Id.* (emphasis added) (*quoting* 17 U.S.C. § 101). For this reason, the trial court concluded that the test is "how VHT's images are organized and arranged ***when issued***." *Id*. at 1045 (emphasis in original). Following this test, the trial court found that the images in VHT's database were separate works for purposes of statutory damages because "***VHT licenses its images on a per-image or per-property*** basis" and the images were therefore more "akin to the [separately issued] television episodes in *Twin Peaks* than the collection of songs on an album in *Bryant*." *VHT II*, 461 F.Supp.3d at 1045 (emphasis added).

Therefore, Vogts is wrong: the statutory definition test focuses on how ***Vogts*** issued the Subject Photographs in the first instance – ***not on how the PMC Defendant used the works***. Indeed, Vogts' citations (Opp., Section IV.B.) emphasize

this point.[2] Vogts confuses the independent economic value test with the statutory definition test by citing *Sullivan* (936 F.3d at 517) and *Gamma Audio & Video v. Ean-Chea* (11 F.3d 1106, 1117 & fn. 9 (1st Cir. 1993)). Vogts' quote from *Sullivan* was from the section discussing "independent economic value" and not the statutory definition test. 936 F.3d at 571. Moreover, as explained in the Motion, in *Gamma Audio*, the television episodes had "independent economic value" because each was "produced ***independently*** from the other episodes" and "aired on television ***independently*** from the preceding and subsequent episodes" (*i.e.*, separately issued). Motion, p. 10 fn. 7 (emphasis added) (*quoting Gamma Audio*, 11 F.3d at 1117-18). None of this has anything to do with the statutory definition test.

Regarding that test, here, Vogts does not dispute that he "selected, coordinated, and arranged" (*i.e.*, issued) the Subject Photographs as part of three units based on the three properties depicted in the Subject Photographs. *See* Dkt. No. 57-7, ¶¶ 1-7, 9-15, 17-24. Instead of addressing these dispositive facts, Vogts seeks to manufacture a factual dispute by claiming he made the Subject Photographs available for licensing on an individual basis. *See Id.*, ¶¶ 8, 16, 24 (*citing* ¶¶ 70-74). While Vogt pretends that he "offers" individual licensing for all his images (including the Subject Photographs), that conclusory assertion is contradicted by the

---

[2] *See Sullivan v. Flora*, 936 F.3d 562, 571 (7th Cir. 2019) (statutory definition test "focuses on whether the copyright holder marketed and distributed the multiple protected works as individual works or as a compendium of works"); *Bryant*, 603 F.3d at 141 (explaining that Second Circuit found that works at issue in a different case constituted separate works because "the ***plaintiff*** had ***separately issued*** each" of the works) (emphasis added); *Arista Records LLC v. Lime Group*, 2011 WL 131171, *2 (S.D.N.Y. 2011) (statutory definition test focuses 'on whether the plaintiff—the copyright holder—issued its works separately, or together as a unit"); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1169, 1180 (9th Cir. 2012) (plaintiffs "memory chip" of photos of their "secret wedding, along with an assortment of other photos and video" not a compilation because photos on the chip were not "selected, coordinated, or arranged to create an original work of authorship" by plaintiffs); *cf. Warner Bros. Records, Inc. v. Hentz*, 2007 WL 2481289, *1, 4 (S.D. Ill. Aug. 29, 2007) (eight statutory damages awards for the infringement of eight music tracks from eight different music albums authored by eight different artists); *Brown v. McCormick*, 23 F.Supp.2d 594, 609-10 (D. Md. 1998) (15 blocks from a quilt were 15 works for statutory damages because the plaintiff "transmitted the blocks individually" and "sold her designs as fifteen [separate] patterns").

"evidence" cited by Vogts as proof of his purported individual licensing practice. Dkt. No. 57-3, ¶¶ 14-18, Exs. 1-3. Vogts' points to his "portfolio" from his website – but his "evidence" from the website does not contain any mention of licensing or display of the Subject Photographs. *Id.* It is absurd for Vogts to argue he issued the Subject Photographs separately when he ***failed to communicate or market*** individual licensing opportunities for his photographs (in general) or the Subject Photographs (in particular) to third-parties.

Vogts' argument that copying only parts of a compilation (but not the entire compilation) results in separate awards for each constituent part infringed (Opp., p. 9:4-16) is also inconsistent with the language of 17 U.S.C. Section 504. That Section provides that "[f]or purposes of [statutory damages], ***all the parts*** of a compilation or derivative work constitute one work." 17 U.S.C. § 504(c)(1) (emphasis added). As Congress explained in the legislative history, while parts of a compilation "are regarded as independent works for ***other purposes***, 'all parts of a compilation or derivative work constitute one work' ***for this purpose***" (*i.e.*, statutory damages). H.R. REP. 94-1476, 162 (1976) (emphasis added).[3] Indeed, it is nonsensical for Vogt to argue that using an ***entire compilation results in one award*** of statutory damages but using ***less than the whole compilation results in multiple awards***.

Therefore, there can be no dispute that, under the statutory definition test, the Subject Photographs comprise three compilations.

### B.  The Independent Economic Value Factor Further Supports that Vogts is Only Entitled to Three Statutory Damages Awards

Vogts fails to demonstrate that any of the individual Subject Photographs have independent economic value under either category of independent economic value cases, namely: (1) "how the constituent parts were produced, and the method

---

[3] *See e.g.*, *Lee v. 162 D & Y Corp.*, 2023 WL 199288, *1, 10 (E.D.N.Y. 2023) (plaintiff entitled to one statutory damages award for infringement of 42 songs that were part of a 125 song compilation); *Grady v. Nelson*, 2014 WL 7143852, *1, 8 (D. Colo. 2014) (106 statutory damages award for 762 works infringed).

of consumption of the works"; or (2) whether "each image represents a singular and copyrightable effort concerning a particular model, photographer, and location." Motion, p. 10:5-10 (*quoting Sony Music Entertainment v. Cox Communications, Inc.*, 464 F.Supp.3d 795, 818 (W.D. Va. 2020); Motion, p. 10 fns. 7-8 (citing cases).

*Stross v. Centerra Homes of Texas* is directly on point. --F.Supp.3d.-- 2022 WL 17825893 (W.D. Tex. Sept. 12, 2022). *Stross* involved a plaintiff who, like Vogts, photographed homes to use in real estate listing and sought separate statutory awards for each image in dispute. The court found plaintiff's photographs of properties did not have independent economic value because: (1) the plaintiff "registered the 50 photos as part of two collections"; (2) he "was paid ***based on each home photographed, not on the number of photos taken***"; and (3) "[e]ach photo was taken with the ***same economic purpose***: to market homes for [defendant] and showcase the same set of four homes." *Id.*, *2.

Here, there is no dispute that the Subject Photographs: (1) were all taken by Vogts; (2) depict three locations (*i.e.*, the Stanchfield Property, the O'Dowd Property and the Williams Property); (3) each property depicted in the Subject Photographs was photographed in a single day; and (4) Vogts issued the Stanchfield Photographs, O'Dowd Photographs and Williams Photographs solely in three separate units to the real estate agents for the properties to facilitate their sale.[4] Section, IV.A, *supra*; Dkt. No. 57-7, ¶¶ 1-24. Indeed, Vogts' failure to display the Subject Photographs in his

---

[4] The "twilight" photographs being listed separately on invoices changes nothing. Opp., 14:4-7. Vogts concedes these photographs were taken the same day as the other Subject Photographs, by the same person, of the same location and issued with the non-twilight photographs. Vogts concedes these photographs do not appear in his "portfolio." In the O'Dowd Invoice, the three twilight photos (Subject Photographs 32-33 and 36) have no indication the charge was per photo. Dkt No. 43-3, ¶ 5; Dkt. No. 47-8, p. 2. In fact, Vogts concedes that these are billed separately simply because "you're there at the property a lot later [in the day]. So you're kind of getting into what you might call overtime. You're well past office hours" and thus the separate billing has nothing to do with purported independent economic value, it is simply a product of it costing more to Vogts (in time and convenience) to take it. Dkt. No. 43-3, ¶ 2, Dkt. No. 43-4, p. 131, lines 1-14. Finally, even if the twilight photos had independent economic value (which they do not), it is insufficient – standing alone – to entitle Vogts to separate statutory damages awards for the twilight photographs.

"portfolio" and omission of any mention of licensing opportunities demonstrates that they **lacked** independent economic value.[5] *See Sullivan*, 936 F.3d at 572 ("the market assigns [no] value" to works that are ***not*** "marketed and available at the individual level"); Section IV.A, *supra*; Dkt. No. 57-3, ¶¶ 14-18, Exs. 1-3.

Even worse, Vogts relies on cases that are inapplicable because, as the PMC Defendants already demonstrated, they involve either: (1) separately produced and issued works;[6] or (2) works involving different photographers and locations.[7] Vogts' remaining citations apply the statutory definition test (*i.e.*, focusing on how the works were issued) which is dispositive *here*.[8] Opp., Section IV.C. Therefore, contrary to Vogts' argument, "making individual photos available for download via a single folder" (Opp., pp. 13:23-14:7) is critical to both the independent economic value test and the statutory definition test – as both focus on whether Vogts issued the Subject Photographs individually or as a unit. *VHT II*, F.Supp.3d at 1044 (noting

---

[5] Vogts' focus on the PMC Defendants' use to try to show independent economic value also fails. Opp., p. 14-15 (*citing Cormack v. Sunshine Food Stores, Inc.,* 675 F.Supp. 374, 376-79 (E.D. Mich. 1987). In *Cormack*, the court found two works had independent economic value because they were offered for sale separately on the same form and concerned different subject matter. *Id.* at 378-79.

[6] *See* Motion, p. 10 fn. 7 (*quoting Gamma Audio*, 11 F.3d at 1117-18; *MCA Television v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996)); *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 295 (9th Cir. 1997) (television episodes had independent economic value because: (1) "different episodes were broadcast over the course of weeks, months, and years"; and (2) "the episodes were separately written, produced and registered") *portion of opinion affirmed in* 259 F.3d 1186, 1193-94 (9th Cir. 2001).

[7] *See* Motion, p. 10 fn. 8 (*quoting Playboy Enterprises, Inc. v. Sanfilippo*, 1998 WL 2017856, *5 (S.D. Cal. 1998). Vogts' reliance on *Playboy* for the proposition that independent economic value can be determined when the "images are subject to re-use and redistribution in accordance with various licensing agreements" fails as Vogts does not (because he cannot) argue the Subject Photographs were subject to agreements authorizing their "re-use and redistribution." Opp., p. 13:4-10.

[8] *Energy Intelligence Group, Inc. v. Kanye Anderson Capital Advisors, LP*, 2017 WL 363004, *2 (S.D. Tex. 2017) (daily newsletter satisfied statutory definition test because it was "created by selecting and arranging existing articles into a single work that [was] then distributed to subscribers"; fact that newsletter were part of "an annual subscription [was] merely a byproduct of the repeated creation of individual issues"); *Kennedy v. Gish, Sherwood & Friends*, 143 F.Supp.3d 898, 915 (E.D. Mo. 2015) (photos did not satisfy statutory definition test because plaintiff licensed them "individually; he does not license his website or photographs on his website as a whole"); *cf. Grady,* 2014 WL 7143852, *8 ("Plaintiff offer[ed] viewing access to photographs and videos on an individual basis to members of his website").

that works may have "independent economic value *if* issued separately (and therefore potentially constitute separate 'works')" the works are still a compilation if "***in fact***" they were not issued separately (original emphasis).[9]

Therefore, there is no dispute that the individual Subject Photographs do not have independent economic value.

### C. The Manner of Registration Factor Further Supports That Vogts is Entitled to Only Three Statutory Damages Awards

Vogts does not meaningfully dispute that he registered the Subject Photographs in the same way he exploited them: in groups based on the date they were created and the property depicted in the Subject Photographs. Dkt. No. 57-7, ¶¶ 1-7, 9-15, 17-23; Motion, pp. 12:16-13:11 (discussing *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1277 (11th Cir. 2015) and how Subject Photographs were registered in an identical manner the plaintiff in that case).

Vogts' attempt to distinguish *Yellow Pages Photos* fails. Opp., p. 7-19. First, Vogts attempts to minimize the decision, but *VHT I* cited and quoted *Yellow Pages Photos* for the proposition that the manner of registration is probative of whether the Subject Photographs constitute as three compilations for purposes of statutory damages. *See VHT I*, 918 F.3d at 748 (*citing Yellow Pages Photos*, 795 F.3d at 1277). Second, without any citation, Vogts argues that the *Yellow Pages* plaintiff registered the works as "collections" – but *Yellow Pages Photos* explains that the plaintiff utilized "group registration of published photographs" (*i.e.*, the same type of registration at issue here) whose "requirements reinforce the conclusion" that the Subject Photographs "are collective works." 795 F.3d 1279-80. Third, Vogts inverts

---

[9] Vogts also misrepresents *VHT II* analogizing the photographs in dispute with the television episodes in *Twin Peaks*. In *VHT II.*, the court noted that "VHT licenses its images on a per-image or per-property basis" (*i.e.*, separately). 461 F.Supp.3d at 1045. As discussed in Section, II.A., *Twin Peaks* involved television episodes that were issued separately on a weekly basis. *See also Twin Peaks*, 966 F.2d at 1381. As to independent economic value, *VHT II* stated that: "to the extent the images' independent economic value remains a factor … the court concludes ***based on the jury's findings***, that this factor weighs against finding of a 'compilation.'" *VHT II*, 461 F.Supp.3d at 1045 (emphasis added).

the analysis from *Yellow Pages Photos* by arguing the plaintiff in that case used registration labels made explicitly for customer appeal. As explained in the Motion, the opposite is true: that just like in *Yellow Pages Photos*, Vogts titled, grouped and registered the individual Subject Photographs in the same manner as he exploited them: by the property depicted in the Subject Photographs. Motion, p. 12:20-23 (*quoting Yellow Pages Photos*, 795 F.3d at 1277. Finally, Vogts confuses pleadings with copyright registrations by arguing that, in *Yellow Pages Photos*, the plaintiff pled that the works were collections and Vogts pled them as individual photographs.

Unable to distinguish *Yellow Pages Photos*, Vogts makes a series of easily refuted arguments. First, Vogts' own citations demonstrate that group registrations do ***not automatically*** result in individual statutory damage awards for each of the Subject Photographs; rather "[c]opyright owners who use a group registration option ***may*** be entitled to claim a separate award of statutory damages for ***each work*** that is covered by the registration" (such as a compilation of photographs depicting a particular property).[10] Second, Vogts cites to the Compendium of U.S. Copyright Office Practices ("Compendium") but fails to point out to the court that the Compendium he cites became effective ***after*** Vogts secured registration for the Subject Photographs.[11] Unlike the current Compendium, the Compendium in place at the time he registered the works was *silent* on the number of statutory damages for group registrations.[12] Since the "Compendium is a non-binding administrative

---

[10] Opp., pp. 16:16-20, 17:11-2 (emphasis added) (*quoting Energy Intelligence Group, Inc. v. CHS McPherson Refinery, Inc.*, 300 F.Supp.3d 1356, 1369-71 (D. Kan. 2018); Compendium (Third) § 1105.4.

[11] The Subject Photographs were registered on July 6, 2020, October 12, 2020 and January 7, 2021, while the 2021 version of the Compendium became effective on January 28, 2021. *See* Dkt. No. 43-3, ¶¶, ¶¶ 5, 7-8; Dkt. No. 43-7; Dkt. Nos. 43-9-10; U.S. Copyright Office, "Compendium of U.S. Copyright Office Practices" *available at*: https://www.copyright.gov/comp3/.

[12] U.S. Copyright Office, "Compendium of U.S. Copyright Office Practices, Third Edition" (December 22, 2014), §§ 1116-1116.7 (discussing group registrations for published photographs), *available at*: https://www.copyright.gov/comp3/docs/compendium-12-22-14.pdf

1  manual," this Court should follow it "only to the extent it has the power to
2  persuade." *Georgia v. Public.Resource.Org, Inc.*, 140 S.Ct. 1498, 1510 (2020).
3  When, as here, the Compendium is contrary to the statute or case law, "the
4  Compendium [is] unpersuasive." *Id.* Third, the cases cited by Vogts for support in
5  Section IV.D of the Opposition: (1) involved works that were issued separately;[13] or
6  (2) addressed the validity of registration, whether the registration was untimely for
7  purposes of statutory damages or the existence of willful infringement – and not the
8  existence of a compilation for purposes of statutory damages.[14]

9  Therefore, there is no dispute that the manner in which Vogts registered the
10 Subject Photographs supports a finding that they constitute three compilations for
11 purposes of statutory damages.

12 **V.   CONCLUSION**

13 Therefore, for the reasons set forth above and in the Motion and this Reply
14 Brief, the PMC Defendants respectfully request that this Court grant their Motion
15 and enter partial summary judgment that – in the event that the PMC Defendants
16 engaged in copyright infringement (which they strongly deny based on the doctrine
17 of fair use) – Vogts is only entitled to three statutory damages awards because the
18 Subject Photographs constitute three compilations for purposes of statutory damages.

19 Dated: March 30, 2023                    **Law Offices of Lincoln Bandlow**

21                                          By: _____
22                                               LINCOLN D. BANDLOW
                                                 ROM BAR-NISSIM
23                                               Attorneys for the PMC
                                                 Defendants

---

[13] *See CHS*, 300 F.Supp.3d at 1370 (group registration included "daily issues" and "weekly issues" of newsletters); *see* Sections IV.A-B, *supra*, (discussing *Gamma Audio, VHT I and VHT II*); Footnote 8, *supra*, (discussing *Grady*).

[14] *See Krist v. Scholastic, Inc.*, 415 F.Supp.3d 514, 536-37 (E.D. Penn. 2019); *Jose Luis Palaez, Inc. v. McGraw-Hill Global Education Holdings*, 399 F.Supp.3d 120, 130-35, 148-60 (S.D.N.Y. 2019); *Kashi v. McGraw-Hill Global Education Holdings*, 2018 WL 5262733, *1, 7-8 (E.D. Penn. Oct. 23, 2018); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing*, 747 F.3d 673, 686 (9th Cir. 2014).