| | |
|---|---|
| 1 | Lincoln D. Bandlow (SBN: 170449) |
| | Lincoln@BandlowLaw.com |
| 2 | Rom Bar-Nissim (SBN: 293356) |
| | Rom@BandlowLaw.com |
| 3 | **Law Offices of Lincoln Bandlow, P.C.** |
| | 1801 Century Park East, Suite 2400 |
| 4 | Los Angeles, CA 90067 |
| | Telephone: 310.556.9680 |
| 5 | Facsimile: 310.861.5550 |
| 6 | Attorneys for Defendants |
| 7 | Penske Media Corporation and Dirt.com, LLC |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRANDON VOGTS, an individual, | Case No.: 2:22-cv-01153-FWS-PVC |
| Plaintiff, | **THE PMC DEFENDANTS' SUR-REPLY IN SUPPORT OF THEIR CONSOLIDATED MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| PENSKE MEDIA CORPORATION, a Delaware Corporation; DIRT.COM, LLC, a Delaware Limited Liability Company; MOVE, INC., a Delaware Corporation, d/b/a Realtor.com; and DOES 1 through 10, | |
| Defendants. | Assigned to: Hon. Fred W. Slaughter |
| | Date:  May 4, 2023 |
| | Time: 10:00 a.m. |
| | Courtroom: 10D |

## TABLE OF CONTENTS

I.    INTRODUCTION…………………………………………………………1

II.   LEGAL ARGUMENT ….………………….....……………………1

    A. Vogts Fails to Refute the First Factor Favors Fair Use…………….1

    B. Vogts Fails to Refute the Second Factor Favors Fair Use................5

    C. Vogts Fails to Refute the Third Factor Favors Fair Use…………...5

    D. Vogts Fails to Refute the Fourth Factor Favors Fair Use……..…..7

III.  CONCLUSION …………………………………………………...10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Authors Guild v. HathiTrust*,
  755 F.3d 87 (2d. Cir. 2014) ............................................................................... 10

*BackGird USA, Inc. v. Haute Living, Inc.*,
  2023 WL 2347082 (C.D. Cal. Jan 6, 2023) ..................................................... 1, 7

*Barcroft Media, Ltd. v. Coed Media Group*,
  297 F.Supp.3d 339 (S.D.N.Y. 2017) ................................................................ 2, 4

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d Cir. 2006) .............................................................................. 1, 3

*Bouchat v. Baltimore Ravens Ltd. P'ship*,
  619 F.3d 301 (4th Cir. 2010) ................................................................................ 4

*Brammer v. Violent Hues Prods., LLC*,
  922 F.3d 255 (4th Cir. 2019) ......................................................................*passim*

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
  196 F.Supp.3d 395 (S.D.N.Y. 2016) ..................................................................... 1

*Cambridge Univ. Press v. Becker*,
  2010 WL 11507617 (N.D. Ga. Sept. 30, 2010) .................................................... 4

*Campbell v. Acuff-Rose, Inc.*,
  510 U.S. 569 (1994) ..................................................................................... 4, 5, 7

*Cariou v. Prince*,
  714 F.3d 694 (2d Cir. 2014) .................................................................................. 5

*Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998) .............................................................................. 8, 9

*Dr. Suess Enterprises, L.P. v. Penguin Books USA, Inc.*,
  109 F.3d 1394 (9th Cir. 1997) ............................................................................ 10

*Dr. Suess Enters., L.P. v. ComicMix, LLC*,
  983 F.3d 443 (9th Cir. 2020) ....................................................................... 6, 7, 8

*Elvis Presley Enters., Inc. v. Passport Video*,
   349 F.3d 622 ............................................................................................... 1, 3, 4

*Fioranelli v. CBS Broad., Inc.*,
   551 F.Supp.3d 199 (S.D.N.Y. 2021) ............................................................. 1, 3

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) ............................................................................ 10

*Golden v. Michael Grecco Prods., Inc.*,
   524 F.Supp.3d 52 (E.D.N.Y. 2021) ................................................................ 1, 9

*Google, LLC v. Oracle America, Inc.*,
   141 S.Ct. 1183 (2021) .................................................................................. 5, 10

*Hosseinzadeh v. Klein*,
   276 F.Supp.3d (S.D.N.Y. 2017) ........................................................................ 6

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*,
   608 F.Supp.3d 868 (N.D. Cal. 2022) ................................................................ 6

*L.A. News Service v. KCAL-TV 9*,
   108 F.3d 1119 (9th Cir. 1997) ........................................................................... 2

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) ............................................................................. 7

*Leibovitz v. Paramount Pictures Corp.*,
   137 F.3d 109 (2d Cir. 1998) .............................................................................. 5

*McGucken v. Newsweek, LLC*,
   464 F.Supp.3d 594 (S.D.N.Y. 2020) ................................................................. 4

*McGucken v. Pub. Ocean Ltd.*,
   42 F.4th 1149 (9th Cir. 2022) ................................................................... *passim*

*Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co.*,
   900 F.Supp. 1287 (C.D. Cal. 1995) ................................................................. 10

*Michael Grecco Prods., Inc. v. Livingly Media, Inc.*,
   2021 WL 2546759 (C.D. Cal. Apr. 16, 2021) .................................................... 8

*Michael Grecco Prods., Inc. v. Valuewalk, LLC*,
   345 F.Supp.3d 482 (S.D.N.Y. 2018) .............................................................. 1, 3

*Monge v. Maya Magazines, Inc.*,
    688 F.3d 1164 (9th Cir. 2012) .................................................................... 4, 6, 7

*National Fire Protection Association, Inc. v. UpCodes, Inc.*,
    2021 WL 4913276 (C.D. Cal. Aug. 9, 2021) ..................................................... 10

*Nunez v. Caribbean Inter. News Corp.*,
    235 F.3d 18 (1st Cir. 2000) ................................................................................ 6

*Otto v. Hearst Comm., Inc.*,
    345 F.Supp.3d 412 (S.D.N.Y. 2018) ...................................................... 2, 4, 8, 9

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ............................................................................ 1

*Religious Tech. Center v. Netcom On-Line Comm. Servs., Inc.*,
    923 F.Supp. 1231 (N.D. Cal. 1995) ................................................................. 10

*Ringgold v. Black Entm't Television, Inc.*,
    126 F.3d 70 (2d Cir. 1997) ............................................................................ 8, 9

*Rogers v. Koons*,
    960 F.2d 301 (2d Cir. 1992) .............................................................................. 5

*Sandoval v. New Line Cinema Corp.*,
    973 F.Supp. 409 (S.D.N.Y. 1997) ..................................................................... 4

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013) .................................................................. 5, 7, 8

*Sony Corp. of Am. V. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) .......................................................................................... 7

*Swatch Grp. Mngmt. Serv., Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014) ........................................................................ 1, 3, 5

*Tresona Multimedia, LLC v. Burbank High School Vocal Music
    Assoc.*,
    953 F.3d 638 (9th Cir. 2020) ............................................................................. 5

*Van Asdale v. Intern. Game Tech.*,
    577 F.3d 989 (9th Cir. 2009) ............................................................................. 1

# REPLY BRIEF

## I. INTRODUCTION

Vogts' Reply Brief (Dkt. No. 61) demonstrates that each fair use factor favors the PMC Defendants. Vogts misrepresents his legal citations – the majority of which support the PMC Defendants. Vogts' attempt to manufacture purported (but not actual) factual disputes through mischaracterizations of cited evidence does not change the conclusion that the PMC Defendants' Cross-Motion should be granted or, at a minimum, Vogts' Motion should be denied.[1]

## II. LEGAL ARGUMENT

### A. Vogts Fails to Refute the First Factor Favors Fair Use

In the Cross-Motion, the PMC Defendants showed that the cases cited by Vogts demonstrate that a secondary use is transformative when used for a purpose that is different from the purpose for which the works were created. Dkt. 62, pp. 15:14-16:2, 18 & fns. 3 & 5 (citing cases). Vogts' Reply Brief is no different.[2]

---

[1] *See* Dkt. No. 62, Section III (discussing what is a "material fact" and a "genuine" factual issue); *Van Asdale v. Intern. Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009) (sham affidavit doctrine applies only to "clear and unambiguous" contradictions and not to "elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition"); *BackGird USA, Inc. v. Haute Living, Inc.*, 2023 WL 2347082, *1-2 (C.D. Cal. Jan 6, 2023) (discussing the general impropriety of evidentiary objections on summary judgment).

[2] *See Michael Grecco Prods., Inc. v. Valuewalk, LLC* ("*Valuewalk*"), 345 F.Supp.3d 482, 506 (S.D.N.Y. 2018) (secondary use transformative when its purpose is "separate and distinct from the original artistic and promotional purpose for which the images were created") (*quoting Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006)); *Fioranelli v. CBS Broad., Inc.*, 551 F.Supp.3d 199, 234 (S.D.N.Y. 2021) ("use [is] transformative where 'the two works have different messages and purposes'" and not used "for the exact reason it was created") (*quoting Swatch Grp. Mngmt. Serv., Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d Cir. 2014));); *Golden v. Michael Grecco Prods., Inc.*, 524 F.Supp.3d 52, 61 (E.D.N.Y. 2021) (not fair if used "for the precise reason [a work] was created") (*quoting BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F.Supp.3d 395, 407 (S.D.N.Y. 2016)); *Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255, 263 (4th Cir. 2019) ("even a wholesale reproduction may be transformed when placed in a 'new context to serve a different purpose' [and] imbuing the original with new function or meaning") (*quoting Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007); *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003 (use is "'transformative' when the works use copyrighted material for purposes (continued).

1  Here, there is no genuine dispute that Vogts' purpose for creating the Subject
2  Photographs is starkly different from the PMC Defendants' purpose for using the
3  Subject Photographs. Real estate agents hired Vogts to take the Subject Photographs
4  to facilitate the sale of the Three Properties, while the PMC Defendants used the
5  Subject Photographs in news articles reporting and commenting on the public figures
6  that bought/sold the Three Properties depicted in the Subject Photographs. Dkt. No.
7  61-1, ¶¶ 100-107, 119, 123, 126, 136, 140, 143-151, 155.

8  Nor is there a dispute that the PMC Defendants provided new information,
9  insights and meaning to the Subject Photographs. Vogts did not know the identity of
10 the buyers/sellers of the Three Properties shown in the Subject Photographs when he
11 took them and those identities were not disclosed in the Subject Photographs or their
12 real estate listings. Dkt. No. 61-1, ¶¶ 121-122, 128-129, 138-139, 163, 173, 184; *see*
13 *also Id.*, ¶¶ 108, 146-147. The PMC Defendants transformed these anonymous
14 Subject Photographs into a unique (and otherwise unavailable) insight into the
15 lifestyles of the public figures that bought/sold the Three Properties shown in the
16 Subject Photographs and commented on the public figures and their properties.[3] Dkt.
17 No. 61-1, ¶¶ 164, 166-167, 174, 176-177, 185, 187-188; *see also* Dkt. No. 61, p.
18 4:14-15 (gallery titled "**Look Around Chris O'Dowd's L.A. Bungalow**").

distinct from the purpose of the original material"); *see also* Dkt. 62, p. 16 fn. 3 (*quoting L.A. News Service v. KCAL-TV 9,* 108 F.3d 1119, 1120-21 (9th Cir. 1997); *Barcroft Media, Ltd. v. Coed Media Group*, 297 F.Supp.3d 339, 346 & 351 (S.D.N.Y. 2017)); *Id.*, p. 18 fn. 5 (*quoting McGucken v. Pub. Ocean Ltd.*, 42 F.4th 1149, 1158 (9th Cir. 2022); *L.A. News Service*, 108 F.3d at 1122; *Otto v. Hearst Comm., Inc.*, 345 F.Supp.3d 412, 428-29 (S.D.N.Y. 2018)).

[3] Vogts misrepresents *Brammer* to argue that providing "information" on the public figures who bought/sold the Three Properties depicted in the Subject Photographs cannot be transformative. In *Brammer*, the defendant used the plaintiff's photo of the Adams Morgan neighborhood to promote the neighborhood as a tourist attraction located near a film festival. 922 F.3d at 261. The photograph was only accompanied by the caption "Adams Morgan, D.C." and no other commentary. *Id.* The Fourth Circuit found the use was not transformative because it was only used to provide "film festival attendees with 'information' regarding Adams Morgan" and "to depict Adams Morgan." *Id.* at 264. *Brammer* did not involve providing **new information** about a photograph that was unknown to the photographer when created or that was accompanied by substantial text providing commentary and critique.

Vogts argues that the PMC Defendants had to comment, critique or report directly on the Subject Photographs or Vogts for their use to be transformative (Dkt. No. 61, pp. 4:20-6:5) but Vogts' own citations refute this assertion: "commentary or criticism is not the *sine qua non* to render a use transformative where," as here, "the two works have different messages and purposes." *Fioranelli*, 551 F.Supp.3d at 234 (*quoting Swatch*, 756 F.3d at 85); *Valuewalk*, 345 F.Supp.3d at 505 (transformative use places a work in "a context different from that in which it was displayed"); *see also Swatch,* 756 F.3d at 84 (recording posted to news website with "no additional commentary or analysis" was transformative: "secondary work can be transformative in function or purpose without altering or actually adding to the original work").

Vogts misrepresents *Bill Graham* as involving commentary on the works themselves. Dkt. No. 61, pp. 5:24-6:5. In *Bill Graham*, the appellant argued that "merely placing poster images along a timeline is not a transformative" and "each reproduced image should have been accompanied by comment or criticism related to the artistic nature of the image." 488 F.3d at 609. The Second Circuit called this a "limited interpretation of fair use." *Id.* Rather, the use was transformative, because the original posters were intended to promote concerts – while the book used the "images as historical artifacts to document and represent the actual occurrence of Grateful Dead concert events featured [in the book's] timeline." *Id.*

Nor has Vogts demonstrated that the PMC Defendants used the Subject Photographs "simply to illustrate what that work already depicts" – *i.e.*, "freeriding on the inherent value of the original." *McGucken*, 42 F.4th at 1158[4] (*citing Elvis*, 394

---

[4] *McGucken* involved use of plaintiff's photos of an ephemeral lake in an article about the lake, how it was formed and other topics like deserts and other phenomena in nature. 42 F.4th at 1155-56, 1160. The "photos appear[ed] prominently in the article's visual layout" and "dwarf[ed] the text" – which made article appear as "a series of photos with the text broken up into tiny captions underneath." *Id.* at 1156. Critically, the article did "not contain captions that ***directly describe or engage with the photos***," but rather "use[d] the photos as visual 'filler'" and exploited "the beauty and intrigue of [plaintiff's] photos … without adding anything new." *Id.* at 1158-59 (emphasis added). The Ninth Circuit found the use was not transformative because the "article did not present [the plaintiff's] photos in a new or different light" but "for exactly the purpose for which they were taken: to depict the lake." *Id.* at 1158.

F.3d at 629);[5] *see also* Dkt. No. 62, p. 10 fn. 5 (quoting cases). Indeed, Vogts' own citations to the depositions of Messrs. Voss and McClain show that the Articles "commented" on the public figures' "homes" – and the Subject Photographs provided context for what was "talked about in the article."[6] Indeed, the Articles did not "only recit[e] factual information-much of which can be gleaned from the photograph itself" or involve sparse "token commentary."[7] *Otto*, 345 F.Supp.3d at 428; *McGucken v. Newsweek, LLC*, 464 F.Supp.3d 594, 606 (S.D.N.Y. 2020).

In sum, there is no genuine dispute that the PMC Defendants' use of the Subject Photographs was transformative and, therefore, "the less will be the significance of the other factors."[8] Dkt. No. 61, p. 15:4-6 (*quoting Campbell v. Acuff-Rose, Inc.*, 510 U.S. 569, 579 (1994).

---

[5] *Elvis* involved the use of 10 to 30 second clips (and one over a minute) of Elvis's television performances in a documentary about Elvis. 349 F.3d at 625. Describing the "first factor [as] a close issue," the Ninth Circuit found some uses were "transformative because they [were] cited as historical reference points in the life of a remarkable entertainer," but others were "used in excess of this benign purpose, and instead are simply rebroadcast for entertainment purposes" – even "advertis[ing] as much on its external packaging." *Id.* at 629.

[6] Dkt. No. 61, pp. 3:18-4:10. Vogts' counsel did not ask about the nature of the commentary or how the Subject Photographs served that purpose. *See* Fn. 1.

[7] *See e.g.*, *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1169, 1173-76 (9th Cir. 2012) (gossip magazine did not transform unpublished wedding photographs through use of headline and brief captions); *Barcroft Media,* 297 F.Supp.3d at 353 ("the text appended to the Images were the words 'Daily Dump,' [which] added no meaning or information to the images themselves and imbued the originals with no new creative or expressive purpose.") Fns. 3-4, *supra*, (discussing *McGucken* and *Brammer*)

[8] Vogts argues each use by the PMC Defendants must be argued separately. Dkt. No., 44, p. 11: fn. 3 (*citing Sandoval v. New Line Cinema Corp.*, 973 F.Supp. 409, 412 (S.D.N.Y. 1997); *Elvis*, 349 F.3d at 629; *Cambridge Univ. Press v. Becker*, 2010 WL 11507617, at *13 (N.D. Ga. Sept. 30, 2010)). The PMC Defendants did not address this point due to Vogts himself not analyzing each use separately, space concerns and that the cases he cited involved analyzing the single uses of multiple works – not the same works used multiple times. Vogts resurrects this argument, despite still failing to analyze each use separately. Dkt. No. 61, Section II (*citing Bouchat v. Baltimore Ravens Ltd. P'ship*, 619 F.3d 301, 308, 313 (4th Cir. 2010)). *Bouchat* contradicts Vogts assertion, as it collectively examined multiple similar and related uses of the same work and not separately. 619 F.3d at 308-13. Since the other uses were directly related to the Articles and involved similar use, the PMC Defendants' arguments apply to all uses of the Subject Photographs.

### B. Vogts Fails to Refute the Second Factor Favors Fair Use

Vogts does not dispute that the second fair use factor "typically has not been terribly significant in the overall fair use balancing" – particularly when the use is transformative. Dkt. No. 62, p. 19:10-12 & fn. 6 (quoting cases). Nor does Vogts meaningfully dispute that the Subject Photographs have "limited, if any, creative elements – as Vogts did not stage the Subject Photographs and simply shot the Three Properties in their original state." Dkt. No. 62, p. 7-10; Dkt. No. 61-1, ¶¶ 109-110, 119, 126, 136. Instead, Vogts argues that the Subject Photographs are highly creative as a matter of law – but his citation is to a discussion on copyrightable subject matter and not the extent of creativity for this factor. *Id*. 61, p. 8:1-7 (*citing Rogers v. Koons*, 960 F.2d 301, 307-08 (2d Cir. 1992)). Further, Vogts assertion that the published status of Subject Photographs does not favor fair use is patently false. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013) ("Published works are more likely to qualify as fair use"). Therefore, there is no genuine dispute of material fact that the second fair use factor favors fair use.

### C. Vogts Fails to Refute the Third Factor Favors Fair Use

In the Cross-Motion, the PMC Defendants explained that, under the third factor, (1) the focus is not on whether "no more than necessary" of the underlying work was used but on whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole are *reasonable* in relation to the purpose of the copying"; (2) the amount is reasonable if it is "central to the copier's valid purpose"; (3) the substantiality is reasonable when "tethered to a valid transformative" use; and (4) "entire verbatim reproductions are justifiable where the purpose of the work differs enough from the original."[9] Despite quoting the Supreme

---

[9] Dkt. No. 62, p. 19:15-20:13 (*quoting Mattel*, 353 F.3d at 792 fn. 8, 803 & 805; *Campbell*, 510 U.S. at 586-87; *Google, LLC v. Oracle America, Inc.*, 141 S.Ct. 1183, 1205 (2021); *Cariou v. Prince*, 714 F.3d 694, 710 (2d Cir. 2014); *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 114 (2d Cir. 1998); *Swatch*, 756 F.3d at 84; *see also Tresona Multimedia, LLC v. Burbank High School Vocal Music Assoc.*, 953 F.3d 638, 650 (9th Cir. 2020) (employing the "reasonable" standard).

Court and Ninth and Second Circuits, Vogts argues that the Ninth Circuit modified the test to "necessity" and not "reasonableness." Dkt. No. 61, pp. 7:27-8:9 (*citing McGucken*, 42 F.4th at 1162; *Monge*, 688 F.3d at 1179). These authorities did not (and cannot) abrogate the "reasonableness" standard because to take "***far more*** than necessary" (as opposed to merely "more than necessary") is, by definition, unreasonable. Further, *McGucken* and *Monge* involved uses that were minimally (or not at all) transformative – *i.e.*, any amount used would be unreasonable considering little to no transformative use. *See McGucken*, 42 F.4th at 1161-52; *Monge*, 688 F.3d at 1176, 1178-79; *see also Brammer*, 922 F.3d at 268 ("use was not transformative" and, therefore, taking half of the work "was not justified").[10]

Applying the incorrect standard and operating under the false assumption that the use was not transformative, Vogts argues that the amount the PMC Defendants used was unnecessary because: (1) the Articles still receive views without the Subject Photographs; and (2) the PMC Defendants could have provided links to the real estate listings. Dkt. No. 61, p. 7:16-26. Whether the Articles still receive views after the Subject Photographs were taken down does not demonstrate the PMC Defendants' use of the Subject Photographs was unreasonable. Indeed, Vogts fails to refute that the Articles "lose context and utility" without (or by using less of) the Subject Photographs and make it "much more difficult to explain" the PMC Defendants' commentary and critique on the lifestyles of the public figures that bought/sold the Three Properties and the Three Properties themselves.[11] Further, if

---

[10] Vogts misleadingly quotes *Brammer* as if it was from the section discussing the third fair use factor – when it was discussing the first factor. Dkt. No. 61, p. 8:21-24 (*quoting Brammer*, 922 F.3d at 264-65).

[11] Dkt. No. 62, p. 20, fn. 7 (*quoting Hosseinzadeh v. Klein*, 276 F.Supp.3d at 34, 46 (S.D.N.Y. 2017); *Nunez v. Caribbean Inter. News Corp.*, 235 F.3d 18, 22 (1st Cir. 2000); Dkt. No. 61-1, ¶¶ 167-168, 177-178, 188-189. Vogts appears to argue that the Articles would not lose any context and utility without the Subject Photographs because each uses a different number of them. Dkt. No. 61, p. 8:10-24. This argument is contrary to the law. The "inquiry under this factor is a flexible one, rather than a simple determination of the percentage of the copyrighted work used." *Dr. Suess Enters., L.P. v. ComicMix, LLC*, 983 F.3d 443, 456 (9th Cir. 2020) (continued).

1  the real estate listings were linked to the Articles, it would result in doxing (*i.e.*,

2  publicly revealing non-public information) the addresses of the public figures and

3  could result in harm and harassment. Therefore, this factor favors fair use.

### D. <u>Vogts Fails to Refute the Fourth Factor Favors Fair Use</u>

As a threshold matter, Vogts does not dispute that, when a secondary use is transformative, "the allegedly infringing use does not substitute for the original" because it "serves a different market function" – which "weighs in favor of fair use."[12] Dkt. No. 62, p. 21:11-14 (*quoting McGucken*, 42 F.4th at 1163; *Seltzer*, 725 F.3d at 1179; *Campbell*, 510 U.S. at 591). Nor does Vogts dispute that he took the Subject Photographs to facilitate the sale of the Three Properties, while the PMC Defendants used the Subject Photographs to provide commentary on the public figures associated with the Three Properties (usually after they were sold). *See* Section, II.A., *supra.* This alone shows the fourth factor favors the PMC Defendants.

Nor does Vogts meaningfully dispute that: (1) he does not attempt to license his photographs of celebrity owned properties to the media because doing so may be inconsistent with his real estate agent clients' objectives; (2) he has not subsequently licensed his photographs of properties that were commissioned by real estate agents; (*quoting Monge*, 688 F.3d at 1179); *see also* Dkt. No. 62, p. 20:2-5 ("the extent of permissible copying varies with the purpose and character of the use") (*quoting Mattel*, 353 F.3d at 803; *Campbell*, 510 U.S. at 586-87). Additionally, despite quoting *Seltzer* that the Subject Photographs were not "further divisible," Vogts claims the PMC Defendants "fail to explain what they mean by the term 'further divisible.'" Dkt. No., p. 8 fn. 6. As *Seltzer* explained, certain works are divisible – such as audiovisual works or a book manuscript – while others are not, such as visual art and photographs. 725 F.3d at 1178; *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F.Supp.3d 868, 880-81 (N.D. Cal. 2022).

---

[12] Vogts fails to refute that, in 2020, the Ninth Circuit held there is no presumption of harm for commercial uses. Dkt. No. 62, p. 22:3-7 (*quoting Dr. Suess*, 983 F.3d at 459; *Monge*, 688 F.3d at 1181). Instead, Vogts cites this Court's opinion in *BackGrid* but omits its reliance on prior decisions for this proposition. 2023 WL, 2347082, * 9 (*quoting Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 531 (9th Cir. 2008) and *Sony Corp. of Am. V. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)). In *Monge*, the Ninth Circuit held that *Campbell* "debunked the notion that *Sony* called for a 'hard evidentiary presumption' that commercial use is presumptively unfair." *Monge*, 688 F.3d at 1172 (*quoting Campbell*, 510 U.S. at 584).

and (3) he did not lose licensing opportunities from the PMC Defendants' use.[13] As such, there can be no market harm because this is "a case where the copyist's work fills a market that the copyright owner will likely avoid" and the fourth factor only examines "traditional, reasonable, or likely to be developed markets." *Dr. Suess*, 983 F.3d at 460; *Seltzer*, 725 F.3d at 1179; Fn. 12.

Vogts argues that market harm can be established even in the absence of licensing or attempts at licensing. Dkt. No. 61, p. 10:10-22 (*citing Michael Grecco Prods., Inc. v. Livingly Media, Inc.* ("*Livingly*"), 2021 WL 2546759, at *11 (C.D. Cal. Apr. 16, 2021). *Livingly*, however, involved evidence that the plaintiff attempted to license the four photographs at issue through plaintiff's website and Getty (and successfully licensed two of them). *Id.* Vogts, however, fails to meaningfully dispute he did not make any attempt to subsequently license the Subject Photographs (in general) and for media uses (in particular). Dkt. No. 61-1, ¶¶ 114-118, 125, 132, 142; Dkt. No. 60-1, ¶¶ 70-74. Vogts' failure means this factor weighs decisively in the PMC Defendants' favor because Vogts had "no intention of entering the market, or was unable to take advantage of use in that manner." *Otto*, 345 F.Supp.3d at 432.[14]

Vogts' continued reliance on the two instances in 2014 and 2016 where he

---

[13] Vogts wrongly argues he is under no requirement to present lost licensing opportunities. Dkt. No. 61, p. 11:1-7 (*citing Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 81 (2d Cir. 1997); *Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 136, 144-46 (2d Cir. 1998)). In *Ringgold*, the Second Circuit "recognized the danger of circularity whether the loss of potential licensing revenue should weigh the fourth factor in favor of plaintiff" and, therefore, "to avoid the vice of circularity … only traditional, reasonable, or likely to be developed markets" should be considered. *Ringgold*, 126 F.3d at 81; *see also Castle Rock*, 150 F.3d at 145 fn. 11 (plaintiffs "may not preempt exploitation of transformative markets, which they would not *'in general* develop or license others to develop,' by actually developing or licensing others to develop those markets") (original emphasis).

[14] Vogts argues he "has the right to *try* to license his photos to media outlets *if he decides to do so*." Dkt. No. 61, p. 11:12-14 (original emphasis) (*citing Otto*, 345 F.Supp.3d at 432-33; *Castle Rock*, 150 F.3d at 145-46). Vogts' citations are inapposite. Unlike Vogts, in *Otto*, plaintiff made concrete attempts to license his work. 345 F.Supp.3d at 432 ("It is clear from Otto's communications with TMZ and Burke the morning after the wedding that he did have an interest in entering the market upon realizing the value of his work"). Unlike here, in *Castle Rock*, the use was not transformative and was a market substitute.150 F.3d at 145; Fn. 13.

authorized media usage for free is misplaced. As Vogts' own citation to *Castle Rock* demonstrates, he "cannot preempt exploitation of transformative markets" by "developing or licensing others to develop those markets." 150 F.3d at 145 fn. 11. Here, the PMC Defendants' use is transformative and, therefore, Vogts' prior media authorizations do not demonstrate market harm.

Further, Vogts' own citations demonstrate, market harm only exists for "traditional, reasonable, or likely to be developed markets." *Ringgold*, 126 F.3d at 81. Vogts does not meaningfully dispute he has no intention of developing a market for the PMC Defendants' use because: (1) the objectives of his real estate client clients are paramount when considering media licensing; (2) in both instances where Vogts authorized media usage in 2014 and 2016, the identity of the celebrity owner of the property was disclosed as part of the real estate agent's marketing strategy for the properties; (3) the real estate agent for both properties wanted media coverage of the real estate listings that included Vogts' photographs as part of the marketing strategy for the properties; (4) the real estate agents for the Three Properties did not disclose the identity of the public figures who bought/sold the Three Properties depicted in the Subject Photographs; (5) Vogts was not credited on the MLS listings and the only way to contact him was via the real estate agents for the Three Properties; and (6) it was unlikely the real estate agents for the Three Properties would approve the PMC Defendants' use because disclosing the identities of the public figures involved with those properties was not part of their marketing strategy and the PMC Defendants used the Subject Photographs for social commentary and critique of their clients and the Three Properties.[15] Dkt. Not. 61-1, ¶¶ 106-107, 116-119, 123, 126, 130, 135-136, 140, 143-151, 161-164, 171-174, 182-185.

---

[15] This point also forecloses Vogts' argument that the PMC Defendants' use of the Subject Photographs shows there is a secondary market for them and the cases he cites involved non-transformative uses. Dkt. No. 61, p. 11:8-17; *Golden*, 524 F.Supp.3d at 61-62; *Castle Rock*, 150 F.3d at 142-43; *Otto*, 345 F.Supp.3d at 427-29. Additionally, Vogts cites no authority for the proposition that the PMC Defendants licensing practices for different photographs/uses is relevant to market harm to the Subject Photographs. *Compare* Dkt. No. 62, p. 24:1-5 *with Id.* No. 61, p. 9:18-23.

Finally, Vogts persists in arguing that failure to credit constitutes market harm for the fourth factor.[16] None of the cases cited by Vogts involved market harm from lack of attribution; rather, they involved harm to "social cachet," "goodwill and reputation" or market supplantation from a non-transformative use. As the Cross-Motion explained, subsequent authority states that the fourth factor only examines "economic injury" resulting from "market substit[ution]" (*i.e.*, "the amount … of the loss") – and copyright does not protect against "damages that are **unrelated** to the value and marketability" of the works, such as damage to "**reputation**."[17] Nor does Vogts dispute that failure to credit as a form of market harm is confined to "the ***unusual setting of academia***" because, in that particular context, "a defendant can profit personally from copying ***despite the lack of a monetary gain***." Dkt. No. 62, p. 24 fn. 10 (emphasis added) (*quoting Religious Tech. Center v. Netcom On-Line Comm. Servs., Inc.*, 923 F.Supp. 1231, 1244 (N.D. Cal. 1995). Therefore, there is no genuine dispute that fourth factor weighs heavily in the PMC Defendants' favor.

### III. CONCLUSION

For these reasons, the PMC Defendants respectfully request this Court to grant their Cross-Motion or, alternatively, deny Vogts' Motion.

Dated: April 6, 2023

**Law Offices of Lincoln Bandlow**

By _____

LINCOLN D. BANDLOW
ROM BAR-NISSIM
Attorneys for Defendants
Penske Media Corporation and
Dirt.com, LLC

---

[16] Dkt. No. 11:18-12:7 (*citing Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co.*, 900 F.Supp. 1287, 1300-01 (C.D. Cal. 1995); *Dr. Suess Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997); *Brammer*, 922 F.3d at 268).

[17] Dkt. No. 62, p. 24:6-15 & fn. 11 (*quoting National Fire Protection Association, Inc. v. UpCodes, Inc.*, 2021 WL 4913276, *7 (C.D. Cal. Aug. 9, 2021); *Authors Guild v. HathiTrust*, 755 F.3d 87, 99 (2d. Cir. 2014); *Google*, 141 S.Ct. at 1206; *Garcia v. Google, Inc.*, 786 F.3d 733, 744-45 (9th Cir. 2015)).