Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON VOGTS,<br><br>Plaintiff,<br><br>v.<br><br>PENSKE MEDIA CORPORATION; DIRT.COM, LLC; et al.,<br><br>Defendants. | Case No. 2:22-cv-01153-FWS-PVC<br><u>Hon. Fred W. Slaughter Presiding</u><br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE ALL TESTIMONY, ARGUMENT, AND EVIDENCE ABOUT THE SUBSTANCE OF OR RELIANCE ON ANY COPYRIGHT POLICIES OR TRAININGS**<br><br>**[[Proposed] Order Submitted Concurrently Herewith]**<br><br>Hearing Date and Final Pretrial Conference: June 15, 2023<br>Time: 10:00 a.m.<br>Courtroom: 10D<br><br>Trial Date: July 11, 2023 |

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on June 15, 2023 at 10:00 a.m. in this Court, or as soon thereafter as this Court is available to hear this Motion, Plaintiff Brandon Vogts will and hereby does move this Court to exclude any argument, questioning, testimony, reference, or other evidence of the substance of, or that the PMC Defendants relied on, any policies or trainings for their employees regarding the clearance or use of third-party copyrighted photos in their articles on the PMC Defendants' Website.

Vogts brings this Motion in Limine No. 2 (the "Motion") on the ground that the PMC Defendants previously claimed in depositions to have no formal written copyright policies and refused to answer questions about any copyright trainings on the purported ground that such information was from attorneys (in-house or otherwise) and thus privileged. They also testified that there were no trainings from anyone other than attorneys at any relevant time. As a result, it would be improper and prejudicial for Defendants to offer testimony at trial about trainings after refusing to provide that information in discovery.

Vogts bases this Motion on this Notice, the accompanying memorandum of points and authorities in support, the record in this case, and argument presented during the hearing for this Motion.

Counsel for Vogts and counsel for Defendants Penske Media Corporation ("PMC") and Dirt.com, LLC ("Dirt") (collectively, the "PMC Defendants") met and conferred regarding this Motion, and the PMC Defendants would not stipulate to Vogts' requested relief.

Respectfully Submitted,

Dated: May 11, 2023         DONIGER / BURROUGHS

By:   /s/ *Stephen M. Doniger*
Stephen M. Doniger, Esq.
Benjamin F. Tookey, Esq.
Attorneys for Plaintiff

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Court should not allow the PMC Defendants to use the attorney-client privilege as a sword and shield with respect to copyright policies and trainings.

PMC is one of the largest digital media and publishing companies in the world. It reaches hundreds of millions of consumers monthly, and owns and publishes more than 20 brands, including *The Hollywood Reporter*, *Variety*, *Billboard*, *Robb Report*, and *Rolling Stone*. It has also entered into sophisticated and high-profile agreements to license its own massive archive of photos, and it has sued third parties for infringing its copyrights in those photos for allegedly using those photos without PMC's authorization on commercial websites. PMC is well aware of the copyright protections afforded to photos, and that awareness is relevant to whether it willfully infringed Vogts' copyrights in Vogts' asserted Subject Photographs.

To establish awareness of copyright law and the protections it provides (which goes to the PMC Defendants' state of mind), Vogts sought, among other things, information from the PMC Defendants regarding their policies, practices, and trainings on rights clearance and use of third-party copyrighted photos in PMC publications (including the PMC Defendants' Website). The PMC Defendants responded that they have no formal written copyright policies; could not recall copyright trainings not communicated by attorneys; and, in depositions, refused to answer anything relating to the content or application of any copyright-related policies, practices, or trainings on the purported ground that such information was only provided by attorneys and thus privileged. Yet, when conferring over this motion, the PMC Defendants' counsel indicated that they now intend to introduce argument, testimony, and evidence related to such trainings at trial. The PMC Defendants should be precluded from doing so, and precluded from suggesting that they in any way acted on the advice of counsel, because the attorney-client

- 3 -
PLAINTIFF'S MOTION IN LIMINE NO. 2

privilege cannot be used as a sword and shield.

## II. ARGUMENT

In discovery, the PMC Defendants claimed that they have no formal written copyright policies, and that anything that relates to the trainings they have in place regarding clearance and use of third-party copyrighted content on the PMC Defendants' Website is privileged because it "came from legal counsel." Yet they now intend to argue and testify to the existence and substance of those trainings. As a matter of fairness, instead of allowing the PMC Defendants to speak out of both sides of their mouths, this Court should hold them to their chosen silence.

It is well settled that "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield." *See, e.g.*, *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (holding that Penzoil placed privileged communications at issue "to the extent that Penzoil claims that its tax position is reasonable because it was based on advice of counsel"); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Courts should, and have the discretion to, preclude a defendant from changing positions "at the eleventh hour" when it previously "refuse[d] to answer questions" on privilege grounds. *See Columbia Pictures Television Inc. v. Krypton Broadcasting*, 259 F.3d 1186, 1196 (9th Cir. 2001) ("'Where a party claiming privilege during discovery wants to testify at the time of trial, the court may ban that party from testifying on the matters claimed to be privileged.'") (internal citations omitted); *Manning v. Buchan*, 357 F. Supp. 2d. 1036, 1048 (N.D. Ill. 2004) ("Ordinarily when a party asserts a privilege to preclude its opponent from obtaining information in discovery, it relinquishes the ability to use that information in its favor at trial."); William A. Schwarzer, et al., *Federal Civil Procedure Before Trial,* ¶ 11:37 at 11–29 (2000).

For example, in *QS Wholesale, Inc. v. World Mktg., Inc.*, No. SACV120451, 2013 WL 12114508, at *6–7 (C.D. Cal. July 9, 2013), a trademark infringement

case where, in deposition, Quiksilver's counsel advised the deponent not to answer any questions relating to willfulness and state of mind on privilege grounds, the court held that "Quiksilver appears to have doubled down on asserting privilege right up until trial, only to decide that a state of mind defense is appropriate," and as a result granted the motion in limine to preclude Quiksilver from doing so. In *Angus v. Transnat'l Auto. Grp., Inc.*, No. CV0900143, 2010 WL 11519490, at *4 (C.D. Cal. Dec. 30, 2010), the court held that "[h]aving allowed Vandeberg to invoke the attorney-client privilege on its behalf during discovery, TAG cannot now waive the privilege and elicit testimony from Vandeberg that plaintiff could not have elicited at his deposition due to his invocation of the privilege at that time." And in *Flo & Eddie, Inc. v. Sirius XM Radio Inc. et al.*, No. 2:13-cv-05693, Dkts. 449, 641 (C.D. Cal. Nov. 8, 2016), in a case involving the unauthorized use of sound recordings, the court barred testimony as to state of mind where a party previously asserted the privilege as to any legal advice that could have contributed to its state of mind. *Citing Bilzerian*, 926 F.2d at 1292; *Kaiser Found. Health Plan, Inc. v. Abbott Labs*., Inc., 552 F.3d 1033, 1042 (9th Cir. 2009); *Chevron*, 974 F.2d 1156 (9th Cir. 1992).[1]

    Those authorities apply with full force here because the PMC Defendants' state of mind is a central issue in this case. The parties have stipulated to the elements of Vogts' prima facie case (*see* Dkt. 42), so the only dispute regarding liability is whether the PMC Defendants made fair use of the Subject Photographs. If they did not, the trier of fact must then decide, for damages purposes, whether

---

[1] *See also, e.g.*, *Siotkas v. Top Jet, LLC*, No. 19-61051, 2021 WL 9939107, at *4–5 (S.D. Fla. May 3, 2021) ("[F]airness mandates the exclusion of any evidence about the advice Defendants received from counsel on this issue since they asserted the privilege during discovery"); *Matsuura v. E.I. du Pont de Nemours & Co.*, No. CV 00-00328, 2006 WL 8436370, at *1–2 (D. Haw. Dec. 27, 2006) (preventing "DuPont from offering testimony on any point on which it refused to answer and asserted a privilege" in response to discovery and deposition questions").

their infringements were innocent, willful, or neither. The PMC Defendants have asserted innocent infringement on the purported ground that they reasonably believed in good faith (i.e., their state of mind) that their unauthorized uses of the Subject Photographs were fair. *See* Dkt. 22 at 9. Vogts has asserted that the PMC Defendants willfully infringed his asserted copyrights.

Infringement is willful when "the defendant was actually aware of the infringing activity" or "the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *See Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017). Infringement is innocent when "the defendant was not aware that [its] acts constituted infringement of the copyright" and "the defendant had no reason to believe that [its] acts constituted an infringement of the copyright." *See* 9th Cir. Model Civ. Jury Instr. No. 17.36 ("Copyright—Damages—Innocent Infringement"). One of the inquiries that is central to the alleged infringer's state of mind is whether or not it had copyright-related policies, and the content and application of such policies (if any). *See, e.g.*:

> Urban adopted a reckless policy with regard to copyright infringement because it made no attempt to check or inquire into whether any of the designs it used in its apparel were subject to copyright protections. . . .
>
> [A] party may act recklessly by refusing, as a matter of policy, to even investigate or attempt to determine whether particular designs are subject to copyright protections.

*Unicolors*, 853 F.3d at 991–92.

Dirt, PMC's wholly owned subsidiary, represented in verified discovery responses that it has no formal written policies regarding clearing rights for the use of photos in its articles on the PMC Defendants' Website. Likewise, Dirt's 30(b)(6) representative testified, on Dirt's behalf, that he did not recall receiving any training when working for PMC regarding what third-party copyrighted content could or could not be used in articles in PMC publications. However, when

PLAINTIFF'S MOTION IN LIMINE NO. 2

asked whether he ever had discussions with anyone at PMC regarding whether or when he had to clear rights to use photos in articles that he published in PMC publications, the PMC Defendants' counsel instructed him not to answer on privilege grounds:

> Q. Did you receive any training when you were working for *Variety* on what you could and couldn't use in articles?
> A. Not specific. I don't recall training specifically about that sort of thing.
> Q. Okay. Do you recall there being any written policies or guidelines at *Variety* about whether and when you had to clear rights to use photographs in an article?
> A. Can you ask that again?
> Q. Sure. Well, let me ask this: Had you ever had a discussion with anyone at *Variety* regarding whether or when you had to clear rights to use photographs in articles that you published on *Variety*?
> MR. BANDLOW: I'll object to the extent that calls for attorney-client communications. If you can only answer that question by revealing --
> MR. DONIGER: Hold on. It's a "yes" or "no" question.
> MR. BANDLOW: Well, yes to X contents, so then that reveals the content that he may have exchanged with counsel.
> MR. DONIGER: Okay.
> MR. BANDLOW: If the answer is yes, it's with counsel. So I'm going to instruct him not to answer as asked.
> MR. DONIGER: Okay.
> MR. BANDLOW: See if you can –
> Q. Are you going to -- the privilege is yours. Are you going to follow your attorney's advice?
> A. Yes.

Doniger Decl. Ex. 1 (at Dirt Dep. 29:23-31:7).

Dirt's 30(b)(6) representative also testified that, other than with attorneys, he never discussed when he had to clear rights to use photos in his articles in PMC publications between 2014-2019, and that Dirt was unaware of any written policies regarding such rights clearance prior to this litigation.

> Q. Between when you were hired at Penske or for *Variety* in 2014 and when the Dirt column split off in 2019, did anyone at Penske or *Variety*, other than attorneys, ever discuss with you when you had to clear rights to use photographs for your articles?
> A. Not that I recall.
> Q. Are you aware of any written policies at *Variety* or Penske that you ever had the opportunity to review that discussed when or whether you had to clear rights to use photographs that were incorporated into the articles that you were writing?
> A. Only recently.
> Q. When is recently?
> A. Within the context of this lawsuit.
> Q. Okay. So prior to this litigation you were not aware of any written policy, you hadn't seen any written policies?
> A. Not that I recall.

Doniger Decl. Ex. 1 (at Dirt Dep. 35:5-23). PMC's 30(b)(6) representative testified similarly:

> Q. Do you know whether Penske has any written guidelines on the use of copyright material in articles that it publishes?
> A. I was – I was informed that it does – that we do not.
> Q. Okay. Does Penske Media Corporation offer any training or instruction to its businesses, to the media sites that it owns, on the use of copyright material in the articles published?
> A. I was informed that our legal counsel does provide training.
> Q. Do you know when it first began offering that training?
> A. I do not.
> Q. Do you know if it offered that training in 2020?
> A. I do not.
> Q. When's the first time that you learned that it – that Penske was providing that training?
> A. That's –
> Q. Is it something you just learned this year or –
> A. As part of the preparation, as part of the information for this deposition.
> Q. Okay. So before your preparation for this deposition just recently you were unaware of any training offered to Penske Media Publications on the use of copyright material in what they publish?
> A. Yes.

Doniger Decl. Ex. 2 (at PMC Dep. 37:25-39:3).

Yet the PMC Defendants have taken the position that "anything that relates to the rules [i.e., policies regarding clearance and use of third-party copyrighted content on the PMC Defendants' Website] is going to be something that came from legal counsel" and is "protected by the attorney-client privilege," and instructed Dirt's 30(b)(6) representative not to answer deposition questions on that basis:

| | |
|---|---|
| Q. | I do understand that -- you said something earlier that suggested to me that now Dirt.com has some rules in place about the use of photographs in articles, that it might not have had in place before. |
| A. | Yes. |
| Q. | Did I understand that correctly? |
| A. | Yes. |
| Q. | What rules does it have in place now? |
| MR. BANDLOW: | I'm going to object on the grounds of attorney-client privilege; also on post-remedial measures basis. So I'll instruct him not to answer that question. |
| MR. DONIGER: | The rules. |
| MR. BANDLOW: | It's irrelevant too. It's irrelevant to anything they did after the claims in this case. |
| MR. DONIGER: | Well, it may or may not be admissible at trial. It doesn't mean it's not discoverable in a deposition. |
| MR. BANDLOW: | Any – |
| MR. DONIGER: | And the rules they have in place are the rules they have in place. |
| MR. BANDLOW: | Anything that relates to the rules is going to be something that came from legal counsel. It's protected by the attorney-client privilege, and I'll instruct him not to answer. |
| MR. DONIGER: | So let me make sure I understand this. It's your position that I can't find out that what rules a company has in place if the attorney had anything to do with drafting, helping them prepare, draft those rules? |
| MR. BANDLOW: | If those rules were promulgated by inhouse counsel, and particularly in response to a lawsuit, yes, they're privileged, they're protected. I will not allow him to answer the question. |

- 9 -
PLAINTIFF'S MOTION IN LIMINE NO. 2

Doniger Decl. Ex. 1 (at Dirt Dep. 165:25-167:11).

PMC's 30(b)(6) representative even testified that PMC's knowledge of and experience with "copyright law"—namely, "policies and practices for and experience with seeking and obtaining licenses to use third-party photographs on your websites, including dirt.com"—was "from legal counsel":

> Q. And Penske is aware that photographs are entitled to copyright protection; yes?
> . . .
> A. I – it's not an area that I – that I deal with.
> Q. Okay. I'm going to just note that Topic 7 for this deposition is your knowledge -- your being Penske's knowledge -- of and experience of copyright law and copyright infringement lawsuits, including your policies and practices for and experience with seeking and obtaining licenses to use third-party photographs on your websites, including Dirt.com. Have you undertaken any steps prior to today to obtain your company's knowledge and experience – or information regarding your company's knowledge and experience -- with copyright law, including regarding obtaining permission to use third-party photographs?
> A. Any knowledge I would have received would have been from legal counsel.

Doniger Decl. Ex. 2 (at PMC Dep. 67:2-68:2).

When the parties conferred over this motion, the PMC Defendants' counsel indicated their intent to assert arguments and offer testimony and evidence regarding and referring to PMC's trainings at trial. Since they claimed privilege in discovery, they should be precluded from making an eleventh-hour about-face.

### III. CONCLUSION

This Court should prevent the PMC Defendants from introducing any argument, evidence, or reference at trial regarding the contents of, or that they acted on, any policies or trainings regarding the clearance or use of third-party copyrighted photos on the PMC Defendants' Website, as they previously claimed such information is privileged.

|   |   |   |   |
|---|---|---|---|
| 1 |   |   | Respectfully Submitted, |
| 2 | Dated: May 11, 2023 |   | DONIGER / BURROUGHS |
| 3 |   | By: | /s/ *Stephen M. Doniger* |
| 4 |   |   | Stephen M. Doniger, Esq.<br>Benjamin F. Tookey, Esq. |
| 5 |   |   | Attorneys for Plaintiff |