# EXHIBIT 1

```
 1                   UNITED STATES DISTRICT COURT

 2                  CENTRAL DISTRICT OF CALIFORNIA

 3

 4    Brandon Vogts,              )
                                  )
 5              Plaintiff,        )
                                  )
 6         vs.                    )No. 2:22-cv-01153-FWS-PVC
                                  )
 7    Penske Media Corporation;   )
      Dirt.com, LLC, et al.,      )
 8                                )
                Defendants.       )
 9                                )

10

11

12

13

14                        DEPOSITION OF

15                       MARK DAVID VOSS

16

17

18        DATE & TIME:    Tuesday, February 7, 2023
                          9:59 a.m. - 3:32 p.m.
19

20        LOCATION:       603 Rose Avenue
                          Venice, California
21

22        REPORTER:       Christina Campos, CSR
                          Certificate No. 12598
23

24

25
```

```
 1                  UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3

 4   Brandon Vogts,              )
                                 )
 5              Plaintiff,       )
                                 )
 6         vs.                   )No. 2:22-cv-01153-FWS-PVC
                                 )
 7   Penske Media Corporation;   )
     Dirt.com, LLC, et al.,      )
 8                               )
                Defendants.      )
 9                               )

10

11

12

13

14

15         DEPOSITION OF MARK DAVID VOSS, taken on

16   behalf of the Plaintiff, at 603 Rose Avenue, Venice,

17   California, commencing at 9:59 a.m., and concluding

18   at 3:32 p.m., on Tuesday, February 7, 2023, pursuant

19   to Notice, before CHRISTINA CAMPOS, CSR No. 12598, a

20   Certified Shorthand Reporter, in and for the State

21   of California.

22                           ***

23

24

25
```

```
 1    APPEARANCES:

 2         For the Plaintiff:

 3              DONIGER/BURROUGHS, APC
                BY:  STEPHEN M. DONIGER, ESQ.
 4               - & -
                BY:  BENJAMIN F. TOOKEY, ESQ.
 5              603 Rose Avenue
                Venice, California  90291
 6              (310) 590-1820
                btookey@donigerlawfirm.com
 7

 8         For the Defendants:

 9              LAW OFFICES OF LINCOLN BANDLOW
                BY:  LINCOLN BANDLOW, ESQ.
10              1801 Century Park East
                Suite 2400
11              Los Angeles, California  90067
                (310) 556-9680
12              lincoln@bandlowlaw.com

13              PENSKE MEDIA CORPORATION
                BY:  JUDY MARGOLIN, ESQ.
14              475 Fifth Avenue
                New York, New York  10017
15              (646) 356-4952
                jmargolin@pmc.com
16

17

18

19

20

21

22

23

24

25
```

```
 1                    I  N  D  E  X

 2

 3   WITNESS              EXAMINATION              PAGE

 4   Mark David Voss      By Mr. Doniger             6

 5   Afternoon Session                             113

 6

 7                    E X H I B I T S

 8   PLAINTIFF'S                                   PAGE

 9   Exhibit 26 - (previously marked exhibit)      126

10   Exhibit 34 - Amended and Restated Limited
        Liability Company Agreement of Dirt.com, LLC  50
11
     Exhibit 35 - Terms of Use                     51
12
     Exhibit 36 - Article entitled "Look Around Chris
13      O'Dowd's L.A. Bungalow" and other documents,
        Bates stamped DIRT00240 through DIRT00276   53
14
     Exhibit 37 - Article entitled "Darby Stanchfield
15      Sells Secluded Glendale Traditional" and other
        documents                                   86
16
     Exhibit 38 - Photographs of Darby Stanchfield's
17      home                                       101

18   Exhibit 39 - Images uploaded in WordPress for
        Chris O'Dowd's article, Bates stamped
19      VOGTS 188 through 211                      106

20   Exhibit 40 - listing from Realtor.com for
        601 Seclusion Lane, Bates stamped VOGTS 495
21      through 499 and 844 through 863            107

22   Exhibit 41 - Redfin listing for Chris O'Dowd's
        bungalow, Bates stamped VOGTS 512 through 518,
23      and 880 through 882.                       111

24   Exhibit 42 - email exchange Bates stamped
        DIRT 22 through DIRT 24                    118
25
```

```
 1                        E X H I B I T S

 2                           (Continued)
     PLAINTIFF'S                                              PAGE
 3
     Exhibit 43 - Article entitled "Chris O'Dowd
 4     Snags Vintage 1930s Spanish in Los Angeles
       (Exclusive) Bates stamped VOGTS 519 through
 5     527                                                     127

 6   Exhibit 44 - emails Bates stamped DIRT00213
       through DIRT00214 and DIRT00225 through
 7     DIRT00239                                               141

 8   Exhibit 45 - Pages from Dirt's Twitter page
       Bates stamped VOGTS 883 through 885                     153
 9
     Exhibit 46 - Posts from Dirt's Facebook page
10     Bates stamped VOGTS 886 through 895                     154

11   Exhibit 47 - Article entitled "'Scandal' Star
       Darby Stanchfield Sheds Glendale home and
12     other documents Bates stamped VOGTS000261
       through VOGTS000287                                     154
13
     Exhibit 48 - Photos from Darby Stanchfield
14     article Bates VOGTS 288 through VOGTS 298               156

15   Exhibit 49 - Slack exchanges Bates stamped
       DIRT00009 through DIRT00012                             162
16

17

18          QUESTIONS INSTRUCTED NOT TO ANSWER

19                    PAGE        LINE

20                     30           9

21                    166           8

22

23                INFORMATION REQUESTED

24                        None.

25
```

Case 2:22-cv-01153-FWS-PVC   Document 73-2   Filed 05/11/23   Page 7 of 20   Page ID #:3087

BRANDON VOGTS vs PENSKE MEDIA CORPORATION, ET AL.
Mark David Voss on 02/07/2023                                  Page 6

1   VENICE, CALIFORNIA; TUESDAY, FEBRUARY 7, 2023

2                        9:59 A.M.

3

4                     MARK DAVID VOSS,

5      called as a witness by and on behalf of

6      the Plaintiff, being first duly sworn,

7      was examined and testified as follows:

8

9                       EXAMINATION

10  BY MR. DONIGER:

11      Q.   All right.  Would you please state and spell

12  your name for the record.

13      A.   Mark Voss.  M-A-R-K V-O-S-S.

14      Q.   All right.  Mr. Voss, you understand that

15  you're here today to give testimony in a lawsuit;

16  yes?

17      A.   Yes.

18      Q.   Okay.  And you understand that you're not

19  only here to give testimony in your individual

20  capacity, but you're here as a representative of

21  Dirt.com; yes?

22      A.   Yes.

23      Q.   Okay.  There is a deposition notice that

24  went around in this case, with a number of topics.

25  Did you have a chance to take a look at that?

www.huseby.com                Huseby Global Litigation              800-333-2082

1   A.   Not a long time, but I don't recall the --
2   the specific amount of time.
3   Q.   Okay.
4   A.   I would say less than a year.
5   Q.   Less than a year.  Okay.  And if you don't
6   recall that's fine.
7        More than six months?
8   A.   I don't recall.  Yeah, I don't recall
9   exactly when he came on.
10  Q.   Okay.  All right.  So in 2014 you're hired
11  by Penske Media, you're placed, you begin working
12  with Variety, and you set up this Dirt column;
13  right?
14  A.   Well, I think technically my employer was
15  Variety Media, LLC.
16  Q.   Okay.
17  A.   I mean I think that's --
18  Q.   Thank you.  I appreciate that.
19       All right.  So you're brought on, you're
20  working for Variety Media, LLC and you set up the
21  Dirt column; right?
22  A.   Yes.
23  Q.   Did you receive any training when you were
24  working for Variety on what you could and couldn't
25  use in articles?

 1     A.   Not specific.  I don't recall training
 2   specifically about that sort of thing.
 3     **Q.   Okay.  Do you recall there being any written**
 4   **policies or guidelines at Variety about whether and**
 5   **when you had to clear rights to use photographs in**
 6   **an article?**
 7     A.   Can you ask that again?
 8     Q.   Sure.  Well, let me ask this:
 9          **Had you ever had a discussion with anyone at**
10   **Variety regarding whether or when you had to clear**
11   **rights to use photographs in articles that you**
12   **published on Variety?**
13          MR. BANDLOW:  I'll object to the extent that
14   calls for attorney-client communications.
15          If you can only answer that question by
16   revealing --
17          MR. DONIGER:  Hold on.  It's a "yes" or "no"
18   question.
19          MR. BANDLOW:  Well, yes to X contents, so
20   then that reveals the content that he may have
21   exchanged with counsel.
22          MR. DONIGER:  Okay.
23          MR. BANDLOW:  If the answer is yes, it's
24   with counsel.  So I'm going to instruct him not to
25   answer as asked.

1          MR. DONIGER:  Okay.
2          MR. BANDLOW:  See if you can --
3    BY MR. DONIGER:
4    Q.   Are you going to -- the privilege is yours.
5         Are you going to follow your attorney's
6    advice?
7    A.   Yes.
8    Q.   Okay.  When you were working at Variety, did
9    you have any understanding as to when or whether you
10   had to clear rights to use photographs in articles
11   that you published?
12   A.   Only not as it related to the website.
13   Q.   Okay.  You're saying not as it related to
14   the website.  It seems like you're drawing some
15   distinction, but what is that?
16   A.   Well, there was also content that was in the
17   print magazine --
18   Q.   Okay.
19   A.   -- and that was handled through the
20   magazines.  I've never worked -- I don't work in the
21   office, so all of that was handled through the
22   offices there, whereas the website stuff I handled
23   on my own.
24   Q.   Okay.  Were the articles that you were
25   publishing on the -- in the Dirt column in Variety,

```
 1      Q.   Okay.  Excluding attorneys, did anyone at
 2   Variety, between when you were hired in 2014 and
 3   when Dirt.com spun off in 2019, whenever -- strike
 4   that.
 5           Between when you were hired at Penske or for
 6   Variety in 2014 and when the Dirt column split off
 7   in 2019, did anyone at Penske or Variety, other than
 8   attorneys, ever discuss with you when you had to
 9   clear rights to use photographs for your articles?
10      A.   Not that I recall.
11      Q.   Are you aware of any written policies at
12   Variety or Penske that you ever had the opportunity
13   to review that discussed when or whether you had to
14   clear rights to use photographs that were
15   incorporated into the articles that you were
16   writing?
17      A.   Only recently.
18      Q.   When is recently?
19      A.   Within the context of this lawsuit.
20      Q.   Okay.  So prior to this litigation you were
21   not aware of any written policy, you hadn't seen any
22   written policies?
23      A.   Not that I recall.
24      Q.   That you recall.  Okay.
25           All right.  Is Dirt -- is Dirt.com
```

1    A.   So he could probably address that more
2  specifically.
3    Q.   What do you mean when you said "small
4  stories, they may not have been socialed"?
5    A.   My guess is most of our stories that go on
6  our social media are stories that are bigger stories
7  that would have more traffic or more interesting
8  people or more interesting property, or something
9  like that.
10   Q.   Okay.  Were you in touch with James during
11 this time period of September, October 2021?  Were
12 you in touch with him about this, the claims in this
13 case?
14   A.   I'm sure I was, yes.
15   Q.   Okay.  Let me ask.  When's the last time
16 that you recall speaking with James about the claims
17 that are at issue in this case?
18   A.   Well, I speak with him, James, on a regular
19 basis, so I -- I mean we talked about him being
20 here.  We didn't talk about specifics.  I asked him
21 how it went.  He said it was fine.
22   Q.   Okay.
23   A.   So that would have been the last time.  It
24 would have been the day after he was here, probably.
25   Q.   I do understand that -- you said something

 1   earlier that suggested to me that now Dirt.com has
 2   some rules in place about the use of photographs in
 3   articles, that it might not have had in place
 4   before.
 5       A.   Yes.
 6       Q.   Did I understand that correctly?
 7       A.   Yes.
 8       Q.   What rules does it have in place now?
 9            MR. BANDLOW:  I'm going to object on the
10   grounds of attorney-client privilege; also on
11   postremedial measures basis.  So I'll instruct him
12   not to answer that question.
13            MR. DONIGER:  The rules.
14            MR. BANDLOW:  It's irrelevant too.  It's
15   irrelevant to anything they did after the claims in
16   this case.
17            MR. DONIGER:  Well, it may or may not be
18   admissible at trial.  It doesn't mean it's not
19   discoverable in a deposition.
20            MR. BANDLOW:  Any --
21            MR. DONIGER:  And the rules they have in
22   place are the rules they have in place.
23            MR. BANDLOW:  Anything that relates to the
24   rules is going to be something that came from legal
25   counsel.  It's protected by the attorney-client

 1   privilege, and I'll instruct him not to answer.
 2          MR. DONIGER:  So let me make sure I
 3   understand this.  It's your position that I can't
 4   find out that what rules a company has in place if
 5   the attorney had anything to do with drafting,
 6   helping them prepare, draft those rules?
 7          MR. BANDLOW:  If those rules were
 8   promulgated by inhouse counsel, and particularly in
 9   response to a lawsuit, yes, they're privileged,
10   they're protected.  I will not allow him to answer
11   the question.
12          MR. DONIGER:  I wish we had time to compel
13   on this one because this is sanctionable.
14   BY MR. DONIGER:
15      Q.   All right.  Are you going to follow your
16   attorney's advice?
17      A.   I am.
18      Q.   All right.  All right.  So this was already
19   marked as 29.  Did you -- I'm going to hand you what
20   was previously marked as 29.  Doesn't necessarily
21   need to be become an exhibit here, but have you seen
22   this correspondence before?
23      A.   Not that I recall.
24      Q.   Okay.  And forgive me if I asked this
25   before, but when's the first time you recall

1          Mr. Bandlow, would you like a copy of this
2     transcript?
3          MR. BANDLOW:  Yes.
4
5          (The deposition was concluded at 3:32 p.m.)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                          --o0o--
 2    Please be advised I have read the foregoing
 3    deposition, and I state there are:
 4    (Check one)
 5                                   NO CORRECTIONS
 6                                   CORRECTIONS ATTACHED
 7
 8
 9                      MARK DAVID VOSS
10
11                      Date Signed
12
13
14                          --o0o--
15
16
17
18
19
20
21
22
23
24
25
```

```
 1            DEPONENT'S CHANGES OR CORRECTIONS
 2   Note:  If you are adding to your testimony, print
 3   the exact words you want to add.  If you are
 4   deleting from your testimony, print the exact words
 5   you want to delete.  Specify with "Add" or "Delete"
 6   and sign this form.
 7
 8   DEPOSITION OF:       MARK DAVID VOSS
 9   CASE:                VOGTS VS. PENSKE
10   DATE OF DEPOSITION:  FEBRUARY 7, 2023
11
12   PAGE    LINE     CHANGE/ADD/DELETE
13   ____    ____     _____
14   ____    ____     _____
15   ____    ____     _____
16   ____    ____     _____
17   ____    ____     _____
18   ____    ____     _____
19   ____    ____     _____
20   ____    ____     _____
21   ____    ____     _____
22   ____    ____     _____
23   ____    ____     _____
24   ____    ____     _____
25   Deponent's Signature                         Date
```

```
 1    PAGE      LINE      CHANGE/ADD/DELETE
 2    ____      ____      _____
 3    ____      ____      _____
 4    ____      ____      _____
 5    ____      ____      _____
 6    ____      ____      _____
 7    ____      ____      _____
 8    ____      ____      _____
 9    ____      ____      _____
10    ____      ____      _____
11    ____      ____      _____
12    ____      ____      _____
13    ____      ____      _____
14    ____      ____      _____
15    ____      ____      _____
16    ____      ____      _____
17    ____      ____      _____
18    ____      ____      _____
19    ____      ____      _____
20    ____      ____      _____
21    ____      ____      _____
22    ____      ____      _____
23    ____      ____      _____
24    ____      ____      _____
25    Deponent's Signature                            Date
```

```
 1

 2

 3

 4    STATE OF CALIFORNIA            )
                                     )    ss.
 5    COUNTY OF LOS ANGELES          )

 6

 7            I, MARK DAVID VOSS, having appeared for my

 8    deposition on February 7, 2023, do this date declare

 9    under penalty of perjury that I have read the

10    foregoing deposition, I have made any corrections,

11    additions or deletions that I was desirous of making

12    in order to render the within transcript true and

13    correct.

14            IN WITNESS WHEREOF, I have hereunto

15    subscribed my name this       day of            ,

16    2023.

17

18

19

20

21

22                         W  I  T  N  E  S  S

23

24

25
```

1                    REPORTER'S CERTIFICATE
2
3            I, the undersigned, a Certified Shorthand
4    Reporter of the State of California, do hereby
5    certify;
6            That the foregoing proceedings were taken
7    before me at the time and place herein set forth;
8    that any witnesses in the foregoing proceedings,
9    prior to testifying, were placed under oath; that a
10   verbatim record of the proceedings was made by me
11   using machine shorthand, which was thereafter
12   transcribed under my direction; further, that the
13   foregoing is an accurate transcription thereof.
14           I further certify that I am neither
15   financially interested in the action, nor a relative
16   or employee of any attorney of any of the parties.
17           IN WITNESS WHEREOF, I have this date
18   subscribed my name.
19
20   Dated:February 17th, 2023
21
22
23
24                   CHRISTINA CAMPOS
25                   CERTIFICATE NO. 12598