# EXHIBIT 2

```
 1                UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3

 4   Brandon Vogts,              )
                                 )
 5             Plaintiff,        )
                                 )
 6        vs.                    )No. 2:22-cv-01153-FWS-PVC
                                 )
 7   Penske Media Corporation;   )
     Dirt.com, LLC, et al.,      )
 8                               )
               Defendants.       )
 9                               )

10

11

12                       DEPOSITION OF

13                        THOMAS FINN

14

15

16        DATE & TIME:    Wednesday, February 8, 2023
                          10:10 a.m. - 3:20 p.m.
17

18        LOCATION:       603 Rose Avenue
                          Venice, California
19

20        REPORTER:       Christina Campos, CSR
                          Certificate No. 12598
21

22

23

24

25
```

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4   Brandon Vogts,             )
                                )
 5            Plaintiff,        )
                                )
 6        vs.                   )No. 2:22-cv-01153-FWS-PVC
                                )
 7   Penske Media Corporation;  )
     Dirt.com, LLC, et al.,     )
 8                              )
              Defendants.       )
 9                              )

10

11

12

13

14

15

16          DEPOSITION OF THOMAS FINN, taken on behalf

17   of the Plaintiff, at 603 Rose Avenue, Venice,

18   California, commencing at 10:10 a.m., and concluding

19   at 3:20 p.m., on Wednesday, February 8, 2023,

20   pursuant to Notice, before CHRISTINA CAMPOS,

21   CSR No. 12598, a Certified Shorthand Reporter, in

22   and for the State of California.

23                              ***

24

25
```

```
 1    APPEARANCES:

 2          For the Plaintiff:

 3                DONIGER/BURROUGHS, APC
                  BY:  STEPHEN M. DONIGER, ESQ.
 4                 - & -
                  BY:  BENJAMIN F. TOOKEY, ESQ.
 5                603 Rose Avenue
                  Venice, California  90291
 6                (310) 590-1820
                  btookey@donigerlawfirm.com
 7


 8          For the Defendants:

 9                LAW OFFICES OF LINCOLN BANDLOW
                  BY:  LINCOLN BANDLOW, ESQ.
10                1801 Century Park East
                  Suite 2400
11                Los Angeles, California  90067
                  (310) 556-9680
12                lincoln@bandlowlaw.com

13                PENSKE MEDIA CORPORATION
                  BY:  JUDY MARGOLIN, ESQ.
14                475 Fifth Avenue
                  New York, New York  10017
15                (646) 356-4952
                  jmargolin@pmc.com
16

17

18

19

20

21

22

23

24

25
```

1                          I N D E X

2

3  WITNESS                    EXAMINATION                    PAGE

4  Thomas Finn              By Mr. Doniger                     6

5  Afternoon session                                          87

6

7                          E X H I B I T S

8  PLAINTIFF'S                                               PAGE

9  Exhibit 34 - (previously marked exhibit)                   35

10 Exhibit 35 - (previously marked exhibit)                   54

11 Exhibit 50 - Document Bates stamped PMC 72                 56

12 Exhibit 51 - Google Analytics reports stamped
      PMC 108, 148, 149, 150, and 152                         71
13
   Exhibit 52 - Documents Bates stamped PMC 109
14    through 114                                             90

15 Exhibit 53 - Documents Bates stamped PMC 25,
      73, and 153                                             92
16
   Exhibit 54 - Yahoo! Inc. Content License and
17    Services Agreement Bates stamped PMC 34
      through 65                                             104
18
   Exhibit 55 - Microsoft Content License Agreement
19    Bates stamped PMC 74 through 100                       108

20 Exhibit 56 - Microsoft Content License Agreement
      Bates stamped PMC 127 through 147                      111
21
   Exhibit 57 - Revenue Share Agreement Bates
22    stamped PMC 117 through 126                            113

23 Exhibit 58 - Amendment No. 1 to Revenue Share
      Agreement Bates stamped PMC 115 through 116            116
24
   Exhibit 59 - Documents Bates stamped PMC 26
25    through 33, and Penske 151                             120

```
 1                       E X H I B I T S

 2                          (Continued)
     PLAINTIFF'S                                              PAGE
 3
     Exhibit 60 - Documents Bates stamped PMC 66
 4     through 71, and 103                                     125

 5   Exhibit 61 - Documents Bates stamped Penske 101
       and 102                                                 128
 6
     Exhibit 62 - multipage document, with front page
 7     titled Limited Liability Company Agreement
       of Dirt.com, LLC                                        130
 8

 9

10         QUESTIONS INSTRUCTED NOT TO ANSWER

11                          None.

12

13                    INFORMATION REQUESTED

14                          None.

15

16

17

18

19

20

21

22

23

24

25
```

BRANDON VOGTS vs PENSKE MEDIA CORPORATION, ET AL.
Thomas Finn on 02/08/2023                                            Page 6

1      VENICE, CALIFORNIA; WEDNESDAY, FEBRUARY 8, 2023

2                         10:10 A.M.

3

4                       THOMAS FINN,

5         called as a witness by and on behalf of

6         the Plaintiff, being first duly sworn,

7         was examined and testified as follows:

8

9                        EXAMINATION

10   BY MR. DONIGER:

11       Q.   Please state and spell your name for the

12   record.

13       A.   Thomas John Finn.  Finn is F-I-N-N.

14       Q.   Mr. Finn, who do you currently work for?

15       A.   Penske Media.

16       Q.   And what's your position at Penske?

17       A.   Executive Vice President, Operations and

18   Finance.

19            (Ms. Margolin joins the proceedings.)

20   BY MR. DONIGER:

21       Q.   And how long have you worked for Penske?

22       A.   Since June of 2018.

23       Q.   How long have you been the Executive Vice

24   President of --

25       A.   Operations and Finance.

```
 1   that Dirt.com does not have any officers, like a
 2   president, vice president, secretary?
 3        A.   No, I don't believe so.
 4        Q.   Sorry.  No, I'm not correct, or no, it
 5   doesn't?
 6        A.   To my knowledge it does not.
 7        Q.   Okay.  And it doesn't have -- there's no
 8   board of directors for Dirt?
 9        A.   No.
10        Q.   Who makes the decisions for -- the
11   operational decisions for Dirt.com, LLC?
12        A.   What do you mean by "operational decisions"?
13        Q.   So do you know -- well, let's back up.
14             Do you know whether Dirt.com, LLC has its
15   own employee handbook?
16        A.   I don't know if there's a specific Dirt.com
17   employee handbook.  I know there's a PMC employee
18   handbook.
19        Q.   Okay.  Do you know whether the PMC employee
20   handbook is given to the employees of Dirt.com, LLC?
21        A.   Yes, I believe so.
22        Q.   It is?
23        A.   I believe it is.
24        Q.   Okay.  Do you know whether PMC --
25             Do you know whether Penske has any written
```

```
 1   guidelines on the use of copyright material in
 2   articles that it publishes?
 3       A.   I was -- I was informed that it does -- that
 4   we do not.
 5       Q.   Okay.  Does Penske Media Corporation offer
 6   any training or instruction to its businesses, to
 7   the media sites that it owns, on the use of
 8   copyright material in the articles published?
 9       A.   I was informed that our legal counsel does
10   provide training.
11       Q.   Do you know when it first began offering
12   that training?
13       A.   I do not.
14       Q.   Do you know if it offered that training in
15   2020?
16       A.   I do not.
17       Q.   When's the first time that you learned that
18   it -- that Penske was providing that training?
19       A.   That's --
20       Q.   Is it something you just learned this year
21   or --
22       A.   As part of the preparation, as part of the
23   information for this deposition.
24       Q.   Okay.  So before your preparation for this
25   deposition just recently you were unaware of any
```

1   training offered to Penske Media Publications on the
2   use of copyright material in what they publish?
3       A.   Yes.
4       Q.   Okay.  The -- I asked you earlier.  Of the
5   advertising revenue -- well, let me ask this first.
6            Is that indirect advertising revenue that
7   you testified about earlier, that you told me about
8   earlier, is that the only revenue -- is that the
9   only way that Dirt.com generates revenue?
10      A.   No.
11      Q.   What other ways does Dirt.com generate
12  revenue?
13      A.   There is de minimis direct revenue, and
14  there are -- there is revenue from some syndication,
15  revenue share related to some syndication of
16  content.
17      Q.   You said de minimis direct revenue and
18  separately, some shared revenue from the syndication
19  content?  Is that -- did I understand that
20  correctly?
21      A.   Yes.
22      Q.   Okay.  What is that -- that direct revenue,
23  where is that from?
24      A.   In total it's -- it's less than $10,000 over
25  the course of the year, and they're from -- I

1    A.   I don't remember.

2    Q.   And Penske is aware that photographs are

3    entitled to copyright protection; yes?

4         MR. BANDLOW:  Objection; calls for

5    speculation, vague and ambiguous.

6         You can answer if you understand the

7    question.

8         THE WITNESS:  I -- it's not an area that

9    I -- that I deal with.

10   BY MR. DONIGER:

11   Q.   Okay.  I'm going to just note that Topic 7

12   for this deposition is your knowledge -- your being

13   Penske's knowledge -- of and experience of copyright

14   law and copyright infringement lawsuits, including

15   your policies and practices for and experience with

16   seeking and obtaining licenses to use third-party

17   photographs on your websites, including Dirt.com.

18        Have you undertaken any steps prior to today

19   to obtain your company's knowledge and experience --

20   or information regarding your company's knowledge

21   and experience -- with copyright law, including

22   regarding obtaining permission to use third-party

23   photographs?

24   A.   Any knowledge I would have received would

25   have been from legal counsel.  As I mentioned

```
 1   earlier, I understand that there's training that's
 2   provided with regard to that, but --
 3       Q.   Okay.  In 2020 Penske filed a lawsuit
 4   against Shutterstock for copyright infringements;
 5   are you aware of that?
 6       A.   No.
 7       Q.   Are you aware of Penske having had an
 8   agreement with Shutterstock in the past regarding
 9   the use of photographs?
10       A.   Yes.
11       Q.   What do you know about that?
12       A.   I wasn't involved in that.  I know that
13   there was an agreement in place where we have a
14   library of images that they had access to and then
15   we had access to our -- our brands to utilize images
16   from the Shutterstock library.
17       Q.   Okay.  So Penske -- at the time of that
18   agreement, Penske was able to use Shutterstock
19   images and Shutterstock was able to use Penske
20   images; is that right?
21       A.   I don't know the details of how the
22   mechanics of it worked.  I know that in general they
23   had access to our library, to be able to syndicate,
24   and we had the ability to access images that were on
25   the library to use on our sites.
```

```
 1            So pursuant to code, and we're done.
 2            MR. DONIGER:  Pursuant to code, and we're
 3   done.  Okay.
 4            THE REPORTER:  Mr. Bandlow, do you want a
 5   copy of this one, too?
 6            MR. BANDLOW:  Oh, yeah.
 7
 8            (The deposition was concluded at 3:20 p.m.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                          --o0o--
 2    Please be advised I have read the foregoing
 3    deposition, and I state there are:
 4    (Check one)
 5                                   NO CORRECTIONS
 6                                   CORRECTIONS ATTACHED
 7
 8
 9                          THOMAS FINN
10
11                          Date Signed
12
13
14                          --o0o--
15
16
17
18
19
20
21
22
23
24
25
```

```
 1            DEPONENT'S CHANGES OR CORRECTIONS
 2   Note:  If you are adding to your testimony, print
 3   the exact words you want to add.  If you are
 4   deleting from your testimony, print the exact words
 5   you want to delete.  Specify with "Add" or "Delete"
 6   and sign this form.
 7
 8   DEPOSITION OF:      THOMAS FINN
 9   CASE:               VOGTS VS. PENSKE MEDIA
10   DATE OF DEPOSITION: FEBRUARY 8, 2023
11
12   PAGE    LINE     CHANGE/ADD/DELETE
13   ____    ____     _____
14   ____    ____     _____
15   ____    ____     _____
16   ____    ____     _____
17   ____    ____     _____
18   ____    ____     _____
19   ____    ____     _____
20   ____    ____     _____
21   ____    ____     _____
22   ____    ____     _____
23   ____    ____     _____
24   ____    ____     _____
25   Deponent's Signature                         Date
```

| | PAGE | LINE | CHANGE/ADD/DELETE |
|---|---|---|---|
| 1 | | | |
| 2 | ____ | ____ | _____ |
| 3 | ____ | ____ | _____ |
| 4 | ____ | ____ | _____ |
| 5 | ____ | ____ | _____ |
| 6 | ____ | ____ | _____ |
| 7 | ____ | ____ | _____ |
| 8 | ____ | ____ | _____ |
| 9 | ____ | ____ | _____ |
| 10 | ____ | ____ | _____ |
| 11 | ____ | ____ | _____ |
| 12 | ____ | ____ | _____ |
| 13 | ____ | ____ | _____ |
| 14 | ____ | ____ | _____ |
| 15 | ____ | ____ | _____ |
| 16 | ____ | ____ | _____ |
| 17 | ____ | ____ | _____ |
| 18 | ____ | ____ | _____ |
| 19 | ____ | ____ | _____ |
| 20 | ____ | ____ | _____ |
| 21 | ____ | ____ | _____ |
| 22 | ____ | ____ | _____ |
| 23 | ____ | ____ | _____ |
| 24 | ____ | ____ | _____ |
| 25 | Deponent's Signature | | Date |

```
 1

 2

 3

 4    STATE OF CALIFORNIA            )
                                     )   ss.
 5    COUNTY OF LOS ANGELES          )

 6

 7           I, THOMAS FINN, having appeared for my

 8    deposition on February 8, 2023, do this date declare

 9    under penalty of perjury that I have read the

10    foregoing deposition, I have made any corrections,

11    additions or deletions that I was desirous of making

12    in order to render the within transcript true and

13    correct.

14           IN WITNESS WHEREOF, I have hereunto

15    subscribed my name this      day of            ,

16    2023.

17

18

19

20

21

22                     W   I   T   N   E   S   S

23

24

25
```

1                REPORTER'S CERTIFICATE
2
3          I, the undersigned, a Certified Shorthand
4    Reporter of the State of California, do hereby
5    certify;
6          That the foregoing proceedings were taken
7    before me at the time and place herein set forth;
8    that any witnesses in the foregoing proceedings,
9    prior to testifying, were placed under oath; that a
10   verbatim record of the proceedings was made by me
11   using machine shorthand, which was thereafter
12   transcribed under my direction; further, that the
13   foregoing is an accurate transcription thereof.
14         I further certify that I am neither
15   financially interested in the action, nor a relative
16   or employee of any attorney of any of the parties.
17         IN WITNESS WHEREOF, I have this date
18   subscribed my name.
19
20   Dated: February 20, 2023
21
22                    [signature]
23
24                    CHRISTINA CAMPOS
25                    CERTIFICATE NO. 12598