Exhibit I

1   ROBERT C. WELSH (SBN 130782)
    BAKER & HOSTETLER LLP
2   11601 WILSHIRE BOULEVARD, SUITE 1400
    LOS ANGELES, CA  90025-7120
3   Telephone:  310.820.8800
    Facsimile:  310.820.8859
4   Email:       rwelsh@bakerlaw.com

5   OREN J. WARSHAVSKY (*admitted pro hac vice*)
    owarshavsky@bakerlaw.com
6   TATIANA MARKEL (*admitted pro hac vice*)
    tmarkel@bakerlaw.com
7   BAKER & HOSTETLER LLP
    45 ROCKEFELLER PLAZA
8   NEW YORK, NY 10111

9   Attorneys for Defendant
    FREEPLAY MUSIC, LLC
10

11          IN THE UNITED STATES DISTRICT COURT

12          CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  PENSKE MEDIA CORPORATION, a Delaware corporation; VARIETY MEDIA, LLC, a Delaware limited liability company, | Case No.: 2:15-cv-06822 |
| 15 | Hon. Andrew J. Wistrich |
| 16 | |
| 17          Plaintiffs, | **DECLARATION OF TATIANA MARKEL IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |
| 18          vs. | |
| 19  FREEPLAY MUSIC, LLC, a Delaware limited liability company, and DOES 1 through 5, inclusive, | Date:  February 29, 2016 Time:  10:00 am Courtroom: 690 |
| 20 | |
| 21          Defendants. | Action Filed: September 2, 2015 |
| 22 | |

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

VOGTS000762

EXHIBIT I

<div style="text-align: right; writing-mode: vertical-rl;">BAKER & HOSTETLER LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES</div>

1  I, Tatiana Markel, declare as follows:

2  **1.**    I am an attorney duly licensed and authorized to practice in the State of

3  New York.  I am admitted to appear in this case *pro hac vice*.  I am an associate in

4  the law firm of Baker & Hostetler LLP, attorneys of record for Defendant Freeplay

5  Music, LLC ("FPM").

6  **2.**    I submit this Declaration in support of FPM's Motion to Dismiss

7  Plaintiffs' Amended Complaint ("Motion").

8  **3.**    On December 28, 2015, counsel for Plaintiffs, Sean Hardy, of the law

9  firm Freedman + Taitelman, LLP, granted FPM a two-week extension to respond to

10  the amended complaint.  FPM's response was thus due on January 21, 2016.

11  **4.**    On January 13, 2016, I contacted Mr. Hardy by email to set a time to

12  meet and confer concerning FPM's Motion.  On January 14, 2016, Mr. Hardy

13  responded advising that he was unavailable until the afternoon of January 15, 2016.

14  **5.**    My offices are located in New York, New York, and Mr. Hardy's

15  offices are located in Los Angeles, California, necessitating that the meet and

16  confer be conducted telephonically.

17  **6.**    On January 15, 2016, at 2:00pm PST/5:00pm EST, Mr. Hardy and I

18  participated in the telephonic meet and confer on FPM's Motion.  I explained that

19  the Motion would be brought under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and

20  would be similar to FPM's original motion, except that Plaintiffs' new grounds for

21  declaratory judgement (i.e., copyright misuse and fair use) would be also addressed.

22  **7.**    After our discussion, Mr. Hardy indicated that he disagreed with

23  FPM's position but that FPM should proceed with the Motion.

24  I declare under penalty of perjury under the laws of the United States of

25  America that the foregoing is true and correct.

26  Executed on January 21, 2016, at New York, NY.

27  *s/ Tatiana Markel*
    Tatiana Markel

28

DECLARATION OF TATIANA MARKEL
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
2:15-cv-06822

608217514.1

VOGTS000763

EXHIBIT I

## CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, California 90025. On **January 21, 2016** I served the foregoing document(s) described as:

**DECLARATION OF TATIANA MARKEL IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

[X] **BY ELECTRONIC SERVICE/CM-ECF: I caused the foregoing document to be electronically served via CM/ECF for the United States District Court, Central District of California upon all parties listed on the court docket for this case.**

I declare under penalty of perjury pursuant to the laws of the United States that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **January 21, 2016**, at Los Angeles, California.

James A. Belton

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF TATIANA MARKEL
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
2:15-cv-06822

608217514.1

VOGTS000764

EXHIBIT I

1   ROBERT C. WELSH (SBN 130782)
    BAKER & HOSTETLER LLP
2   11601 WILSHIRE BOULEVARD, SUITE 1400
    LOS ANGELES, CA  90025-7120
3   Telephone:   310.820.8800
    Facsimile:   310.820.8859
4   Email:       rwelsh@bakerlaw.com

5   OREN J. WARSHAVSKY (*admitted pro hac vice*)
    owarshavsky@bakerlaw.com
6   TATIANA MARKEL (*admitted pro hac vice*)
    tmarkel@bakerlaw.com
7   BAKER & HOSTETLER LLP
    45 ROCKEFELLER PLAZA
8   NEW YORK, NY 10111

9   Attorneys for Defendant
    FREEPLAY MUSIC, LLC

10

11                  IN THE UNITED STATES DISTRICT COURT

12                  CENTRAL DISTRICT OF CALIFORNIA

13

| 14 | PENSKE MEDIA CORPORATION, a Delaware corporation; VARIETY MEDIA, LLC, a Delaware limited liability company, | Case No.: 2:15-cv-06822 |
|----|----|----|
| 15 | | Hon. Andrew J. Wistrich |
| 16 | | |
| 17 | Plaintiffs, | **DECLARATION OF MICHELLE OZOG IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** |
| 18 | vs. | |
| 19 | FREEPLAY MUSIC, LLC, a Delaware limited liability company, and DOES 1 through 5, inclusive, | Date:  February 29, 2016 |
| 20 | | Time: 10:00 am |
| 21 | Defendants. | Courtroom:  690 |
| | | Action Filed:  September 2, 2015 |

22

23

24

25

26

27

28

*Sidebar (rotated):* BAKER & HOSTETLER LLP / ATTORNEYS AT LAW / LOS ANGELES

DECLARATION OF MICHELLE OZOG
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT
2:15-cv-6822

607528850.1

VOGTS000076S

EXHIBIT I

1     I, Michelle Ozog, declare as follows:

2         **1.**     I am an attorney duly licensed and authorized to practice in the State of

3     New York.  I am in-house counsel at TuneSat, LLC ("TuneSat"), Defendant

4     Freeplay Music, LLC ("FPM")'s agent for purposes of detection and enforcement

5     of its copyrights.

6         **2.**     I make this Declaration in support of Defendant's Motion to Dismiss

7     the Amended Complaint.

8         **3.**     As further referenced in the Notice of Lodging filed

9     contemporaneously herewith, the DVD submitted to the Clerk contains true and

10    correct copies of the 61 videos at issue in this case.

11        **4.**     Attached hereto as Exhibit A is a true and correct copy of the August

12    5, 2013 landing page of Defendant's website, http://www.freeplaymusic.com.

13        **5.**     Attached hereto as Exhibit B is a true and correct copy of the July 8,

14    2013 landing page of Defendant's website, http://www.freeplaymusic.com.

15        I declare under penalty of perjury under the laws of the United States of

16    America that the foregoing is true and correct.

17        Executed on January 21, 2016, at New York, NY.

18

19                              *s/ Michelle Ozog*
                                Michelle Ozog,
20                              In-House Counsel, TuneSat LLC

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF MICHELLE OZOG
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT
2:15-cv-06822

VOGTS000766

EXHIBIT I

1

## CERTIFICATE OF SERVICE

2    I am a resident of the State of California, over the age of eighteen years, and

3  not a party to the within action.  My business address is 11601 Wilshire Boulevard,

4  Suite 1400, Los Angeles, California 90025.  On **January 21, 2016** I served the

5  foregoing document(s) described as:

6

### DECLARATION OF MICHELLE OZOG IN SUPPORT OF
7  ### DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

8  **[X] BY ELECTRONIC SERVICE/CM-ECF:  I caused the foregoing
    document to be electronically served via CM/ECF for the United States
9   District Court, Central District of California upon all parties listed on the
    court docket for this case.**
10

11    I declare under penalty of perjury pursuant to the laws of the United States

12  that I am employed in the office of a member of the bar of this court at whose

13  direction the service was made.

14    Executed on **January 21, 2016**, at Los Angeles, California.

15

16                                    James A. Belton

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT I

# EXHIBIT A

VOGTS000768

EXHIBIT I

Freeplay Music | Welcome | The best music library on the planet!                                    Page 1 of 2



Case 2:15-cv-06822-AJW   Document 36-3   Filed 01/21/16   Page 2 of 4   Page ID #:468

https://web.archive.org/web/20130805065627/http://freeplaymusic.com/

VOGTS000769
1/20/2016

EXHIBIT I

# EXHIBIT B

VOGTS000770

EXHIBIT I

INTERNET ARCHIVE WaybackMachine
http://freeplaymusic.com/ Go
771 captures
6 Dec 00 - 19 Jan 16
JUN JUL AUG
8
2012 2013 2014
Close
Help

freeplaymusic

Home · Search · Licensing · Rate Cards · Submit Music · Contact · About

**Production Music**

Indie Artists NEW

Sound Effects NEW

**New Music From Freeplay!:**

**Welcome!** Check out our Twitter & Facebook Pages!

To Learn how you can use Freeplay Music click on Terms of Use, Licensing, Rate Card. Questions or comments, contact us at: (212) 974-0548.

*Check Out Freeplay's Newest Releases:*

Jul. 1, 2013 - Follow us on Twitter! Make sure to follow us on Twitter: https://twitter.com/freeplay_music. We have lots of great new stuff coming, including a brand new website and a whole bunch of excellent new music.

Feb. 5, 2013 - "Electronic Grooves Volume 9" This eclectic collection of Hip-Hop, Techno, and Dubstep makes for an interesting blend of bold and edgy tracks sure to keep your ears interested.

Feb. 5, 2013 - "Mystical Symphonic Volume 12" Composer Ed Kessel really

*click a music category to browse our 6899 tracks*

cd volume

Acid Jazz Vol 1
Acoustic Guitar Vol 1
Acoustic Guitar Vol 11
Acoustic Guitar Vol 2
Acoustic Guitar Vol 3
Acoustic Guitar Vol 5
Acoustic Guitar Vol 7
Acoustic Guitar Vol 8
Action And Adventure Vol 1
Action And Adventure Vol 2
Action and Adventure Vol 3
Action and Adventure Vol 4
Action And Adventure Vol 5
Action And Adventure Vol 6
Action And Adventure Vol 7
Action And Adventure Vol 8
Action And Mystery Vol 1
Alternative Rock Vol 1
Alternative Rock Vol 7
Alternative Rock Vol 8

style

8bit/Chiptunes
Acoustic Folk/Traditional
Acoustic Rock/Folk
Acoustic/Folk
Acoustic/Latin
Acoustic/Rock
Alt. Rock/Country
Ambient
Ambient/Downtempo

feel

Adventure/Action
Aggressive/Driving
Atmospheric
Breezy/Sexy
Building/Tension
Burning/Sinister
Chill/Laid-Back
Cinematic
Climactic/Explosive

go to:
advanced search
search guide

search by keyword:

run search

VOGTS000771

EXHIBIT I

Case 2:22-cv-01153-FWS-PVC   Document 76-11   Filed 05/11/23   Page 12 of 47   Page ID
#:3530
Case 2:15-cv-06822-AJW   Document 36-4   Filed 01/21/16   Page 1 of 3   Page ID #:471

1   ROBERT C. WELSH (SBN 130782)
    BAKER & HOSTETLER LLP
2   11601 WILSHIRE BOULEVARD, SUITE 1400
    LOS ANGELES, CA  90025-7120
3   Telephone:  310.820.8800
    Facsimile:  310.820.8859
4   Email:     rwelsh@bakerlaw.com

5   OREN J. WARSHAVSKY (*admitted pro hac vice*)
    owarshavsky@bakerlaw.com
6   TATIANA MARKEL (*admitted pro hac vice*)
    tmarkel@bakerlaw.com
7   BAKER & HOSTETLER LLP
    45 ROCKEFELLER PLAZA
8   NEW YORK, NY 10111

9   Attorneys for Defendant
    FREEPLAY MUSIC, LLC
10

11                 IN THE UNITED STATES DISTRICT COURT

12                 CENTRAL DISTRICT OF CALIFORNIA

13

14   PENSKE MEDIA CORPORATION, a        Case No.: 2:15-cv-06822
     Delaware corporation; VARIETY
15   MEDIA, LLC, a Delaware limited      Hon. Andrew J. Wistrich
     liability company,
16
                                         **[PROPOSED] ORDER GRANTING
17             Plaintiffs,               DEFENDANT'S MOTION TO
                                         DISMISS PLAINTIFFS' AMENDED
18        vs.                            COMPLAINT**

19   FREEPLAY MUSIC, LLC, a Delaware     Date:  February 29, 2016
     limited liability company, and DOES 1   Time:  10:00 AM
20   through 5, inclusive,               Courtroom: 690

21             Defendants.               Action Filed:  September 2, 2015

22

23

24

25

26

27

28

C:\Users\jbelton\Downloads\Proposed Order.docx

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT I

1    Defendant Freeplay Music, LLC's Motion to Dismiss Plaintiffs' Amended

2    Complaint ("Motion") came on regularly for hearing before the above-entitled

3    Court on February 29, 2016.

4        The Court, having considered the Motion, opposition, and reply papers, and

5    the evidence submitted in support of the same, and for good cause appearing,

6    HEREBY ORDERS:

7        1.    The Motion is GRANTED in its entirety.

8        2.    Plaintiffs' first cause of action for declaratory judgment of non-

9    infringement is dismissed with prejudice for lack of subject matter jurisdiction

10   under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim a claim upon which

11   relief can be granted under Fed. R. Civ. P. 12(b)(6).

12       3.    Plaintiffs' second cause of action for violation of California Unfair

13   Competition Law is dismissed with prejudice for lack of subject matter jurisdiction

14   under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim a claim upon which

15   relief can be granted under Fed. R. Civ. P. 12(b)(6).

16

17   Dated: _____, 2016        _____

18                                  HONORABLE ANDREW J. WISTRICH

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

[PROPOSED] ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS  PLAINTIFFS' AMENDED COMPLAINT
VOGTS000773 2:15-cv-06822

EXHIBIT I

1

2          **<u>CERTIFICATE OF SERVICE</u>**

3          I am a resident of the State of California, over the age of eighteen years, and

4    not a party to the within action.  My business address is 11601 Wilshire Boulevard,

5    Suite 1400, Los Angeles, California 90025.  On **January 21, 2016** I served the

6    foregoing document(s) described as:

7
             **[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO
8            DISMISS PLAINTIFFS' COMPLAINT**

9

10   **[X]  BY ELECTRONIC SERVICE/CM-ECF:  I caused the foregoing
          document to be electronically served via CM/ECF for the United States
11        District Court, Central District of California upon all parties listed on the
          court docket for this case.**
12

13         I declare under penalty of perjury pursuant to the laws of the United States

14   that I am employed in the office of a member of the bar of this court at whose

15   direction the service was made.

16         Executed on **January 21, 2016**, at Los Angeles, California.

17

18                                                    /s/James A. Belton
                                                      James A. Belton
19

20

21

22

23

24

25

26

27

28

─────────────────────────────────────
                              - 2 -
                                              [PROPOSED] ORDER GRANTING
                                DEFENDANT'S MOTION TO DISMISS  PLAINTIFFS' AMENDED COMPLAINT
                                              VOGTS000774 2:15-cv-06822

C:\Users\jbelton\Downloads\Proposed Order.docx

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT I

FREEDMAN + TAITELMAN, LLP
Bryan J. Freedman, (SBN 151990)
bfreedman@ftllp.com
Sean M. Hardy (SBN 266446)
smhardy@ftllp.com
1901 Avenue of the Stars, Ste. 500
Los Angeles, CA 90067
Telephone: 310.201.0005
Facsimile: 310.201.0045

*Attorneys for Plaintiffs*
Penske Media Corporation and Variety Media, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENSKE MEDIA CORPORATION, a Delaware corporation; VARIETY MEDIA, LLC, a Delaware limited liability company<br><br>    Plaintiff,<br><br>  v.<br><br>FREEPLAY MUSIC, LCC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br>    Defendants. | Case No. 2:15-cv-06822 AJW<br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br><br>DATE:  FEBRUARY 29, 2016<br>TIME:   10:00 A.M.<br>CTRM:  690<br>JUDGE: HON. ANDREW J. WISTRICH |

VOGTS000775

OPPOSITION TO MOTION TO DISMISS

EXHIBIT I

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................1

II.  LEGAL STANDARD ...........................................................................................2

III. BACKGROUND ...................................................................................................3

IV. ARGUMENT.........................................................................................................8

   A.  The First Cause of Action Satisfies Both Requirements Of The Declaratory Judgment Act, 28 U.S.C. § 2201...............................................................................8

     1.  Freeplay Improperly Seeks To Litigate The Merits of This Case at the Pleading Stage ......................................................................................................10

     2.  Freeplay Ignores Plaintiffs' *De Minimis* Use Allegations.............................11

     3.  Plaintiffs Allege Freeplay's Copyright Misuse ............................................13

     4.  Plaintiffs Sufficiently Allege Fair Use ........................................................15

   B.  There Is No Proper Ground For This Court To Decline To Hear This Case .....  16

     1.  No sound basis exists for refusing to adjudicate this controversy..................16

   C.  Plaintiffs Have Standing Under the UCL ......................................................23

   D.  Leave To Amend Should Be Granted ..............................................................24

V.  CONCLUSION .....................................................................................................24

OPPOSITION TO MOTION TO DISMISS

VOGTS000776

EXHIBIT I

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,*
846 F.2d 733, 734-35 (1988) ..................................................................23

*Assessment Techs. of WI, LLC v. WIREdata, Inc.,*
350 F.3d 640, 642 (7th Cir. 2003) ..........................................................13

*Barquis v. Merchants Collection Association of Oakland, Inc.,*
7 Cal.3d 94, 112 (1972) ...........................................................................23

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007)......................................2

*Bennett v. Spoor Behrins Campbell & Young, Inc.,*
124 F.R.D. 562, 563-64 (S.D.N.Y. 1989) ...............................................11

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.,* 2
17 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) ...........................................10

*Capo, Inc. v. Doptics Med. Prods., Inc.,*
387 F.3d 1352, 1355 (Fed. Cir. 2004) .....................................................17

*Clemens v. Daimler Chrysler Corp.,*
534 F.3d 1017, 1022 (9th Cir. 2008) .........................................................3

*Colaprico v. Sun Microsystems, Inc.,*
758 F. Supp. 1335, 1339 (N.D. Cal. 1991)...............................................10

*Doe v. United States,*
58 F.3d 494, 497 (9th Cir. 1995) ...............................................................3

*E.E.O.C. v. Creative Networks, LLC,*
Case No. CV 05-3032, 2006 U.S. Dist. LEXIS 94183, 2006 WL 3834286, *3 (D. Ariz.
   Dec. 29, 2006) ..........................................................................................3

*Eldred v. Ashcroft,*
123 S. Ct. 769, 787(2003) .......................................................................14

*Elsmere Music, Inc. v. Nat'l Broad. Co.,*
623 F.2d 252 (2d Cir. 1980)......................................................................12

VOGTS000777

EXHIBIT I

*Elsmere Music, Inc. v. Nat'l Broad. Co., Inc.*,

482 F. Supp. 741, 744 (S.D.N.Y. 1980) ............................................................. 12

*EMC Corp. v. Norand Corp*

89 F.3d 807, 812 (Fed. Cir. 1996).......................................................17, 18 ,19, 21

*Eminence Capital LLC v. Aspeon, Inc.,*

316 F.3d 1048, 1052 ..........................................................................................24

*Erickson Prods. v. Kast*,

No. 5:13-cv- 05472, 2014 U.S. Dist. LEXIS 56711, 7-8 (N.D. Cal. Apr. 23, 2014)........15

*Fuller v. Vines,*

36 F.3d 65, 67 (9th Cir. 1994) ............................................................................24

*Genentech v. Eli Lilly & Co.,*

998 F.2d 931, 937 (Fed. Cir. 1993).....................................................................16

*Gerritsen v. Warner Bros. Entm't Inc.*,

No. CV 14-03305 MMM (CWx), 2015 U.S. Dist. LEXIS 84978, at *19 (C.D. Cal. Jan. 30, 2015)......................................................................................................... 3

*Gilligan v. Jamco Dev. Corp*.,

108 F.3d 246, 248-49 (9th Cir. 1997) ...................................................................2

*Illinois Tool Works Inc. v. Indep. Ink, Inc.*,

126 S. Ct. 1281 (2006)........................................................................................14

*In re Napster, Inc. Copyright Litig.*,

191 F. Supp. 2d 1087, 1103 (N.D. Cal. 2002) ....................................................13

*Intel Corp. v. Commonwealth Scientific & Indus. Research Org.*

455 F.3d 1364, 1368 (Fed. Cir. 2006) ................................................................13

*L.A. News Serv. v. CBS Broad., Inc.*,

305 F.3d 924, 938 (9th Cir. 2002) ...............................................................15, 16

*Lasercomb Am., Inc. v. Reynolds*,

911 F.2d 970, 978, 979 (4th Cir. 1990) ........................................................13, 14

*Law Offices of Mathew Higbee v. Expungement Assistance Services*,

214 Cal. App. 4th 544 (2013) ............................................................................23

iii

1   *Levin-Richmond Terminal Corp. v. Int'l Longshoremen's &*
2      *Warehousemen's Union, Local 10,*
3   751 F. Supp. 1373, 1375, 1377 (N.D. Cal. 1990)......................................................10, 16
4   *Medtronic, Inc. v. Mirowski Family Ventures, LLC,*
5   134 S. Ct. 843, 849-50 (2014)..............................................................................................9
6   *Meridian Project Systems, Inc. v. Hardin Const. Co., LLC,*
7   Case No. CIV-04-2728, 2005 U.S. Dist. LEXIS 23727, 2005 WL 2615523, *1 n. 1 (E.D.
8      Cal. Oct. 14, 2005) ............................................................................................................3
9   *Morton Salt Co. v. G.S. Suppiger Co.*
    314 U.S. 488, 493, 494 (1942) ........................................................................................14
10  *Newton v. Diamond,*
11  388 F.3d 1189, 1192-93, 1195-96 (9th Cir. 2004)......................................................11, 12
12  *Open Source Yoga Unity v. Choudhury,*
13  2005 WL 756558, *8 (N.D. Cal. 2005) ..........................................................................13
14  *Oracle America, Inc. v. Google Inc.,* 7
15  50 F.3d 1339, 1373 (Fed. Cir. 2014) ..............................................................................16
16  *PHC, Inc. v. Pioneer Healthcare, Inc.,*
17  75 F.3d 75, 79 (1st Cir. 1996)..........................................................................................20
18  *PhotoMedex, Inc. v. RA Med. Sys., Inc.,*
19  No. 08-CV-2224 WQH, 2009 U.S. Dist. LEXIS 36985, at *11-14 (S.D. Cal. Apr. 29,
20     2009).................................................................................................................................8, 9
21  *Plantronics, Inc. v. Callpod, Inc.,*
22  2015 U.S. Dist. LEXIS 7429, *1-*7 (N.D. Cal. Jan. 21, 2015) ..................................21, 22
23  *Plaspro GMBH v. Gens,*
24  No.: C 09-04302, 2011 U.S. Dist. LEXIS 28808, 16 (N.D. Cal. 2011) ...........................10
25  *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,*
26  121 F.3d 516, 520, 521 (9th Cir.1997) ...........................................................................13
27  *Public Affairs Assocs., Inc. v. Rickover,*
28  369 U.S. 111, 112 (1962)..................................................................................................16

1   *Rhoades v. Avon Prods.*,
2   504 F.3d 1151, 1165 (9th Cir. 2007) ................................................................20
3   *SanDisk Corp. v. STMicroelectronics, Inc.*,
4   480 F.3d 1372, 1383(Fed. Cir. 2007) ...............................................................16
5   *Schutte & Koerting, Inc. v. Swett & Crawford*,
6   298 F. App'x 613, 615 (9th Cir. 2008) ..............................................................11
7   *Shloss v. Sweeney*,
8   515 F. Supp. 2d 1068, 1079, 1080 (N.D. Cal. 2007)....................................14, 22
9   *Simmons v. Navajo County, Ariz.*,
10  609 F.3d 1011, 1023 (9th Cir. 2010) .................................................................11
11  *Skelly Oil Co. v. Phillips Petroleum Co.*,
12  339 U.S. 667, 671, 70 S. Ct. 876, 94 L. Ed. 1194 (1950)....................................9
13  *Smith v. State Farm Automobile insurance Co.*,
14  93 Cal.App.4th 700, 718 (2001) .......................................................................23
15  *Solis v. Zenith Capital, LLC*,
16  No. C 08-4854, 2009 U.S. Dist. LEXIS 43350, 7 (N.D. Cal. May 8, 2009)....................10
17  *Sony Corp. of Am. v. Universal City Studios, Inc.*,
18  464 U.S. 417, 432(1984).................................................................................14
19  *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,
20  497 F.3d 1271, 1289 (Fed. Cir. 2007) ...............................................................18
21  *South Bay Chevrolet v. General Motors Acceptance Corp.*
22  72 Cal.App.4th 861, 887 (1999) .......................................................................23
23  *State Farm Fire & Casualty Co. v. Superior Court*,
24  45 Cal.App.4th 1093, 1104 (1996) ....................................................................23
25  *Trew v. Volvo Cars of North America, LLC*,
26  Case No. CIV-S-051379, 2006 U.S. Dist. LEXIS 4890, 2006 WL 306904, *5 (E.D. Cal.
27  Feb. 8, 2006).................................................................................................3
28  *Vernon v. Qwest Communs. Int'l, Inc.*,
    643 F. Supp. 2d 1256, 1269 (W.D. Wash. 2009) ..............................................9

v

1
2  *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.,*
   342 F.3d 191, 205 (3d Cir. 2003) .......................................................13
3  *Vision Tech. Design & Mfg. v. Gen. Wire Spring Co.,*
4  No. CV-F-07-412 OWW/WMW, 2007 U.S. Dist. LEXIS 54046, at *60-61 (E.D. Cal.
5    July 13, 2007) ....................................................................9
6  *VMG Salsoul, LLC v. Ciccone,*
7  No. CV 12-05967 BRO (CWx), 2013 U.S. Dist. LEXIS 184127, at *35 (C.D. Cal. Nov.
     18, 2013) .......................................................................12, 13
8  *Weintraub v. Law Office of Patenaude & Felix, A.P.C.,*
9   No. 13-cv-1032-W(RBB), 2014 U.S. Dist. LEXIS 61070, 5 (S.D. Cal. Apr. 21, 2014) .11
10 *Williams v. Broadus,* 2
11 001 U.S. Dist. LEXIS 12894, No. 99 Civ. 10957 MBM, 2001 WL 984714, at *4
12   (S.D.N.Y. Aug. 27, 2001) .....................................................12
13 *Wilton v. Seven Falls Co.,*
14 515 U.S. 277, 288 (1995) .......................................................16
15 *Worth v. Selchow & Righter Co.,*
16 827 F.2d 569, 570 n. 1 (9th Cir. 1987) .........................................12
17 *Wyshak v. City Nat'l Bank,*
18 607 F.2d 824, 827 (9th Cir. 1979) ..............................................11
19 **Statutes**
20 28 U.S.C. § 2201 .......................................................1, 2, 8, 9, 10, 17, 19, 23
21 28 U.S.C. § 2201(a) ....................................................................9
22 California Business and Professions Code section 17200 ...............................21
23 **Other Authorities**
24 Const. Art. I, § 8, cl. 8 ...........................................................14
25 United States Courts for the Ninth Circuit Manual of Model Civil Jury Instructions
26   ...........................................................................................15
27
28

**Rules**

Fed. R. Civ. P. 8(a)...................................................................................2

Fed. R. Civ. P. 8(a)(2)..............................................................................2

Fed. R. Civ. P. 8(c).................................................................................11

Fed. R. Civ. P. 8(e)...................................................................................2

Fed. R. Civ. P. 12(b)(1).......................................................................1, 21

Fed. R. Civ. P. 12(b)(6)..........................................................1, 2, 3, 8, 9, 10

Fed. R. Civ. P. 15(c)................................................................................24

**Treatises**

Richard A. Posner and William F. Patry, *Fair Use And Statutory Reform In The Wake Of Eldred,*

92 Cal. L. Rev. 1639, 1658-59 (2004) ..................................................14

OPPOSITION TO MOTION TO DISMISS

VOGTS000782

EXHIBIT I

1  Plaintiffs Penske Media Corporation ("PMC") and Variety Media, LLC
2  ("Variety") (collectively, "Plaintiffs") hereby submit their Opposition to Defendant
3  Freeplay Music, LLC's ("Freeplay") Motion to Dismiss (hereinafter the "**Motion**").

4  **I.**   **INTRODUCTION**

5  Freeplay's Motion, made pursuant to Federal Rules of Civil Procedure, Rule
6  12(b)(1) and (6), asserts that this Court should decline to exercise its subject matter
7  jurisdiction and that Plaintiffs have failed to state a claim upon which relief may be
8  granted.  For the reasons that follow, Freeplay's Motion should be denied in its entirety.
9  At the hearing on Freeplay's previous motion to dismiss, the Court granted Freeplay's
10  motion based on the need for the complaint to specify the copyright at issue, as well as
11  the affirmative defenses on which Plaintiffs rely in their Declaratory Judgment claim.
12  Those issues have been remedied in the First Amended Complaint ("FAC"), which now
13  contains the specifics requested by the Court.  Further, at the hearing, the Court noted that
14  the Freeplay accused Plaintiffs of copyright infringement and failed to retract its
15  accusation or provide a covenant not to sue.  The Court did not countenance Freeplay's
16  argument that the action should be dismissed without leave because it was filed for a
17  "tactical advantage."

18  First, Freeplay's 12(b)(6) Motion improperly relies on disputed extrinsic evidence
19  to convert the Motion into a motion for summary judgment.  Freeplay's attempt to reach
20  the merits of the case demonstrates that it has been sufficiently apprised of the claims
21  against it.  Freeplay completely ignores the standard for pleading a claim under the
22  Declaratory Judgment Act, which requires that the plaintiff establish that an "actual case
23  or controversy" exists between the parties.  Plaintiffs have adequately alleged such a
24  claim.  Indeed, Freeplay no longer disputes that an "actual controversy" exists between
25  the parties.  Plaintiffs have sufficiently pleaded a claim under the Declaratory Judgment
26  Act.

27  Second, Freeplay's 12(b)(1) Motion fails, as it rests solely on the argument –
28  previously rejected by the Court – that this action was filed for an improper purpose.

VOGTS000783

EXHIBIT I

1  Freeplay now concedes that an "actual controversy" exists between the parties, and this

2  Court accordingly possesses subject matter jurisdiction. The FAC alleges that Freeplay

3  specifically threatened to sue Plaintiffs for copyright infringement for the use of music in

4  certain YouTube videos that Freeplay claims to hold the sole copyright in and to.  In the

5  Ninth Circuit, absent a showing of clear bad faith, the fact that a declaratory judgment

6  action might provide a tactical advantage to the plaintiff does not condone discretionary

7  dismissal.  Freeplay does not – because it cannot – make such a showing.  This Court

8  may properly entertain this action under the Declaratory Judgment Act.

9      Third, Freeplay properly alleges a claim under California's Unfair Competition

10  Law ("UCL").  This is only the pleading stage. The FAC provides fair notice to Freeplay

11  of the nature of the allegations against it as required by Rule 8(a)(2) of the Federal Rules

12  of Civil Procedure. As shown below, the Declaratory Judgment and UCL are supported

13  by sufficient factual assertions.  Freeplay may raise its arguments again at the merits

14  stage after both sides have been afforded a fair opportunity to take discovery and present

15  to the Court a full recitation of the evidence.

16  **II.  <u>LEGAL STANDARD</u>**

17      Plaintiffs in federal court are required to give only "a short and plain statement of

18  the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a). While the

19  Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon

20  which relief can be granted," they also require all pleadings to be "construed so as to do

21  justice." Fed. R. Civ. P. 12(b)(6), 8(e).  The purpose of Rule 8(a)(2) is to "'give the

22  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell*

23  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007). The Ninth

24  Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). *See, e.g.,*

25  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997) ("The Rule 8

26  standard contains a powerful presumption against rejecting pleadings for failure to state a

27  claim.") (internal quotation omitted). To avoid a Rule 12(b)(6) dismissal, a complaint

28  does not need detailed factual allegations, but it must plead "enough facts to state a claim

VOGTS000784
OPPOSITION TO MOTION TO DISMISS

EXHIBIT I

1   to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017,

2   1022 (9th Cir. 2008).  In keeping with this liberal pleading standard, the district court

3   should grant the plaintiff leave to amend if the complaint can possibly be cured by

4   additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

5       A court may not convert a Rule 12(b)(6) motion to dismiss into a motion for

6   summary judgment when disputed extrinsic evidence is presented. "The incorporation by

7   reference doctrine applies *only* when a document is central to plaintiff's claim and no

8   party questions its authenticity."  *Gerritsen v. Warner Bros. Entm't Inc.*, No. CV 14-

9   03305 MMM (CWx), 2015 U.S. Dist. LEXIS 84978, at \*19 (C.D. Cal. Jan. 30, 2015)

10   (declining to consider disputed evidence);  *see also E.E.O.C. v. Creative Networks, LLC*,

11   Case No. CV 05-3032, 2006 U.S. Dist. LEXIS 94183, 2006 WL 3834286, \*3 (D. Ariz.

12   Dec.  29,  2006) (refusing  to convert  a motion  to dismiss into  a motion for summary

13   judgment based on documents extraneous to the complaint because discovery and Rule

14   26(a) disclosures had not occurred); *Trew v. Volvo Cars of North America, LLC*, Case

15   No. CIV-S-051379, 2006 U.S. Dist. LEXIS 4890, 2006 WL 306904, \*5 (E.D. Cal. Feb.

16   8,  2006) (declining  to  consider  declarations  attached  to  a motion  to  dismiss and

17   to convert the motion into a motion for summary judgment because plaintiff had not had

18   sufficient time to conduct discovery); *Meridian Project Systems, Inc. v. Hardin Const.*

19   *Co., LLC*, Case No. CIV-04-2728, 2005 U.S. Dist. LEXIS 23727, 2005 WL 2615523, \*1

20   n. 1 (E.D. Cal. Oct. 14, 2005) (declining to convert a motion to dismiss into a motion

21   for summary judgment because discovery had just commenced). Freeplay improperly

22   presents disputed evidence to support its Motion.  *See* Objections to Declaration of

23   Michelle Ozog.

24   **III.   BACKGROUND**

25       This is a civil action seeking a declaratory judgment that Plaintiffs' use of portions

26   of certain musical works on the website YouTube does not constitute infringement of the

27   copyright bearing the United States Copyright Registration Number SR000033720 (the

28   "Copyright"). (FAC, ¶ 1). This case arises out of copyright litigation threats Freeplay

EXHIBIT I

1   made against Plaintiffs through its agent, TuneSat, LLC ("TuneSat"). (FAC, ¶ 2).

2   Freeplay's threats were intended to cause Plaintiffs to pay Freeplay a monetary sum that

3   far exceeded any actual value of the Copyright, which Freeplay made available for "free"

4   download to the general public on its website.  (FAC, ¶ 3).   Plaintiffs are in the business

5   of providing media content to consumers.  (FAC, ¶ 13).   They do so, in part, through the

6   operation of a channel on the media sharing website YouTube.   *Id.*   Through this

7   YouTube channel, Plaintiffs provide multi-media news content to users of YouTube.   *Id.*

8   Plaintiffs are competitors of Freeplay.   *Id.*

9        Plaintiffs are in the business of providing news and media content to consumers.

10   (FAC, ¶ 18).   In and around June 9, 2015, Freeplay's agent, TuneSat, sent an e-mail to

11   Plaintiffs.   *Id.*   The e-mail identified several alleged uses by Plaintiffs, through YouTube

12   videos, of "copyrighted music owned and controlled" by Freeplay.   *Id.*   Specifically, this

13   music consisted of two songs, titled "Love Doctor" and "Funky Dan," which both

14   appeared on the album, "Acid Jazz Volume 1."   *Id.*   The e-mail threatened, among other

15   things, that if the matter could not be resolved to Freeplay's satisfaction, "we will be

16   forced to treat this matter as an infringement of our client's copyrights and we will

17   consider all available options and remedies to resolve this matter." *Id.*   The e-mail further

18   provided that, "the mere removal of the identified links or other content will not resolve

19   the infringements that have already occurred."   *Id.*

20        TuneSat's June 9, 2015 e-mail did not reach Plaintiffs until in and around June 18,

21   2015, when TuneSat forwarded it to Plaintiffs' general counsel. (FAC, ¶ 19).   On June

22   19, 2015, Plaintiffs took action to remove from public viewing the 61 YouTube videos

23   TuneSat had identified.   *Id.*   The primary purpose of these 61 YouTube videos was to

24   convey criticism, commentary, and news reporting related to the entertainment industry.

25   *Id.* Any use of the material subject to the Copyright in these 61 YouTube videos was *de*

26   *minimis*. *Id.* The content of the June 9, 2015 email informed Plaintiffs that the removal of

27   the videos alone would not dispel the threat of litigation. *Id.* Unless a monetary payment

28   was made to Freeplay, Plaintiffs understood they would be sued for copyright

VOGTS000786
OPPOSITION TO MOTION TO DISMISS

EXHIBIT I

1   infringement.  *Id.* Following the receipt of the June 9, 2015, email, Plaintiffs' general

2   counsel gained knowledge of Freeplay's history of copyright infringement litigation. *Id.*

3   Plaintiffs also discovered that only a single copyright, the Copyright, existed for "Acid

4   jazz: vol. 1." *Id.*

5          On August 11, 2015, TuneSat attorney Michelle Ozog sent Plaintiffs an e-mail,

6   stating that the "videos at issue" "seem to remain of an unlicensed and infringing nature."

7   (FAC, ¶ 20).  Although only two of Freeplay's songs, and a single copyright, were at

8   issue, Freeplay demanded $60,000 to settle its "infringement claims." *Id.*  The fact that

9   this matter had been referred to an attorney strongly impressed upon Plaintiffs that

10  Freeplay would imminently commence litigation if its monetary demands were not met.

11  *Id.*

12         After researching the issue, Plaintiffs determined Freeplay's settlement demand

13  was patently unreasonable and outrageous, and that the true value of Freeplay's copyright

14  was only a few hundred dollars.  (FAC, ¶ 21).  Plaintiffs considered settlement

15  discussions with Freeplay, via TuneSat, to be over at this point.  *Id.*  Several weeks later,

16  on September 2, 2015, Plaintiffs sent attorney Ozog an e-mail, flatly rejecting the

17  $60,000 demand and outlining the reasons why, in Plaintiffs' view, it was "outrageous."

18  *Id.*  Accordingly, Plaintiffs' dilemma remained.  (FAC, ¶ 22).  They could do nothing and

19  be sued, or accede to Freeplay's extraordinary demands.  *Id.*  In order to forestall

20  potential damages, Plaintiffs filed this action on September 2, 2015.  *Id.*  Pursuant to

21  Freeplay's numerous threats, Plaintiffs reasonably fear that Freeplay will sue them based

22  on their prior use of the Copyright in their YouTube videos, even though such videos are

23  no longer viewable by the public. (FAC, ¶ 23).   After receiving Freeplay's litigation

24  threats, Plaintiffs researched and became aware of Freeplay's extensive history of filing

25  suit against alleged copyright infringers.  *Id.*  Freeplay has failed and refused to provide

26  any covenant not to sue Plaintiffs based on their prior use of the Copyright. (FAC, ¶ 24).

27  In the absence of such a covenant, Plaintiffs face the danger of imminent suit absent a

28  declaratory judgment that they do not, and have not, infringed upon the Copyright.  *Id.*

OPPOSITION TO MOTION TO DISMISS

VOGTS000787

EXHIBIT I

1       Freeplay has engaged a series of deliberate and unlawful false and misleading
2 representations that its music is "free" to use on YouTube videos. (FAC, ¶ 25).
3 Individual YouTube users who are lured by Freeplay's representations of "free" music
4 for their YouTube videos have the opportunity to browse Freeplay's catalog on its
5 website. This catalog is also directly accessible from Google, without having to navigate
6 first to Freeplay's homepage. (FAC, ¶ 26).  After browsing Freeplay's catalog and
7 listening to samples, the user has the option to select "Add to Cart" with respect to any
8 song.  Upon checkout, the user is prompted to select from a dropdown menu of license
9 options. Two of these options are "YouTube: Personal use on YouTube only" and
10 "Internet: Personal Use (YouTube only)."   The cost of both of these categories of
11 licenses is zero.  (FAC, ¶ 27).

12       Whichever option the user selects, a popup window appears for a "Master
13 Recording / Synchronization License" (the "License").  Section 4 of the License sets
14 forth the permitted uses as follows: (1) If the consumer selects the option for "YouTube:
15 Personal use on YouTube only," the License permits "YouTube Personal use on
16 YouTube only."; and (2) If the consumer selects the option for "Internet: Personal Use
17 (YouTube only)," the License permits "Internet Personal Use (Youtube only)."  (FAC, ¶
18 28).  In either case, "personal use" on YouTube is expressly permitted.  For both options,
19 the License gives the consumer no indication that an individual's use of a song on
20 YouTube is anything other than a permitted "personal use."  Indeed, "personal use" is not
21 defined anywhere in the License.  The License does not incorporate any other terms by
22 reference, nor does it offer a link to any other terms extraneous to the License. (FAC, ¶
23 29).  After the License is shown, all the user has to do to download the music and obtain
24 the "free" license is to enter an email address and click his or her acceptance of the
25 License. The license and download transaction takes place directly on Freeplay's website.
26 (FAC, ¶ 30).  Freeplay's FAQ assures its users that personal use of its music on YouTube
27 is, in fact, "free."  (FAC, ¶ 31).  It is only in the fine print of Freeplay's "Terms of Use"
28 that Freeplay purports to disclose that a permitted "personal use" on YouTube is, in fact,

VOGTS000788

EXHIBIT I

1   extremely limited.  Crucially, these "Terms of Use" are ***not*** part of the License to which

2   the user agrees to be bound when downloading Freeplay's music.  Nor does the user

3   otherwise agree to be bound by these "Terms of Use" with any manifestation of assent, in

4   any form.  (FAC, ¶ 33).

5           Just as importantly, at no point in the process of downloading Freeplay's music is

6   the user prompted or required to read these "Terms of Use." It is not surprising then that

7   many, if not most, of the users who download Freeplay's music are not aware that the

8   fine print of Freeplay's unilateral "Terms of Use" purports to exclude free use by

9   individuals on YouTube. (FAC, ¶ 34).  Freeplay has openly violated 16 C.F.R. §

10  251.1(a)(2) by misrepresenting to consumers that it offers "FREE MUSIC FOR

11  YOUTUBE," without the requisite "clear and conspicuous" disclosure of the conditions

12  that purportedly must be met for the offer of "free music" to apply.  (FAC, ¶¶ 36-38).

13  The natural and proximate – and, indeed, deliberate – consequence of Freeplay's

14  misconduct has been the very copyright "infringements" by which Freeplay purports to

15  have been injured.   In reality, Freeplay seeks to earn a windfall from these

16  "infringements" through exorbitant settlement and litigation demands.  (FAC, ¶ 39).

17  Freeplay has asserted copyright infringement claims in over two dozen actions over the

18  last several years. Most, if not all, of these litigations resulted in monetary settlements for

19  Freeplay that exceeded what it could or would have earned in license fees, had the

20  purported terms of usage been properly disclosed on its website. (FAC, ¶ 40).  Freeplay

21  routinely demands payment of $30,000 per work in its settlement demands even though

22  the purported "infringements" were caused by its own false and deceptive advertising,

23  and even though the cost to license those works from Freeplay for "business use" ($100

24  to $250 per work) is orders of magnitude less than the amount of its unconscionable

25  demands.  (FAC, ¶ 41).

26          Freeplay has thus leveraged and therefore misused its copyrights, including

27  without limitation the Copyright, to undermine the Constitution's goal of promoting

28  invention and creative expression.   The creation of new works, such as YouTube videos,

1  is precisely the sort of creative expression which the Copyright Act is intended to
2  promote.  By encouraging YouTube users to download its music for "free," and then
3  issuing litigation threats and monetary demands to those same YouTube users for
4  purported violations of its License, Freeplay engages in a pattern which actively
5  undermines the Copyright Act's public policy of promoting creative expression.
6  Freeplay's actions discourage YouTube users from creating further YouTube videos.
7  Freeplay misuses the Copyright Act's remedies in order to threaten unsuspecting
8  YouTube users with monetary demands for the maximum statutory damages available
9  under the Copyright Act.  Freeplay purposefully misleads YouTube users in order to avail
10  itself of these threats of copyright infringement litigation, as the actual value of its
11  copyrights is quite low. (FAC, ¶ 44).

12  **IV.   <u>ARGUMENT</u>**

13      **A.    The First Cause of Action Satisfies Both Requirements Of The**
14          **Declaratory Judgment Act, 28 U.S.C. § 2201**

15          Freeplay's Rule 12(b)(6) Motion fails.  The Declaratory Judgment Act provides
16  that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United
17  States ... may declare the rights and other legal relations of any interested partying
18  seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §
19  2201.  By the plain wording of the statute, a declaratory relief plaintiff must fulfill two
20  requirements in order to state a claim for declaratory relief: (1) establish an actual
21  controversy between the parties; and (2) establish that the court has jurisdication.
22  Plaintiffs have done so and thus pleaded a claim.

23          Freeplay nevertheless argues that Plaintiffs have failed to state a claim under the
24  Declaratory Judgment Act.  However, district courts throughout the Ninth Circuit have
25  held that a pleading which establishes an actual controversy and  jurisdiction under the
26  Declaratory Judgment Act necessarily states a claim sufficient to survive a 12(b)(6)
27  motion to dismiss.  In *PhotoMedex, Inc. v. RA Med. Sys., Inc.*, No. 08-CV-2224 WQH,
28  2009 U.S. Dist. LEXIS 36985, at *11-14 (S.D. Cal. Apr. 29, 2009), the court denied the

1    defendant's 12(b)(6) motion to dismiss a declaratory judgment claim for failure to state a

2    claim.  The *PhotoMedex* court held that,  "[v]iewing the facts in a light most favorable to

3    the Plaintiff, the Complaint alleges facts to support that a substantial controversy exists

4    between the parties and the allegations rise above a purely speculative level to warrant

5    declaratory relief." *Id.*  Likewise, in *Vernon v. Qwest Communs. Int'l, Inc.*, 643 F. Supp.

6    2d 1256, 1269 (W.D. Wash. 2009), the defendants moved to dismiss the plaintiffs'

7    Declaratory Judgment Act claim under Rule 12(b)(6) for failure to give "fair notice" of

8    the claims against them.  The *Vernon* court found that the complaint adequately alleged

9    an actual controversy and the allegations thus gave "sufficient notice of Plaintiffs'

10    accusations and the relief requested." *Id.*  Additionally, in *Vision Tech. Design & Mfg. v.*

11    *Gen. Wire Spring Co.*, No. CV-F-07-412 OWW/WMW, 2007 U.S. Dist. LEXIS 54046,

12    at *60-61 (E.D. Cal. July 13, 2007), the court denied the defendant's motion to dismiss a

13    Declaratory Judgment Act action for failure to state a claim.  The court found that the

14    complaint sufficiently alleged that the plaintiff had a real and reasonable fear of litigation

15    based on the defendant's cease and desist letter. *Id.* at *44-61. Therefore, the 12(b)(6)

16    motion to dismiss failed because "[a]n actual case or controversy exists between

17    [plaintiff] and General Wire for purposes of the Declaratory Judgment Act." *Id.* at *61.

18      Freeplay's argument fails because Freeplay improperly attempts to transfigure

19    Rule 8's requirement of a "short and plain statement" into something akin to Rule 9's

20    requirement of particularized facts. Plaintiffs' FAC adequately pleaded a claim seeking

21    declaratory judgment that none of its actions infringe upon the Copyright.  As the

22    declaratory-judgment defendant, Freeplay bears the burden to prove otherwise.

23    *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849-50 (2014).

24      The Declaratory Judgment Act permits the federal courts to "declare the rights and

25    other legal relations of any interested party seeking such declaration, whether or not

26    further relief is or could be sought." 28 U.S.C. § 2201(a).  Although the Act "enlarged

27    the range of remedies available in the federal courts, [it] did not extend their jurisdiction."

28    *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S. Ct. 876, 94 L. Ed. 1194

VOGTS000791

OPPOSITION TO MOTION TO DISMISS

EXHIBIT I

(1950). Plaintiffs' FAC clearly meets the plain requirements of the Declaratory
Judgment Act.

### 1.   Freeplay Improperly Seeks To Litigate The Merits of This Case at the Pleading Stage

As shown above, Plaintiffs have properly pleaded a claim under the Declaratory Judgment Act. The Court's 12(b)(6) analysis is at an end. Unfortunately, rather that applying the correct standard to determine the sufficiency of Plaintiffs' Declaratory Judgment Act claim, Freeplay improperly attempts to litigate the merits of the Plaintiffs' allegations of non-infringement – essentially Plaintiffs' affirmative defenses to Freeplay's threatened copyright infringement action. Such arguments on the merits are premature. Attacks on affirmative defenses at the pleading stage are disfavored "because of the limited importance of pleading in federal practice, and because [such motions] are often used as a delaying tactic." *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002); *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991); *Plaspro GMBH v. Gens*, No.: C 09-04302, 2011 U.S. Dist. LEXIS 28808, 16 (N.D. Cal. 2011). Freeplay thus seeks to use its Motion as the equivalent of a motion to strike affirmative defenses. However, motions to strike affirmative defenses on the grounds of insufficiency have a "dilatory and often harassing character. Thus, even when technically appropriate and well-founded, Rule 12(f) motions often are not granted in the absence of a showing of prejudice to the moving party." *Solis v. Zenith Capital, LLC*, No. C 08-4854, 2009 U.S. Dist. LEXIS 43350, 7 (N.D. Cal. May 8, 2009). Freeplay's Motion is not well-founded, and Freeplay plainly has not suffered any genuine prejudice, thus compounding the dilatory and harassing nature of this motion practice.

The Court should not resolve factual or legal disputes on a motion to strike. All attempts by Freeplay to argue the facts must be rejected in favor of a trial on the merits. A "motion to strike defenses should not be employed as a vehicle for determining disputed and substantial questions of law." *Levin-Richmond Terminal Corp. v. Int'l*

10
OPPOSITION TO MOTION TO DISMISS

VOGTS000792

EXHIBIT I

1   *Longshoremen's & Warehousemen's Union, Local 10*, 751 F. Supp. 1373, 1375 (N.D.
2   Cal. 1990) (citations and internal quotations omitted). Moreover, "even when the facts
3   are not disputed ... the courts are very reluctant to determine disputed, substantial
4   questions of law on a motion to strike" because they are "more properly determinable
5   only after adequate discovery and, if necessary, a complete hearing on the merits."
6   *Bennett v. Spoor Behrins Campbell & Young, Inc.*, 124 F.R.D. 562, 563-64 (S.D.N.Y.
7   1989).

8         Pursuant to FRCP 8(c), the "key to determining the sufficiency of pleading an
9   affirmative defense is whether it gives plaintiff ***fair notice*** of the defense." *Wyshak v.*
10  *City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979) (emphasis added). The Ninth Circuit
11  continues to hold that a defense is sufficiently alleged if it provides the plaintiff with "fair
12  notice" of the affirmative-defense. *See Simmons v. Navajo County, Ariz.*, 609 F.3d 1011,
13  1023 (9th Cir. 2010); *Schutte & Koerting, Inc. v. Swett & Crawford,* 298 F. App'x 613,
14  615 (9th Cir. 2008); *Weintraub v. Law Office of Patenaude & Felix, A.P.C.*, No. 13-cv-
15  1032-W(RBB), 2014 U.S. Dist. LEXIS 61070, 5 (S.D. Cal. Apr. 21, 2014). Freeplay
16  plainly has been given fair notice of the affirmative grounds of non-infringement, as it
17  improperly seeks summary judgment at the pleading stage.

18        **2.      Freeplay Ignores Plaintiffs' *De Minimis* Use Allegations**

19        Freeplay's Motion fails outright, as it does not address Plaintiffs' allegations that
20  they are entitled to a Declaratory Judgment of non-infringement as any use of the
21  copyrighted material was *de minimis*.  (FAC ¶¶  19, 47).  In the Ninth Circuit, *de minimis*
22  use of copyrighted material is an independent defense to a copyright infringement claim.
23  "For an unauthorized use of a copyrighted work to be actionable, the use must be
24  significant enough to constitute infringement. This means that even where the fact of
25  copying is conceded, no legal consequences will follow from that fact unless the copying
26  is substantial." *Newton v. Diamond*, 388 F.3d 1189, 1192-93 (9th Cir. 2004) (internal
27  citations and quotation marks omitted). This *de minimis* exception "has long been a part
28  of copyright law," and "reflects the legal maxim, *de minimis non curatlex*"—that is, the

EXHIBIT I

1    law does not concern itself with trifles. *Id.* at 1193.

2         Copying is *de minimis* if the portion copied is neither qualitatively nor

3    quantitatively significant in relation to the plaintiff's work as a whole. *Newton*, 388 F.3d

4    at 1195 (*citing Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n. 1 (9th Cir. 1987)

5    ("[T]he relevant inquiry is whether a substantial portion of the protectable material in the

6    plaintiff's work was appropriated—not whether a substantial portion of defendant's work

7    was derived from plaintiff's work."). In *Newton*, the Court held that no reasonable juror

8    could find the 3 note sampled portion of the composition to be a quantitatively or

9    qualitatively significant portion of the composition as a whole. The Ninth Circuit noted

10   that the segment lasted only "six seconds" of the plaintiff's work, and was roughly two

11   percent of the four-and-a-half-minute sound recording. *Newton*, 388 F.3d at 1195-96.

12   Qualitatively, the section of the composition was no more significant than any other

13   section. *Id.; see also Williams v. Broadus,* 2001 U.S. Dist. LEXIS 12894, No. 99 Civ.

14   10957 MBM, 2001 WL 984714, at *4 (S.D.N.Y. Aug. 27, 2001) (fact that copyrighted

15   material was replayed throughout allegedly infringing song irrelevant); *VMG Salsoul,*

16   *LLC v. Ciccone*, No. CV 12-05967 BRO (CWx), 2013 U.S. Dist. LEXIS 184127, at *35

17   (C.D. Cal. Nov. 18, 2013) (*de minimis* use where copyrighted music used for only sixteen

18   total seconds out of a seven-minute recording).

19        The determination of whether a particular use is *de minimis* is thus fact intensive

20   and not suited for the pleading stage.  In the context of a musical composition and/or

21   sound, the courts that have ruled on a *de minimis* defense have done so on a motion for

22   summary judgment, rather than a motion to dismiss. *See, e.g. Newton*, 388 F.3d at 1195

23   (affirming a district court's grant of summary judgment on a defendant's *de minimis*

24   defense where "[o]n the undisputed facts of this record, no reasonable juror could find the

25   sample portion of the composition to be qualitatively or quantitatively significant portion

26   of the composition of the whole"); *Elsmere Music, Inc. v. Nat'l Broad. Co., Inc.*, 482 F.

27   Supp. 741, 744 (S.D.N.Y. 1980) *aff'd sub nom. Elsmere Music, Inc. v. Nat'l Broad. Co.*,

28   623 F.2d 252 (2d Cir. 1980) (ruling on a *de minimis* defense at the summary judgment

1   stage); *VMG Salsoul, LLC,* 2013 U.S. Dist. LEXIS 184127, at *35 (same).   As the

2   Motion fails to address the fact that *de minimis* use is an independent ground for non-

3   infringement, it must be denied.

4   **3.      Plaintiffs Allege Freeplay's Copyright Misuse**

5   Adjudication of the affirmative defense of copyright misuse is proper in a

6   declaratory judgment action. *See, e.g.*, *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,* 121

7   F.3d 516, 520 (9th Cir.1997) (declaratory relief plaintiff permitted to assert copyright

8   misuse defense); *Intel Corp. v. Commonwealth Scientific & Indus. Research Org.* 455

9   F.3d 1364, 1368 (Fed. Cir. 2006) (adjudicating declaratory judgment plaintiff's

10  affirmative defenses of patent misuse, equitable estoppel, and laches); *Open Source Yoga*

11  *Unity v. Choudhury*, 2005 WL 756558, *8 (N.D. Cal. 2005) (allowing copyright misuse

12  to be pleaded as an affirmative defense in a declaratory judgment action).

13  Freeplay argues that copyright misuse is only applicable to situations in which a

14  copyright holder commits antitrust violations or creates unduly restrictive licensing

15  agreements. *See* MTD at 2, 4-6. Freeplay misstates the law. Copyright misuse covers

16  more than antitrust violations and restrictive licenses. It applies to any use "violative of

17  the public policy embodied in the grant of a copyright." *Practice Mgmt.*, 121 F.3d at 521

18  (*citing Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990)); *see also In*

19  *re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1103 (N.D. Cal. 2002) ("[The]

20  test is whether [the copyright owner]'s use of his or her copyright violates the public

21  policy embodied in the grant of a copyright, not whether the use is anti-competitive.").

22  Thus, any attempt to extend copyright protection beyond its appropriate scope is

23  recognized as misuse. *See Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d

24  640, 642 (7th Cir. 2003) (noting attempts to control uncopyrighted material amount to

25  misuse); *Lasercomb*, 911 F.2d at 978 (finding manufacturer committed copyright misuse

26  where a license asserted control over the idea, not just the expression); *Video Pipeline,*

27  *Inc. v. Buena Vista Home Entm't, Inc.,* 342 F.3d 191, 205 (3d Cir. 2003)( "[A] copyright

28  holder could leverage its copyright to restrain the creative expression of another without

1    engaging in anti-competitive behavior or implicating the fair use and idea/expression

2    doctrines."); *see generally* Richard A. Posner and William F. Patry, *Fair Use And*

3    *Statutory Reform In The Wake Of Eldred*, 92 Cal. L. Rev. 1639, 1658-59 (2004)

4    (exaggerating copyrights to deny Fair Use rights is "serious form" of copyright misuse).

5         Freeplay contends that Plaintiffs' allegations concerning copyright misuse by

6    Freeplay against other parties are irrelevant. *See* MTD at 5. That is simply wrong.

7    Plaintiffs need not have been parties, or indeed even been harmed, by Freeplay's misuse

8    in order to assert a copyright misuse defense because misuse renders a copyright

9    unenforceable ***against everyone*** until the misuse is cured. *See Lasercomb*, 911 F.2d at

10   979; *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 493 (1942) ("Equity may

11   rightly withhold its assistance from [a misuse] of the patent by declining to entertain a

12   suit for infringement, and should do so at least until it is made to appear that the improper

13   practice has been abandoned and that the consequences of the misuse of the patent have

14   been dissipated."), *overruled on other grounds by Illinois Tool Works Inc. v. Indep. Ink,*

15   *Inc.*, 126 S. Ct. 1281 (2006). Thus, Freeplay's conduct towards others is highly relevant

16   to its copyright misuse claim.

17        Copyright misuse applies broadly if a copyright is leveraged to undermine the

18   Constitution's goal of promoting invention and creative expression. *Shloss v. Sweeney*,

19   515 F. Supp. 2d 1068, 1080 (N.D. Cal. 2007).  The underlying policy rationale for the

20   misuse doctrine is set out in the Constitution's Copyright and Patent Clause: "to promote

21   the Progress of Science and useful Arts."Const. Art. I, § 8, cl. 8; *see also Morton Salt*,

22   314 U.S. at 494 ("The patentee, like these other holders of an exclusive privilege granted

23   in furtherance of a public policy [trademark and copyright holders], may not claim

24   protection of his grant by the courts where it is being used to subvert that policy.");  The

25   "ultimate aim" of copyright law is "to stimulate artistic creativity for the general public

26   good." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432(1984); *see*

27   *also Eldred v. Ashcroft*, 123 S. Ct. 769, 787(2003) ("Copyright's purpose is

28   to *promote* the creation and publication of free expression.").

VOGTS000796

OPPOSITION TO MOTION TO DISMISS

EXHIBIT I

1    Plaintiffs allege detailed facts demonstrating that Freeplay has leveraged the
2    Copyright in order to deceive its users that the music available for download on
3    Freeplay's website is "free," only to thereafter issue exorbitant monetary demands to the
4    same users.  (FAC ¶¶  25-44).  In so doing, Freeplay actively discourages its users from
5    engaging in creative expression through the creation of YouTube videos. (FAC ¶ 44).
6    Freeplay's actions are thus violative of the public policy embodied in the Copyright Act
7    and constitute copyright misuse.  Rather than accepting these allegations as true, as it
8    must, Freeplay instead resorts to disputing the FAC's factual allegations (Opp. at 4:21-
9    24) and offering inadmissible extrinsic evidence (Opp. at 5:12-15).  Freeplay's desire to
10   litigate the merits of this claim demonstrates that Freeplay has been sufficiently apprised
11   of this defense.

12        **4.      Plaintiffs Sufficiently Allege Fair Use**

13        Plaintiffs have sufficiently pleaded fair use to provide fair notice to Freeplay.
14   Freeplay improperly seeks to adjudicate the issue of fair use at the pleading stage. "Fair
15   use requires individualized weighing of the equities of a given use of a given work." *L.A.*
16   *News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 938 (9th Cir. 2002).  The determination of
17   fair use is a mixed question of law and fact, inappropriate for the pleading stage.  *Id.* at
18   942.  The four, nonexclusive factors to consider are: "(1) the purpose and character of the
19   use, including whether such use is of a commercial nature or is for nonprofit educational
20   purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the
21   portion used in relation to the copyrighted work as a whole; and (4) the effect of the use
22   upon the potential market for or value of the copyrighted work." *Erickson Prods. v. Kast*,
23   No. 5:13-cv- 05472, 2014 U.S. Dist. LEXIS 56711, 7-8 (N.D. Cal. Apr. 23, 2014); *see*
24   *also* United States Courts for the Ninth Circuit Manual of Model Civil Jury Instructions
25   17.18.  Contrary to Freeplay's assertion, the FAC provides precise factual allegations
26   supporting a finding on non-infringement based on fair use.  (FAC ¶¶ 48-56).

27        In summary, Freeplay again conflates Plaintiffs' allegation obligations with
28   Freeplay's view of the merits. Where a "defense raises substantial questions of fact and

VOGTS000797
OPPOSITION TO MOTION TO DISMISS

EXHIBIT I

law [it is] inappropriate for resolution [at the pleading stage]." *Levin-Richmond Terminal Corp.*, 751 F. Supp. at 1377. Freeplay argues that Plaintiffs' fact allegations concerning the alleged use of the Copyright will not qualify as fair use.  But fair use is a mixed question of law and fact, and "requires a case-by-case determination whether a particular use is fair, and the statute notes [the referenced and factually plead] four nonexclusive factors to be considered." *Oracle America, Inc. v. Google Inc.*, 750 F.3d 1339, 1373 (Fed. Cir. 2014). Indeed, in *L.A. News Serv. v. CBS Broad., Inc.*, after a detailed comparison between the works at issue, the Ninth Circuit found a television station's direct copying of a copyrighted video to constitute fair use, even though the video was used in promotional advertisements for a television show and incorporated into the introductory montage for the television show itself.  305 F.3d at 937-42.  Just because Freeplay does not agree with the allegations does not mean the defense should be dismissed.

**B.     There Is No Proper Ground For This Court To Decline To Hear This Case**

"When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1383(Fed. Cir. 2007) (quoting *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)). "Furthermore, the exercise of discretion must be supported by a sound basis for refusing to adjudicate an actual controversy."  *Id.* Freeplay requests that this Court exercise its discretion to dismiss Plaintiffs' FAC, which Freeplay contends was filed for the improper purpose of attempting to gain an advantage in settlement negotiations.  MTD at 5-6. These arguments are baseless.

**1.     No sound basis exists for refusing to adjudicate this controversy**

While district courts have limited discretion to dismiss an actual controversy if it "will serve no useful purpose," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995), "[c]ourts cannot decline to entertain such an action as a matter of whim or personal disinclination."  *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962).

1    Courts thus rely on a number of "well-founded reasons" to dismiss a suit.  *Capo, Inc. v.*
2    *Doptics Med. Prods., Inc*., 387 F.3d 1352, 1355 (Fed. Cir. 2004).  None of those narrow
3    exceptions are applicable here.

4            Freeplay contends that *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 812 (Fed. Cir.
5    1996)  counsels in favor of a discretionary dismissal.  MTD at 10-11.  But it does not,
6    most significantly because *EMC* considered very different facts under different law.
7    Critically, the Ninth Circuit has since articulated that absent a showing of clear bad faith,
8    the fact that a declaratory judgment action might provide a tactical advantage to the
9    plaintiff does not condone discretionary dismissal.

10           EMC was a manufacturer of disk drive storage subsystems and was approached by
11   Norand Corporation regarding Norand's patents.  *EMC,* 89 F.3d at 809. The parties had
12   three meetings over the course of a few months to negotiate a sale or license of Norand's
13   patents.  *Id.*  In the third meeting, Norand indicated that it was approaching six of EMC's
14   competitors regarding the sale or licensing of Norand's patents.  *Id.*  Following this third
15   meeting, the parties had confirmed plans for a fourth meeting.  *Id.* Three days later, EMC
16   filed a declaratory-judgment action against Norand, which Norand moved to dismiss for
17   lack of subject-matter jurisdiction.  *Id.* The district court found that determining whether
18   there was an actual "case or controversy" would be a "significant undertaking," and
19   instead decided to grant Norand's motion by exercising its discretion under the
20   Declaratory Judgment Act to decline to entertain the action.  *Id.*  The district court
21   declined to hear the case because (as characterized by the Federal Circuit) "a party in
22   EMC's position could abuse the declaratory judgment device to obtain a more favorable
23   bargaining position in its ongoing negotiations with the patentee and also to undermine
24   the value of the patent so as to impede its sale or licensing to a third party."  *Id.* at 814.
25   Upon review, the Federal Circuit affirmed: "In light of the limited scope of our review,
26   we cannot conclude that the district court's decision on that issue was so contrary to the
27   teachings and experience concerning the functions and extent of federal judicial power
28   that it constituted an abuse of discretion."  *Id.* at 815 (citation omitted).

OPPOSITION TO MOTION TO DISMISS

EXHIBIT I

1    As an initial matter, what the *EMC* district court viewed as a difficult question of

2  jurisdiction simply does not exist here.  Not only has the case law since then relaxed the

3  question of declaratory-judgment jurisdiction, but Freeplay's repeated and direct threats

4  of litigation leave no question as to the existence of a case or controversy.  Further, the

5  facts supporting the Court's exercise of jurisdiction in favor of Plaintiffs' claims here are

6  much stronger than those in *EMC*—the Court should not use its discretion to dismiss the

7  case.  Plaintiffs have consistently turned down Freeplay's monetary demands because

8  Plaintiffs do not believe the single copyright has real value.  Here, unlike in *EMC*,

9  Freeplay has made express and direct threats of copyright litigation and of real and

10  significant damages.  Critically, unlike in EMC, settlement discussions had broken down

11  before the Complaint was filed – Plaintiffs realized that the parties' positions were so far

12  apart that no monetary resolution was achievable.  In other words, Plaintiffs are not using

13  this action to obtain a more-favorable bargaining position because factors other than this

14  case have called the value of the copyright into question and because there has never

15  been a realistic negotiation.  Instead, Plaintiffs seek a judgment that will resolve the

16  conflict—the precise purpose of the Declaratory Judgment Act. *See id.* at 815 ("The

17  purpose of the Act is to enable a person who is reasonably at legal risk because of an

18  unresolved dispute, to obtain judicial resolution of that dispute without having to await

19  the commencement of legal action by the other side.") (internal citation omitted).

20    The facts of *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1289

21  (Fed. Cir. 2007) are closer to the facts of this case.  Sony was contacted by Mr. Vogel's

22  attorney.   497 F.3d at 1274.  Mr. Vogel was an inventor of two patents concerning

23  parental control technology.  *Id.*  Mr. Vogel's attorney alleged that Sony infringed Mr.

24  Vogel's patent and sought to open a dialogue with Sony regarding the matter.  *Id.*  After

25  an investigation, Sony responded that it had "some serious questions about the validity"

26  of the patents.  *Id.*  Sony further indicated that all of the asserted claims were invalid over

27  certain  prior-art  references,  which  Sony  identified.  *Id.* Mr. Vogel's attorneys never

28  responded.  *Id.*   Years later, Sony was contacted by Guardian Media Technologies

regarding the Vogel patents.  *Id.* at 1275.  Sony reiterated its belief that the patents were invalid.  *Id.*  The parties later met in person, and no agreement was reached.  *Id.* at 1276. Sony filed a declaratory-judgment action, which Guardian moved to dismiss for lack of subject-matter jurisdiction.  *Id.*  After filing the complaint, Sony filed a request with the PTO for an *ex parte* reexamination.  *Id.* at 1281.  The district court dismissed Sony's complaint, finding no actual case or controversy, and also indicated that it would also exercise its discretion not to hear the case because "the facts as a whole create[d] an appearance that Plaintiffs filed these lawsuits as an intimidation tactic to gain leverage in the licensing negotiations." *Id.* (citation omitted).

Upon review, the Federal Circuit reversed the district court's decision that there was no actual case or controversy.  *Id.* at 1287.  And as to the discretionary point, the court indicated it was "troubled" by the district court's comments.  *Id.* at 1288-89. According to the Federal Circuit: "we do not think that a nefarious motive on the part of the appellants can be so easily inferred."  *Id.* at 1289.  The Federal Circuit also distinguished *EMC*, finding "there is no affirmative evidence to suggest that appellants filed this suit in order to obtain a more favorable bargaining position in any ongoing license negotiations."  *Id.*  The Federal Circuit, to leave no doubt as to the changes in the law since *EMC,* firmly stated that "[e]ven if these suits have had the effect of placing appellants in a more favorable negotiating position, that effect is not a sufficient reason to decline to hear the suit."  *Id.*

Here, as in *Sony*, Plaintiffs have repeatedly expressed their view regarding the questionable validity of Freeplay's licensing requirements.  Here, as in *Sony*, no evidence suggests that Plaintiffs attribute any value (other than avoiding the costs of litigation) to Freeplay's copyright.  Finally, here, as the Federal Circuit suggested in *Sony*, it is more in line with both the purposes of the Declaratory Judgment Act to resolve the actual controversy that is before the Court, rather than wait for Freeplay to resurrect this litigation at a later date.  *Id.*

19

OPPOSITION TO MOTION TO DISMISS

VOGTS000801

EXHIBIT I

1   The Ninth Circuit adhered to similar reasoning when it reversed the district court's

2   discretionary dismissal of a declaratory judgment action in *Rhoades v. Avon Prods.*, 504

3   F.3d 1151, 1165 (9th Cir. 2007).   In *Rhoades*, after a round of negotiations between the

4   parties regarding trademark licensing, the plaintiff's counsel filed a declaratory judgment

5   action seeking a declaration that plaintiff did not infringe on Avon's registered marks.  *Id.*

6   at 1154-55.   The complaint was filed the ***same day*** settlement talks stalled.  *Id.*   The

7   district court granted Avon's motion to dismiss, finding that the plaintiff's declaratory

8   judgment action was brought for an improper motive.  *Id.* at 1156.   The Ninth Circuit

9   strongly disagreed.   It reversed, holding that "we cannot but conclude that the failed

10  settlement negotiations were just that--failure to agree on a settlement."  *Id.* at 1159.   The

11  Ninth Circuit held:

12
13          We are unsure why Avon insists that [plaintiff's] . . . reluctance to accede
            to Avon's settlement requests illustrates bad faith in filing a declaratory
14          relief action. If anything, it suggests that [plaintiff] filed the action after
            settlement stalled because it feared an infringement lawsuit . . . [Plaintiff]
15          ***may have had strategic reasons for bringing this action, but that should
            not affect whether [plaintiff's] complaint alleged a case or controversy***
16          ***that established jurisdiction***. As the First Circuit put it in a similar case,
            "absent a showing of bad faith so substantial as to foreclose equitable
17          relief, [ ] subjective aims do not matter."
18
19  *Id.* (citing *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 79 (1st Cir. 1996)

20  (emphasis added).   Under these circumstances, the Ninth Circuit held the district court

21  had abused its discretion in declining to entertain the plaintiff's declaratory judgment

22  action.  *Rhoades,* 504 F.3d at 1164-65.

23      *Rhoades* is controlling here.   Just as in *Rhoades*, this lawsuit was filed when

24  negotiations between the parties broke down.   Before this action was filed, it was clear to

25  Plaintiffs that continued negotiations would serve no useful purpose, given the wide

26  discrepancy between Freeplay's $60,000 settlement demand and the nuisance value

27  Plaintiffs attributed to the Copyright.   Further, just as in *Rhoades*, it is ***Freeplay*** that

28  claims this action was filed for tactical purposes.   Freeplay's September 10, 2015 e-mail

was clearly drafted in an attempt to engineer its "tactical advantage" argument – in the absence of any such claims by Plaintiffs. Plaintiffs have sought no advantage over Freeplay through the commencement of this action. Freeplay makes no showing of bad faith whatsoever – let alone a showing so substantial as to foreclose equitable relief to Plaintiffs. Plaintiffs' references to unrelated actions involving different parties and hearsay media articles are entirely irrelevant and should be disregarded. Plaintiffs had nothing whatsoever to do with those cases. This action is the first dispute between Plaintiffs and Freeplay.

In *Plantronics, Inc. v. Callpod, Inc.*, 2015 U.S. Dist. LEXIS 7429, *1-*7 (N.D. Cal. Jan. 21, 2015), the parties were engaged in licensing negotiations regarding Callpod's patents. In early September 2014, Plantronics indicated that it "may be interested in bidding on Callpod's IP" and requested the reserve price. *Id.* at *6-*7. Plantronics was informed the reserve price was in the "low to mid 7 figures." *Id.* On October 17, 2014, Plantronics filed a declaratory judgment action of noninfringement of Callpod's patents. *Id.* In response, Callpod contacted Plantronics in an attempt "to structure a license that is mutually beneficial." *Id.* at *7. On October 19, 2014, Plantronics responded that its previous offer was too high, and asked Callpod to "make a more compelling proposal, offer us a royalty free license, and request that we withdraw our filing in return." *Id.* Settlement negotiations then ceased – several days after Plantronics' action had been filed. Callpod filed a 12(b)(1) motion to dismiss, which the district court denied. After finding an actual controversy existed, the court specifically declined to follow *EMC*. *Id.* at *15. The court noted that the "record shows that Plantronics ***repeatedly rejected*** Callpod's offers and stated its view that Callpod's patents were ***not worth much***, and throughout the parties' negotiations, ***the parties' positions were very far apart***." *Id.* (emphasis added). Instead, the district court followed *Sony* and based its denial of Callpod's motion to dismiss on its finding of an actual controversy due to Callpod's threats of litigation. *Id.* at *17. The court found Plantronics' statements after filing suit did not amount to evidence of an improper motive. *Id.* Lastly, the court

VOGTS000803

OPPOSITION TO MOTION TO DISMISS

EXHIBIT I

1   held that "the fact that a lawsuit has the effect of placing the plaintiff in a more favorable

2   bargaining position is not a sufficient reason to decline to hear the suit." *Id.* (internal

3   citations omitted).

4       *Plantronics* is directly apposite.  Like *Plantronics*, Plaintiffs' general counsel

5   unequivocally rejected Freeplay's $60,000 demand as "outrageous."  The firm tone of the

6   September 2, 2015 e-mail leaves no doubt that settlement discussions were over.  Like

7   *Plantronics*, Plaintiffs made clear that any value attributable to Freeplay's copyright was

8   minimal - $400 at most.  Needless to say, as in *Plantronics*, "the parties' positions were

9   very far apart."  There was no gap to be bridged, or advantage to be gained, by filing this

10  action.  Plaintiffs viewed Freeplay's monetary demand as so unreasonable as to be

11  outrageous – effectively ending settlement negotiations well before this action was filed.

12  Further, like in *Plantronics*, it was ***Freeplay*** that contacted Plaintiffs after this action was

13  filed.  In *Plantronics,* the declaratory judgment plaintiff actually proposed the defendant

14  offer it a royalty free license in exchange for the dismissal of its complaint.  The district

15  court did not consider such behavior to evidence an improper motive.  Here, Plaintiffs'

16  September 11, 2015 response clearly stated that any further "back and forth" would

17  "waste time," given the "very unreasonable settlement demand" Freeplay had insisted

18  upon.  There was no suggestion that the action had been filed to gain some bargaining

19  advantage, or an offer to dismiss the complaint in exchange for a "royalty free license."

20  Simply put, there is no evidence that this action was filed in bad faith.

21      Freeplay cannot claim that this dispute is hypothetical and would serve no purpose.

22  Freeplay has unequivocally accused Plaintiffs of infringing its copyrighted musical

23  works.  Freeplay has not retracted these accusations and has not immunized Plaintiffs

24  from suit.  Further, Freeplay has not retracted its demand for substantial monetary

25  damages.  As such, absent this Declaratory Judgment action, Plaintiffs could either

26  proceed at peril of liability for damages and other costs, or pay Freeplay's monetary

27  demands and stand silenced.  *See Shloss,* 515 F. Supp. 2d at 1079 (denying request for

28

VOGTS000804
OPPOSITION TO MOTION TO DISMISS

EXHIBIT I

discretionary dismissal, where actual controversy existed – notwithstanding plaintiff's representation to the contrary).

Exercising jurisdiction over this case serves the purpose of the Declaratory Judgment Act by preventing Plaintiffs from this "*in terrorem* choice." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 733, 734-35 (1988). Plaintiffs have chosen to file this suit "to clear the air" and "settle the conflict" between them and Freeplay. *Id.* This is consistent with, not contrary to, the purposes of the Declaratory Judgment Act. Discretionary dismissal is therefore not appropriate.

### C.   Plaintiffs Have Standing Under the UCL

Freeplay's argument that Plaintiffs lack standing under the UCL fails. "The UCL is worded broadly, which has led the California Supreme Court to observe that it was "intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable 'new schemes which the fertility of man's invention would contrive.' " *Barquis v. Merchants Collection Association of Oakland, Inc.*, 7 Cal.3d 94, 112 (1972). The unfair prong of California Business and Professions Code section 17200 "provides an independent basis for relief." *Smith v. State Farm Automobile insurance Co.*, 93 Cal.App.4th 700, 718 (2001). "It is not necessary," therefore, "for a business practice to be 'unlawful' in order to be subject to an action under the unfair competition law. *Id.* "In general the 'unfairness' prong 'has been used to enjoin deceptive or sharp practices[.]" *South Bay Chevrolet v. General Motors Acceptance Corp.* 72 Cal.App.4th 861, 887 (1999). A business act is unfair "when the practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious . . ." *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal.App.4th 1093, 1104 (1996).

The case of *Law Offices of Mathew Higbee v. Expungement Assistance Services*, 214 Cal. App. 4th 544 (2013) is controlling. In *Higbee,* the plaintiff law office filed a UCL action alleging that the defendant had engaged in the unauthorized practice of law. *Id.* at 550-51. The plaintiff alleged that not only had the defendant harmed members of

the general public, but that it had deprived the plaintiff of revenues. *Id.* The California Court of Appeal reversed the trial court's dismissal of the complaint for lack of standing, even though the parties were not direct competitors and had no business dealings. *Id.* at 564-65. The appellate court noted that economic injury under the UCL may be shown in "innumerable" ways. *Id.* at 561. Even though the parties were not direct competitors and had no business dealings, the court held that, by alleging increased advertising costs, the plaintiff had pleaded an "identifiable trifle of injury as necessary for standing under the UCL." *Id*. "The language of the UCL does not leave the court hamstrung, unable to even consider an action seeking injunctive relief ***just because the defendant engages in its purportedly unlawful activity via the Internet and has not had any direct business dealings with the plaintiff***." *Id.* (emphasis added.) In the instant case, Plaintiffs allege that they are competitors with Freeplay. (FAC ¶¶ 13,.) Plaintiffs further allege they have lost advertising revenues from their YouTube videos as a result of Freeplay's unfair conduct. (FAC ¶ 59.) Under California law, Plaintiffs have sufficiently alleged economic injury to establish UCL standing.

**D.    Leave To Amend Should Be Granted**

In the event this Court is inclined to consider Freeplay's Motion, leave to amend should be provided to Plaintiffs. FRCP 15(c) provides that leave to amend "shall be freely given when justice so requires." There is a "strong policy" in federal courts allowing for the amendment of pleadings. *See Fuller v. Vines*, 36 F.3d 65, 67 (9th Cir. 1994). Dismissal without leave to amend is improper unless the complaint could not be saved by any amendment. *Eminence Capital LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052. As such, it is respectfully requested that leave to amend be provided should the Motion be granted.

**V.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Motion in its entirety.

VOGTS000806
OPPOSITION TO MOTION TO DISMISS

EXHIBIT I

Dated: February 8, 2016

FREEDMAN + TAITELMAN, LLP

By: /s/ Bryan J. Freedman
Bryan J. Freedman
Sean M. Hardy,
Attorneys for Plaintiffs Penske Media Corporation and Variety Media, LLC