Exhibit J

ROBERT C. WELSH (SBN 130782)
BAKER & HOSTETLER LLP
11601 WILSHIRE BOULEVARD, SUITE 1400
LOS ANGELES, CA 90025-7120
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: rwelsh@bakerlaw.com

OREN J. WARSHAVSKY (*admitted pro hac vice*)
owarshavsky@bakerlaw.com
TATIANA MARKEL (*admitted pro hac vice*)
tmarkel@bakerlaw.com
BAKER & HOSTETLER LLP
45 ROCKEFELLER PLAZA
NEW YORK, NY 10111

Attorneys For Defendant
FREEPLAY MUSIC, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENSKE MEDIA CORPORATION, a Delaware corporation; VARIETY MEDIA, LLC, a Delaware limited liability company, | Case No.: 2:15-cv-06822 |
| Plaintiffs, | **FREEPLAY MUSIC LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT** |
| v. | Filed concurrently with the Declaration of Mark Brinker |
| FREEPLAY MUSIC, LLC, a Delaware limited liability company, and DOES 1 through 5, inclusive, | Date: February 29, 2016 Time: 10:00 am Courtroom: 690 |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION........................................................................................1

I.   PLAINTIFFS' DECLARATORY JUDGMENT CLAIM
     SHOULD BE DISMISSED.....................................................................3

     A.   The Amended Complaint Fails to State a Claim for Relief........3

          1.   Plaintiffs Have Not Pleaded Copyright Misuse...............5

               a.   The Amended Complaint Makes No
                    Allegations About the Copyrights-in-Suit..............5

               b.   The Amended Complaint Fails to Properly
                    Plead a Copyright Misuse Claim...........................6

          2.   Plaintiffs Have Not Pleaded Fair Use..............................9

               a.   The Amended Complaint Contains Only
                    Conclusory Allegations of Fair Use.......................9

               b.   The Fair Use Defense is Subject to Dismissal
                    on a Motion to Dismiss. ...................................11

          3.   Plaintiffs Have Not Pleaded a *De Minimis* Defense.......14

          4.   FPM Is Not Moving to Strike Affirmative Defenses. ....15

     B.   The Amended Complaint Was Filed for an Improper
          Purpose ...................................................................................16

          1.   There Is No Controversy Sufficient to Support
               Jurisdiction....................................................................17

          2.   This Action was Brought to Create Leverage in
               Negotiations. ................................................................19

II.  PLAINTIFFS' CALIFORNIA'S UNFAIR COMPETITION LAW
     CLAIM SHOULD BE DISMISSED....................................................21

III. LEAVE TO AMEND SHOULD BE DENIED ...................................22

CONCLUSION ........................................................................................23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

VOGTS000809

EXHIBIT J

# TABLE OF AUTHORITIES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**Page(s)**

**Cases**

*A&M Records v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) .................................................... 5, 6, 7, 8

*Adjmi v. DLT Ent't Ltd.*,
    97 F. Supp. 3d 512 (S.D.N.Y. 2015) .................................................. 11

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
    790 F. Supp. 2d 1024 (N.D. Cal. 2011) ............................................... 16

*Apple Inc. v. Psystar Corp.*,
    658 F.3d 1150 (9th Cir. 2011) .................................................... 6, 7, 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................. 1, 5

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
    350 F.3d 640 (7th Cir. 2003) ............................................................ 7

*Burnett v. Twentieth Century Fox Film Corp.*,
    491 F. Supp. 2d 962 (C.D. Cal. 2007) ................................................ 11

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*,
    217 F. Supp. 2d 1028 (C.D. Cal. 2002) .............................................. 16

*Chodos v. West Publishing Co.*,
    292 F.3d 992 (9th Cir. 2002) ...................................................... 22, 23

*Colaprico v. Sun Microsystems, Inc.*,
    758 F. Supp. 1335 (N.D. Cal. 1991) ................................................. 16

*Earvana, LLC v. Ernie Ball, Inc.*,
    No. CV 14-2302-R, 2014 U.S. Dist. LEXIS 185113 (C.D. Cal. July
    21, 2014) .............................................................................. 23

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ..................................................................... 4

*Graham v. U.S. Bank, Nat'l Ass'n*,
    No. 3:15-cv-0990-AC, 2015 U.S. Dist. LEXIS 175158 .......................... 3

*Gribin v. Hammer Galleries*,
    793 F. Supp. 233 (C.D. Cal. 1992) ............................................... 18, 19

VOGTS000810

EXHIBIT J

**TABLE OF AUTHORITIES**
**(continued)**

*Griggs v. Pace Am. Grp., Inc.*,
    170 F.3d 877 (9th Cir. 1999) ..................................................................22

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
    896 F.2d 1542 (9th Cir. 1990) ...............................................................18

*Hall v. Time*,
    70 Cal. Rptr. 3d 466 (2008) ..................................................................21

*Hanes Corp. v. Millard*,
    531 F.2d 585 (D.C. Cir. 1976) ...............................................................19

*Indymac Res., Inc. v. Cross*,
    No. SACV 12-0029 DOC (MLGx), 2012 U.S. Dist. LEXIS 110691
    (C.D. Cal. Aug. 7, 2012) ..........................................................................3

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ...............................................................13

*Lasercomb Am., Inc. v. Reynolds*,
    911 F.2d 970 (4th Cir. 1990) ...........................................................5, 6, 8

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.*,
    214 Cal. App. 4th 544 (2013) ...........................................................21, 22

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008) ........................................ 11, 12, 16, 23

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...............................................................................21

*Metro–Goldwyn–Mayer Distrib. Corp. v. Bijou Theatre Co.*,
    59 F.2d 70 (1st Cir.1932) ..........................................................................8

*Morton Salt Co. v. G.S. Suppiger Co.*,
    314 U.S. 488 (1942) .................................................................................7

*In re Napster, Inc. Copyright Litig.*,
    191 F. Supp. 2d 1087 (N.D. Cal. 2002) ...............................................6, 8

*Newton v. Diamond*,
    388 F.3d 1189 (9th Cir. 2004) ...........................................................14, 15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

VOGTS000811

EXHIBIT J

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Open Source Yoga Unity v. Choudhury*,
No. C 03-3182 PJH, 2005 U.S. Dist. LEXIS 10440 (N.D. Cal. Apr.
1, 2005) ............................................................................................8, 9

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) ..............................................................13

*PhotoMedex, Inc. v. RA Med. Sys., Inc.*,
No. 08-CV-2224 WQH, 2009 U.S. Dist. LEXIS 36985 (S.D. Cal.
Apr. 29, 2009) ......................................................................................4

*Plantronics, Inc. v. Callpod, Inc.*,
No. 14-cv-04639-SI, 2015 U.S. Dist. LEXIS 7429 (N.D. Cal. Jan.
21, 2015) ........................................................................................18, 20

*Plaspro GMBH v. Gens*,
No. C 09-04302 PSG, 2011 U.S. Dist. LEXIS 28808 (N.D. Cal.
2011) ....................................................................................................16

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*,
121 F.3d 516 (9th Cir. 1997) ......................................................5, 6, 8

*Rhoades v. Avon Prods., Inc.*,
504 F.3d 1151 (9th Cir. 2007) ...............................................17, 18, 20

*Righthaven LLC v. Realty One Grp., Inc.*,
No. 2:10-cv-1036-LRH-PAL, 2010 U.S. Dist. LEXIS 111576 (D.
Nev. Oct. 19, 2010).............................................................................11

*Savage v. Council on American-Islamic Relations, Inc.*,
No. C 07-6076 SI, 2008 U.S. Dist. LEXIS 60545 (N.D. Cal. July
25, 2008) ..............................................................................................11

*Seals-McClellan v. Dreamworks, Inc.*,
120 Fed. Appx. 3 (9th Cir. 2004)..........................................................4

*Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*,
No: C 09-1468 SBA, 2009 U.S. Dist. LEXIS 61825 (N.D. Cal. Jul.
17, 2009) ..............................................................................................11

*Shloss v. Sweeney*,
515 F. Supp. 2d 1068 (N.D. Cal. 2007) .................................................7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

VOGTS000812

EXHIBIT J

*Sony Corp. v. Universal City Studios, Inc.*,
 464 U.S. 417.................................................................12

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,
 497 F.3d 1271 (Fed. Cir. 2007) ...........................................18

*Theranos, Inc. v. Fuisz Pharma LLC*,
 876 F. Supp. 2d 1123 (N.D. Cal. 2012)..................................3

*UMG Recordings, Inc. v. MP3.com, Inc.*,
 92 F. Supp. 2d 349 (S.D.N.Y. 2000) ......................................7

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
 643 F. Supp. 2d 1256 (W.D. Wash. 2009)................................4

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
 342 F.3d 191 (3d Cir. 2003)................................................7

*Vision Tech. Design & Mfg, Inc. v. General Wire Spring Co.*,
 No. CV-F-07-412 OWW/WMW, 2007 U.S. Dist. LEXIS 54046
 (E.D. Cal. July 13, 2007) ...................................................4

**Statutes**

17 U.S.C. § 107 ....................................................................12

Declaratory Judgment Act, 28 U.S.C. § 2201(a) ...........................3

Unfair Competition Law .........................................................21

**Rules**

Fed. R. Civ. P. 12(b)(1).........................................................23

Fed. R. Civ. P. 12(b)(6).....................................................13, 23

Fed. R. Civ. P. 15 ................................................................22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VOGTS000813

EXHIBIT J

Defendant Freeplay Music, LLC ("FPM"), respectfully submits this reply memorandum in further support of its motion to dismiss the amended complaint ("Amended Complaint") filed by Penske Media Corporation and Variety Media, LLC ("Plaintiffs") and in response to Plaintiffs' opposition ("Opposition") to FPM's motion.

## INTRODUCTION

Plaintiffs brought this suit for one of two reasons: either to help negotiate a better price for a license, or avoid paying for their unauthorized use of FPM's copyrights altogether. Plaintiffs filed on the same day their general counsel promised to respond to FPM's first license demand. Their original complaint was ignobly copied from other complaints irrelevant to this action. At oral argument on FPM's first motion to dismiss, Plaintiffs did not even attempt to argue that their original complaint should survive, only asserting their right to amend.

As is often the case when a party brings a suit for an improper purpose, its goal is the litigation itself. That is evident from the Amended Complaint, which is essentially an inaccurate *ad hominem* attack on FPM. But even if all of the facts alleged in the Amended Complaint are true, they are irrelevant to Plaintiffs' claims. Plaintiffs seek to have this Court declare their unauthorized use of FPM's copyrighted works "noninfringing," because: (1) FPM misused the copyrights-in-suit; (2) Plaintiffs' uses qualify as fair; and (3) Plaintiffs' uses of the works were *de minimis*. But other than conclusory allegations, there are no relevant facts alleged; the Amended Complaint fails to "plead[] factual content that [would] allow[] the court to draw the reasonable inference that [FPM] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Copyright Misuse.* The Amended Complaint contains no allegations concerning copyright misuse. Rather the Amended Complaint posits that hypothetical consumers—but notably not Plaintiffs themselves—would be confused by FPM's advertising. Even if these facts were true, and they are not,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

VOGTS000814

they fail to plead the elements of a copyright misuse claim—namely that FPM exceeded the scope of the monopoly power granted by Congress. More important, Plaintiffs are required to plead that FPM misused the copyrights-in-suit. Plaintiffs make no such allegations, rather sticking to general hypothetical allegations about FPM's entire catalogue—one that contains at least 50,000 copyrights. Plaintiffs have failed to plead any facts demonstrating that the copyrights-in-suit (or any other copyright) have been misused.

*Fair Use.* Plaintiffs allege that they, as entertainment news companies, used FPM's music in videos they posted on YouTube. Beyond conclusory allegations repeating the elements of a fair use defense, Plaintiffs plead no facts to support their claim. Plaintiffs do not describe the use at issue, nor do they even hint at why their use would be transformative, non-commercial, or otherwise fair. The reason is obvious: Plaintiffs used FPM's copyrights for their own commercial gain. By proffering only conclusory allegations, Plaintiffs fail to sufficiently plead a plausible fair use claim.

*De Minimis*. Other than the conclusory allegation that their use was *de minimis*, Plaintiffs plead no facts to support this defense. Plaintiffs fail to plead how much of FPM's copyrighted music they used in each of the 61 videos (i.e., a comparison of the length of the video to the length of time they use FPM's music). Plaintiffs do not address the amount of each copyrighted song they used (i.e., what percentage of each song was used in any, let alone all, of the videos). Plaintiffs fail to plead whether the portions of FPM's music they used were qualitatively significant (i.e., whether they used the hook, etc.). No facts which could give rise to this defense have been pleaded.

*Plaintiffs' Objection to the Videos*. Plaintiffs do not want the Court to see their videos containing FPM's music, as they belie Plaintiffs' fair use and *de minimis* defenses. Plaintiffs removed these videos from the Internet, depriving the Court a means by which to take judicial notice of them. Plaintiffs refused to attach

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2

VOGTS000813

EXHIBIT J

the videos to either their original complaint or the Amended Complaint. And in response to TuneSat (FPM's agent) providing those videos to the Court, Plaintiffs, while not disputing that these are the very videos about which they brought their claim, challenge authenticity. The Court can reach its ruling without viewing the videos—they were supplied to give the Court an alternative basis for finding Plaintiffs' claims are meritless. Yet, Plaintiffs' objection speaks volumes: they want this litigation to last as long as possible because it is nothing more than a negotiation ploy.

The Amended Complaint should be dismissed.

## I. PLAINTIFFS' DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED

### A. The Amended Complaint Fails to State a Claim for Relief

Plaintiffs contend that: "in order to state a claim for declaratory relief [they need only]: (1) establish an actual controversy between the parties; and (2) establish that the court has jurisdiction." (Opp. at 8.) Plaintiffs misunderstand the law. "Because declaratory relief is a remedy and not an independent cause of action, showing a real and substantive controversy is dependent on the existence of other properly pled causes of action." *Indymac Res., Inc. v. Cross*, No. SACV 12-0029 DOC (MLGx), 2012 U.S. Dist. LEXIS 110691, at *20 (C.D. Cal. Aug. 7, 2012); *see also Graham v. U.S. Bank, Nat'l Ass'n*, No. 3:15-cv-0990-AC, 2015 U.S. Dist. LEXIS 175158, at *38-39 (D. Or. Dec. 2, 2015 ("The Declaratory Judgment Act, 28 U.S.C. § 2201(a), does not create a cause of action; instead, it creates a remedy for existing causes of action"); *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123 (N.D. Cal. 2012) ("[T]o survive the motion to dismiss . . . Plaintiffs must have pled sufficient facts as to" the merits of the claims on which they base their declaratory judgment action.)

Misconstruing the law, Plaintiffs contend that simply alleging the existence of an actual controversy and jurisdiction under the Declaratory Judgment Act

3

VOGTS000816

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

sufficiently states a claim. (Opp. at 8-9.) In so doing, Plaintiffs disregard that each case they cite had complaints pleading facts supporting and/or refuting the underlying claim with sufficient specificity to allow the Court to conclude whether the remedy of declaratory judgment was warranted. *See PhotoMedex, Inc. v. RA Med. Sys., Inc.*, No. 08-CV-2224 WQH, 2009 U.S. Dist. LEXIS 36985, at *1-3, *13-14 (S.D. Cal. Apr. 29, 2009) (plaintiffs' complaint, seeking a declaration that their earlier prosecution of defendant was not malicious, alleged all of the necessary facts about the prior action to allow the Court to make that determination); *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1269 (W.D. Wash. 2009) (complaint seeking declaration that defendant's early termination fees were unenforceable, described the terms of the agreement and salient facts); *Vision Tech. Design & Mfg, Inc. v. General Wire Spring Co.*, No. CV-F-07-412 OWW/WMW, 2007 U.S. Dist. LEXIS 54046, *1-8 (E.D. Cal. July 13, 2007) (complaint seeking declaration of each party's intellectual property rights provided an extremely detailed description of the parties' business relationship, interactions, the cease and desist letter, and the development and design of the elements of the intellectual property that would refute the copyright infringement claim).

Here, Plaintiffs seek a declaration that they have not infringed FPM's copyrights. Therefore, Plaintiffs must proffer some factual allegations—rather than mere conclusory statements—that FPM could not succeed on a claim for copyright infringement. To establish a claim for copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) unauthorized copying of constituent elements of the work. *Seals-McClellan v. Dreamworks, Inc.*, 120 Fed. Appx. 3, 4 (9th Cir. 2004); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The Amended Complaint does not address, let alone challenge, FPM's ownership of the copyrights-in-suit. Likewise, the Amended Complaint does not dispute that Plaintiffs copied FPM's music without authorization, or that Plaintiffs posted videos on YouTube containing FPM's copyrights. Even in the most

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

4

VGGTS060817

charitable light, Plaintiffs have failed to "plead[] factual content that allows the court to draw the reasonable inference that [they have not infringed FPM's copyrights]." *Iqbal*, 556 U.S. at 678. Thus, what Plaintiffs really seek is a declaration that certain defenses to copyright infringement—copyright misuse, fair use, and *de minimis* use—inoculate them from infringement. As discussed below, Plaintiffs fail to plead any facts to support these defenses that would allow the Court to reasonably infer that a remedy of declaratory judgment of noninfringment is proper.

### 1. Plaintiffs Have Not Pleaded Copyright Misuse.

#### a. The Amended Complaint Makes No Allegations About the Copyrights-in-Suit

The copyright misuse defense "prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly." *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) ("*Napster*"). When a particular copyright has been misused, the copyright misuse defense prevents enforcement of *that* copyright. *See, e,g., Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 978-79 (4th Cir. 1990) (the court found that Lasercomb misused the copyright to its Interact software, and prevented it from enforcing that copyright); *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 520-21 (9th Cir. 1997) (the court found that the AMA misused its copyrighted coding system, and prevented it from enforcing that copyright).

The Amended Complaint makes no allegations concerning the misuse of either of the two copyrights-in-suit. Though it makes various allegations about FPM's website, the Amended Complaint makes no allegations that the copyrighted songs are on FPM's website. The Amended Complaint also makes no allegations that any of the hypothetical confused consumers sought out these songs, used these songs, or were confronted by FPM about their use of these songs. Even if the allegations about false advertising were true (and they are not), and even if such

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

5

VOGTS000818

1   allegations could give rise to a copyright misuse defense (and they cannot),

2   Plaintiffs do not connect those allegations to the copyrights-in-suit or the

3   relationship among the parties, and as such they have not pleaded any facts upon

4   which this Court could make a reasonable inference that copyright misuse occurred

5   here.

6       This alone is a sufficient basis for dismissing Plaintiffs' claim.

7

8          **b.**    **The Amended Complaint Fails to Properly Plead a Copyright Misuse Claim.**

9

10     The copyright misuse doctrine is used sparingly.  *See Apple Inc. v. Psystar*

11  *Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011).  Relying on the reasoning in *Napster*

12  and its progeny, FPM's opening brief explains that copyright misuse requires an

13  unlawful expansion of the monopoly rights to which a copyright holder is entitled

14  under the Copyright Act.  (FPM's Motion to Dismiss Plaintiffs' Amended

15  Complaint at 4, ECF No. 36.)  FPM explained that "[t]he defense is most

16  commonly seen where there is a tying arrangement (such as a requirement to buy

17  unlicensed products), or a restriction added to a license (such as one preventing the

18  licensee from using competing products)."  (*Id.* at 2.)

19     In response, Plaintiffs claim the doctrine is much broader and applies to any

20  situation in which a copyright is leveraged to undermine creative expression.

21  (Opp. at 13-15.)  Yet the very cases Plaintiffs cite fall into one of the two categories

22  identified by FPM: each case is either a tying arrangement or a license restriction

23  that goes beyond the use of the copyright at issue.  *See, e.g.*, *Practice Mgmt.*, 121

24  F.3d at 520-21 (AMA's license required use of AMA's copyrighted coding system

25  and prevented use of competing coding system);  *Lasercomb*, 911 F.2d at 978

26  (software manufacturer's license barred licensees from creating competing

27  software); *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1105 (N.D.

28  Cal. 2002) (Napster alleged MusicNet's licenses were unduly restrictive and/or

6

FREEPLAY MUSIC, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT

2:15-cv-06822

VOGTS000819

EXHIBIT J

Baker & Hostetler LLP
ATTORNEYS AT LAW
LOS ANGELES

anticompetitive); *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 647 (7th Cir. 2003) (using infringement suit to obtain protection for material beyond the scope of copyright law); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 206 (3d Cir. 2003) (Disney's film trailer licenses precluded web sites displaying the trailers from derogating Disney and the entertainment industry; Court found *no* copyright misuse); *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 493 (1942) (owner of patent covering a salt tablet machine could not tie patent license to an unpatented product and require licensees to use only unpatented salt tablets sold by the patent owner); *Shloss v. Sweeney*, 515 F. Supp. 2d 1068, 1080 (N.D. Cal. 2007) (defendants improperly leveraged copyrights by intimidating plaintiff from using works not covered by copyrights and/or works to which defendants did not own or control copyrights).

Plaintiffs' broad reading of the misuse doctrine is contrary to the rights conferred to FPM by the Copyright Act. As the *Napster* Court explained: "'A [copyright holder's] "exclusive" rights, derived from the Constitution and the Copyright Act, include the right, within broad limits, to curb the development of . . . a derivative market by refusing to license a copyrighted work or by doing so only on terms the copyright owner finds acceptable.'" *Napster*, 239 F.3d at 1027 (quoting *UMG Recordings, Inc. v. MP3.com, Inc.*, 92 F. Supp. 2d 349, 351 (S.D.N.Y. 2000)) (finding no evidence that plaintiffs sought to control areas outside of their grant of monopoly.).

In *Psystar*, the Ninth Circuit explained that "[t]he copyright misuse doctrine does not prohibit using conditions to control use of copyrighted material, but it does prevent copyright holders from using the conditions to stifle competition." 658 F.3d at 1159. The *Psystar* Court provided the following explanation:

> While copyright owners may choose to simply exclude
> others from their work, i.e. not to transfer their rights . . .
> courts have long held that copyright holders may also use

7

VCGTS00820

EXHIBIT J

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

their limited monopoly to leverage the right to use their work on the acceptance of specific conditions, *see, e.g.,* *Metro–Goldwyn–Mayer Distrib. Corp. v. Bijou Theatre Co.*, 59 F.2d 70, 77 (1st Cir.1932) (holding that if a motion picture license is subject to the condition that its exhibition must occur at specified times and places, the licensee's exhibitions at other times and places is without authority from the licensor and therefore constitutes copyright infringement).

*Id.*

The case law is clear: to be guilty of copyright misuse, a copyright holder must seek to control areas outside of its limited monopoly. *Napster, Inc.*, 239 F.3d at 1026; *Practice Mgmt.*, 121 F.3d at 520 (citing *Lasercomb*, 911 F.2d at 977-79); *Psystar*, 658 F.3d at 1159-60).[1] The Amended Complaint fails to set forth a single allegation arguing that FPM seeks to control anything other than its copyrights (and even there, all it seeks is a fee). The Opposition fails to proffer any argument that FPM's alleged conduct expanded the scope of its copyrights.

Though Plaintiffs may not like how FPM polices its copyrights, that is not copyright misuse. In *Open Source Yoga Unity v. Choudhury*, No. C 03-3182 PJH, 2005 U.S. Dist. LEXIS 10440, at *26 (N.D. Cal. Apr. 1, 2005), *a case relied upon by Plaintiffs*, the plaintiff alleged that the defendant obtained a copyright in a yoga sequence and was enforcing it against anyone he believed to be infringing. The District Court explained that such facts are insufficient to prove copyright misuse and the defendant was well within his rights as copyright owner. While the Court

---

[1] *See also Napster Copyright Litig.*, 191 F. Supp. 2d at 1105 ("[W]hile courts have repeatedly stated that misuse is different from antitrust, they still rely on antitrust-like inquiries in determining what licensing agreements violate public policy. Of the cases reviewed by the court, all mimic the *per se* rules of antitrust in holding that the relevant licensing agreements constitute copyright misuse because they are unduly restrictive on their face.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

FREEPLAY MUSIC, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT
2:15-cv-06822

VOGT3000821

EXHIBIT J

found that the defendant may have been "policing his rights aggressively," he was not attempting to "monopolize areas outside of the scope of his copyright." *Id.*

The Amended Complaint alleges hypothetical instances of confusion and *enforcement* of FPM copyrights against hypothetical consumers. Even if this were true, it is not copyright misuse. Plaintiffs' declaratory judgment action seeking a declaration of copyright misuse fails and should be dismissed.

### 2. Plaintiffs Have Not Pleaded Fair Use.

#### a. The Amended Complaint Contains Only Conclusory Allegations of Fair Use.

Though Plaintiffs argue that paragraphs 48-56 of the Amended Complaint "provide precise factual allegations" concerning fair use (Opp. at 15), those allegations merely parrot the elements of the fair use defense in a conclusory fashion: there are no facts. Rather, Plaintiffs plead:

- "Plaintiffs' use of the material subject to the Copyright in YouTube videos was primarily for the purposes of criticism, comment, and news reporting" (Am. Compl. ¶ 48);
- "Plaintiffs' use of the material subject to the Copyright in YouTube videos was not substantially commercial" (*id.* ¶ 49);
- "Plaintiffs' use of the material subject to the Copyright in YouTube videos was of a reasonable length to accomplish their goals of criticism, comment, and news reporting" (*id.* ¶ 50);
- "Plaintiffs' use of the material subject to the Copyright in YouTube videos was transformative because such use altered the material subject to the Copyright with new expression, meaning, or message" (*id.* ¶ 52)[2];

---

[2] There is no paragraph 51 in the Amended Complaint.

9

VGGTS000822

EXHIBIT J

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- "Plaintiffs' use of the of the material subject to the Copyright in YouTube videos had little to no effect on the potential market for or value of the material subject to the Copyright." (*id.* ¶ 53.)

All of the above is conclusory—not a single factual allegation is proffered; various vital statistics are missing. For example:

- In response to ¶ 48: which of the 61 uses are "criticism," which of the 61 videos or portions of the videos are "comment," and which are "news reporting"? How was FPM's background music part of the criticism of, comment on, or news reporting of any of the 61 uses?
- In response to ¶ 49: if Plaintiffs, entertainment news companies, posted entertainment news on Plaintiffs' YouTube channel, how was the use of these 61 videos non-commercial in nature?
- In response to ¶ 50: what were Plaintiffs' goals in the 61 videos, other than to provide entertainment news? What was the portion of FPM's music used in each of the 61 videos? What facts exist to determine what portion of FPM's background music was "necessary" and therefore "reasonable" to help Plaintiffs achieve their goals and remain fair use? Why is any use of FPM's music without authorization "reasonable"?
- In response to ¶ 52: how did Plaintiffs transform the two copyrights? What expression did Plaintiffs add to FPM's recordings? How could Plaintiffs' use of FPM's background music as background music be transformative?
- In response to ¶ 53: what is the market for FPM's background music? Why was Plaintiffs' use of FPM's background music not precisely the market into which FPM sells its music? How did Plaintiffs' use of FPM's background music without authorization fail to impact the market for FPM's background music?

10

VOGTS000823

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The Amended Complaint contains no facts specifying Plaintiffs' 61 uses nor does it explain how those uses could be "fair." That is by design: had Plaintiffs pleaded that their use was entertainment news videos and celebrity interviews set to the background of FPM's copyrighted music, their fair use claim would be objectively baseless on its face. Instead, the Amended Complaint pleads nothing that could support the claim. Accordingly, Plaintiffs' claim should be dismissed on this ground as well.

### b. The Fair Use Defense is Subject to Dismissal on a Motion to Dismiss.

Attempting to obfuscate their deficient pleading, Plaintiffs argue that fair use determinations are improper at the pleading stage. (Opp. at 15.) This argument is incorrect for two reasons. *First*, this Court must at least be put on notice of why Plaintiffs are entitled to the remedy they seek—a declaration of fair use. That is missing here. *Second*, even where there is sufficient factual detail, courts routinely make fair use determinations based on the pleadings. *See e.g. Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 531 (9th Cir. 2008); *Adjmi v. DLT Ent't Ltd.*, 97 F. Supp. 3d 512, 534 (S.D.N.Y. 2015); *Righthaven LLC v. Realty One Grp., Inc.*, No. 2:10-cv-1036-LRH-PAL, 2010 U.S. Dist. LEXIS 111576 (D. Nev. Oct. 19, 2010); *Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*, No: C 09-1468 SBA, 2009 U.S. Dist. LEXIS 61825 (N.D. Cal. Jul. 17, 2009); *Savage v. Council on American-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 U.S. Dist. LEXIS 60545 (N.D. Cal. July 25, 2008); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 971-72 (C.D. Cal. 2007).

In *Leadsinger,* the Ninth Circuit explained that "fair use may be considered on a motion to dismiss, which requires the court to consider all allegations to be true, in a manner substantially similar to consideration of the same issue on a motion for summary judgment, when no material facts are in dispute." 512 F.3d at

11

VDGTS000824

EXHIBIT J

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

531.  In that case, Leadsinger, a karaoke manufacturer, sought a declaration that its use of song lyrics fell within the scope of fair use under 17 U.S.C. § 107. Leadsinger argued that because karaoke teaches singing, displaying BMG's copyrighted song lyrics on a karaoke machine was done "for the purpose of 'criticism, comment, news reporting, teaching . . ., scholarship, or research . . . .'" *Id.* at 530 (citing 17 U.S.C. § 107).  The Ninth Circuit found that it was "not reasonable to infer that teaching is actually the purpose of Leadsinger's use of the copyrighted lyrics." *Id.*  Nor was it "reasonable to infer that [the use is transformative;] Leadsinger does not add to or alter the copyrighted lyrics, which would undermine the device's ability to enable consumers to sing along with the recorded music." *Id.*  The Court further found that "Leadsinger's allegations support only a commercial use . . . And commercial use of copyrighted material is 'presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright.'" *Id.* at 531 (citing *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 451(1984)).  Leadsinger also attempted to argue that its use would not affect the potential market for song lyrics, as there was none.  The Ninth Circuit found that argument unconvincing—not only was it not alleged in Leadsinger's complaint, but the Court was unwilling to assume such a market did not exist. *Id.*

Plaintiffs are a commercial entertainment news company—their business is entertainment news.  Plaintiffs' Amended Complaint only alleges the use of FPM's copyrighted material in connection with Plaintiffs' core business: entertainment news.  Thus, just like the plaintiff in *Leadsinger*, Plaintiffs' allegations support only a commercial use.  And just as the *Leadsinger* plaintiff did not alter or add to the lyrics of BMG's songs, Plaintiffs have not (and do not allege that they have) altered any of FPM's copyrighted music to support a claim that their use is transformative. Plaintiffs' fair use claims are weaker than those in *Leadsinger*, and just as the Ninth Circuit dismissed that case on the pleadings, this Court should do the same here.

VOGTS000825

2:15-cv-06822

EXHIBIT J

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Plaintiffs' failure to plead any facts that would demonstrate to the Court their

2    fair use of FPM's copyrights (whether FPM would agree with those facts or not)

3    dooms their claim for non-infringement based on fair use.  But because the 61

4    videos are central to the Amended Complaint and are the subject of Plaintiffs' claim

5    of non-infringement, FPM provided them to the Court so that the Court could see

6    the futility of Plaintiffs' arguments.  Under the "incorporation by reference"

7    doctrine, a defendant is allowed to attach documents to its motion to dismiss when

8    "the plaintiff's claim depends on the contents of a document . . . and the parties do

9    not dispute the authenticity of the document, even though the plaintiff does not

10   explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*,

11   393 F.3d 1068, 1076 (9th Cir. 2005).  The policy behind this doctrine is

12   "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately

13   omitting references to documents upon which their claims are based." *Parrino v.*

14   *FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).   This is precisely the reason FPM

15   provided the videos to the Court.

16   Unsurprisingly, Plaintiffs contest this Court's consideration of those videos.

17   (Objection at 2-5, ECF No. 38.)  While Plaintiffs concede that the videos are central

18   to their Amended Complaint, they dispute the videos' authenticity.  Plaintiffs

19   complain, for example, that the videos have never been presented to Plaintiffs for

20   authentication purposes.  However, as the Amended Complaint alleges, "Plaintiffs

21   took action to remove from public viewing the 61 YouTube videos TuneSat had

22   identified." (Am. Compl. ¶ 19.)  Michelle Ozog, in-house counsel for TuneSat,

23   submitted a declaration that the videos attached were the very 61 videos identified

24   in the Amended Complaint.  That Plaintiffs admitted to removing the 61 videos

25   TuneSat identified and now object to those videos based on a failure to authenticate

26   reveals their motive: keeping this case alive by evading specific facts in order to

27   force FPM to negotiate while a lawsuit is ongoing.

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

13

VO0TS600826

EXHIBIT J

1    Although FPM maintains that Ms. Ozog's declaration is sufficient, FPM

2    submits herewith a declaration by Mark Brinker, TuneSat's head of compliance and

3    the only other party involved in negotiations with Plaintiffs, that provides the

4    foundation Plaintiffs claim is necessary, including that: (i) TuneSat, using its

5    proprietary technology, detected 61 videos containing FPM's copyrights and

6    gathered evidence of the videos, including screenshots and copies of the underlying

7    video files as published on YouTube; (ii) upon receiving confirmation that FPM

8    could not locate any existing license agreement with Plaintiffs for the use of FPM's

9    copyrights, TuneSat wrote to Plaintiffs on June 9, 2015 identifying the URLs of the

10   61 videos; (iii) on June 22, 2015, Todd Greene, Plaintiffs' general counsel,

11   confirmed via e-mail that he caused the 61 URLs of the videos to be made

12   unavailable to the public; and (iv) the copies of the 61 videos retained by TuneSat

13   for evidentiary purposes were submitted as an exhibit to Ms. Ozog's declaration.

14   FPM submits that it has properly lodged this evidence, and asks the Court not

15   to permit Plaintiffs to hide from the very videos they want this Court to deem

16   noninfringing. Nonetheless, as the Amended Complaint is deficient on its face, the

17   Court need not further consider this point if it prefers not to do so.

18
19   ### 3.    Plaintiffs Have Not Pleaded a *De Minimis* Defense.

20   Plaintiffs' *de minimis* defense fails for the same reason as their fair use

21   defense—they merely conclude that their 61 copyright uses are *de minimis*. They

22   provide no facts from which the Court could draw a reasonable inference that the

23   uses are, in fact, *de minimis*. The case Plaintiffs cite clearly supports this point. As

24   Plaintiffs point out, in *Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004), the

25   Ninth Circuit found that the Beastie Boys' use of a three-note, six-second segment

26   of the copyright holders' composition was *de minimis* in relation to the entirety of

27   the composition. *Id.* at 1195-96. Putting aside the fact that *Newton* dealt only with

28   the composition, not with the sound recording which was licensed (here FPM owns

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

14

EXHIBIT J

the composition and sound recording copyrights, neither of which were licensed), the Ninth Circuit examined the length of the portion of the original composition that was used and the length of the entire composition to arrive at the decision that the use was *de minimis*.  The Beastie Boys also put forth evidence about the qualitative significance of the use (i.e., it was not the heart or the hook of the composition).  *Id.* at 1196.

The Amended Complaint provides no such information, despite the fact that Plaintiffs made the videos and made the decisions about how they would use FPM's music in those videos.  Once again, all of the vital statistics are missing.  There is no allegation about the length of the videos.  There is no allegation about how much of the two copyrights were used in the 61 videos. There is no allegation about the qualitative significance of the portions of the copyrighted works used.  Simply put, other than the conclusory allegation that the uses were *de minimis*, the Plaintiffs have provided no factual allegation from which this Court could plausibly infer that the Plaintiffs' 61 uses of FPM's two copyrights were *de minimis*.

Equally important here is that FPM's music is background music which is meant to be sampled in small portions.  As the Court can easily see from FPM's website, FPM offers many of its songs for download in 10 and 30 second increments.  *See* Freeplay Music, http://freeplaymusic.com/advancesearch.aspx (last visited Feb. 11, 2016) (searching by songs between 10 seconds and 1 minute).  Accordingly, any claim by Plaintiffs that they should succeed on a pleading for noninfringement based on a *de minimis* use fails.

### 4. FPM Is Not Moving to Strike Affirmative Defenses.

Plaintiffs make the peculiar argument that FPM's challenge of Plaintiffs' copyright misuse and fair use claims is actually an inappropriate motion to strike affirmative defenses.  This argument is non-sensical.  First, FPM has not brought a claim—it has no desire to be involved in this lawsuit.  Second, Plaintiffs seeks a

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

15

1 declaration of non-infringement on these grounds—thus fair use and copyright

2 misuse are the gravamen of Plaintiffs' Amended Complaint. In many declaratory

3 judgment actions—and certainly many of those brought under the Copyright Act—

4 the action is, in essence, an assertion of what would otherwise be an affirmative

5 defense. If Plaintiffs' argument was correct, few declaratory judgment claims could

6 be challenged on the pleadings. There is no support for this argument, which

7 should be rejected out of hand.

8      The cases Plaintiffs cite are inapposite. *See Cal. Dep't of Toxic Substances*

9 *Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028 (C.D. Cal. 2002) (striking certain

10 defenses pleaded in answers); *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp.

11 1335, 1339-40 (N.D. Cal. 1991) (court refusing to strike certain paragraphs of a

12 complaint that defendants believed were irrelevant to the plaintiffs' claims);

13 *Plaspro GMBH v. Gens*, No. C 09-04302 PSG, 2011 U.S. Dist. LEXIS 28808, at

14 *16-18 (N.D. Cal. 2011) (court refusing to strike certain paragraphs of the

15 complaint as impertinent, prejudicial, or relevant to damages unrecoverable as a

16 matter of law).

17      FPM has not moved to strike defenses or allegations it finds irrelevant or

18 scandalous (though there are many). FPM has moved to dismiss Plaintiffs'

19 declaratory judgment claim which is based on theories of copyright misuse and fair

20 use. As established above, a motion to dismiss such claims is proper, especially

21 when the Amended Complaint rises and falls with the sufficiency of those claims.

22 *See Leadsinger*, 512 F.3d at 531; *see also Amaretto Ranch Breedables, LLC v.*

23 *Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1033-34 (N.D. Cal. 2011) (though copyright

24 misuse is generally an affirmative defense, it is often regarded as an independent

25 claim when it serves as the basis for a declaratory judgment action) (citing cases).

26      **B.    The Amended Complaint Was Filed for an Improper Purpose**

27      Plaintiffs suggest that the general counsel of two premier entertainment news

28 companies, who asked for time to respond to an *opening offer* of $60,000.00, felt so

16

VOGT3600824

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT J

threatened that he had to instruct outside counsel to file suit without warning and then, comforted by the pending lawsuit, revert with a counteroffer. And to demonstrate that their fear was reasonable, Plaintiffs point to lawsuits involving FPM which all resulted from Plaintiffs' counsel suing FPM and publicizing the lawsuit through Plaintiffs. Plaintiffs' allegations of fear defy credulity, and Plaintiffs' actions should be seen for what they are: a negotiation ploy.

It should be noted that under Plaintiffs' theory, FPM, like every other intellectual property owner, will be forced to sue, rather than make reasonable inquiries and engage in business negotiations. FPM has over 50,000 songs in its catalog that it administers for various writers and smaller publishers. It has issued over 3,000,000 licenses in the last two-and-a-half years. According to Plaintiffs' theory, if a licensee violates the terms of a license (such as payment, etc.), or a third party uses FPM's music without a license, FPM should simply sue them rather than discussing the issue and trying to reach a resolution, as any sort of negotiation or discussion will lead to a declaratory judgment action. This would be a terrible result for all intellectual property owners and would inundate the judicial system with spurious lawsuits. The Court should decline to exercise its declaratory judgment jurisdiction.

## 1. There Is No Controversy Sufficient to Support Jurisdiction.

The only controversy articulated in the Amended Complaint and Plaintiffs' papers is that they do not want to pay for their unauthorized use of FPM's copyrighted music. (Am. Compl. ¶ 21; Opp. at 18, 19, 20, 22.) This is not a controversy contemplated by the Declaratory Judgment Act. As the Ninth Circuit stated in a case upon which Plaintiffs rely: "'[A]n action for a declaratory judgment that . . . the plaintiff is not infringing, [presents] a case or controversy if the plaintiff has a real and reasonable apprehension that he will be subject to liability *if he continues to manufacture his product*.'" *Rhoades v. Avon Prods., Inc.*, 504 F.3d

17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1151, 1157 (9th Cir. 2007) (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555-56 (9th Cir. 1990)) (emphasis added). In fact, all the declaratory judgment cases Plaintiffs cite involve fact patterns in which the defendants' claims of infringement threatened plaintiffs' livelihood or ongoing business operations. *See Sony Elecs., Inc. v. Guardian Media Techs.*, Ltd., 497 F.3d 1271, 1273-76 (Fed. Cir. 2007) (Sony sold televisions and DVD players with parental control technology and were threatened by the purported patent holder to that technology); *Rhoades*, 504 F.3d 1151, 1157 (Dermanew filed declaratory judgment action against Avon after Avon opposed Dermanew's trademark registrations and threated trademark infringement action); *Plantronics, Inc. v. Callpod, Inc.*, No. 14-cv-04639-SI, 2015 U.S. Dist. LEXIS 7429, at *1 (N.D. Cal. Jan. 21, 2015) (Plantronics sought declaratory judgment that its product line was not infringing Callpod's patented mobile conferencing technology).

In stark contrast, FPM has done nothing to threaten Plaintiffs' business operations; they are free to continue to produce videos and make entertainment news. They chose to take down the videos, though FPM made no such demand. And they can remove the unlicensed music from the videos they took down and post them again with different music if they so choose. But the Declaratory Judgment Act does not provide them with a cause of action against FPM simply because they want to take FPM's property without compensation or, as they admit in their pleadings, for less compensation than FPM seeks.

*Gribin v. Hammer Galleries*, 793 F. Supp. 233 (C.D. Cal. 1992) is instructive on this point. There, plaintiffs sold defendants a painting that turned out to be of dubious authenticity. *Id.* at 233-34. When defendants formally sought to undo the sale, plaintiffs sued for declaratory judgment. *Id.* at 234 n.2. Defendants argued that they intended to sue plaintiffs in the Southern District of New York and "the Declaratory Judgment Act should not be used to 'deprive the plaintiff of his traditional choice of forum and timing, . . . provoking a disorderly race to the

18

VOGTS000851

EXHIBIT J

1  courthouse.'" *Id.* at 234-35 (quoting *Hanes Corp. v. Millard*, 531 F.2d 585, 593

2  (D.C. Cir. 1976)).  The court agreed, finding that a federal declaratory action is not

3  meant to anticipate a defense to another suit.  *Id.* at 235.

4      The *Gribin* Court relied on *Hanes*, in which the D.C. Circuit distinguished

5  the usual declaratory judgment plaintiff who sues "due to her uncertainty about the

6  legality of the course of conduct she wishes to pursue" from the declaratory

7  judgment plaintiff in *Hanes*, who was "'simply in a position of one expecting to be

8  sued for past alleged transactions . . . [and] one who desires anticipatory

9  adjudication, at the time and place of *its* choice, of the validity of the defenses it

10  expects to raise against patent-related claims it expects to be pressed against it.'"

11  *Id.* at 236 (quoting *Hanes* 531 F.2d at 592).  In dismissing the declaratory judgment

12  action, the *Gribin* Court concluded that "the only potential harm to Plaintiff is that

13  he may have to defend a suit in New York, which will be more costly and difficult

14  for him."  *Id.* at 237.  "However this implicates the very principle behind the cases

15  cited above:  the allegedly aggrieved party is entitled to the time and place for suit."

16  *Id.*

17      As in *Gribin*, Plaintiffs here have no cause of action against FPM.  They do

18  not seek to pursue a course of conduct for which they need the Court's blessing;

19  they merely want to avoid paying for past infringements.

20
21      **2.**    **This Action was Brought to Create Leverage in Negotiations.**

22      Plaintiffs brought this suit in the middle of negotiating for a license they

23  decided they no longer want.  Though they unabashedly ignore the last

24  correspondence their general counsel, Todd Greene, sent to FPM before suing, it

25  bears repeating:

26          Thank you for your email.  Unfortunately I am scheduled

27          to leave for a 2 week vacation tomorrow and will not get a

28          chance to review your correspondence and reply in

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

19

VOGTS000852

1    sufficient detail before I leave.  As such I would like to

2    request a two week extension to respond to your

3    correspondence until Wednesday, September 2nd at 5 pm

4    ET.

5    While I disagree with a number of the assertions

6    contained in your letter, I am certain we can find an

7    amicable business solution to the issues at hand.

8  (Exhibit D to the Declaration of Michelle Ozog, ECF No. 28-4.).  Rather than

9  responding with a business solution, Plaintiffs filed this lawsuit on September 2,

10  2015.  It was only with this lawsuit hanging over FPM's head that Plaintiffs made a

11  counteroffer.  (Ozog Decl. Ex. C, ECF No. 20).   There is no case law that supports

12  this kind of behavior.

13      Plaintiffs cite a variety of cases that are distinguishable on their facts, *see*

14  *supra* at 17:24-18:13.  More important, the parties in those cases reached an

15  impasse after years of negotiation, only further demonstrating that Plaintiffs were

16  wrong to file here, where there had been only an opening offer.  *See Rhoades v.*

17  *Avon Prods., Inc.*, 504 F.3d 1151, 1159 n.7 (9th Cir. 2007) (plaintiffs "took this

18  squabble to court only after years of effort to avoid litigation"); *see also*

19  *Plantronics, Inc. v. Callpod, Inc.*, No. 14-cv-04639-SI, 2015 U.S. Dist. LEXIS

20  7429, at *2, *15 (N.D. Cal. Jan. 21, 2015) (after nearly a decade, negotiations

21  between the parties broke down, and "were not active at the time the complaint was

22  filed.").

23      FPM made an offer on August 11, 2015.  Plaintiffs stated they were

24  considering that offer and seeking an "amicable business solution," and then

25  brought this action instead.  And because Plaintiffs' non-infringement lawsuit does

26  not deny unauthorized use of FPM's copyrighted music, Plaintiffs tacitly concede

27  that this lawsuit was initiated as a punitive measure against FPM to help negotiate a

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

VCGFT6000894

resolution.  That FPM's initial offer to settle was $60,000, less than the cost of this lawsuit to date, only supports that conclusion.

Although FPM maintains that Plaintiffs' declaratory judgment claim warrants dismissal because it fails to state a claim, FPM requests that this Court, alternatively, use its discretion to dismiss this action due to Plaintiffs' improper motive in bringing the action.

## II.   PLAINTIFFS' CALIFORNIA'S UNFAIR COMPETITION LAW CLAIM SHOULD BE DISMISSED

Standing under both Article III of the U.S. Constitution and California's Unfair Competition Law ("UCL") requires Plaintiffs to allege that FPM caused their injury.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Hall v. Time*, 70 Cal. Rptr. 3d 466, 467 (2008).  Plaintiffs have not done so.  Attempting to cure this defect, Plaintiffs plead that they are FPM's competitors.  (Am. Compl. ¶ 13.)  This argument is insulting.  FPM is a background music publisher.  Plaintiffs are an entertainment news provider.  Plaintiffs' consumers seek entertainment news.  FPM's consumers download music to use as background for home or professional videos.  Plaintiffs have never even attempted to explain how the parties could be competitors.  Rather, they rely solely on the hollow and conclusory statement that they are, which is not only untrue, but is also insufficient for this Court to make any reasonable inference that it is plausible.

Plaintiffs are not helped by the case they cite, *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544 (2013).  In that case, an attorney sued an online legal service provider for unfair competition based on the online provider's unauthorized practice of law.  The attorney's claim was based upon the allegation that he was forced to pay increased advertising costs and reduce his prices in order to compete with this online service, causing the value of his law firm to diminish.   As a result of the injury caused by the competing online legal

EXHIBIT J

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  service provider, the Court found that the attorney had standing to bring a claim

2  under the UCL. *Id.* at 561.

3     This case is not analogous. The Amended Complaint contains no allegation

4  that FPM deceived any of Plaintiffs' consumers, or that such deceit caused injury to

5  Plaintiffs. Indeed, the only injury the Amended Complaint pleads is Plaintiffs' lost

6  advertising revenues from their YouTube channels as a result of FPM's conduct.

7  (Am. Compl. ¶ 59.) The Amended Complaint does not explain, however, how

8  FPM could have caused Plaintiffs to lose revenue from their YouTube channels.

9     Plaintiffs try to cure these inadequacies by alleging that FPM and Plaintiffs

10 are competitors. Though that claim is facially false, even if it were not, Plaintiffs

11 would still have to show that FPM caused injury to Plaintiffs by diverting their

12 clients to buy FPM's product instead of theirs. Not surprisingly, there is no such

13 allegation in the Amended Complaint, which should be dismissed.

14 **III.   <u>LEAVE TO AMEND SHOULD BE DENIED</u>**

15    In its motion to dismiss the original complaint, FPM asked this Court to deny

16 Plaintiffs' leave to amend, because "even if Plaintiffs can add allegations to support

17 declaratory judgment jurisdiction, they cannot plausibly add facts that would help

18 them obtain a judgment of non-infringement." (Reply in Support of Motion to

19 Dismiss Complaint at 8-9, ECF No. 28.) Although this Court granted leave due to

20 the liberality of Fed. R. Civ. P. 15, it should not do so again. "[W]hen a district

21 court has already granted a plaintiff leave to amend, its discretion in deciding

22 subsequent motions to amend is 'particularly broad.'" *Chodos v. West Publishing*

23 *Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (quoting *Griggs v. Pace Am. Grp., Inc.*,

24 170 F.3d 877, 879 (9th Cir. 1999)).

25    First, Plaintiffs have made no motion to amend, nor proffered allegations the

26 second amended pleading would contain to defeat the aforementioned deficiencies.

27 Second, the futility of the original complaint and now the first Amended Complaint

28 makes clear that a second amendment could not possibly save Plaintiffs' claims.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    "Futility alone justifies denying leave to amend." *Earvana, LLC v. Ernie Ball, Inc.*,

2    No. CV 14-2302-R, 2014 U.S. Dist. LEXIS 185113, at *4 (C.D. Cal. July 21, 2014)

3    (citing *Leadsinger*, 512 F.3d at 532).  And, Plaintiffs also have not alleged any new

4    facts that would save Plaintiffs' claims. *See Chodos*, 292 F.3d at 1003.

5        Plaintiffs' pleading is legally deficient.  As this Court will learn when FPM

6    moves for fees, the factual predicate to Plaintiffs' claims is a fiction.  Plaintiffs'

7    suspect business practice of suing during negotiations explains why this pleading is

8    so deficient and should never have been brought.  Enough is enough.  The

9    Amended Complaint should be dismissed with prejudice.

10   **CONCLUSION**

11       FPM respectfully requests that the Court dismiss Plaintiffs' Amended

12   Complaint in its entirety and with prejudice under Federal Rules of Civil Procedure

13   12(b)(1) and 12(b)(6).

14

15   Dated:  February 15, 2016      Respectfully submitted,

16

17                       BAKER & HOSTETLER LLP

18                       By:  *s/ Oren J. Warshavsky*

19                              Oren J. Warshavsky
                                Tatiana Markel

20                       *Attorneys for Defendant Freeplay Music, LLC*

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

23

ROBERT C. WELSH (SBN 130782)
BAKER & HOSTETLER LLP
11601 WILSHIRE BOULEVARD, SUITE 1400
LOS ANGELES, CA 90025-7120
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: rwelsh@bakerlaw.com

OREN J. WARSHAVSKY (*admitted pro hac vice*)
owarshavsky@bakerlaw.com
TATIANA MARKEL (*admitted pro hac vice*)
tmarkel@bakerlaw.com
BAKER & HOSTETLER LLP
45 ROCKEFELLER PLAZA
NEW YORK, NY 10111

Attorneys for Defendant
FREEPLAY MUSIC, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENSKE MEDIA CORPORATION, a Delaware corporation; VARIETY MEDIA, LLC, a Delaware limited liability company, | Case No.: 2:15-cv-06822 |
| | Hon. Andrew J. Wistrich |
| Plaintiffs, | **DECLARATION OF MARK BRINKER IN SUPPORT OF DEFENDANT'S REPLY** |
| vs. | Date: February 29, 2016 |
| FREEPLAY MUSIC, LLC, a Delaware limited liability company, and DOES 1 through 5, inclusive, | Time: 10:00 am<br>Courtroom: 690 |
| Defendants. | Action Filed: September 2, 2015 |

VRST-S060859T

**EXHIBIT J**

I, Mark Brinker, declare as follows:

**1.** I work at TuneSat, LLC ("TuneSat") in the digital rights administration ("DRA") department as head of compliance. Michelle Ozog, in-house counsel at TuneSat, manages the DRA department. TuneSat is the agent of Freeplay Music, LLC ("FPM") for purposes of administering and enforcing FPM's copyrights.

**2.** I make this Declaration in support of FPM's Reply Memorandum.

**3.** TuneSat, using its proprietary technology, detected 61 videos on Plaintiffs' YouTube channel containing FPM's copyrights. TuneSat gathered evidence of the videos, including screenshots and copies of the underlying video files as published on YouTube.

**4.** Upon confirming that FPM could not locate any license agreement with Plaintiffs for the use of FPM's copyrights, TuneSat wrote to Plaintiffs on June 9, 2015 identifying the uniform resource locators (URLs) of the 61 videos. Not having received a reply to that e-mail, I called Plaintiffs on June 17 and received an e-mailed response from Todd Greene, its general counsel, requesting a copy of the June 9 e-mail. I provided a copy of the June 9 e-mail to Todd Greene.

**5.** On June 22, 2015, Todd Greene confirmed via e-mail that he caused the URLs of the 61 videos to be made unavailable to the public.

**6.** The copies of the 61 videos retained by TuneSat for evidentiary purposes were provided to the Court as part of the Declaration of Michelle Ozog in Support of FPM's Motion to Dismiss the Amended Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 15, 2016, at New York, NY.

*s/ Mark Brinker*
Mark Brinker,
Head of Compliance, TuneSat LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES