Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

BRANDON VOGTS,

Plaintiff,

v.

PENSKE MEDIA CORPORATION;
DIRT.COM, LLC; et al.,

Defendants.

Case No. 2:22-cv-01153-FWS-PVC
_Hon. Fred W. Slaughter Presiding_

**CONSOLIDATED CIVIL L.R. 56-1
STATEMENT OF FACTS IN
SUPPORT OF: (1) PLAINTIFF'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT ON
LIABILITY AND FAIR USE;
(2) THE PMC DEFENDANTS
MOTION FOR SUMMARY
JUDGMENT ON FAIR USE; AND
(3) THE PMC DEFENDANTS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT ON
COMPILATIONS AND THE
NUMBER OF STATUTORY
DAMAGES**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT pursuant to this Court's Civil L.R. 56-1

and May 5, 2023 Order (Dkt. 68), Plaintiff Brandon Vogts and Defendants Penske

Media Corporation ("PMC") and Dirt.com, LLC ("Dirt") (the Defendants

collectively are the "PMC Defendants") hereby submit this consolidated statement

of facts in support: (1) Vogts' motion for partial summary judgment on the direct liability of the PMC Defendants for infringing Vogts' copyrights in the Subject Photographs;[1] (2) the PMC Defendants' motion for summary judgment on fair use; and (3) the PMC Defendants' motion for partial summary judgment on, if liability is proven, compilations and number of statutory damages awards to which Vogts is entitled.[2]

## CONSOLIDATED STATEMENT OF FACTS

**I.   Facts asserted in connection with: (1) Vogts' motion for partial summary judgment on liability and fair use; and (2) the PMC Defendants' motion for summary judgment on fair use.**

Legend:
- P: Plaintiff Brandon Vogts.
- D: The PMC Defendants.
- All fact numbers are the same as cited in the parties' papers (the docket citations for which are set forth in footnotes 1-2 below).

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 1. (P) | **Brandon Vogts, his photos, and his business** | // |
| 2. (P) | Brandon Vogts is a Los Angeles-based photographer specializing in residential and commercial interiors, luxury real estate, and architecture.<br><br>**Dkt. 44-32 ("Vogts Decl.") ¶ 2.** | Undisputed. |

[1] Vogts' motion is at Dkt. 44. The PMC Defendants' consolidated motion and opposition is at Dkt. 62. Vogts' reply is at Dkt. 61. The PMC Defendants' sur-reply is at Dkt. 66.

[2] The PMC Defendants' motion is at Dkt. 43-1. Vogts' opposition is at Dkt. 57. The PMC Defendants' reply is at Dkt. 60.

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | |
| 3. (P) | Vogts' photos have been featured in publications such as the *Wall Street Journal*, *People Magazine*, *Los Angeles Times*, *New York Post*, *Architectural Digest*, *California Home + Design*, *Curbed LA*, *Daily Mail*, *Elle Décor*, *Entertainment Tonight*, *Forbes*, *Life & Style*, and *PopSugar*.<br><br>**Vogts Decl. ¶ 3.** | Undisputed. |
| 4. (P) | Vogts' clients include real estate companies, real estate agents, and interior designers.<br><br>**Vogts Decl. ¶ 4.** | Undisputed. |
| 5. (P) | Vogts' clients receive a license for limited authorized uses of Vogts' photos. Unless otherwise specified, any use of Vogts' photos beyond the original scope of the granted license requires additional permission by Vogts.<br><br>**Vogts Decl. ¶ 5.** | Undisputed. |
| 6. (P) | In other instances where Vogts has authorized his clients to use his photos in connection with the sale of a property, Vogts has subsequently provided a separate limited license to media publications who sought | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | permission to use those photos in articles about those properties.<br><br>**Vogts Decl. ¶ 6.** | |
| 7. (P) | Vogts requires permission and particular terms for any use of his photos on social media.<br><br>**Vogts Decl. ¶ 7.** | Undisputed. |
| 8. (P) | Vogts has previously received requests from websites such as *Redfin* (redfin.com), *Zillow*, *Daily Mail*, and the *Wall Street Journal* seeking permission to use Vogts' photos in articles on those websites that discussed the properties depicted in Vogts' photos, including requests concerning properties owned by entertainers Kathy Griffin and Neil Patrick Harris.<br><br>**Vogts Decl. ¶ 8, Ex. 4.** | Disputed insofar as this fact implies that there were other instances besides Neil Patrick Harris (in 2014) and Kathy Griffin (in 2016).<br><br>**Dkt. No. 53-28**, ¶¶ 2, 10 (Declaration of Lincoln Bandlow ("LB Decl.")), **Dkt. No. 55-3** (Deposition of Brandon Vogts ("Vogts Depo"), pp. 61:14-67:22, 152:12-156:6, 188:5-192:25, 198:3-199:24, 220:1-221:23; **Dkt. No. 55-8** (the Zillow Email) |
| 9. (P) | Vogts authorized limited uses of those photos on the conditions that he be provided photo credits in all versions of the articles that were published, and that the narratives of the articles were not adverse to his clients. Vogts also specified that no further uses were permitted.<br><br>**Vogts Decl. ¶ 9, Ex. 4.** | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 10. (P) | Vogts' belief and understanding is that one of the reasons he is able to maintain his client relationships is because he takes care to limit subsequent licensing of his photos to uses that his clients would approve of.<br><br>**Vogts Decl. ¶ 10.** | Undisputed. |
| 11. (P) | Vogts took and owns the Subject Photographs (i.e. the 53 photos asserted in this case.<br><br>**Dkt. 1 ¶ 22, Dkt. 1-1; Dkt. 42 ¶ 1; Vogts Decl. ¶ 11.** | Undisputed. |
| 12. (P) | While Vogts did not stage the properties reflected in the Subject Photographs, he made all creative decisions in creating those Photographs—including composition, lighting, framing and perspective, angles, lines, depth, foreground and background, equipment, etc.<br><br>**Vogts Decl. ¶ 12.** | Undisputed. |
| 13. (P) | The Subject Photographs are original to Vogts and are registered with the U.S. Copyright Office.<br><br>**Vogts Decl. ¶ 13, Dkt. 44-33 through 44-34** (Vogts Decl. Ex. 1: Reg. No. VA 2-213-119 and Subject Photographs 1-20 in Dkt. | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | 1-1)**, Dkt. 44-35 through Dkt. 44-37** (Vogts Decl. Ex. 2: Reg. No. VA 2-227-873 and Subject Photographs 21-38 in Dkt. 1-1)**, Dkt. 44-38 through 44-39** (Vogts Decl. Ex. 3: Reg. No. VA 2-230-981 and Subject Photographs 39-53 in Dkt. 1-1)**.** | |
| 14. (P) | Vogts authorized certain of his real estate agent clients to make limited use the Subject Photographs—specifically, by displaying them on a Multiple Listing Service ("MLS") database, on the agents' real estate agency websites, in the agents' property brochures, and on the properties' listings on real estate listing aggregator websites such as redfin.com and realtor.com—to market the properties depicted therein for lease, sale, or purchase. No other uses were authorized.<br><br>**Vogts Decl. ¶ 14.** | Undisputed. |
| 15. (P) | The PMC Defendants accessed the Subject Photographs through the websites redfin.com and realtor.com.<br><br>**Dkt. 22 ¶¶ 24-25, 32; Dkt. 42 ¶ 2; Dkt. 44-1 ("Doniger Decl.") at Dkt. 44-2** (Doniger Decl. Ex. 1: Dirt Resp. to RFAs 3-4, 13)**, Dkt. 44-3** (Doniger Decl. Ex. 2: PMC Resp. to RFAs 3-4, 13)**.** | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | |
| 16. (P) | The PMC Defendants copied, displayed, and distributed the Subject Photographs without seeking or receiving Vogts' authorization.<br><br>**Vogts Decl. ¶ 15; Dkt. 42 ¶ 3; Dkt. 44-2** (Doniger Decl. Ex. 1: Dirt Resp. to RFAs 1-2, 9)**, Dkt. 44-3** (Doniger Decl. Ex. 2: PMC Resp. to RFAs 1-2, 9)**, Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROG 3)**, Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 109:8-20, 112:3-113:10)**. | Undisputed. |
| 17. (P) | The copies of the Subject Photographs displayed and distributed by the PMC Defendants were essentially verbatim reproductions of the Subject Photographs, but for minor cropping.<br><br>**Dkt. 1-1; Dkt. 22 ¶¶ 24-25, 32; Dkt. 44-2** (Doniger Decl. Ex. 1: Dirt Resp. to RFAs 3-4, 13)**, Dkt. 44-3** (Doniger Decl. Ex. 2: PMC Resp. to RFAs 3-4, 13)**. | Disputed insofar as this fact omits that the cover picture for the three articles superimposed a picture of the public figure who owns the property depicted in the Subject Photographs.<br><br>**Dkt. No. 53-6** (Declaration of Mark David Voss ("Voss Decl."), ¶¶ 11, 14, 18, 21; **Dkt. No. 53-12** (Stanchfield Article Photos), **Dkt. No. 53-13** (Stanchfield Article Cover Photo), **Dkt. No. 53-19** (O'Dowd Article Photos), **Dkt. No. 53-20** (O'Dowd Article Cover Photo); **Dkt. No. 53-23** (Declaration of James McClain ("McClain Decl.")), ¶¶ 13, 16; **Dkt. No. 53-25** (Williams Article Photos). |
| 18. (P) | The PMC Defendants' unauthorized uses of the Subject | Disputed: (1) as to a licensing market for the Subject Photographs; and (2) |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | Photographs were the type of uses that Vogts reserves the right to control licensing of. If left unchecked, the PMC Defendants' uses of the Subject Photographs would essentially destroy the licensing market for Vogts' photos.<br><br>**Vogts Decl. ¶ 16.** | as to the following sentence because it cannot be presented in a form that would be admissible in evidence as it is argumentative and a legal conclusion/opinion: "If left unchecked, the PMC Defendants' uses of the Subject Photographs would essentially destroy the licensing market for Vogts' photos."<br><br>Federal Rule of Civil Procedure ("F.R.C.P.") Rule 56(c)(2); **Dkt. No. 53-28** (LB Decl), ¶¶ 2, 5, 7-8, 12-13; **Dkt. No. 55-3** (Vogts Depo), pp. 61:4-13, 77:3-13, 112:5-10, 132:25-134:20, 149:19-152:11, 158:5-159:2, 125:2-12, 164:20-165:2, 176:5-21 & 211:3-15; **Dkt. No. 55-5** (Stanchfield Invoice); **Dkt. No. 55-6** (O'Dowd Invoice); **Dkt. No. 55-7** (Williams Invoice), **Dkt. No. 53-39** (Responses to Rogs),  No. 6, p. 7:9-27**; Dkt. No. 53-40** (Redacted Invoices).<br><br>Immaterial. *Burch v. Regents of University of California*, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006) ("objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself. … Instead of *objecting*, parties should simply *argue* that the facts are not material.") (emphasis added) |
| 19. (P) | **PMC, its business, and its brands, including Dirt** | // |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | |
| 20. (P) | PMC is one of the largest digital media and publishing companies in the world. PMC reaches hundreds of millions of consumers monthly, and owns and publishes more than 20 brands, including *The Hollywood Reporter*, *Variety*, *Billboard*, *Robb Report*, and *Rolling Stone*.<br><br>**Dkt. 45** (Request for Judicial Notice ("RJN")) **at Dkt. 45-1** (RJN Ex. 1)**.** | Undisputed. |
| 21. (P) | In 2014, PMC launched "Dirt, a new section focused on high-end digs," as a column in *Variety*. PMC promoted *Variety*'s new "Dirt" column as "a fun and juicy read, meant to entertain above all else."<br><br>**Dkt. 45-2** (RJN Ex. 2)**; Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 10:16-18)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 24:22-30:24)**.** | Disputed. The press release: (1) referred to "The Real Estalker column"; (2) stated that "The Real Estalker is a fun and juicy read, meant to entertain above all else"; and (3) stated "The Real Estalker will feed the voracious appetites of today's entertainment industry watchers with glimpses into the finest properties owned by celebrities and industry executives, highlighting major selling points and property values, and, when called for, snarking about poor décor choices or the sordid details of why certain individuals might be moving or selling."<br><br>**Dkt. No. 45**-2 (RJN Ex. 2) |
| 22. (P) | In 2015, PMC entered into an agreement with Shutterstock, Inc., a "provider of high-quality licensed photographs," granting | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | Shutterstock "an exclusive worldwide right and license to PMC's archive, including images" from *Variety*, to "market and license the imagery to the world's media." <br><br> **Dkt. 45-3** (RJN Ex. 3)**.** | *Ochoa v. City of Mesa*, 26 F.4th 1050, 1055-56 (9th Cir. 2022); **Dkt. No. 53-3** (The PMC Defendants' Opposition to Plaintiff's Requests for Judicial Notice in Support of Plaintiff's Motion for Partial Summary ("Opp. to RJN")), Section II. 17 U.S.C. § 107; Federal Rule of Evidence ("F.R.E.") 401; *Burch*, 433 F.Supp.2d at 1119. <br><br> Disputed as the material cited cannot be presented in a form that would be admissible in evidence. <br><br> F.R.C.P. Rule 56(c)(2); **Dkt. No. 53-3** (Opp. to RJN), Section II. |
| 23. (P) | PMC's understanding of, and reason for entering into, that agreement was that without PMC's permission, Shutterstock had no right to use PMC's photos. <br><br> **Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 68:7-70:23)**.** | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs. *Ochoa*, 26 F.4th at 1055-56; 17 U.S.C. § 107; F.R.E. 401; *Burch*, 433 F.Supp.2d at 1119. Disputed as the material cited cannot be presented in a form that would be admissible in evidence. <br><br> F.R.C.P. Rule 56(c)(2); **Dkt. No. 53-3** (Opp. to RJN), Section II. |
| 24. (P) | Also in 2015, PMC hired a "chief photographer" for PMC's "editorial images business." That individual was "a photojournalist with Getty Images for more than 10 years" and was "tasked with driving the creation of entertainment imagery and video assets for Variety and other PMC | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs. <br><br> *Ochoa*, 26 F.4th at 1055-56; **Dkt. No. 53-3** (Opp. to RJN), Section III; 17 U.S.C. § 107; F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | brands" to "build upon PMC's deep photo archives currently held by Variety." **Dkt. 45-4** (RJN Ex. 4)**.** | Disputed: (1) insofar as this assertion implies that the PMC Defendants could have photographed the properties at issue; and (2) as the material cited cannot be presented in a form that would be admissible in evidence. F.R.C.P. Rule 56(c)(2); **Dkt. No. 53-3** (Opp. to RJN), Section III; **Dkt. No. 53-6** (Voss Decl.), ¶ 6; **Dkt. No. 53-23** (McClain Decl.), ¶ 6. |
| 25. (P) | In 2018, PMC expanded its "licensing efforts" for *Variety* to leverage PMC's "photography access, which produces more than 10,000 images daily." **Dkt. 45-5** (RJN Ex. 5)**.** | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs. *Ochoa*, 26 F.4th at 1055-56; **Dkt. No. 53-3** (Opp. to RJN), Section IV; 17 U.S.C. § 107; F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119. Disputed as the material cited cannot be presented in a form that would be admissible in evidence. F.R.C.P. Rule 56(c)(2); **Dkt. No. 53-3** (Opp. to RJN), Section IV. |
| 26. (P) | Between 2014-18, PMC observed that "the page views that that content generated," referring to *Variety*'s Dirt column, "were good," and wanted to determine if it could spinoff the column into a website with "and monetize it[.]" **Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 34:1-11), **Dkt. 44-8** | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | (Doniger Decl. Ex. 7: PMC Dep. 24:22-30:24)**.** | |
| 27. (P) | PMC wanted more "Dirt" content because "[t]he more content that you create, the more potential page views you can reach," and page views generate revenue for PMC.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 34:1-11), **Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 24:22-30:24)**.** | Undisputed. |
| 28. (P) | Thus, PMC made Dirt its wholly owned subsidiary and added "Dirt.com" to its portfolio of "brands."<br><br>**Dkt. 22 ¶¶ 5-6; Dkt. 44-3** (Doniger Decl. Ex. 2: PMC Resp. to RFA 21)**, Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 34:1-11, 42:25-43:4)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 9:13-21)**.** | Undisputed. |
| 29. (P) | **The PMC Defendants' unauthorized copying, display, and distribution of the Subject Photographs** | // |
| 30. (P) | The PMC Defendants own, operate, and control the website dirt.com and its related/affiliated subdomains, mobile websites, and | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | applications (collectively, the "PMC Defendants' Website"). **Dkt. 22 ¶ 6; Dkt. 45-7** (RJN Ex. 7)**; Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 34:1-11, 42:25-43:4)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 65:5-15)**.** | |
| 31. (P) | The PMC Defendants' Website is commercial and features real estate-related content. **Dkt. 22 ¶ 6; Dkt. 45-7** (RJN Ex. 7)**; Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 34:1-11, 42:25-43:4)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 65:5-15)**.** | Undisputed. |
| 32. (P) | The revenue the PMC Defendants generate from the PMC Defendants' Website is from advertising and syndication. Advertisements appear across the PMC Defendants' Website, including alongside posts. **Dkt. 22 ¶ 35; Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 169:23-170:10)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 31:4-32:3, 39:4-41:13, 60:9-22)**.** | Undisputed. |
| 33. (P) | The posts displayed on the PMC Defendants' Website include "sponsored links from Taboola." | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. 45-6** (RJN Ex. 6)**; *see, e.g.*, Dkt. 44-9** (Doniger Decl. Ex. 8 at VOGTS000520, 523)**. | *Ochoa*, 26 F.4th at 1055-56; **Dkt. No. 53-3** (Opp. to RJN), Section V; 17 U.S.C. § 107; F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119.<br><br>Disputed: (1) insofar as this assertion implies that sponsored links by Taboola appeared on the posts at issue; and (2) as the material cited cannot be presented in a form that would be admissible in evidence.<br><br>F.R.C.P. Rule 56(c)(2); **Dkt. No. 53-3** (Opp. to RJN), Section V; **Dkt. No. 53-6** (Voss Decl), ¶¶ 11, 18; **Dkt. No. 53-11** (Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos); **Dkt. No. 53-13** (Stanchfield Article Cover Photo); **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-19** (O'Dowd Article Photos); **Dkt. No. 53-20** (O'Dowd Article Cover Photo); **Dkt. No. 53-23** (McClain Decl), ¶ 13; **Dkt. No. 53-24** (Williams Article Text); **Dkt. No. 53-25** (Williams Article Photos) |
| 34. (P) | Since 2014, PMC has partnered with Taboola to include "content recommendations" (i.e. the "sponsored links") on PMC's brands' websites, including the PMC Defendants' Website, to "generate revenue."<br><br>**Dkt. 45-6** (RJN Ex. 6)**. | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs.<br><br>*Ochoa*, 26 F.4th at 1055-56; **Dkt. No. 53-3** (Opp. to RJN), Section V; 17 U.S.C. § 107; F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119.<br><br>Disputed: (1) insofar as this assertion implies that sponsored links by |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | Taboola appeared on the posts at issue; and (2) as the material cited cannot be presented in a form that would be admissible in evidence.<br><br>F.R.C.P. Rule 56(c)(2); **Dkt. No. 53-3** (Opp. to RJN), Section V; **Dkt. No. 53-6** (Voss Decl), ¶¶ 11, 18; **Dkt. No. 53-11** (Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos); **Dkt. No. 53-13** (Stanchfield Article Cover Photo); **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-19** (O'Dowd Article Photos); **Dkt. No. 53-20** (O'Dowd Article Cover Photo); **Dkt. No. 53-23** (McClain Decl), ¶ 13; **Dkt. No. 53-24** (Williams Article Text); **Dkt. No. 53-25** (Williams Article Photos) |
| 35. (P) | The posts on the PMC Defendants' Website displaying the Subject Photographs generated page views.<br><br>**Dkt. 44-2** (Doniger Decl. Ex. 1: Dirt Resp. to RFA 7)**, Dkt. 44-3** (Doniger Decl. Ex. 2: PMC Resp. to RFA 7)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROG 6)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 19:22-20:9)**, Dkt. 44-10 through 44-11** (Doniger Decl. Ex. 9-10)**.** | Undisputed. |
| 36. (P) | Those page views resulted in advertising revenue. | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. 44-2** (Doniger Decl. Ex. 1: Dirt Resp. to RFA 7)**, Dkt. 44-3** (Doniger Decl. Ex. 2: PMC Resp. to RFA 7)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROG 6)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 19:22-20:9)**, Dkt. 44-12** (Doniger Decl. Ex. 11)**.** | |
| 37. (P) | The PMC Defendants' Website is run through and powered by, and the posts that appear on the PMC Defendants' Website are created in and published from, PMC's WordPress account.<br><br>**Dkt. 22 ¶ 6; Dkt. 45-7** (RJN Ex. 7)**; Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 34:1-11, 42:25-43:4)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 65:5-15)**.** | Undisputed. |
| 38. (P) | The PMC Defendants will "run articles with no pictures" on the PMC Defendants' Website. That is, not every story published on the PMC Defendants' Website has a "gallery" (explained below).<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: Dirt Dep. 59:3-64:5, 66:3-67:9, 73:18-75:22, 87:20-88:2, 88:24-89:3, 101:21-103:2)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. | Disputed insofar as this fact implies that the articles referenced had no pictures in the first instance.<br><br>**Dkt. No. 53-6** (Voss Decl), ¶ 8, **Dkt. No. 53-23** (McClain Decl), ¶ 8.<br><br>Immaterial to whether the PMC Defendants made a fair use of the Subject Photographs. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | 31:25-32:3, 33:9-35:3)**; *see, e.g.,* Dkt. 44-9** (Doniger Decl. Ex. 8)**.** | *Ochoa*, 26 F.4th at 1055-56; 17 U.S.C. § 107; F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119. |
| 39. (P) | However, the posts that do include photos are made up of two "sides"—a "text side" and an "image side"—which are separately created and published in WordPress. The "image side" is called a "gallery." <br><br> **Dkt. 44-6** (Doniger Decl. Ex. 5: Dirt Dep. 59:3-64:5, 66:3-67:9, 73:18-75:22, 87:20-88:2, 88:24-89:3, 101:21-103:2)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 31:25-32:3, 33:9-35:3)**; *see e.g.,* Dkt. 44-13** (Doniger Decl. Ex. 12 at DIRT00277, 287-311)**, Dkt. 44-14** (Doniger Decl. Ex. 13 at DIRT00240-59, 267)**; *see also, e.g.,* Dkt. 44-41 through 44-43** (Vogts Decl. Ex. 5-7)**.** | Disputed insofar as this fact implies that the "image side" can exist without the "text side." <br><br> **Dkt. No. 53-6** (Voss Decl), ¶ 8; **Dkt. No. 53-23** (McClain Decl), ¶ 8. |
| 40. (P) | When a gallery is created in WordPress, it has its own title, date and time stamp, and web address—distinct from the "text side" it is linked to—and each of the photos displayed in the gallery has its own web address. <br><br> **Dkt. 44-6** (Doniger Decl. Ex. 5: Dirt Dep. 59:3-64:5, 66:3-67:9, 73:18-75:22, 88:24-89:3)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 31:25-32:3, 33:9-35:3)**; *see* | Disputed insofar as the gallery can be accessed without the text side absent knowing the image's web address. <br><br> **Dkt. No. 53-6** (Voss Decl), ¶ 8; **Dkt. No. 53-23** (McClain Decl), ¶ 8. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | *e.g.*, **Dkt. 44-13** (Doniger Decl. Ex. 12 at DIRT00278)**, Dkt. 44-14** (Doniger Decl. Ex. 13 at DIRT00240)**, Dkt. 44-15 through 44-17** (Doniger Decl. Ex. 14-16)**.** | |
| 41. (P) | Each web address generates revenue for PMC when it is viewed.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: Dirt Dep. 59:3-64:5, 66:3-67:9, 73:18-75:22, 88:24-89:3)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 31:25-32:3, 33:9-35:3, 39:4-41:13, 60:9-22)**.** | Disputed insofar as: (1) it includes web addresses – such as a gallery of images – that do not contain advertisements; (2) it implies the galleries for the articles at issue contained advertisements; and (3) the material cited does not establish the fact asserted.<br><br>F.R.C.P. Rule 56(c)(1). |
| 42. (P) | There is no text in the galleries, the copy of a post is contained in the "text side."<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: Dirt Dep. 59:3-64:5, 66:3-67:9, 73:18-75:22, 88:24-89:3)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 31:25-32:3, 33:9-35:3)**;** *see e.g.*, **Dkt. 44-13** (Doniger Decl. Ex. 12 at DIRT00278-80)**, Dkt. 44-14** (Doniger Decl. Ex. 13 at DIRT00268-69)**.** | Disputed: (1) the material cited does not establish the fact asserted; (2) insofar as it implies the galleries for the articles at issue could be accessed without the "text side" absent knowing the image's URL.<br><br>F.R.C.P. Rule 56(c)(1); **Dkt. No. 53-6**, ¶ 8; **Dkt. No. 53-23** (McClain Decl), ¶ 8. |
| 43. (P) | In the gallery, a user can zoom in on the photos and make them larger, as the photos displayed in the gallery are high-resolution.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: Dirt Dep. 59:3-64:5, 66:3-67:9, | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | 73:18-75:22, 88:24-89:3), **Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 31:25-32:3, 33:9-35:3)**; see e.g., Dkt. 44-13** (Doniger Decl. Ex. 12 at DIRT00277, 287-311), **Dkt. 44-14** (Doniger Decl. Ex. 13 at DIRT00240-59, 267)**; see also, e.g., Dkt. 44-41 through 44-43** (Vogts Decl. Ex. 5-7)**. | |
| 44. (P) | Each of the posts on the PMC Defendants' Website displaying the Subject Photographs consisted of a "text side" and an "image side," each of which was created and published separately.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: Dirt Dep. 59:3-64:5, 66:3-67:9, 73:18-75:22, 88:24-89:3)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 31:25-32:3, 33:9-35:3)**, Dkt. 44-13 through 44-18** (Doniger Decl. 12-17)**. | Disputed insofar as it implies the "image side" can be accessed separately from the "text side" absent knowing the URL.<br><br>**Dkt. No. 53-6** (Voss Decl), ¶ 8; **Dkt. No. 53-23** (McClain Decl), ¶ 8. |
| 45. (P) | Each "image side" of those posts was "a gallery of images," and those "images" were the Subject Photographs.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: Dirt Dep. 59:3-64:5, 66:3-67:9, 73:18-75:22, 88:24-89:3)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 31:25-32:3, 33:9-35:3)**, Dkt. 44-13** (Doniger Decl. Ex. 12 at DIRT00277, 287-311), **Dkt. 44-14** (Doniger Decl. Ex. 13 at | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | DIRT00240-59, 267), **Dkt. 44-15 through 44-17** (Doniger Decl. Ex. 14-16)**.** | |
| 46. (P) | The "text side" of the posts on the PMC Defendants' Website starts with a "header photo" that includes an inset headshot of the individual discussed in the post superimposed over a "feature image" of the property discussed in the post.<br><br>**Dkt. 44-3** (Doniger Decl. Ex. 2: PMC Supp. Resp. to RFA 5)**, Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 72:11-73:25, 84:2-85:24, 95:2-13)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 103:10-104:6)**;** *see, e.g.***, Dkt. 44-13** (Doniger Decl. Ex. 12 at DIRT00277)**, Dkt. 44-14** (Doniger Decl. Ex. 13 at DIRT00267)**.** | Disputed: (1) the text side begins with the headline of the article that identifies the individual discussed in the article, the name of the author and the date and time it was published; and (2) the material cited does not support that the text side began with the header photo.<br><br>F.R.C.P. Rule 56(c)(1); **Dkt. No. 53-6** (Voss Decl), ¶¶ 11, 18; **Dkt. No. 53-11** (Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos); **Dkt. No. 53-13** (Stanchfield Article Cover Photo); **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-19** (O'Dowd Article Photos); **Dkt. No. 53-20** (O'Dowd Article Cover Photo); **Dkt. No. 53-23** (McClain Decl), ¶ 13; **Dkt. No. 53-24** (Williams Article Text); **Dkt. No. 53-25** (Williams Article Photos). |
| 47. (P) | The PMC Defendants obtain those inset headshots from Getty Images, and are authorized to use those inset headshots pursuant to a license agreement between PMC and Getty.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 72:11-73:25, 84:2-85:24, 95:2-13)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 103:10-104:6)**, Dkt. 44-8** (Doniger | Undisputed. For clarity, the posts as issue used photographs licensed from the Associated Press and not Getty Images.<br><br>*See infra* Section I, P. SUF ¶¶ 50-52 |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | Decl. Ex. 7: PMC Supp. Resp. to RFA 5**)**. | |
| 48. (P) | PMC entered into "an exclusive global partnership with Getty Images," which "maintains one of the largest and best privately-owned photographic archives in the world with millions of images." Pursuant to the agreement, Getty is "the exclusive global distribution partner for PMC's unique collection of photographic content from their most iconic brands," including *Variety*. "The agreement also includes a Getty Images licensing subscription to give PMC access to Getty Images' unmatched photo and video content."<br><br>**Dkt. 45-1** (RJN Ex. 1)**.** | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs.<br><br>*Ochoa*, 26 F.4th at 1055-56; **Dkt. No. 53-3** (Opp. to RJN), Section I; F.R.E. Rule 401.<br><br>The material cited cannot be presented in a form that would be admissible in evidence.<br><br>F.R.C.P. Rule 56(c)(2); **Dkt. No. 53-3** (Opp. to RJN), Section I. |
| 49. (P) | PMC admonishes users of the PMC Defendants' Website that "Getty Images still images and visual representations (including, without limitation, Getty Images wholly-owned images and visual representations, as well as the collections licensed through Getty Images) may not be republished, retransmitted, reproduced, downloaded or otherwise used, except for downloading for personal, non-commercial use."<br><br>**Dkt. 45-7** (RJN Ex. 7)**.** | Immaterial because it is irrelevant to whether the PMC Defendants made a fair use of the Subject Photographs.<br><br>*Ochoa*, 26 F.4th at 1055-56; **Dkt. No. 53-3** (Opp. to RJN), Section VI; 17 U.S.C. § 107; F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119.<br><br>The material cited cannot be presented in a form that would be admissible in evidence.<br><br>F.R.C.P. Rule 56(c)(2); **Dkt. No. 53-3** (Opp. to RJN), Section VI. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 50. (P) | Prior to PMC's agreement with Getty Images, PMC had an agreement with Associated Press that was essentially the same— i.e., the PMC Defendants' were authorized to use the inset headshots from Associate Press pursuant to PMC's agreement with Associate Press.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 72:11-73:25, 84:2-85:24, 95:2-13, 110:2-111:8)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 80:5-85:5, 89:8-91:21, 103:10-104:6)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 64:1-65:13)**.** | Undisputed. |
| 51. (P) | Subject Photographs 1, 32, and 40 were the "feature image[s]" used in the "header photo[s]" in the text sides of the posts on the PMC Defendants' Website that displayed the Subject Photographs.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 72:11-73:25, 84:2-85:24, 95:2-13, 110:2-111:8)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 80:5-85:5, 89:8-91:21, 103:10-104:6)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 64:1-65:13)**, Dkt. 44-13** (Doniger Decl. Ex. 12 at DIRT00277)**, Dkt. 44-14** (Doniger Decl. Ex. 13 at | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | DIRT00267)**, Dkt. 44-23** (Doniger Decl. Ex. 22 at DIRT00005)**, Dkt. 44-31** (Doniger Decl. Ex. 30)**.** | |
| 52. (P) | Dirt obtained the inset headshots of the individuals that were discussed in the text sides of those posts—which were superimposed over the "feature image[s]" of Subject Photographs 1, 32, and 40—from Associated Press.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 72:11-73:25, 84:2-85:24, 95:2-13, 110:2-111:8)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 80:5-85:5, 89:8-91:21, 103:10-104:6)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 64:1-65:13)**, Dkt. 44-13** (Doniger Decl. Ex. 12 at DIRT00277)**, Dkt. 44-14** (Doniger Decl. Ex. 13 at DIRT00267)**, Dkt. 44-24** (Doniger Decl. Ex. 22 at DIRT00005)**, Dkt. 44-31** (Doniger Decl. Ex. 30)**.** | Undisputed. |
| 53. (P) | On or around August 7, 2020, Mark Voss, real estate editor for the PMC Defendants' Website, accessed copies of Subject Photographs 1-20 (*see* Dkt. 1-1) on realtor.com.<br><br>**Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROGs 2, 4-5)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROGs 2, 4-5)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 108:7-12, 109:3-110:15)**, Dkt. 44-19** (Doniger Decl. Ex. 18)**.** | |
| 54. (P) | Mr. Voss copied Subject Photographs 1-20 from realtor.com by right-clicking on them, saving them, cropping out MLS watermarks from the bottom righthand corners of them, changing their file names, and then uploading them to the PMC Defendants' media servers.<br><br>**Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROGs 2, 4-5)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROGs 2, 4-5)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 108:7-12, 109:3-110:15)**, Dkt. 44-16** (Doniger Decl. Ex. 15)**, Dkt. 44-19** (Doniger Decl. Ex. 18)**.** | Undisputed. |
| 55. (P) | On August 7, 2020 at 12:24 p.m., Mr. Voss published a gallery of Subject Photographs 1-20 on the PMC Defendants' Website and titled the gallery "'Scandal' Star Darby Stanchfield Sheds Glendale Home."<br><br>**Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROGs 2, 4-5)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROGs 2, 4-5)**, Dkt. 44-7** | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | (Doniger Decl. Ex. 6: Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 108:7-12, 109:3-110:15)**, Dkt. 44-13** (Doniger Decl. Ex. 12)**, Dkt. 44-16** (Doniger Decl. Ex. 15)**; Dkt. 44-41** (Vogts Decl. Ex. 5)**.** | |
| 56. (P) | That same day at 12:45 p.m., Mr. Voss published the text side (i.e., an article) linked to that gallery and titled the text side "Darby Stanchfield Sells Secluded Glendale Traditional." **Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROGs 2, 4-5)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROGs 2, 4-5)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 108:7-12, 109:3-110:15)**, Dkt. 44-13** (Doniger Decl. Ex. 12)**, Dkt. 44-16** (Doniger Decl. Ex. 15)**; Dkt. 44-41** (Vogts Decl. Ex. 5)**.** | Undisputed. |
| 57. (P) | On or about September 15, 2020, Mr. Voss accessed copies of Subject Photographs 21-38 on redfin.com. | Undisputed. |

CONSOLIDATED STATEMENT OF FACTS

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROGs 2, 4-5)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROGs 2, 4-5)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 111:5-112:13)**, Dkt. 44-20** (Doniger Decl. Ex. 19)**.** | |
| 58. (P) | Mr. Voss copied Subject Photographs 21-38 from redfin.com by right-clicking on them, saving them, cropping out MLS watermarks from the bottom righthand corners, changing their file names, and uploading them to the PMC Defendants' media servers.<br><br>**Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROGs 2, 4-5)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROGs 2, 4-5)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 111:5-112:13)**, Dkt. 44-17** (Doniger Decl. Ex. 16)**, Dkt. 44-20** (Doniger Decl. Ex. 19)**.** | Undisputed. |
| 59. (P) | On September 15, 2020 at 4:52 p.m., Mr. Voss published a gallery of Subject Photographs 21-38 on the PMC Defendants' Website and titled the gallery "Look Around Chris O'Dowd's L.A. Bungalow." | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
|  | **Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROGs 2, 4-5)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROGs 2, 4-5)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 111:5-112:13)**, Dkt. 44-14** (Doniger Decl. Ex. 13)**, Dkt. 44-17** (Doniger Decl. Ex. 16)**; Dkt. 44-42** (Vogts Decl. Ex. 6)**.** |  |
| 60. (P) | That same day at 4:55 p.m., Mr. Voss published a text side linked to that gallery and titled the text side "Chris O'Dowd, Dawn O'Porter List Melrose District Bungalow."<br><br>**Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROGs 2, 4-5)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROGs 2, 4-5)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 53:6-54:20, 86:15-87:19, 101:10-17, 106:5-107:2, 111:5-112:13)**, Dkt. 44-14** (Doniger Decl. Ex. 13)**, Dkt. 44-17** (Doniger Decl. Ex. 16)**.** | Undisputed. |
| 61. (P) | On or about March 10, 2021, James McClain, editor at large for the PMC Defendants' Website, accessed copies of Subject Photographs 39-53 on redfin.com.<br><br>**Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROGs 2, 4-5)**, Dkt.** | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROGs 2, 4-5)**, Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 97:15-98:8, 101:6-22, 103:5-10, 104:3-10, 105:3-5, 107:3-20, 108:5-19, 115:2-9, 117:14-118:1, 119:10-23, 123:18-124:15)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 67:16-72:5, 91:17-92:2)**, Dkt. 44-21** (Doniger Decl. Ex. 20)**.** | |
| 62. (P) | Mr. McClain copied Subject Photographs 39-53 from redfin.com by right-clicking them, saving them, cropping out MLS watermarks from the bottom righthand corners, changing their file names, and uploading them to the PMC Defendants' media servers.<br><br>**Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROGs 2, 4-5)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROGs 2, 4-5)**, Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 97:15-98:8, 101:6-22, 103:5-10, 104:3-10, 105:3-5, 107:3-20, 108:5-19, 115:2-9, 117:14-118:1, 119:10-23, 123:18-124:15)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 67:16-72:5, 91:17-92:2)**, Dkt. 44-15** (Doniger Decl. Ex. 14)**.** | Undisputed. |
| 63. (P) | On March 10, 2021, Mr. McClain published a gallery of Subject | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | Photographs 39-53 on the PMC Defendants' Website.<br><br>**Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROGs 2, 4-5)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROGs 2, 4-5)**, Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 97:15-98:8, 101:6-22, 103:5-10, 104:3-10, 105:3-5, 107:3-20, 108:5-19, 115:2-9, 117:14-118:1, 119:10-23, 123:18-124:15)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 67:16-72:5, 91:17-92:2)**, Dkt. 44-15** (Doniger Decl. Ex. 14)**; Dkt. 44-43** (Vogts Decl. Ex. 7)**. | |
| 64. (P) | That same day at 2:59 p.m., Mr. McClain published a text side linked to that gallery and titled the text side "Robin Williams' Son Zak Buys French Country-Inspired L.A. Villa."<br><br>**Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROGs 2, 4-5)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROGs 2, 4-5)**, Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 97:15-98:8, 101:6-22, 103:5-10, 104:3-10, 105:3-5, 107:3-20, 108:5-19, 115:2-9, 117:14-118:1, 119:10-23, 123:18-124:15)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 67:16-72:5, 91:17-92:2)**, Dkt. 44-18** (Doniger Decl. Ex. 17)**. | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | |
| 65. (P) | Dirt testified that the Subject Photographs were used in the galleries "for people to look at" as "a visual representation of . . . some of the things we've talked about in the article[s]."<br><br>**Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 87:20-88:2, 101:21-103:2**)**. | Disputed: (1) as it omits reference to what was discussed in the article; and (2) insofar as it asserts that this was the only reason.<br><br>**Dkt. No. 53-6** (Voss Decl), ¶¶ 2, 5, 11-12, 14-15, 18-19, 21-22; **Dkt. No. 53-11** (Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos); **Dkt. No. 53-13** (Stanchfield Article Color Photos); **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-19** (O'Dowd Article Photos)**;** **Dkt. No. 53-20** (O'Dowd Article Cover Photo); **Dkt. No. 53-23** (McClain Decl), ¶¶ 2, 5, 13-14, 16-17; **Dkt. No. 53-24** (Williams Article Text); **Dkt. No. 53-25** (Williams Article Photos). |
| 66. (P) | Each of the above-referenced text sides (i.e., articles) include digressions away from the subject individuals and properties that discuss "information that [Dirt thought] would be interesting or fun or relevant or supports the information that [Dirt] put in the article[s]."<br><br>**Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 128:13-23, 129:5-9, 131:2-24, 135:5-24)**, Dkt. 44-13** (Doniger Decl. Ex. 12 at DIRT00278-80)**, Dkt. 44-14** (Doniger Decl. Ex. 13 at DIRT00268-69)**, Dkt. 44-18** | Disputed insofar as the "digressions" did not concern the subject individuals and properties.<br><br>**Dkt. Not. 53-6** (Voss Decl), ¶¶ 9-14, 16-20; **Dkt. No. 53-11** (Stanchfield Article Text), **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-21** (O'Dowd Linked Article); **Dkt. No. 53-22** (O'Porter Linked Article); **Dkt. No. 53-23** (McClain Decl), ¶¶ 9, 12-15; **Dkt. No. 53-24** (Williams Article Text); **Dkt. No. 53-26** (First Linked Williams Article); **Dkt. No. 53-27** (Second Linked Williams Article). |

CONSOLIDATED STATEMENT OF FACTS

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | (Doniger Decl. Ex. 17 at 2, 3, and 12 of 13). | |
| 67. (P) | Digressions in the August and September 2020 text sides were links to other posts on the PMC Defendants' Website that displayed no photos.<br><br>**Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 128:13-23, 129:5-9, 131:2-24, 135:5-24), **Dkt. 44-9** (Doniger Decl. Ex. 8). | Disputed insofar as the "digressions" to "other posts" never contained photos.<br><br>**Dkt. No. 53-6** (Voss Decl), ¶ 8; **Dkt. No. 53-23** (McClain Decl), ¶ 8. |
| 68. (P) | **The PMC Defendants' further unauthorized uses of the Subject Photographs in newsletters, social media posts, and syndicated content** | // |
| 69. (P) | Certain posts from the PMC Defendants' Website are promoted in Dirt newsletters that are distributed to subscribers of the PMC Defendants' Website.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 57:5-58:21, 61:6-12). | Undisputed. |
| 70. (P) | Those newsletters contain the header photos from, and links to, particular posts on the PMC Defendants' Website.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 57:5-58:21, 61:6-12). | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | |
| 71. (P) | The newsletters contain the posts that performed well and attracted users on the PMC Defendants' Website.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 57:5-58:21, 61:6-12)**.** | Disputed: (1) insofar as this fact implies that the articles at issue performed well; and (2) the material cited does not establish that the articles at issue performed well.<br><br>F.R.C.P. Rule 56(c)(1)**; Dkt. No. 53-23** (McClain Decl), ¶ 18. |
| 72. (P) | Not every post from the PMC Defendants' Website is promoted in Dirt newsletters.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 57:5-58:21, 61:6-12)**.** | Undisputed. |
| 73. (P) | The PMC Defendants distribute the Dirt newsletters via email to the subscribers of the PMC Defendants' Website.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 97:15-98:8, 101:6-22, 123:18-124:15, 133:24-134:15, 144:1-146:6)**, Dkt. 44-22 through 44-24** (Doniger Decl. Ex. 21-23)**.** | Disputed as the newsletter is sent for free to individuals who subscribe to the newsletter and not the PMC Defendants' Website.<br><br>**Dkt. No. 53-23** (McClain Decl), ¶ 19. |
| 74. (P) | The posts on the PMC Defendants' Website displaying the Subject Photographs were promoted in Dirt newsletters on August 11, 2020; September 18, 2020; and March 12, 2021. The newsletters contained links to, and | Undisputed. |

CONSOLIDATED STATEMENT OF FACTS

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | displayed the header photos from, those posts.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 97:15-98:8, 101:6-22, 123:18-124:15, 133:24-134:15, 144:1-146:6)**, Dkt. 44-23 through 44-24** (Doniger Decl. Ex. 22-23)**.** | |
| 75. (P) | Those posts were included in Dirt newsletters because they attracted users and performed well on the PMC Defendants' Website.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 57:5-58:21, 61:6-12)**.** | Disputed: (1) as to the assertion that the articles at issue performed well; and (2) that the material cited does not establish that the articles at issue performed well.<br><br>F.R.C.P. Rule 56(c)(1); **Dkt. No. 53-23** (McClain Decl), ¶ 18. |
| 76. (P) | The newsletter dated August 11, 2020 displayed a copy of Subject Photograph 1.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 97:15-98:8, 101:6-22, 123:18-124:15, 133:24-134:15, 144:1-146:6)**, Dkt. 44-24** (Doniger Decl. Ex. 23 at DIRT00217)**.** | Undisputed. |
| 77. (P) | The newsletter dated September 18, 2020 displayed a copy of Subject Photograph 32.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 97:15-98:8, 101:6-22, 123:18-124:15, 133:24-134:15, 144:1-146:6)**, Dkt. 44-24** | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | (Doniger Decl. Ex. 23 at DIRT00229). | |
| 78. (P) | The newsletter dated March 12, 2021 displayed a copy of Subject Photograph 40.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 97:15-98:8, 101:6-22, 123:18-124:15, 133:24-134:15, 144:1-146:6)**, Dkt. 44-23** (Doniger Decl. Ex. 22 at DIRT00005). | Undisputed. |
| 79. (P) | The PMC Defendants distributed those newsletters via email to the subscribers of the PMC Defendants' Website.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 97:15-98:8, 101:6-22, 123:18-124:15, 133:24-134:15, 144:1-146:6)**, Dkt. 44-22 through 44-24** (Doniger Decl. Ex. 21-23). | Disputed because: (1) the newsletters were sent to subscribers of the newsletter; and (2) the material cited does not establish the newsletter was sent to the subscribers of the PMC Defendants' Website.<br><br>F.R.C.P. Rule 56(c)(1); **Dkt. No. 53-23** (McClain Decl), ¶ 19. |
| 80. (P) | Certain posts from the PMC Defendants' Website are also promoted on Dirt's social media channels.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 57:5-58:21, 61:6-12). | Undisputed. |
| 81. (P) | Like the newsletters, the social media posts contain the header photos from, and links to, | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | particular posts on the PMC Defendants' Website.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 57:5-58:21, 61:6-12)**.** | |
| 82. (P) | The social media posts link to the posts on the PMC Defendants' Website that performed well and attracted users.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 57:5-58:21, 61:6-12)**.** | Disputed as (1) the articles at issue did not perform well; and (2) the material cited does not establish that the articles at issue performed well.<br><br>F.R.C.P. Rule 56(c)(1); **Dkt. No. 53-23** (McClain Decl), ¶ 18. |
| 83. (P) | Not every post from the PMC Defendants' Website is promoted on Dirt's social media channels.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 57:5-58:21, 61:6-12)**.** | Undisputed. |
| 84. (P) | On March 12, 2021, Dirt posted on the Dirt Twitter and Facebook webpages a link to the March 10, 2021 post on the PMC Defendants' Website displaying Subject Photographs 39-53. Those social media posts displayed a copy of Subject Photograph 40.<br><br>**Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROG 5)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROG 5)**, Dkt. 44-25** (Doniger Decl. Ex. 24)**.** | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | |
| 85. (P) | PMC syndicates content from the PMC Defendants' Website to other brands within PMC's portfolio as well as PMC's third-party syndication partners.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 79:2-80:11, 170:12-173:22)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 43:15-48:17)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 39:11-41:25, 104:3-17)**.** | Undisputed. |
| 86. (P) | PMC, not Dirt, distributes content to PMC brands and, pursuant to syndication agreements, to PMC's third-party syndication partners.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 79:2-80:11, 170:12-173:22)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 43:15-48:17)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 39:11-41:25, 104:3-17)**, Dkt. 44-26 through 44-28** (Doniger Decl. Ex. 25-27)**.** | Undisputed. |
| 87. (P) | Those agreements contain limitations on the distribution of photos to PMC's syndication partners.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 79:2-80:11, 170:12-173:22)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 43:15-48:17)**,** | Disputed as the material cited does not establish the fact asserted.<br><br>F.R.C.P. Rule 56(c)(1). |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 39:11-41:25, 104:3-17)**, Dkt. 44-26 through 44-28** (Doniger Decl. Ex. 25-27)**.** | |
| 88. (P) | Dirt "do[es]n't have anything to do with [syndication]," is not a signatory to any of those agreements, and has no syndication agreements of its own.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 79:2-80:11, 170:12-173:22)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 43:15-48:17)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 39:11-41:25, 104:3-17)**, Dkt. 44-26 through 44-28** (Doniger Decl. Ex. 25-27)**.** | Undisputed. |
| 89. (P) | PMC, not Dirt, earns revenue from syndicating content from the PMC Defendants' Website.<br><br>**Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 79:2-80:11, 170:12-173:22)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 43:15-48:17)**, Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 39:11-41:25, 104:3-17)**, Dkt. 44-26 through 44-28** (Doniger Decl. Ex. 25-27)**.** | Undisputed. |
| 90. (P) | Not all content from the PMC Defendants' Website is or can be syndicated. The PMC Defendants have previously declined to syndicate content when the owner | Disputed as the evidence cited does not demonstrate that the "owner" objected but "the agent or somebody who's involved with the – the property." |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | of the photos displayed in connection with that content "didn't want it there[.]"<br><br>**Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 43:15-48:17)**.** | F.R.C.P. Rule 56(c)(1). |
| 91. (P) | PMC distributed the posts displaying the Subject Photographs to other PMC brands, as well as PMC's syndication partners pursuant to its syndication agreements.<br><br>**Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 120:10-124:19, 125:8-127:20, 128:5-129:8)**, Dkt. 44-29 through 44-31** (Doniger Decl. Ex. 28-30)**.** | Undisputed. |
| 92. (P) | PMC distributed the August 7, 2020 text side and gallery, which displayed copies of Subject Photographs 1-20, to *Variety* and PMC's third-party syndication partners Yahoo and Newsbreak.<br><br>**Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 120:10-124:19, 125:8-127:20, 128:5-129:8)**, Dkt. 44-29** (Doniger Decl. Ex. 28)**.** | Undisputed. |
| 93. (P) | PMC distributed the September 15, 2020 text side and gallery, which displayed copies of Subject Photographs 21-38, to *Variety* and PMC's third-party syndication partner Yahoo. | Undisputed. |

CONSOLIDATED STATEMENT OF FACTS

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 120:10-124:19, 125:8-127:20, 128:5-129:8)**, Dkt. 44-30** (Doniger Decl. Ex. 29)**.** | |
| 94. (P) | PMC distributed the March 10, 2021 text side and gallery, which displayed copies of Subject Photographs 39-53, to PMC's third-party syndication partners Newsbreak and Microsoft.<br><br>**Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 120:10-124:19, 125:8-127:20, 128:5-129:8)**, Dkt. 44-31** (Doniger Decl. Ex. 30)**.** | Undisputed. |
| 95. (P) | None of the PMC Defendants' uses of the Subject Photographs credited or otherwise identified Vogts as the source of the Subject Photographs, mentioned Vogts or the Subject Photographs, treated Vogts himself or the Subject Photographs themselves as the story, or commented on or critiqued Vogts himself or the Subject Photographs themselves.<br><br>**Dkt. 22 ¶¶ 24-25, 32; Dkt. 44-2** (Doniger Decl. Ex. 1: Dirt Resp. to RFAs 3-4, 13)**, Dkt. 44-3** (Doniger Decl. Ex. 2: PMC Resp. to RFAs 3-4, 13)**, Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROG 5)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROG 5)**, Dkt. 44-6** | Disputed as the articles at issue provide critique and commentary of the contents of the Subject Photographs.<br><br>**Dkt. No. 53-6**, **¶¶** 9-22; **Dkt. No. 53-11** (Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos); **Dkt. No. 53-13** (Stanchfield Article Cover Photo); **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-19** (O'Dowd Article Photos); **Dkt. No. 53-20** (O'Dowd Article Cover Photo); **Dkt. No. 53-23** (McClain Decl) **¶¶** 9, 12-17; **Dkt. No. 53-24** (O'Dowd Article Text); **Dkt. No. 53-25** (O'Dowd Article Photos). |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | (Doniger Decl. Ex. 5: McClain Dep. 97:15-98:8, 101:6-22, 123:18-124:15, 133:24-134:15, 144:1-146:6)**, Dkt. 44-13 through 44-14** (Doniger Decl. Ex. 12-13)**, Dkt. 44-18** (Doniger Decl. Ex. 17)**, Dkt. 44-23 through 44-25** (Doniger Decl. Ex. 22-24)**, Dkt. 44-29 through 44-31** (Doniger Decl. Ex. 28-30)**.** | |
| 96. (P) | Dirt has previously sought and obtained permission to use photos in articles "reporting on the property depicted in the photograph[s]," and in such circumstances has previously been authorized to use such photos on the condition that a photo credit be attached.<br><br>**Dkt. 44-2** (Doniger Decl. Ex. 1: Dirt Supp. Resp. to RFA 5)**, Dkt. 44-3** (Doniger Decl. Ex. 2: PMC Supp. Resp. to RFA 5)**, Dkt. 44-7** (Doniger Decl. Ex. 6: Dirt Dep. 146:14-148:15)**.** | Disputed: (1) as the evidence cited does not support the proposition that Dirt previously "sought" permission to use photos in its articles; and (2) Dirt was provided the real estate listing photographs by the real estate agents for use in Dirt articles.<br><br>F.R.C.P. Rule 56(c)(1); **Dkt. No. 53-6** (Voss Decl), ¶ 7; **Dkt. No. 53-23** (McClain Decl), ¶ 7. |
| 97. (P) | On September 22, 2021, Vogts sent, and the PMC Defendants received, a cease-and-desist letter regarding the unauthorized display of copies of the Subject Photographs in the three articles. The PMC Defendants confirmed that they read and understood that letter. | Immaterial to whether the PMC Defendants made a fair use of the Subject Photographs.<br><br>*Ochoa*, 26 F.4th at 1055-56; 17 U.S.C. § 107; F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. 22 ¶ 28; Dkt. 44-2** (Doniger Decl. Ex. 1: Dirt Resp. to RFA 10)**, Dkt. 44-3** (Doniger Decl. Ex. 2: PMC Resp. to RFA 10)**, Dkt. 44-6** (Doniger Decl. Ex. 5: McClain Dep. 157:8-15)**.** | |
| 98. (P) | The PMC Defendants eventually removed the unauthorized copies of the Subject Photographs from the articles. However, the articles remain up, advertisements still appear alongside those articles, and the articles have continued to generate page views and revenue for PMC.<br><br>**Dkt. 44-8** (Doniger Decl. Ex. 7: PMC Dep. 60:23-61:3)**, Dkt. 44-10 through 44-11** (Doniger Decl. Ex. 9-10)**.** | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | |
| 99. (P) | The PMC Defendants withdrew their second affirmative defense that "Vogts' claims fail (in whole or in part) because the Penske Defendants secured the appropriate license for Vogts copyrighted works."  **Dkt. 44-4** (Doniger Decl. Ex. 3: Dirt Resp. to ROG 10)**, Dkt. 44-5** (Doniger Decl. Ex. 4: PMC Resp. to ROG 10)**.** | Undisputed. |
| 100. (D) | Since 2014, Vogts has been a photographer who specializes in photographing real estate.  **Dkt. No. 53-28** (Declaration of Lincoln Bandlow ("LB Decl."), ¶ 2; **Dkt. No. 55-3** (Deposition of Vogts ("Vogts Depo")), p. 13:19-21, 14:20-15:1, 15:20-16:5; Dkt. No. 1, ¶ 4. | Undisputed that Vogts is a Los Angeles-based photographer specializing in residential and commercial interiors, luxury real estate, and architecture.  **Dkt. 44-32** ("Vogts Decl.") ¶ 2. |
| 101. (D) | Vogts does not photograph celebrities or engage in sports photography, nor does he specialize in photographing properties owned by celebrities. | Undisputed, although Vogts testified that it is common for him to photograph a "celebrity's" property and not be informed exactly who the owner of the property is. Vogts has |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. No. 53-28** (LB Decl), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), pp. 22:11-18, 50:9-12. | also had clients approach him to photograph more than one "celebrity" property.<br><br>**Dkt. 53-29** (Vogts Dep. 42:18-43:2, 50:13-20, 53:3-22, 158:5-159:2, 191:8-19). |
| 102. (D) | Vogts does not photograph real estate without being retained to do so.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), pp. 24:20-25:3 | Undisputed that as a professional photographer Vogts photographs properties when he is hired to do so by clients.<br><br>**Vogts Decl. ¶¶ 4-5.** |
| 103. (D) | The vast majority of Vogts' clients are real estate agents who retain Vogts to photograph a property to facilitate its sale.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), pp. 20:6-21:16, 23:20-24:19, 25:4-16, 38:15-21, 40:17-41:12, 47:5-48:9, 50:21-51:5, 57:2-58:6. | Undisputed that Vogts photographs a property to depict the property and its aspects/features; and that Vogts grants his initial commission clients a license to use those photos to market the photographed property for sale, lease, or purchase.<br><br>**Vogts Decl. ¶¶ 4-5.** |
| 104. (D) | Vogts has not been retained by a celebrity to photograph their property.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), pp. 51:23-52:4. | Disputed. The photographs at issue in this case include celebrity properties that Vogts was retained to photograph by the agents of those celebrity sellers. And the cited testimony merely states that Vogts does not recall if or whether he has "been directly commissioned by a famous individual to do residential real estate photography[.]" |
| 105. (D) | Vogts was never retained to photograph real estate for any purpose other than to facilitate the | For purposes of this motion only, undisputed. |

CONSOLIDATED STATEMENT OF FACTS

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | sale of a property or highlight an interior designer's work.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶ 2, **Dkt. No. 53-3** (Vogts Depo), pp. 25:13-26:4 | |
| 106. (D) | Vogts takes photographs of properties based on his client's intended purpose.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), p. 25:4-12. | Vogts does not understand this "fact." The cited testimony states that Vogts' clients convey to him what their intended purpose is, but that he photographs the property and its aspects to show it/them. |
| 107. (D) | When hired by a real estate agent selling a residential property, Vogts takes photographs of the property with the purpose of: (1) facilitating the sale of the property and highlighting that it would make a good home; and (2) the real estate agent displaying the pictures on real estate listings and marketing materials to facilitate the sale of the property depicted in the photograph.<br><br>**Dkt. No. 53-28**, ¶ 2; **Dkt. No. 55-3** (Vogts Depo), pp. 40:17-41:12, 47:5-48:9 & 57:2-58:6 | Disputed. Vogts photographs a property to depict the property and its aspects/features; and grants his initial commission clients a license to use those photos to market the photographed property for sale, lease, or purchase.<br><br>**Vogts Decl. ¶¶ 4-5.** |
| 108. (D) | Generally speaking, Plaintiff does not know whether the owner (or potential buyer) of a particular property is a celebrity or the owner.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), pp. | Undisputed. |

CONSOLIDATED STATEMENT OF FACTS

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | 42:9-43:2; 50:21-51:5; 52:23-53:2; 54:19-55:20; 139:2-4. | |
| 109. (D) | Vogts does not "stage" his photographs – e.g., he does not move items or furniture in the property prior to taking the photograph.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), pp. 31:24-33:9. | Undisputed that the cited testimony states that, under the PMC Defendants' definition of "stage," if Vogts does "stage," it is discretionary, and he may do so in post-production. The testimony also states that Vogts' purpose is to photograph the property, and makes his own creative decisions in doing that.<br><br>**Vogts Decl. ¶ 12.** |
| 110. (D) | Vogts' photographs of properties contain numerous unauthorized uses of third-party copyrighted content, such as paintings, photographs and sculptures.<br><br>**Dkt. No. 53-28** (LB Decl), ¶¶ 2, 4, 6, 9; **Dkt. No. 53-31** (Photographs of 601 Seclusion Lane (the "Stanchfield Photographs")); **Dkt. No. 53-33** (Photographs of 713 N. Alta Vista Blvd. (the "O'Dowd Photographs"); **Dkt. No. 53-36** (Photographs of 4047 Dixie Canyon (the "Williams Photographs"); **Dkt. No. 55-3** (Vogts Depo), pp. 100:6-109:22, 140:14-144:13, 180:4-184:20. | Disputed. None of the evidence cited identifying the purported "third-party copyrighted content," whether such content is in fact "copyrighted" or in the public domain, or whether such content was licensed (expressly or impliedly) for use in the Vogts' photographs. |
| 111. (D) | Vogts does not request photo credit when his real estate agent clients exploit his photographs. | Disputed. The cited testimony states only that Vogts was informed by his real estate agent clients that it is not an industry standard for him to be credited in a Multiple Listing |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. No. 53-28** (LB Decl.), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), pp. 58:8-59:11, 59:23-60:18. | Service's ("MLS") use of the photos as part of a listing because MLSs do not allow photographer watermarks. |
| 112. (D) | When Vogts' photographs are uploaded to a Multiple Listing Service ("MLS") in connection with a real estate listing, the MLS does not allow Vogts to receive a photo credit.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), pp. 58:8-59:11, 96:17-19. | Undisputed that the cited testimony states that Vogts was informed by his real estate agent clients that it is not an industry standard for him to be credited in a Multiple Listing Service's ("MLS") use of the photos as part of a listing because MLSs do not allow photographer watermarks. |
| 113. (D) | Aside from two exceptions noted below, Vogts has only been approached by designers and stagers to subsequently license his photographs that were initially commissioned by real estate agents.<br><br>**Dkt. No. 53-28** (LB Decl), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), pp. 72:22-73:14, 81:20-83:15. | Disputed.<br><br>**Vogts Decl. ¶¶ 3, 6, 8-9; Dkt. 44-40** (Vogts Decl. Ex. 4)<br><br>The cited evidence also shows the PMC Defendants' counsel acknowledging "deals with Redfin, Zillow, and 'Daily Mail[.]'" |
| 114. (D) | While Vogts has negotiated the terms of a subsequent license with designers and stagers, no agreement was ever reached, and the photos were never used or licensed for use by designers or stagers.<br><br>**Dkt. No. 53-28** (LB Decl), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), pp. 72:22-73:14, 81:20-83:15. | Disputed. The cited testimony states that there was an instance where designers, stagers, or other entities connected to the property inquired about licensing Vogts' photos for use on their website and social media; that they did not agree to pricing terms; and that the inquiring party instead chose to screenshot and use Vogts' photos without permission instead of licensing them. |
| 115. (D) | No third-party has demonstrated interest in licensing Vogts' photographs of residential | Disputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | properties – aside from designers and stagers and the two exceptions noted below.<br><br>**Dkt. No. 53-28** (LB Decl), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), p. 75:5-18. | **Vogts Decl. ¶¶ 3, 6, 8-9; Dkt. 44-40** (Vogts Decl. Ex. 4)<br><br>The cited testimony was restricted to residential properties, and also states that Vogts photographed a commercial property and a designer inquired about licensing his photos of that property for fine art. |
| 116. (D) | Vogts does not attempt to license his photographs of real estate properties to the media because doing so may be inconsistent with his real estate agent client's objectives.<br><br>**Dkt. No. 53-28** (LB Decl), ¶¶ 2, 7; **Dkt. No. 55-3** (Vogts Depo), pp. 77:3-13, 158:5-159:2; *see also Id.*, pp. 149:19-152:11; **Dkt. No. 55-6** (September 15, 2020 Text Between Vogts and Chris Lucibello (the "9/15/20 Text"). | Disputed.<br><br>**Vogts Decl. ¶¶ 3, 6, 8-9; Dkt. 44-40** (Vogts Decl. Ex. 4)<br><br>The cited testimony is that Vogts has not affirmatively reached out to any member of the media independently and unsolicited to ask if they would be interested in licensing photos; that none of his real estate agent clients have asked him to refrain from doing so, though; and that there are many ways for him to commercialize his photos. The cited testimony also states that Vogts has reached out to or responded to inquiries from, e.g., a company that manufactures door and windows that inquired about licensing his photos for use on their website (referred to him by his real estate agent client); and that Vogts has reached out to, e.g., staging companies to see if they would be interested in licensing his photos of a property they staged. Also, a real estate agent client referred The Wall Street Journal to Vogts because the publication wanted to license his |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | photos of a property to use them in an article discussing that property. *See* **Dkt. 53-29** (Vogts Dep. 77:19-83:15, 152:12-155:20). |
| 117. (D) | Despite photographing countless properties since 2014, Vogts has only been approached by the media to license his photographs of celebrity owned properties twice: once in 2014 and once in 2016.<br><br>**Dkt. No. 53-28** (LB Decl), ¶¶ 2, 10; **Dkt. No. 55-3** (Vogts Depo), pp. 61:14-67:22, 152:12-156:6, 188:5-192:25, 198:3-199:24, 220:1-221:23; **Dkt. No. 55-8** (June 27, 2014 Email from Vogts to Zillow (the "Zillow Email")) | Disputed.<br><br>**Vogts Decl. ¶¶ 3, 6, 8-9; Dkt. 44-40** (Vogts Decl. Ex. 4); **Dkt. 53-29** (Vogts Dep. 77:19-83:15, 152:12-155:20)<br><br>The cited testimony states that, in response to a question, Vogts could not recall an exact number of instances, but that the most significant example was from 2014 when he photographed Neil Patrick Harris' property and his photos were subsequently licensed by a media publication for use in an article discussing that property. The cited testimony also shows that, in response to a question, Vogts gave another example from 2016 when a door and window manufacturer reached out to him with a licensing inquiry. |
| 118. (D) | On the two occasions where Vogts authorized the media to use his photographs of celebrity owned properties, (1) the media demonstrated interest in Vogts' photographs because the identity of the celebrities that owned the properties were identified in the real estate listing by the real estate agent to market the property; (2) | Disputed.<br><br>**Vogts Decl. ¶¶ 3, 6, 8-9; Dkt. 44-40** (Vogts Decl. Ex. 4); **Dkt. 53-29** (Vogts Dep. 77:19-83:15, 152:12-155:20) |

CONSOLIDATED STATEMENT OF FACTS

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | the media contacted the real estate agent prior to contacting Vogts; (3) Vogts authorized the media to use his photographs to facilitate the sale of the two properties; (4) Vogts authorized the media to create and syndicate his photographs without monetary compensation and, instead, only requested credit and that the real estate agent approve the articles to ensure the real estate agent, homeowner and property were viewed in a positive light.<br><br>**Dkt. No. 53-28** (LB Decl), ¶¶ 2, 10; **Dkt. No. 55-3** (Vogts Depo), pp. 61:14-67:22, 152:12-156:6, 158:5-159:2, 188:5-203:2, 220:1-221:23; **Dkt. No. 55-8** (the Zillow Email) | |
| 119. (D) | Vogts was subcontracted by another real estate photographer to take photographs of the property located at 601 Seclusion Lane (the "Stanchfield Property") to facilitate is sale via real estate listings and marketing materials.<br><br>**Dkt. No. 53-28** (LB Decl), ¶¶ 2-4, 11-13; **Dkt. No. 53-31** (the Stanchfield Photographs); **Dkt. No. 53-38** (Vogts Responses to the PMC Defendants Requests for Admission ("Responses to RFAs"), No. 20, pp. 10:21-11:4; **Dkt. No. 53-39** (Vogts Responses to the PMC Defendants | Undisputed that Vogts was hired to photograph a property located at 601 Seclusion Lane. Disputed as to characterization "to facilitate is sale via real estate listings and marketing materials." Vogts photographs a property to depict the property and its aspects/features. Vogts grants his initial commissioning clients a license to use those photos to market the photographed property for sale, lease, or purchase.<br><br>**Vogts Decl. ¶¶ 4-6, 11-14; Dkt. 1 ¶ 22, Dkt. 1-1; Dkt. 42 ¶ 1.** |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | Interrogatories ("Responses to Interrogatories"), No. 6, p. 7:9-27; **Dkt. No. 53-40** (Redacted Invoices for Subject Photographs (the "Invoices")); **Dkt. No. 55-3** (Vogts Depo), pp. 34:11-25, 41:17-22, 44:16-45:13, 47:5-48:9, 57:2-58:6 & 95:14-96:9, 100:6-109:22; **Dkt. No. 55-4** (Vogts Invoice for taking the Stanchfield Photographs (the "Stanchfield Invoice"). | |
| 120. (D) | Vogts charged a flat fee of $▮ to take the photographs of the Stanchfield Property (the "Stanchfield Photographs") for this purpose.<br><br>Dkt. No. 53-28 (LB Decl), ¶¶ 2-3; Dkt. No. 55-3 (Vogts Depo), 90:20-94:11; Dkt. No. 55-4 (Stanchfield Invoice). | Disputed. Vogts' different photos and services were itemized and priced separately, they were just paid for on one invoice.<br><br>**Dkt. 43-8 at 1 of 5; Dkt. 57-3 ¶ 8.** |
| 121. (D) | When Vogts took the Stanchfield Photographs, he did not know that Darby Stanchfield and Joseph Gallegos owned the Stanchfield Property, nor was he aware that they had careers in the entertainment industry.<br><br>**Dkt. No. 53-28** (LB Decl), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), pp. 42:9-14, 52:5-8; 98:14-20; *see also Id.*, pp. 42:18-43:2; 50:21-51:5; 52:23-53:2; 54:19-55:20; 139:2-4. | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 122. (D) | When asked, Vogts could not identify how the Stanchfield Photographs contain information regarding: (1) the Stanchfield Property was owned by Ms. Stanchfield and Mr. Gallegos; (2) their careers in the entertainment industry; (3) how they acquired the Stanchfield Property; (4) how the Stanchfield Property was built; (5) the agents involved in the sale of the Stanchfield Property; or (6) the dollar amount of the sale of the Stanchfield Property.<br><br>**Dkt. No. 53-28** (LB Decl), ¶¶ 2, 11; **Dkt. No. 53-38** (Responses to RFAs), Nos. 73-75 (pp. 30:6-31:21); **Dkt. No. 55-3** (Vogts Depo), pp. 110:4-112:4. | Undisputed. |
| 123. (D) | Vogts only licensed the Stanchfield Photographs to the real estate agent for the Stanchfield Property to facilitate its sale through real estate listings and marketing materials.<br><br>**Dkt. No. 53-28** (LB Decl), ¶¶ 2-3; **Dkt. No. 55-3** (Vogts Depo), pp. 34:11-25, 41:17-22, 44:16-45:13, 47:5-48:9, 57:2-58:6, 90:20-94:11, 95:14-96:9; **Dkt. No. 55-4** (the Stanchfield Invoice) | Undisputed. |
| 124. (D) | When the Stanchfield Photographs were posted on an MLS, Vogts did not ask for or receive a photo credit. | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. No. 53-28** (LB Decl), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), p. 60:14-18; *see also Id.*, pp. 58:8-59:18. | |
| 125. (D) | Vogts did not subsequently license, seek to license (nor did anyone demonstrate interest in licensing) the Stanchfield Photographs after they were used to facilitate the sale of the Stanchfield Property – nor did he identify any lost licensing opportunities for the Stanchfield Photographs.<br><br>**Dkt. No. 53-28** (LB Decl), ¶¶ 2, 12-13; **Dkt. No. 53-39** (Responses to Interrogatories), No. 6, p. 7:9-27; **Dkt. No. 53-40** (Invoices); **Dkt. No. 55-3** (Vogts Depo), pp. 61:4-13, 112:5-10 & 211:3-15. | Disputed.<br><br>**Vogts Decl. ¶ 16; Dkt. 57-3 ¶ 14.** |
| 126. (D) | Vogts was hired by real estate agents to take photographs of the property located at 713 N. Alta Vista (the "O'Dowd Property") to facilitate its sale via real estate listings and marketing materials.<br><br>**Dkt. No. 53-28** (LB Decl), ¶¶ 2, 5, 11-13; **Dkt. No. 53-38** (Responses to RFAs), No. 27, pp. 12:28-13:11; **Dkt. No. 53-39** (Responses to Rogs), No. 6, p. 7:9-27; **Dkt. No. 53-40** (the Invoices); **Dkt. No. 55-3** (Vogts Depo), pp. 34:11-15, 37:23-38:6, 41:23-42:3, 44:16-45:13, 47:5-48:9, 57:2-58:6, | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | 125:2-12 & 132:14-133:11; **Dkt. No. 55-5** (Vogts' Invoice for taking the O'Dowd Photographs (the "O'Dowd Invoice"). | |
| 127. (D) | Vogts charged the real estate agents a flat fee of $▮ to take the photographs of the O'Dowd Property (the "O'Dowd Photographs") for this purpose.<br><br>Dkt. No. 53-28 (LB Decl), ¶¶ 2, 5; Dkt. No. 55-3 (Vogts Depo), pp. 124:6-12, 125:2-12 130:23-131:3; Dkt. No. 55-5 (O'Dowd Invoice). | Disputed. Vogts' different photos and services were itemized and priced separately, they were just paid for on one invoice.<br><br>**Dkt. 43-8 at 2 of 5; Dkt. 57-3 ¶ 9.** |
| 128. (D) | When Vogts took the O'Dowd Photographs, he did not know that Chris O'Dowd and Dawn O'Porter owned the O'Dowd Property nor was he aware that they had careers in the entertainment industry.<br><br>**Dkt. No. 53-28** (LB Decl), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), pp. 42:9-14, 52:20-22, 161:24-162:8; *see also Id.*, pp. 42:18-43:2; 50:21-51:5; 52:23-53:2; 54:19-55:20; 139:2-4. | Undisputed. |
| 129. (D) | When asked, Vogts could not identify how the O'Dowd Photographs do contain information regarding: (1) that the O'Dowd Property was owned by Mr. O'Dowd or Ms. O'Porter; (2) how they acquired the O'Dowd Property; or (3) the history of the O'Dowd Property. | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
|  | **Dkt. No. 53-28** (LB Decl.), ¶ 11; **Dkt. No. 53-38** (Responses to RFAs) Nos. 78-80, pp. 32:23-34:10. |  |
| 130. (D) | Vogts only licensed the O'Dowd Photographs to the real estate agents for the O'Dowd Property to facilitate its sale through real estate listings and marketing materials.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶¶ 2, 5, 12-13; **Dkt. No. 53-39** (Responses to Interrogatories) No. 6, p. 7:9-27; **Dkt. No. 53-40** (the Invoices); **Dkt. No. 55-3** (Vogts Depo), pp. 34:11-15, 37:23-38:6, 41:23-42:3, 44:16-45:13, 47:5-48:9, 57:2-58:6, 124:6-12, 125:2-12 & 132:14-133:11. | Undisputed. |
| 131. (D) | When the O'Dowd Photographs were posted on an MLS, Vogts did not ask for or receive a photo credit.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶ 2; **Dkt. No. 55-3**, p. 60:14-18; *see also Id.*, pp. 58:8-59:18. | Undisputed. |
| 132. (D) | Vogts did not subsequently license, seek to license (nor did anyone demonstrate interest in licensing) the O'Dowd Photographs after they were used to facilitate the sale of the O'Dowd Property – nor did he identify any lost licensing opportunity for the O'Dowd Photographs. | Disputed.<br><br>**Vogts Decl. ¶ 16; Dkt. 57-3 ¶ 14.**<br><br>Disputed that Vogts is required to "identify any lost licensing opportunities." |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. No. 53-28** (LB Decl.), ¶¶ 2, 5, 12-13); **Dkt. No. 53-39** (Responses to Interrogatories) No. 6, p. 7:9-27; **Dkt. No. 53-40** (the Invoices); **Dkt. No. 55-3** (Vogts Depo), pp. 61:4-13, 125:2-12, 132:25-134:20 & 211:3-15; **Dkt. No. 55-5** (the O'Dowd Invoice). | |
| 133. (D) | Vogts was informed of the PMC Defendants' use of the O'Dowd Photographs by one of the real estate agents for the O'Dowd Property.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶¶ 2, 7; **Dkt. No. 55-3** (Vogts Depo), pp. 149:19-152:11; **Dkt. No. 55-6** (9/15/20 Text) | Undisputed. |
| 134. (D) | Vogts responded to the real estate agent by stating he would have requested the PMC Defendants provide him photo credit but did not state he would have requested monetary compensation.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶¶ 2, 7; **Dkt. No. 55-3** (Vogts Depo), pp. 149:19-151:16; **Dkt. No. 55-6** (9/15/20 Text) | Disputed. The cited evidence only shows that Vogts' real estate agent client sent Vogts a link to the PMC Defendants' post displaying unauthorized copies of Subject Photographs 21-38, and asked if the PMC Defendants sought permission; and that Vogts responded in part, "They did not reach out to me. I would have looped you in beforehand and required a photo credit." |
| 135. (D) | Vogts claimed the PMC Defendants' use of the O'Dowd Photographs somehow damaged his reputation. | Undisputed. Vogts felt like he "lost a little bit of face" with his client "because one of the reasons my clients hire me is because they know that I do protect my work."<br><br>**Vogts Decl. ¶ 10.** |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | Dkt. No. 53-28 (LB Decl.), ¶ 2; Dkt. No. 55-3, pp. 156:17-157:10; 157:24-159:2. | |
| 136. (D) | Vogts was hired by real estate agents to take photographs of the property located at 4047 Dixie Canyon Ave. (the "Williams Property") to facilitate its sale via real estate listings and marketing materials.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶¶ 2, 8-9, 11-13; **Dkt. No. 53-36** (Williams Photographs); **Dkt. No. 55-38** (Responses to RFAs) No. 34, p. 15:7-18; **Dkt. No. 53-39** Responses to Interrogatories) No. 6, p. 7:9-27; **Dkt. No. 53-40** (Invoices); **Dkt. No. 55-3** (Vogts Depo), pp. 34:11-15, 39:10-15, 42:4-8, 44:16-45:13, 47:5-48:9, 57:2-58:6, 164:20-166:16, 176:1-16, 180:4-184:20; **Dkt. No. 55-7** (the Williams Invoice). | Undisputed. |
| 137. (D) | Vogts charged the real estate agents a flat fee of $▮▮ to take photographs of the Williams Property (the "Williams Photographs").<br><br>**Dkt. No. 53-28** (LB Decl.), ¶¶ 2, 8; **Dkt. No. 55-3** (Vogts Depo), pp. 164:20-165:2, 169:14-20; **Dkt. No. 55-7** (the Williams Invoice). | Disputed. Vogts' different photos and services were itemized and priced separately, they were just paid for on one invoice.<br><br>**Dkt. 43-8 at 3 of 5.** |
| 138. (D) | When Vogts took the Williams Photographs, he did not know that Zak Williams would buy the Williams Property, who Zak | Undisputed. |

CONSOLIDATED STATEMENT OF FACTS

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | Williams was or that he was the son of Robin Williams.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶ 2; **Dkt. No. 55-3** (Vogts Depo), pp. 52:9-17. | |
| 139. (D) | When asked, Vogts could not identify how the Williams Photographs contain information regarding: (1) Robin Williams or Zak Williams; (2) that Zak Williams was Robin Williams son; or (3) that Zak Williams bought the Williams Property.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶¶ 2, 11; **Dkt. No. 53-38** (Responses to RFA), Nos. 82-84, pp. 34:27-36:14; **Dkt. No. 55-3** (Vogts Depo), pp. 184:25-185:13. | Undisputed. |
| 140. (D) | Vogts only licensed the Williams Photographs to the real estate agents for the Williams Property to facilitate its sale through real estate listings and marketing materials.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶¶ 2, 8, 12-13; **Dkt. No. 53-38** (Responses to Interrogatories) No. 6, p. 7:9-27; **Dkt. No. 53-40** (the Invoices); **Dkt. No. 55-3** (Vogts Depo), pp. 34:11-15, 39:10-15, 42:4-8, 44:16-45:13, 47:5-48:9, 57:2-58:6, 164:20-166:16 & 176:1-16; **Dkt. No. 55-7** (the Williams Invoice). | Undisputed. |

CONSOLIDATED STATEMENT OF FACTS

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 141. (D) | When the Williams Photographs were posted on an MLS, Vogts did not ask for or receive a photo credit.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶ 2; **Dkt. No. 55-3**, p. 60:14-18; *see also Id.*, pp. 58:8-59:18. | Undisputed. |
| 142. (D) | Vogts did not subsequently license, seek to license (nor did anyone demonstrate interest in licensing) the Willaims Photographs after they were used to facilitate the sale of the Williams Property – nor did he identify any lost licensing opportunities for the Williams Photographs.<br><br>**Dkt. No. 53-28** (LB Decl.), ¶¶ 2, 8, 12-13; **Dkt. No. 53-38** (Responses to Interrogatories) No. 6, p. 7:9-27; **Dkt. No. 53-40** (the Invoices); **Dkt. No. 55-3** (Vogts Depo), pp. 61:4-13, 164:20-165:2, 176:5-21, 211:3-15; **Dkt. No. 55-7** (Williams Invoice) | Disputed. See facts and evidence cited in Dkts. 44-44 ¶ 18, 57-7 ¶ 70.<br><br>**Vogts Decl. ¶ 16; Dkt. 57-3 ¶ 14.**<br><br>Disputed that Vogts is required to "identify any lost licensing opportunities." |
| 143. (D) | Dirt is a news publication that reports on real estate transactions involving celebrities, business/civic leaders and other public figures.<br><br>**Dkt. No. 53-6** (Declaration of Mark David Voss ("Voss Decl."), ¶ 2; **Dkt. No. 53-23** (Declaration of James McClain ("McClain Decl.")), ¶ 2. | Disputed. No evidence as to "news publication," "reports," "celebrities," or "public figures." |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 144. (D) | Dirt's articles are intended to provide a unique (and otherwise unavailable) peek into the lifestyles of public figures and provide commentary and critique on them and the properties they own.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 2; **Dkt. No. 53-23**; (McClain Decl.), ¶ 2; *see also* **Dkt. No. 53-6** (Voss Decl.), ¶¶ 4-5, 8, 11-14, 18-21; **Dkt. No. 53-10** (Notes for Stanchfield Article); **Dkt. No. 53-11** (the Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos); **Dkt. No. 53-13** (Stanchfield Article Cover Photo); **Dkt. No. 53-17** (Notes for O'Dowd Article); **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-19** (O'Dowd Article Photos); **Dkt. No. 53-23** (McClain Decl.), ¶¶ 4-5, 8, 13-16; **Dkt. No. 53-24** (the Williams Article Text); **Dkt. No. 53-25** (the Williams Article Photos). | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 2** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 36:5-14), **22** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 36:5-14), **23, 38, and 44.**<br><br>**Evidentiary Objection 2 to McClain Decl. ¶ 2** that "Dirt's articles are intended to provide a unique (and otherwise unavailable) peek into the lifestyles of public figures and provide commentary and critique on them and the properties they own.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, Fed. R. Evid. 701 inappropriate opinion testimony by lay witness. Mr. McClain has no basis to opine on whether Dirt's articles, commentary, or critique are unique and otherwise unavailable in the marketplace. Mr. McClain is not Dirt's corporate representative, has no basis to attest to Dirt's intentions, and testified that Dirt has no general tone to the articles it produces and publishes on its website, and further testified that Dirt does not portray the subjects of its articles or posts in any particular light.<br><br>**Evidentiary Objection 22 to Voss Decl. ¶ 2** that "Dirt's articles are intended to provide a unique (and otherwise unavailable) peek into the lifestyles of public figures and |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | provide commentary and critique on them and the properties they own.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, Fed. R. Evid. 701 inappropriate opinion testimony by lay witness. Mr. Voss has no basis to opine on whether Dirt's articles, commentary, or critique are unique and otherwise unavailable in the marketplace. Dirt has no general tone to the articles it produces and publishes on its website, and Dirt does not portray the subjects of its articles or posts in any particular light. Doniger Decl. Ex. 1 (McClain Dep. 36:5-14). Mr. Voss' attestation is identical to Mr. McClain's, so his testimony is not unique.<br><br>**Evidentiary Objection 23 to Voss Decl. ¶ 2** that "As the publication *Fast Company* wrote in an article published after the launch of *Dirt*, 'Headlines may tell us that the richest 5% of Americans own two-thirds of the country's wealth, but it's difficult to fathom what that inequality gap actually means in real terms. Can the lives of billionaires really be so different from ours? To answer that question, just read about their appetite for real estate. … Dirt gives readers a peek into the homes – and by extension – the personal lives and bank accounts, of the uber-rich. … Dirt.com's playful cattiness [about the wealth of its subjects] works as both aspirational lifestyle |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | fodder and eat-the-rich schadenfreude.' All in all, that is a good description of the Dirt.com website. That article can be found at [URL]": Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay, Fed. R. Evid. 901 lack of authentication. Mr. Voss did not author the quoted article and has no personal knowledge of it. Mr. Voss did not author the quoted article and thus has no personal knowledge of, and has no basis to authenticate, that article. Mr. Voss offers it for its truth, which is hearsay upon hearsay (the document and the contents of the document). **Evidentiary Objection 38 to Voss Decl. ¶ 11 and Ex. E (Dkt. 53-11)** that "A true and correct copy of the Stanchfield Article – without the Stanchfield Photographs – is attached hereto and incorporated herein as Exhibit E.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 1-20 without those Photographs is, by definition, not a true and correct copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. E (*see*, in the top righthand corner of Ex. E, identifying "James McClain"). |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | **Evidentiary Objection 44 to Voss Decl. ¶ 18 and Ex. L (Dkt. 53-18)** that "A true and correct copy of the O'Dowd Article – without the O'Dowd Photographs – is attached hereto and incorporated herein as Exhibit L.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 21-38 without those Photographs is, by definition, not a true and correct copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. L (*see*, in the top righthand corner of Ex. E, identifying "James McClain"). |
| 145. (D) | Dirt's writers discover that a public figure is involved in a real estate transaction through a variety of research and journalistic methods.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 3; **Dkt. No. 53-23** (McClain Decl.), ¶ 3; *see also* **Dkt. No. 53-6** (Voss Decl.), ¶¶ 10, 17; **Dkt. No. 53-7** (Stanchfield Property Email); **Dkt. No. 53-14** (O'Dowd Property Email); **Dkt. No. 53-23** (McClain Decl.), ¶ 12. | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 3** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. at 50:18-51:14) **and 24** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 21:23-22:5, 93:5-10)<br><br>**Evidentiary Objection 3 to McClain Decl. ¶ 3** that "Dirt's writers (which include me) discover that a public figure is involved in a real estate transaction through a variety of research and journalistic methods.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | R. Evid. 802 hearsay. Mr. McClain has never worked for or been a representative of an MLS, has no basis to attest to the information that any/all MLSs across the country contain, and testified that he has no knowledge about any particular MLSs, has never accessed or read any MLS' terms of use, has no knowledge of how MLSs obtain photos, has no knowledge of how MLSs can or cannot use photos, and that he has never subscribed to, and thus cannot use, any MLS. He has viewed photos on aggregator websites (like realtor.com and redfin.com) that republish listings from MLSs.<br><br>**Evidentiary Objection 24 to Voss Decl. ¶ 3** that "Dirt's writers (which include me) discover that a public figure is involved in a real estate transaction through a variety of research and journalistic methods.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay. Mr. Voss has no basis to attest to who is legally considered a "public figure," and he has no basis to attest to other writers' methods. And Mr. Voss testified that he has no recollection at all of directing Dirt writers. Mr. Voss also previously asserted that what he is now attesting to is privileged. Mr. Voss' attestation is identical to Mr. McClain's, so his testimony is not unique. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | |
| 146. (D) | Real estate listings (including those on an MLS) do not contain information on the identity of who bought or, in most cases, sold the property in the real estate listing.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 3; **Dkt. No. 53-23** (McClain Decl.), ¶ 3; *see also* **Dkt. No. 53-6** (Voss Decl."), ¶¶ 5, 10, 17; **Dkt. No. 53-8** (Stanchfield Property Listing on Realtor); **Dkt. No. 53-9** (Stanchfield Property Listing on Redfin); **Dkt. No. 53-15** (O'Dowd Property Listing on Realtor); **Dkt. No. 53-16** (O'Dowd Property Listing on Redfin); **Dkt. No. 53-23** (McClain Decl.), ¶ 5, 12. | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 4** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 27:7-29:16, 34:12-35:7), **25** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 23:6-17, 39:24-41:15, 113:10-114:12, 125:3-19), **37** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 108:7-12, 111:5-17), **43** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 108:7-12, 111:5-17).<br><br>**Evidentiary Objection 4 to McClain Decl. ¶ 3** that "Real estate listings (including those on a Multiple Listing Service ("MLS")) do not contain information on the identity of who bought or sold the property depicted in the real estate listing. Nor do the photographs used in connection with real estate listings identify who is the buyer or seller of the property depicted in the photographs.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay. Mr. McClain has never worked for or been a representative of an MLS, has no basis to attest to the information that any/all MLSs across the country contain, and testified that he has no knowledge about any particular MLSs, has never accessed or read any MLS' terms of use, has no |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | knowledge of how MLSs obtain photos, has no knowledge of how MLSs can or cannot use photos, and that he has never subscribed to, and thus cannot use, any MLS. He has viewed photos on aggregator websites (like realtor.com and redfin.com) that republish listings from MLSs. **Evidentiary Objection 25 to Voss Decl. ¶ 3** that "Real estate listings (including those on a Multiple Listing Service ("MLS")) do not contain information on the identity of who bought or sold the property depicted in the real estate listing. Nor do the photographs used in connection with real estate listings identify who is the buyer or seller of the property depicted in the photographs.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay. Mr. Voss has never worked for or been a representative of an MLS, has no basis to attest to the information that any/all MLSs across the country contain, and testified that he has no knowledge about any particular MLSs, has never accessed or read any MLS' terms of use, has no knowledge of how MLSs obtain photos, has no knowledge of how MLSs can or cannot use photos, and that he has never subscribed to, and thus cannot use, any MLS (nor has Dirt). He uses aggregator websites |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | (like realtor.com and redfin.com) that republish listings from MLSs. Mr. Voss' attestation is identical to Mr. McClain's, so his testimony is not unique.<br><br>**Evidentiary Objection 37 to Voss Decl. ¶ 10 and Ex. B-C (Dkt. 53-8 and 53-9)** that "A true and correct copy of the real estate listings for the Stanchfield Property are attached hereto and incorporated herein as Exhibit B-C.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay, Fed. R. Evid. 402 irrelevance, Fed. R. Evid. 901 lack of authentication. Mr. McClain did not create Ex. B-C and thus has no personal knowledge of, and has no basis to authenticate, Ex. B-C. Those documents are, on their face, not true and correct copies, they are clearly misprinted. Mr. Voss already confirmed that Dkt. 44-19 is a true and correct copy of the realtor.com listing from which he obtained Subject Photographs 1-20.<br><br>**Evidentiary Objection 43 to Voss Decl. ¶ 17 and Ex. I-J (Dkt. 53-15 and 53-16)** that "A true and correct copy of the real estate listings for the Stanchfield Property are attached hereto and incorporated herein as Exhibit I-J.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay, Fed. R. Evid. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | 402 irrelevance, Fed. R. Evid. 901 lack of authentication. Mr. McClain did not create Ex. I-J and thus has no personal knowledge of, and has no basis to authenticate, Ex. I-J. Those documents are, on their face, not true and correct copies, they are clearly misprinted. Those documents also pertain to 713 North Alta Vista Boulevard (what the PMC Defendants refer to as the "O'Dowd Property"), not 601 Seclusion Lane (what the PMC Defendants refer to as the "Stanchfield Property"). Mr. Voss already confirmed that Dkt. 44-20 is a true and correct copy of the redfin.com listing from which he obtained Subject Photographs 21-38. |
| 147. (D) | Nor do the photographs used in real estate listings identify who is the buyer or seller of the property depicted in the photographs.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 3; **Dkt. No. 53-23** (McClain Decl.), ¶ 3; *see also* **Dkt. No. 53-6** (Voss Decl), ¶¶ 5, 10, 17; **Dkt. No. 53-8** (Stanchfield Property Listing on Realtor); **Dkt. No. 53-9** (Stanchfield Property Listing on Redfin); **Dkt. No. 53-15** (O'Dowd Property Listing on Realtor); **Dkt. No. 53-16** (O'Dowd Property Listing on Redfin); **Dkt. No. 53-23** (McClain Decl.), ¶ 5, 12. | Disputed.<br><br>*See* same evidentiary objections listed above in response to ¶ 146. |
| 148. (D) | Rather, Dirt's writers typically discover the identity of the public | Disputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | figure that is involved in the transaction by reviewing public records and utilizing third-party sources.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 3; **Dkt. No. 53-23** (McClain Decl.), ¶ 3; *see also* **Dkt. No. 53-6** (Voss Decl.), ¶¶ 10, 17; **Dkt. No. 53-7** (Stanchfield Email); **Dkt. No. 53-14** (O'Dowd Email); **Dkt. No. 53-23** (McClain Decl.), ¶ 12. | *See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 5** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 50:18-51:14), **26** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 93:5-10).<br><br>**Evidentiary Objection 5 to McClain Decl. ¶ 3** that "Rather, Dirt's writers typically discover the identity of the public figure that is involved in the transactions by reviewing public records and utilizing third-party sources.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay. Mr. McClain has no basis to attest to who is legally considered a "public figure," he is not Dirt's corporate representative, and he has no basis to attest to what other writers typically do, review, or discover. And Mr. McClain testified that his only involvement with other writers is to ensure adherence to PMC's company policies—and that he has no knowledge of which policies.<br><br>**Evidentiary Objection 26 to Voss Decl. ¶ 3** that "Rather, Dirt's writers typically discover the identity of the public figure that is involved in the transactions by reviewing public records and utilizing third-party sources.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | R. Evid. 802 hearsay. Mr. Voss has no basis to attest to who is legally considered a "public figure," and he has no basis to attest to what other writers typically do, review, or discover. And Mr. Voss testified that he has no knowledge of what Dirt's writers typically do, and has no recollection of directing Dirt's writers at all. Mr. Voss' attestation is identical to Mr. McClain's, so his testimony is not unique. |
| 149. (D) | Dirt's articles: (1) reveal the identity of the public figure(s) who bought and/or sold a property; (2) provide information on the personal, professional and real estate histories of the public figure(s); (3) discuss the value of the property; (4) comment on and critique the characteristics of the property; and (5) explain facts about the property, such as when it was built and its ownership history.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 4; **Dkt. No. 53-23** (McClain Decl.), ¶ 4; *see also* **Dkt. No. 53-6** (Voss Decl.), ¶¶ 5, 8, 11-14, 18-21; **Dkt. No. 53-10** (Stanchfield Article Notes); **Dkt. No. 53-11** (Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos); **Dkt. No. 53-13** (Stanchfield Article Cover Photo); **Dkt. No. 53-23** (McClain Decl.), | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 6** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 36:5-14), **27** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 36:5-14), **38**, and **44**<br><br>**Evidentiary Objection 6 to McClain Decl. ¶ 4** that "In general, Dirt's articles: (1) reveal the identity of the public figure who bought or sold a particular property; (2) provide background information on the public figure; (3) discuss the value of the property; (4) comment on and critique the characteristics of the property; and (5) explain various facts related to the property, such as when it was built and its ownership history.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay. Mr. McClain |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | ¶¶ 5, 8, 13-16; **Dkt. No. 53-24** (Williams Article Text); **Dkt. No. 53-25** (Williams Article Photos). | has no basis to attest to who is legally considered a "public figure," he is not Dirt's corporate representative, and he has no basis to attest to what Dirt's articles generally reveal, provide, discuss, comment on or critique, or explain. Mr. McClain also testified that Dirt has no general tone to the articles it produces and publishes on its website, and further testified that Dirt does not portray the subjects of its articles or posts in any particular light. He also contradicts Dkts. 58-1 through 58-3, Dirt articles which do not match, and thus undermine, his speculative attestation.<br><br>**Evidentiary Objection 27 to Voss Decl. ¶ 4** that "In general, Dirt's articles: (1) reveal the identity of the public figure who bought or sold a particular property; (2) provide background information on the public figure; (3) discuss the value of the property; (4) comment on and critique the characteristics of the property; and (5) explain various facts related to the property, such as when it was built and its ownership history." Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay. Mr. Voss has no basis to attest to who is legally considered a "public figure," and he has no basis to attest to what Dirt's articles generally reveal, provide, discuss, comment on or critique, or |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | explain. Dirt has no general tone to the articles it produces and publishes on its website, and Dirt does not portray the subjects of its articles or posts in any particular light. Doniger Decl. Ex. 1 (McClain Dep. 36:5-14). He also contradicts Dkts. 58-1 through 58-3, Dirt articles which do not match, and thus undermine, his speculative attestation. Mr. Voss' attestation is identical to Mr. McClain's, so his testimony is not unique.<br><br>**Evidentiary Objection 38 to Voss Decl. ¶ 11 and Ex. E (Dkt. 53-11)** that "A true and correct copy of the Stanchfield Article – without the Stanchfield Photographs – is attached hereto and incorporated herein as Exhibit E.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 1-20 without those Photographs is, by definition, not a true and correct copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. E (*see*, in the top righthand corner of Ex. E, identifying "James McClain").<br><br>**Evidentiary Objection 44 to Voss Decl. ¶ 18 and Ex. L (Dkt. 53-18)** that "A true and correct copy of the O'Dowd Article – without the |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | O'Dowd Photographs – is attached hereto and incorporated herein as Exhibit L.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 21-38 without those Photographs is, by definition, not a true and correct copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. L (*see*, in the top righthand corner of Ex. E, identifying "James McClain"). |
| 150. (D) | Dirt articles incorporate some of the photographs from the real estate listings for the property discussed in the particular article.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 5; **Dkt. No. 53-23** (McClain Decl.), ¶ 5; *see also* **Dkt. No. 53-6** (Voss Decl.), ¶¶ 8, 11-14, 18-21; **Dkt. No. 53-10** (Stanchfield Article Notes); **Dkt. No. 53-11** (Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos); **Dkt. No. 53-13** (Stanchfield Article Cover Photo); **Dkt. No. 53-17** (O'Dowd Article Notes); **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-19** (O'Dowd Article Photos); **Dkt. No. 53-20** (O'Dowd Article Cover Photo); **Dkt. No. 53-23** (McClain Decl.), ¶¶ 8, 13-16; **Dkt. No. 53-** | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 7** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 67:5-71:16, 80:12-88:24, 165:3-168:21, 174:14-176:14), **28** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dec. 22:10-14, 72:6-14, 116:4-6, 133:2-16, 146:7-23), **38**, and **44**.<br><br>**Evidentiary Objection 7 to McClain Decl. ¶ 5** that "Dirt articles incorporate some of the photographs from the real estate listings for the property discussed in the particular article. Dirt uses the photographs from anonymous real estate listings in its articles to provide the reader a unique (and otherwise unavailable) peak into the lifestyles of public |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **24** (Williams Article Text); **Dkt. No. 53-25** (Williams Article Photos). | figures and comment on their properties." Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802, Fed. R. Evid. 701 inappropriate opinion testimony by lay witness. Mr. McClain has no basis to opine on whether Dirt's articles are unique and otherwise unavailable in the marketplace. Mr. McClain is not Dirt's corporate representative and has no basis to attest to what Dirt's articles incorporate, the sources of the photos that Dirt uses, or why Dirt uses photos. Mr. McClain has no basis to attest to who is legally considered a "public figure." Mr. McClain testified that he does not solely obtain photos from "real estate listings"—he cannot access them because he does not subscribe to an MLS, so he uses aggregator websites that republish listings—but rather uses photos (whether permitted or not) from real estate photography companies, real estate photographers, public relations companies, real estate brokerage firms, and real estate agents, among others—and has no further knowledge other than that. **Evidentiary Objection 28 to Voss Decl. ¶ 5** that "Dirt articles incorporate some of the photographs from the real estate listings for the property discussed in the particular article. Dirt uses the photographs |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | from anonymous real estate listings in its articles to provide the reader a unique (and otherwise unavailable) peak into the lifestyles of public figures and comment on their properties.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802, Fed. R. Evid. 701 inappropriate opinion testimony by lay witness. Mr. Voss has no basis to opine on whether Dirt's articles are unique and otherwise unavailable in the marketplace. Mr. Voss has no basis to attest to what Dirt's articles incorporate, the sources of the photos that Dirt uses, or why Dirt uses photos. Mr. Voss has no basis to attest to who is legally considered a "public figure." Mr. Voss testified that he does not solely obtain photos from "real estate listings"—he cannot access them because he does not subscribe to an MLS, so he uses aggregator websites that republish listings—but rather uses photos (whether permitted or not) from homeowners, real estate agents, or public relations firms, among others. Mr. Voss' attestation is identical to Mr. McClain's, so his testimony is not unique.<br><br>**Evidentiary Objection 38 to Voss Decl. ¶ 11 and Ex. E (Dkt. 53-11)** that "A true and correct copy of the Stanchfield Article – without the Stanchfield Photographs – is attached hereto |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | and incorporated herein as Exhibit E.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 1-20 without those Photographs is, by definition, not a true and correct copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. E (*see*, in the top righthand corner of Ex. E, identifying "James McClain"). **Evidentiary Objection 44 to Voss Decl. ¶ 18 and Ex. L (Dkt. 53-18)** that "A true and correct copy of the O'Dowd Article – without the O'Dowd Photographs – is attached hereto and incorporated herein as Exhibit L.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 21-38 without those Photographs is, by definition, not a true and correct copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. L (*see*, in the top righthand corner of Ex. E, identifying "James McClain"). |
| 151. (D) | Dirt uses the photographs from anonymous real estate listings in its articles to provide the reader a | Disputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | unique (and otherwise unavailable) peek into the lifestyles and priorities of public figures.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 5; **Dkt. No. 53-23** (McClain Decl.), ¶ 5; *see also* **Dkt. No. 53-6** (Voss Decl.), ¶¶ 2, 4, 8, 10-14, 17-21; **Dkt. No. 53-8** (Stanchfield Property Listing on Realtor); **Dkt. No. 53-9** (Stanchfield Property Listing on Redfin); **Dkt. No. 53-10** (Stanchfield Article Notes); **Dkt. No. 53-11** (Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos)**; Dkt. No. 53-13** (Stanchfield Article Cover Photo); **Dkt. No. 53-15** (O'Dowd Property Listing on Realtor); **Dkt. No. 53-16** (O'Dowd Property Listing on Redfin); **Dkt. No. 53-17** (O'Dowd Article Notes); **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-19** (O'Dowd Article Photos); **Dkt. No. 53-20** (O'Dowd Article Cover Photo); **Dkt. No. 53-23** (McClain Decl.), ¶¶ 2, 4, 8, 12-16; **Dkt. No. 53-24** (Williams Article Text); **Dkt. No. 53-25** (Williams Article Photos). | *See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 7** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 67:5-71:16, 80:12-88:24, 165:3-168:21, 174:14-176:14), **28** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dec. 22:10-14, 72:6-14, 116:4-6, 133:2-16, 146:7-23), **37** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 108:7-12, 111:5-17), **38**, and **44**.<br><br>**Evidentiary Objection 7 to McClain Decl.** ¶ 5 that "Dirt articles incorporate some of the photographs from the real estate listings for the property discussed in the particular article. Dirt uses the photographs from anonymous real estate listings in its articles to provide the reader a unique (and otherwise unavailable) peak into the lifestyles of public figures and comment on their properties." Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802, Fed. R. Evid. 701 inappropriate opinion testimony by lay witness. Mr. McClain has no basis to opine on whether Dirt's articles are unique and otherwise unavailable in the marketplace. Mr. McClain is not Dirt's corporate representative and has no basis to attest to what Dirt's articles incorporate, the sources of the photos that Dirt uses, or why Dirt uses photos. Mr. McClain has no basis to attest to who is legally considered a |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | "public figure." Mr. McClain testified that he does not solely obtain photos from "real estate listings"—he cannot access them because he does not subscribe to an MLS, so he uses aggregator websites that republish listings—but rather uses photos (whether permitted or not) from real estate photography companies, real estate photographers, public relations companies, real estate brokerage firms, and real estate agents, among others—and has no further knowledge other than that. **Evidentiary Objection 28 to Voss Decl. ¶ 5** that "Dirt articles incorporate some of the photographs from the real estate listings for the property discussed in the particular article. Dirt uses the photographs from anonymous real estate listings in its articles to provide the reader a unique (and otherwise unavailable) peak into the lifestyles of public figures and comment on their properties.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802, Fed. R. Evid. 701 inappropriate opinion testimony by lay witness. Mr. Voss has no basis to opine on whether Dirt's articles are unique and otherwise unavailable in the marketplace. Mr. Voss has no basis to attest to what Dirt's articles incorporate, the sources of the photos that Dirt uses, or why Dirt uses |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|----------|------|-----------------------------------------------------------|
| | | photos. Mr. Voss has no basis to attest to who is legally considered a "public figure." Mr. Voss testified that he does not solely obtain photos from "real estate listings"—he cannot access them because he does not subscribe to an MLS, so he uses aggregator websites that republish listings—but rather uses photos (whether permitted or not) from homeowners, real estate agents, or public relations firms, among others. Mr. Voss' attestation is identical to Mr. McClain's, so his testimony is not unique.<br><br>**Evidentiary Objection 37 to Voss Decl. ¶ 10 and Ex. B-C (Dkt. 53-8 and 53-9)** that "A true and correct copy of the real estate listings for the Stanchfield Property are attached hereto and incorporated herein as Exhibit B-C.": Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay, Fed. R. Evid. 402 irrelevance, Fed. R. Evid. 901 lack of authentication. Mr. McClain did not create Ex. B-C and thus has no personal knowledge of, and has no basis to authenticate, Ex. B-C. Those documents are, on their face, not true and correct copies, they are clearly misprinted. Mr. Voss already confirmed that Dkt. 44-19 is a true and correct copy of the realtor.com listing from which he obtained Subject Photographs 1-20. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | **Evidentiary Objection 38 to Voss Decl. ¶ 11 and Ex. E (Dkt. 53-11)** that "A true and correct copy of the Stanchfield Article – without the Stanchfield Photographs – is attached hereto and incorporated herein as Exhibit E.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 1-20 without those Photographs is, by definition, not a true and correct copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. E (*see*, in the top righthand corner of Ex. E, identifying "James McClain").<br><br>**Evidentiary Objection 44 to Voss Decl. ¶ 18 and Ex. L (Dkt. 53-18)** that "A true and correct copy of the O'Dowd Article – without the O'Dowd Photographs – is attached hereto and incorporated herein as Exhibit L.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 21-38 without those Photographs is, by definition, not a true and correct copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. L (*see*, in the top |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | righthand corner of Ex. E, identifying "James McClain"). |
| 152. (D) | As a general matter, Dirt is unable to photograph on its own the properties discussed in its news articles because public figures generally will not provide the PMC Defendants access to their homes for articles containing information about them.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 6; **Dkt. No. 53-23** (McClain Decl.), ¶ 6. | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 8** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 35:8-11), **29** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 35:25-37:21, 88:18-23).<br><br>**Evidentiary Objection 8 to McClain Decl.** ¶ **6** that "As a general matter, Dirt is unable to photograph on its own the properties that are the subject of its news articles. Generally speaking, public figures value privacy and will not provide us authorization to enter their homes for the purpose of investigating, photographing and writing an article disclosing information about them.": Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay, Fed. R. Evid. 701 inappropriate opinion testimony by lay witness. Mr. McClain has no basis to attest to who is legally considered a "public figure." Mr. McClain has no basis to opine on what public figures generally value or will not provide. Mr. McClain is not Dirt's corporate representative and has no basis to attest to what Dirt is unable to do. Mr. McClain is not a photographer, he has not worked |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | with any real estate photographers, and has not reached out to any real estate photographers to ask to use any of their photos.<br><br>**Evidentiary Objection 29 to Voss Decl. ¶ 6** that "As a general matter, Dirt is unable to photograph on its own the properties that are the subject of its news articles. Generally speaking, public figures value privacy and will not provide us authorization to enter their homes for the purpose of investigating, photographing and writing an article disclosing information about them.": Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay, Fed. R. Evid. 701 inappropriate opinion testimony by lay witness. Mr. Voss has no basis to attest to who is legally considered a "public figure." Mr. Voss has no basis to opine on what public figures generally value or will not provide. Mr. Voss has no basis to attest to what Dirt is unable to do. Mr. Voss is not a photographer, he has not worked with any real estate photographers, and has not reached out to any real estate photographers to ask to use any of their photos. Mr. Voss' attestation is identical to Mr. McClain's, so his testimony is not unique. |
| 153. (D) | On occasion, a real estate agent representing a public figure in a | Disputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
|  | real estate transaction will provide Dirt permission to use the real estate listing photographs for Dirt to publicize the transaction and/or the real estate agent.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 7; **Dkt. No. 53-23** (McClain Decl.), ¶ 7. | *See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 9** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 72:11-76:6, 110:4-111:17, 175:1-24), **30** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 72:11-76:6, 110:4-111:17; and citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 22:10-14, 72:6-14, 116:4-6, 133:2-16, 146:7-23).<br><br>**Evidentiary Objection 9 to McClain Decl. ¶ 7** that "On occasion, a real estate agent representing a public figure in a real estate transaction will provide Dirt with the real estate listing photographs and encourage Dirt to publicize the transaction and/or the real estate agent. In most instances, however, Dirt uses the photographs from the real estate listing itself – because no other photographs of the property exist and are unavailable through licensing agents, such as Getty or the Associated Press.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay. Mr. McClain has no basis to attest to who is legally considered a "public figure." Mr. McClain is not Dirt's corporate representative and has no basis to attest to what a real estate agent will occasionally provide or encourage Dirt to publicize; what Dirt will do with photos in most instances; what photos of any/all properties are |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
|  |  | available and where; or any/all photos available through Getty Images, Associated Press, or other unidentified licensing agents. Mr. McClain testified that he is not a subscriber to any MLS (and thus has no access to MLS listings, so he uses aggregator websites that republish listings), he has no knowledge of what Getty or AP make available or whether what is available is licensed, he has no knowledge of whether Dirt or PMC have a license agreement with Getty or AP or pays to license their photos, he has only searched for headshots of individuals in Getty's and AP's libraries, and he has obtained property photos from sources other than aggregator websites even when photos of the same property were available on those websites.<br><br>**Evidentiary Objection 30 to Voss Decl. ¶ 7** that "On occasion, a real estate agent representing a public figure in a real estate transaction will provide Dirt with the real estate listing photographs and encourage Dirt to publicize the transaction and/or the real estate agent. In most instances, however, Dirt uses the photographs from the real estate listing itself – because no other photographs of the property exist and are unavailable through licensing agents, such as Getty or the Associated Press.": Sham affidavit rule, Fed. R. Evid. 602 lack of |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay. Mr. Voss has no basis to attest to who is legally considered a "public figure." Mr. Voss has no basis to attest to what a real estate agent will occasionally provide or encourage Dirt to publicize; what Dirt will do with photos in most instances; what photos of any/all properties are available and where; or any/all photos available through Getty Images, Associated Press, or other unidentified licensing agents. Mr. Voss testified that he is not a subscriber to any MLS (and thus has no access to MLS listings, so he uses aggregator websites that republish listings), he has no knowledge of what Getty or AP make available or whether what is available is licensed, he has no knowledge of whether Dirt or PMC have a license agreement with Getty or AP or pays to license their photos, he has only searched for headshots of individuals in Getty's and AP's libraries, and he has obtained property photos from sources other than aggregator websites even when photos of the same property were available on those websites. Mr. Voss' attestation is identical to Mr. McClain's, so his testimony is not unique. |
| 154. (D) | In most instances, however, Dirt uses the photographs from the real estate listing itself – because no | Disputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | other photographs of the property exist and are unavailable through licensing agents, like Getty or the Associated Press.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 7; **Dkt. No. 53-23** (McClain Decl.), ¶ 7. | *See* Vogts' evidentiary objections above in response to ¶ 153. |
| 155. (D) | Dirt's articles and use of photographs employ the following format: (1) a headline; (2) followed by the name of the writer and date of the article; (3) followed by an image of the featured property with an image of the public figure's face superimposed on the property (the "Cover Picture"); (4) followed by a series of thumbnails and, upon clicking the thumbnails, a photo gallery opens up that displays the various pictures of the property; (6) followed by various data points, such as, the buyer/seller, the property's location, the property's sale price, the square footage of the property, the number of bedrooms and bathrooms for the property and/or the lot size of the property; (7) followed by the text of the article, which is comprised of several paragraphs; (8) followed by the images of the property.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 8; **Dkt. No. 53-23** (McClain Decl.), ¶ 8; *see also* **Dkt. No. 53-6** (Voss | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 10** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 75:12-16, 102:16-18), **11**, **32**, and **38**.<br><br>**Evidentiary Objection 10 to McClain Decl. ¶ 8** that "Dirt has always used photographs with its articles.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay. Mr. McClain is not Dirt's corporate representative and has no basis to attest to what Dirt has always done. Dirt's corporate representative testified that Dirt has run articles with no photos, and that not all of Dirt's articles have a photo gallery.<br><br>**Evidentiary Objection 11 to McClain Decl. ¶ 8** that "Dirt's articles and use of photographs employ the following format. Below the article's headline is an image of the property with an image of the public figure's face superimposed on the property (the "Cover Picture"). |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
|  | Decl.), ¶¶ 11, 18; **Dkt. No. 53-10** (Stanchfield Article Notes); **Dkt. No. 53-11** (Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos); **Dkt. No. 53-13** (Stanchfield Article Cover Photo); **Dkt. No. 53-17** (O'Dowd Article Notes); **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-19** (O'Dowd Article Photos); **Dkt. No. 53-20** (O'Dowd Cover Photo); **Dkt. No. 53-23** (McClain Decl.), ¶ 13; **Dkt. No. 53-24** (Williams Article Text); **Dkt. No. 53-25** (Williams Article Photos). | Beneath the Cover Picture are a series of thumbnails. Upon clicking the thumbnails, a photo gallery opens up that displays the various pictures of the property. Beneath the thumbnails, the articles provide various data points, such as: (1) the buyer/seller; (2) the property's location; (3) the property's sale price; (4) the square footage of the property; (5) the number of bedrooms and bathrooms for the property; and/or (6) the lot size of the property. Beneath these datapoints is the text of the article, which comprises of several paragraphs. After the text of the article, the photographs of the property discussed in the article are also shown.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay. Mr. McClain is not Dirt's corporate representative and has no basis to attest to the formats that Dirt uses for articles and photos. Mr. McClain also contradicts Dkts. 58-1 through 58-3, Dirt articles which do not match, and thus undermine, his speculative attestation.<br><br>**Evidentiary Objection 32 to Voss Decl. ¶ 8** that "Dirt's articles and use of photographs employ the following format. Below the article's headline is an image of the property with an image of the public figure's face superimposed on the property (the |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | "Cover Picture"). Beneath the Cover Picture are a series of thumbnails. Upon clicking the thumbnails, a photo gallery opens up that displays the various pictures of the property. Beneath the thumbnails, the articles provide various data points, such as: (1) the buyer/seller; (2) the property's location; (3) the property's sale price; (4) the square footage of the property; (5) the number of bedrooms and bathrooms for the property; and/or (6) the lot size of the property. Beneath these datapoints is the text of the article, which comprises of several paragraphs. After the text of the article, the photographs of the property discussed in the article are also shown.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay. Mr. Voss has no basis to attest to the formats that Dirt uses for articles and photos. Mr. Voss also contradicts Dkts. 58-1 through 58-3, Dirt articles which do not match, and thus undermine, his speculative attestation. Mr. Voss' attestation is identical to Mr. McClain's, so his testimony is not unique. |
| | | **Evidentiary Objection 38 to Voss Decl. ¶ 11 and Ex. E (Dkt. 53-11)** that "A true and correct copy of the Stanchfield Article – without the Stanchfield Photographs – is attached hereto and incorporated |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | herein as Exhibit E.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 1-20 without those Photographs is, by definition, not a true and correct copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. E (*see*, in the top righthand corner of Ex. E, identifying "James McClain"). |
| 156. (D) | Dirt does not provide standalone galleries of photographs; rather, the photographs for a particular property can only be viewed in connection with the article discussing the particular property.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 8; **Dkt. No. 53-23** (McClain Decl.), ¶ 8. | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 13** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 60:4-61:13, 98:12-100:8, 154:14-162:4; and **Dkt. 61-6 and 61-7**, Doniger Decl. Ex. 3-4, which are Ex. 47-48 to Dirt Dep.), and **34** (same).<br><br>**Evidentiary Objection 13 to McClain Decl. ¶ 8** that "Under no circumstances can the photographs be viewed without the article – as the two are linked together. In other words, once an article has been removed, the photographs of the property cannot be viewed by the public unless they know the URL for the photograph.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay. Mr. McClain is not Dirt's |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | corporate representative and has no basis to attest to any/all circumstances when photos can or cannot be viewed on the website, and the causes or reasons therefor. Dirt's actual corporate representative testified that a photo gallery on the website has its own web address, date and time stamp, and URL, and is separate from the text side of an article. He also testified that a photo gallery is also still viewable on its own if it is unlinked from the text side—and specifically, that the gallery displaying Subject Photographs 1-20 remained visible for months after being unlinked from the text side.<br><br>**Evidentiary Objection 34 to Voss Decl. ¶ 8** that "Under no circumstances can the photographs be viewed without the article – as the two are linked together. In other words, once an article has been removed, the photographs of the property cannot be viewed by the public unless they know the URL for the photograph.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay. Mr. Voss has no basis to attest to any/all circumstances when photos can or cannot be viewed on the website, and the causes or reasons therefor. Mr. Voss testified that a photo gallery on the website has its own web address, date and |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | time stamp, and URL, and is separate from the text side of an article. He also testified that a photo gallery is also still viewable on its own if it is unlinked from the text side—and specifically, that the gallery displaying Subject Photographs 1-20 remained visible for months after being unlinked from the text side. Mr. Voss' attestation is identical to Mr. McClain's, so his testimony is not unique. |
| 157. (D) | Dirt provides a free newsletter to individuals who subscribe to the newsletter that discusses recent articles posted on Dirt's website and contain: (1) the Cover Picture for the particular article; and (2) a brief excerpt from the text of the particular article.<br><br>**Dkt. No. 53-23** (McClain Decl.), ¶ 19. | Undisputed. |
| 158. (D) | Dirt also creates social media posts for recent articles posted on Dirt's website and contain: (1) a one sentence synopsis of the particular article; and (2) a hyperlink to the particular article, which will show the Cover Picture for the particular article and its headline and by-line.<br><br>**Dkt. No. 53-23** (McClain Decl.), ¶ 19. | Undisputed. |
| 159. (D) | Darby Stanchfield is a professional actress who has | Disputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | starred in such television shows as *Scandal*, *NCIS*, *Burn Notice*, *CSI: Miami*, *How I Met Your Mother*, *CSI: New York*, *The Ghost Whisperer*, The Mentalist, *Mad Men*, *Jericho*, *General Hospital*, *Bones*, *Nip/Tuck*, *24* and *Monk*.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 9; *see also Id.*, ¶ 11; **Dkt. No. 53-10** (Stanchfield Article Notes); **Dkt. No. 53-11** (Stanchfield Article Text). | *See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 36** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 90:2-12), and **38**.<br><br>**Evidentiary Objection 36 to Voss Decl. ¶ 9** that "Darby Stanchfield is a professional actress who has starred in such television shows as *Scandal*, *NCIS, Burn Notice, CSI:Miami, How I Met Your Mother, CSI: New York, The Ghost Whisperer, The Mentalist, Mad Men, Jericho, General Hospital, Bones, Nip/Tuck, 24* and *Monk*. Ms. Stanchfield's husband, Joseph Gallegos, was a former executive of Trailer Park, the world's largest entertainment and content marketing agency.": Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay, Fed. R. Evid. 402 irrelevance. Mr. Voss has no basis to attest to Ms. Stanchfield's filmography or Mr. Gallegos' former employment—all of which is irrelevant. To the extent Mr. Voss purports to declare this to suggest that Ms. Stanchfield is a "public figure," Mr. Voss has no basis to attest to who is legally considered a "public figure." Mr. Voss testified that he does not know who she is and does not recognize her.<br><br>**Evidentiary Objection 38 to Voss Decl. ¶ 11 and Ex. E (Dkt. 53-11)** that "A true and correct copy of the |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | Stanchfield Article – without the Stanchfield Photographs – is attached hereto and incorporated herein as Exhibit E.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 1-20 without those Photographs is, by definition, not a true and correct copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. E (*see*, in the top righthand corner of Ex. E, identifying "James McClain"). |
| 160. (D) | Ms. Stanchfield's husband, Joseph Gallegos, was a former executive of Trailer Park, the world's largest entertainment and content marketing agency.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 9; *see also Id.*, ¶ 11; **Dkt. No. 53-10** (Stanchfield Article Notes); **Dkt. No. 53-11** (Stanchfield Article Text). | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 36** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 90:2-12), and **38**, listed above in response to ¶ 159. |
| 161. (D) | On Thursday, August 6, 2020, Mr. David received an email from one of his sources that Ms. Stanchfield recently sold the Stanchfield Property.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 10; **Dkt. No. 53-7** (Stanchfield Email). | Undisputed. |

CONSOLIDATED STATEMENT OF FACTS

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 162. (D) | Mr. David further investigated and identified the real estate listings for the Stanchfield Property.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 10; **Dkt. No. 53-8** (Stanchfield Property Listing on Realtor); **Dkt. No. 53-9** (Stanchfield Property Listing on Redfin); *see also* **Dkt. No. 53-6** (Voss Decl.), ¶¶ 3, 11; **Dkt. No. 53-10** (Stanchfield Article Notes). | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at No. 37** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 108:7-12, 111:5-17).<br><br>**Evidentiary Objection 37 to Voss Decl. ¶ 10 and Ex. B-C (Dkt. 53-8 and 53-9)** that "A true and correct copy of the real estate listings for the Stanchfield Property are attached hereto and incorporated herein as Exhibit B-C.": Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay, Fed. R. Evid. 402 irrelevance, Fed. R. Evid. 901 lack of authentication. Mr. McClain did not create Ex. B-C and thus has no personal knowledge of, and has no basis to authenticate, Ex. B-C. Those documents are, on their face, not true and correct copies, they are clearly misprinted. Mr. Voss already confirmed that Dkt. 44-19 is a true and correct copy of the realtor.com listing from which he obtained Subject Photographs 1-20. |
| 163. (D) | The real estate listings for the Stanchfield Property did not contain information that Ms. Stanchfield or Mr. Gallegos owned the Stanchfield Property, nor did the listings identify the photographer/copyright owner for the Stanchfield Photographs. | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at No. 37** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 108:7-12, 111:5-17), listed above in response to ¶ 162. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. No. 53-6** (Voss Decl.), ¶ 10; **Dkt. No. 53-8** (Stanchfield Property Listing on Realtor); **Dkt. No. 53-9** (Stanchfield Property Listing on Redfin); *see also* **Dkt. No. 53-6** (Voss Decl.), ¶¶ 3, 5. | |
| 164. (D) | On August 7, 2020, Mr. David wrote and published on Dirt's website an article entitled "Darby Stanchfield Sells Secluded Glendale Traditional (the "Stanchfield Article"), which discussed: (1) that Ms. Stanchfield was the owner of the Stanchfield Property with Mr. Gallegos; (2) details about Ms. Stanchfield's and Mr. Gallegos' careers in the entertainment industry; (3) how much Ms. Stanchfield originally paid for the Stanchfield Property; (4) the amount for which Ms. Stanchfield sold the Stanchfield Property; (5) commentary on the location of the Stanchfield Property; (6) when the Stanchfield Property was built; (7) commentary on various aspects of the Stanchfield Property; (8) the size of the Stanchfield Property, including the number of bedrooms and bathrooms; (9) the listing agents for the Stanchfield Property; and (10) information on other properties owned by Ms. Stanchfield. | Undisputed that the text side of the post was published on August 7, 2020, at 12:45 p.m. PT and was titled "Darby Stanchfield Sells Secluded Glendale Traditional," and that the text is shown at Dkt. 44-13 at 2-5 of 43; and that the gallery linked to that text side was published on August 7, 2020, at 12:24 p.m. PT and was titled "'Scandal' Star Darby Stanchfield Sheds Glendale Home," and is shown at Dkt. 44-13 at 12-36 of 43.<br><br>Disputed as to remainder. *See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 38-39**.<br><br>**Evidentiary Objection 38 to Voss Decl. ¶ 11 and Ex. E (Dkt. 53-11)** that "A true and correct copy of the Stanchfield Article – without the Stanchfield Photographs – is attached hereto and incorporated herein as Exhibit E.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 1-20 without those Photographs is, by definition, not a true and correct |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. No. 53-6** (Voss Decl.), ¶¶ 11-12; **Dkt. No. 53-11** (Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos); **Dkt. No 13** (Stanchfield Article Cover Photo); *see also* **Dkt. No. 53-6** (Voss Decl.), ¶ 11; **Dkt. No. 53-10** (Stanchfield Article Notes). | copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. E (*see*, in the top righthand corner of Ex. E, identifying "James McClain").<br><br>**Evidentiary Objection 39 to Voss Decl. ¶ 13** that "The Stanchfield Article contained a number of hyperlinks. First, I provided a hyperlink to other articles on Dirt's websites about real estate transactions involving public figure for properties located in the Glendale area (*i.e.*, the area where the Stanchfield Property was located). This hyperlink was to allow readers to compare the Stanchfield Property to other properties located in Glendale that were bought or sold by public figures. Second, I provided hyperlinks to the real estate agents that represented the buyers and sellers of the Stanchfield Property. These hyperlinks were intended to provide the reader additional information on the real estate agents involved in the sale of the Stanchfield Property. Finally, I provided a hyperlink to other articles on Dirt's website about real estate transactions involving public figures for properties located in Beachwood Canyon (*i.e.*, the area where Ms. Stanchfield owned another property). This hyperlink was to allow readers to compare another property owned by Ms. Stanchfield to other properties located in Beachwood |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | Canyon that were bought or sold by public figures.": Sham affidavit rule. Mr. Voss' narrative description of Dkt. 53-10 contradicts what is actually shown on Dkt. 53-10. |
| 165. (D) | The Stanchfield Article incorporated the Stanchfield Photographs – which Mr. David downloaded from Realtor.com.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶¶ 11, 14; **Dkt. No. 53-11** (Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos); **Dkt. No. 53-13** (Stanchfield Article Cover Photo). | Undisputed that Subject Photograph 1 was displayed in the text side as the "header photo," and that Subject Photographs 1-20 were displayed in the gallery.<br><br>Disputed as to Ex. E, *see* Vogts' evidentiary objection No. 38 (**Dkt. 61-2 at No. 38**).<br><br>**Evidentiary Objection 38 to Voss Decl. ¶ 11 and Ex. E (Dkt. 53-11)** that "A true and correct copy of the Stanchfield Article – without the Stanchfield Photographs – is attached hereto and incorporated herein as Exhibit E.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 1-20 without those Photographs is, by definition, not a true and correct copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. E (*see*, in the top righthand corner of Ex. E, identifying "James McClain"). |
| 166. (D) | The Cover Picture for the Stanchfield Article was an image of Ms. Stanchfield superimposed | Undisputed (i.e., only disputed as to characterizations "Cover Picture," "Stanchfield Article," and "Stanchfield Property"). |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | over the exterior of the Stanchfield Property.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶¶ 11, 14; **Dkt. No. 53-11** (Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos); **Dkt. No 13** (Stanchfield Article Cover Photo). | |
| 167. (D) | Mr. David incorporated the Stanchfield Photographs into the Stanchfield Article to provide readers with a unique (and otherwise unavailable) insight into the lifestyle of Ms. Stanchfield and Mr. Gallegos, including contextualizing Mr. David's commentary and critique of the Stanchfield Property.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶¶ 11, 14; **Dkt. No. 53-11** (Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos); **Dkt. No. 53-13** (Stanchfield Article Cover Photo). | Disputed as to "to provide readers with a unique (and otherwise unavailable) insight into the lifestyle of Ms. Stanchfield and Mr. Gallegos, including contextualizing Mr. David's commentary and critique of the Stanchfield Property."<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 38** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 87:2-88:2, 101:21-102:18), **40** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 87:2-88:2, 101:21-102:18).<br><br>**Evidentiary Objection 38 to Voss Decl. ¶ 11 and Ex. E (Dkt. 53-11)** that "A true and correct copy of the Stanchfield Article – without the Stanchfield Photographs – is attached hereto and incorporated herein as Exhibit E.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 1-20 without those Photographs is, by definition, not a true and correct |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. E (*see*, in the top righthand corner of Ex. E, identifying "James McClain"). |
| | | **Evidentiary Objection 40 to Voss Decl. ¶ 14** that "I did not use all the Stanchfield Photographs from the real estate listing of the Stanchfield Property in the Stanchfield Article – but selected 20 that I believed were necessary to most effectively provide readers a unique (and otherwise unavailable) insight into the lifestyle of Ms. Stanchfield and Mr. Gallegos, including contextualizing my commentary and critique of the Stanchfield Property. The Cover Picture for the Stanchfield Article was an image of Ms. Stanchfield superimposed over the exterior of the Stanchfield Property." Sham affidavit rule. Mr. Voss testified that when he takes photos from realtor.com or redfin.com, he does not take all available photos of a property because doing so is "just not necessary" and would be "just too many." He testified that he takes "just an amount that feels the right amount to show the house or referring to something that might be said in the article." He testified that he does not have a maximum or minimum. He did not testify to anything about necessity, just that the photos he selected (i.e., Subject Photographs 1-20) were to give a |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | visual representation of some of the things he talked about in his two posts. |
| 168. (D) | Beyond minor cropping of the Stanchfield Photographs, Mr. David could not use a smaller portion of the individual Stanchfield Photographs or fewer of them because doing so would result in rendering his commentary and critique more difficult for lack of context.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶¶ 11-12, 14-15; **Dkt. No. 53-11** (Stanchfield Article Text); **Dkt. No. 53-12** (Stanchfield Article Photos); **Dkt. No. 53-13** (Stanchfield Article Cover Photo). | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 38** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 87:2-88:2, 101:21-102:18), and **41**.<br><br>**Evidentiary Objection 38 to Voss Decl. ¶ 11 and Ex. E (Dkt. 53-11)** that "A true and correct copy of the Stanchfield Article – without the Stanchfield Photographs – is attached hereto and incorporated herein as Exhibit E.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 1-20 without those Photographs is, by definition, not a true and correct copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. E (*see,* in the top righthand corner of Ex. E, identifying "James McClain").<br><br>**Evidentiary Objection 41 to Voss Decl. ¶ 15** that "When preparing the Stanchfield Article, I could not use a smaller portion of the individual Stanchfield Photographs or less of the Stanchfield Photographs because doing so would result in rendering |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | my commentary and critique of Ms. Stanchfield, Mr. Gallegos and the Stanchfield Property more difficult for lack of context.": Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 701 inappropriate lay witness opinion. Mr. Voss has no basis to opine on whether or how the inclusion or not of photos, or certain parts of photos, affects the context of an article. |
| 169. (D) | Christopher O'Dowd is a professional actor who wrote and starred in Moone Boy, starred in State of the Union, Of Mice and Men and Get Shorty and appeared in The Simpsons, Big Mouth, Family Guy, The Twilight Zone, Thor: The Dark World and Family Guy. **Dkt. No. 53-6** (Voss Decl.), ¶ 16. | Disputed. *See* Vogts' evidentiary objections, **Dkt. 61-2 at No. 42**. **Evidentiary Objection 42 to Voss Decl. ¶ 16** that "Christopher O'Dowd is a professional actor who wrote and starred in *Moone Boy*, starred in *Bridesmaids, State of the Union, Of Mice and Men* and *Get Shorty* and appeared in *The Simpsons, Big Mouth, Family Guy, The Twilight Zone, Thor: The Dark World* and *Family Guy*. Dawn O'Porter is Mr. O'Dowd's wife and an author, whose books include *The Cows* and *So Lucky* and a documentarian who created *Super Slim Me* and *Extreme Wife*.": Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay, Fed. R. Evid. 402 irrelevance. Mr. Voss has no basis to attest to Mr. O'Dowd's or Ms. O'Porter's filmography or Ms. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | O'Porter's writings—all of which is irrelevant. To the extent Mr. Voss purports to declare this to suggest that Mr. O'Dowd and Ms. O'Porter are each a "public figure," Mr. Voss has no basis to attest to who is legally considered a "public figure." |
| 170. (D) | Dawn O'Porter is Mr. O'Dowd's wife and an author whose books include The Cows and So Lucky and a documentarian who created Super Slim Me and Extreme Wife.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 16. | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at No. 42**, listed above in response to ¶ 169. |
| 171. (D) | On Friday, September 4, 2020, Mr. David received an email from one of his sources that Mr. O'Dowd and Ms. O'Porter were selling the O'Dowd Property.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 17; **Dkt. No. 53-14** (O'Dowd Email). | Undisputed. |
| 172. (D) | Mr. David further investigated and identified the real estate listings for the O'Dowd Property.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 17; **Dkt. No. 53-15** (O'Dowd Property Listing on Realtor); **Dkt. No. 53-16** (O'Dowd Property Listing on Redfin); *see also* **Dkt. No. 53-6** (Voss Decl.), ¶¶ 3, 18; **Dkt. No. 53-17** (O'Dowd Article Notes). | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at No. 43** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 108:7-12, 111:5-17).<br><br>**Evidentiary Objection 43 to Voss Decl. ¶ 17 and Ex. I-J (Dkt. 53-15 and 53-16)** that "A true and correct copy of the real estate listings for the Stanchfield Property are attached hereto and incorporated herein as Exhibit I-J.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | knowledge, lack of foundation, Fed. R. Evid. 802 hearsay, Fed. R. Evid. 402 irrelevance, Fed. R. Evid. 901 lack of authentication. Mr. McClain did not create Ex. I-J and thus has no personal knowledge of, and has no basis to authenticate, Ex. I-J. Those documents are, on their face, not true and correct copies, they are clearly misprinted. Those documents also pertain to 713 North Alta Vista Boulevard (what the PMC Defendants refer to as the "O'Dowd Property"), not 601 Seclusion Lane (what the PMC Defendants refer to as the "Stanchfield Property"). Mr. Voss already confirmed that Dkt. 44-20 is a true and correct copy of the redfin.com listing from which he obtained Subject Photographs 21-38. |
| 173. (D) | The real estate listings for the O'Dowd Property did not contain information that Mr. O'Dowd or Ms. O'Porter owned the O'Dowd Property or identify the photographer/copyright owner for the O'Dowd Photographs.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶ 17; **Dkt. No. 53-15** (O'Dowd Property Listing on Realtor); **Dkt. No. 53-16** (O'Dowd Property Listing on Redfin; *see also* **Dkt. Not. 53-6** (Voss Decl.), ¶¶ 3, 5. | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at No. 43** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 108:7-12, 111:5-17), listed above in response to ¶ 172. |
| 174. (D) | On September 15, 2020, Mr. David created and posted an article on Dirt's website entitled | Undisputed that the text side of the post was published on September 15, 2020, at 4:55 p.m. PT and was titled |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | "Chris O'Dowd, Dawn O'Porter List Melrose District Bungalow (the "O'Dowd Article"), which discussed: (1) that Mr. O'Dowd and Ms. O'Porter were the owners of the O'Dowd Property; (2) details about their careers in the entertainment industry; (3) how much they originally paid for the O'Dowd Property; (4) the listing price for the O'Dowd Property; (5) commentary on the location of the O'Dowd Property; (6) when the O'Dowd Property was built; (7) commentary and critique on various aspects of the O'Dowd Property; (8) its size, including number of bedrooms and bathrooms; (9) the listing agents for the O'Dowd Property; and (10) commentary on the new residential property acquired by Mr. O'Dowd and Ms. O'Porter.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶¶ 18-19; **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-19** (O'Dowd Article Photos); **Dkt. No. 53-20** (O'Dowd Article Cover Photo); *see also* **Dkt. No. 53-6** (Voss Decl.), ¶ 18; **Dkt. No. 53-17** (O'Dowd Article Notes). | "Chris O'Dowd, Dawn O'Porter List Melrose District Bungalow," and that the text is shown at Dkt. 44-14 at 30-32 of 38; and that the gallery linked to that text side was published on September 15, 2020, at 4:52 p.m. PT and was titled "'Look Around Chris O'Dowd's L.A. Bungalow," and is shown at Dkt. 44-14 at 2-21 of 38. Disputed as to remainder.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at No. 44**.<br><br>**Evidentiary Objection 44 to Voss Decl. ¶ 18 and Ex. L (Dkt. 53-18)** that "A true and correct copy of the O'Dowd Article – without the O'Dowd Photographs – is attached hereto and incorporated herein as Exhibit L.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 21-38 without those Photographs is, by definition, not a true and correct copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. L (*see*, in the top righthand corner of Ex. E, identifying "James McClain"). |
| 175. (D) | The O'Dowd Article incorporated the O'Dowd Photographs – which Mr. David downloaded from Redfin. | Undisputed that Subject Photograph 32 was displayed in the text side as the "header photo," and that Subject |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. No. 53-6** (Voss Decl.), ¶¶ 18, 21; **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-19** (O'Dowd Article Photos); **Dkt. No. 53-20** (O'Dowd Article Cover Photo). | Photographs 21-38 were displayed in the gallery.<br><br>Disputed as to Ex. L. *See* Vogts' evidentiary objections, **Dkt. 61-2 at No. 44**, listed above in response to ¶ 174. |
| 176. (D) | The Cover Picture for the O'Dowd Article was an image of Mr. O'Dowd superimposed over the exterior of the O'Dowd Property.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶¶ 18, 21; **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-19** (O'Dowd Article Photos); **Dkt. No. 53-20** (O'Dowd Article Cover Photo). | Undisputed (i.e., only disputed as to characterizations "Cover Picture," "O'Dowd Article," and "O'Dowd Property") |
| 177. (D) | Mr. David incorporated the O'Dowd Photographs into the O'Dowd Article to provide readers with a unique (and otherwise unavailable) insight into the lifestyle of Mr. O'Dowd and Ms. O'Porter, including contextualizing his commentary and critique of O'Dowd Property.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶¶ 18, 21; **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-19** (O'Dowd Article Photos); **Dkt. No. 53-20** (O'Dowd Article Cover Photo). | Disputed as to "to provide readers with a unique (and otherwise unavailable) insight into the lifestyle of Mr. O'Dowd and Ms. O'Porter, including contextualizing his commentary and critique of O'Dowd Property."<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 44, 46** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 87:2-88:2, 101:21-102:18).<br><br>**Evidentiary Objection 44 to Voss Decl. ¶ 18 and Ex. L (Dkt. 53-18)** that "A true and correct copy of the O'Dowd Article – without the O'Dowd Photographs – is attached hereto and incorporated herein as |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | Exhibit L.": Fed. R. Evid. 1002, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 901 lack of authentication. A copy of the post that displayed Subject Photographs 21-38 without those Photographs is, by definition, not a true and correct copy thereof. Mr. Voss also did not create, has no knowledge of, and cannot authenticate, Ex. L (*see*, in the top righthand corner of Ex. E, identifying "James McClain"). |
| | | **Evidentiary Objection 46 to Voss Decl. ¶ 21** that "I did not use all the O'Dowd Photographs from the real estate listing of the O'Dowd Property in the O'Dowd Article – but selected 18 that I believed were necessary to most effectively provide readers a unique (and otherwise unavailable) insight into the lifestyle of Mr. O'Dowd and Ms. O'Porter, including contextualizing my commentary and critique of the O'Dowd Property. The Cover Picture for the O'Dowd Article was an image of Mr. O'Dowd superimposed over the exterior of the Stanchfield Property.": Sham affidavit rule. Mr. Voss testified that when he takes photos from realtor.com or redfin.com, he does not take all available photos of a property because doing so is "just not necessary" and would be "just too many." He testified that he takes "just an amount that feels the right |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | amount to show the house or referring to something that might be said in the article." He testified that he does not have a maximum or minimum. He did not testify to anything about necessity, just that the photos he selected (i.e., Subject Photographs 21-38) were to give a visual representation of some of the things he talked about in his two posts. |
| 178. (D) | Beyond minor cropping of the O'Dowd Photographs, Mr. David could not use a smaller portion of the individual O'Dowd Photographs or fewer of them because doing so would result in rendering his commentary and critique more difficult for lack of context.<br><br>**Dkt. No. 53-6** (Voss Decl.), ¶¶ 18-19, 21-22; **Dkt. No. 53-18** (O'Dowd Article Text); **Dkt. No. 53-19** (O'Dowd Article Photos); **Dkt. No. 53-20** (O'Dowd Article Cover Photo). | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 44, 46** (citing **Dkt. 61-5**, Doniger Decl. Ex. 2 at Dirt Dep. 87:2-88:2, 101:21-102:18), **47**.<br><br>**Evidentiary Objection 44 and 46** are listed above in response to ¶ 177.<br><br>**Evidentiary Objection 47 to Voss Decl. ¶ 22** that "I could not use a smaller portion of the individual O'Dowd Photographs or less of the O'Dowd Photographs because doing so would result in rendering my commentary and critique of Mr. O'Dowd, Ms. O'Porter and the O'Dowd Property more difficult for lack of context.": Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 701 inappropriate lay witness opinion. Mr. Voss has no basis to opine on whether or how the inclusion or not |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | of photos, or certain parts of photos, affects the context of an article. |
| 179. (D) | Zak Williams is the son of the late-actor and comedian Robin Williams.<br><br>**Dkt. No. 53-23** (McClain Decl.), ¶ 9. | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at No. 15**.<br><br>**Evidentiary Objection 15 to McClain Decl. ¶ 9** that "Zak Williams is the son of the late-actor and comedian Robin Williams. Zak Williams was an actor in his own right, having appeared in *The Graduates* and *Slow Your Roll: Extreme Comedy*. Zak Williams has spoken publicly on numerous occasions about mental health issues in light of his father's suicide and is the owner of PYM (Prepare Your Mind) – a mental health supplement company.": Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 802 hearsay, Fed. R. Evid. 402 irrelevance. Mr. McClain has no basis to attest to Mr. Williams' family history, filmography, public speaking engagements, or company—all of which is irrelevant. To the extent Mr. McClain purports to declare this to suggest that Mr. Williams is a "public figure," Mr. McClain has no basis to attest to who is legally considered a "public figure." |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 180. (D) | Zak Williams was an actor in his own right, having appeared in The Graduates and Slow Your Roll: Extreme Comedy.<br><br>**Dkt. No. 53-23** (McClain Decl.), ¶ 9. | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at No. 15**, listed above in response to ¶ 179. |
| 181. (D) | Zak Williams has spoken publicly on numerous occasions about mental health in light of his father's suicide and is the owner of PYM (Prepare Your Mind) – a mental health supplement company.<br><br>**Dkt. No. 53-23** (McClain Decl.), ¶ 9. | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at No. 15**, listed above in response to ¶ 179. |
| 182. (D) | Shortly prior to March 10, 2021, Mr. McClain was reviewing public records and discovered that Zak Williams purchased the Williams Property.<br><br>**Dkt. No. 53-23** (McClain Decl.), ¶ 12. | Undisputed. |
| 183. (D) | Mr. McClain further investigated and identified the real estate listings for the Williams Property.<br><br>**Dkt. No. 53-23** (McClain Decl.), ¶ 12; *see also Id.*, ¶ 3. | Undisputed. |
| 184. (D) | The real estate listings for the Williams Property did not contain information that Zak Williams acquired the Williams Property or identify the photographer/copyright owner for the Williams Photographs. | Undisputed that Dkt. 44-21 is an authenticated copy of the redfin.com listing for 4047 Dixie Canyon Avenue from which Mr. McClain downloaded copies of Subject Photographs 39-53, and that the text |

CONSOLIDATED STATEMENT OF FACTS

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. No. 53-23** (McClain Decl.), ¶ 12; *see also Id.*, ¶¶ 3, 5. | shows the information contained in that listing. |
| 185. (D) | On March 10, 2021, Mr. McClain created and posted an article on Dirt's website entitled "Robin Williams' Son Zak Buys French Country-Inspired L.A. Villa" (the "Williams Article"), which discussed: (1) that Zak Williams had purchased the Williams Property; (2) he was the son of the late-Robin Williams; (3) Zak Williams' inheritance was from his father's estate; (4) Zak Williams' background; (5) how much he paid to acquire the Williams Property; (6) commentary and critique on its location; (7) when it was built; (8) commentary and critique on various aspects of the Williams Property; and (9) its size, including the lot size and number of bedrooms.<br><br>**Dkt. No. 53-23** (McClain Decl.), ¶¶ 13-14; **Dkt. No. 53-24** (Williams Article Text); **Dkt. No. 53-25** (Williams Article Photos). | Undisputed that Dkts. 44-18 and 53-25 are copies of the post displaying Subject Photographs 39-53, and that the information in that post is contained in the text shown on those documents. |
| 186. (D) | The Williams Article incorporated the Williams Photographs – which Mr. McClain downloaded from Redfin.<br><br>**Dkt. No. 53-23** (McClain Decl.), ¶¶ 13, 16; **Dkt. No. 53-25** (O'Dowd Article Photos). | Undisputed that Subject Photograph 40 was displayed the "header photo," and that Subject Photographs 39-53 were displayed in the gallery. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 187. (D) | The Cover Picture for the Williams Article was an image of Zak Williams superimposed over the exterior of the Williams Property.<br><br>**Dkt. No. 53-23** (McClain Decl.), ¶¶ 13, 16; **Dkt. No. 53-25** (O'Dowd Article Photos). | Undisputed (i.e., only disputed as to characterizations "Cover Picture," "Williams Article," and "Williams Property"). |
| 188. (D) | Mr. McClain incorporated the Williams Photographs into the Williams Article to provide readers a unique (and otherwise unavailable) insight into the lifestyle of Zak Williams, including contextualizing his commentary and critique of Williams Property.<br><br>**Dkt. No. 53-23** (McClain Decl.), ¶¶ 13-14, 16; **Dkt. Not. 53-24** (O'Dowd Article Text); **Dkt. No. 53-25** (O'Dowd Article Photos). | Disputed as to "to provide readers a unique (and otherwise unavailable) insight into the lifestyle of Zak Williams, including contextualizing his commentary and critique of Williams Property." See Vogts' evidentiary objection Nos. 17-18.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 17** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 105:3-106:13), **18** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 101:2-102:1).<br><br>**Evidentiary Objection 17 to McClain Decl. ¶ 16** that "I did not use all of the Williams Photographs from the real estate listing of the Williams Property in the Williams Article – but selected 15 that I believed were necessary to most effectively provide readers a unique (and otherwise unavailable) insight into the lifestyle of Zak Williams, including contextualizing my commentary and critique of the Williams Property.": Sham affidavit rule. Mr. McClain testified that he |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | generally does not use more than 15 photos for a story he writes and did not testify to anything about his use of Subject Photographs 39-53 being necessary. Instead, he testified that he thought the 15 photos he picked (i.e., Subject Photographs 39-53) represented the property well, that they showed off the aspects of the property that he wanted to write about, and he thought readers would be interested in those aspects. He recalled nothing else about why he chose those particular photos.<br><br>**Evidentiary Objection 18 to McClain Decl. ¶ 17** that "Beyond cropping out the 'MLS' watermark from the Williams Photographs, I could not use a smaller portion of the individual Williams Photographs or less of the Williams Photographs because doing so would result in rendering my commentary and critique of Zak Williams and the Williams Property more difficult for lack of context.": Sham affidavit rule, Fed. R. Evid. 602 lack of personal knowledge, lack of foundation, Fed. R. Evid. 701 inappropriate lay witness opinion. Mr. McClain testified that after he downloaded Subject Photographs 39-53 from redfin.com, he did not alter them in any way. Mr. McClain has no basis to opine on whether or how the inclusion or not of photos, or certain parts of photos, affects the context of an article. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | |
| 189. (D) | Beyond minor cropping of the Williams Photographs, Mr. David could not use a smaller portion of the individual Williams Photographs or fewer of them because doing so would result in rendering his commentary and critique more difficult for lack of context.<br><br>**Dkt. No. 53-23** (McClain Decl.), ¶¶ 13-14, 16; **Dkt. Not. 53-24** (O'Dowd Article Text); **Dkt. No. 53-25** (O'Dowd Article Photos). | Disputed.<br><br>*See* Vogts' evidentiary objections, **Dkt. 61-2 at Nos. 17** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 105:3-106:13), **18** (citing **Dkt. 61-4**, Doniger Decl. Ex. 1 at McClain Dep. 101:2-102:1), listed above in response to ¶ 188. |

## II. Facts asserted in connection with the PMC Defendants' motion for partial summary judgment on compilations and number of works for statutory damages

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 1. (D) | Exhibit 4 to the Deposition of Plaintiff Brandon Vogts (the "Vogts Deposition" or "Vogts Depo") are photographs (the "Stanchfield Photographs") created by Plaintiff Brandon Vogts ("Vogts") of the property located at 601 Seclusion Lane, Glendale, California (the "Stanchfield Property").<br><br>**Dkt. No. 43-3** (Declaration of Lincoln Bandlow ("LB Decl.")), ¶¶ 2-3; **Dkt. No. 43-4** (Deposition of Brandon Vogts ("Vogts Depo"), pp. 100:6-109:22; **Dkt. No. 43-5** (Vogts' Responses to the PMC | Undisputed that Vogts created Subject Photographs 1-20, and that Subject Photographs 1-20 are of different aspects of a property located at 601 Seclusion Lane. *See infra* at ¶¶ 32-33. Vogts only disputes the PMC Defendants' characterizations "the Stanchfield Property," "the Stanchfield Photographs," and "the Stanchfield Registration." |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | Defendants' Requests for Admission ("Responses to RFAs"), No. 20, pp. 10:21-11:4; **Dkt. No. 59-2** (the Stanchfield Photographs) | |
| 2. (D) | Vogts registered the Stanchfield Photographs under a single copyright registration (the "Stanchfield Registration").<br><br>**Dkt. No. 43-3** (LB Decl), ¶¶ 2, 4-5; **Dkt. No. 43-4** (Vogts Depo), pp. 116:12-117:13; **Dkt. No. 43-6** (Vogts' Second Supplemental Responses to the PMC Defendants' Interrogatories ("Responses to Interrogatories"), No. 9, p. 9:13-27; **Dkt. No. 43-7** (VOGTS000023-26 – *i.e.*, Stanchfield Registration); **Dkt. No. 59-3** (the Stanchfield Registration) | Undisputed that Vogts' photos of different aspects of 601 Seclusion Lane, including Subject Photographs 1-20, are registered with the U.S. Copyright Office under Reg. No. VA 2-213-119, among many other photos. *See infra* at ¶ 26. |
| 3. (D) | In the Stanchfield Registration, Vogts titled the Stanchfield Photographs by: (1) the date Vogts created the photographs; (2) the address of the Stanchfield Property; and (3) an individualized number.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶¶ 2, 5; **Dkt. No. 43-4** (Vogts Depo), pp. 116:12-117:13, 118:19-121:11; **Dkt. No. 43-6** (Responses to Interrogatories"), No. 9, p. 9:13-27; **Dkt. No. 43-7** Stanchfield Registration); **Dkt. No. 59-3** (the Stanchfield Registration) | Undisputed that the titles of Subject Photographs 1-20, listed in the same order as shown in Exhibit 1 to the Complaint (Dkt. 1-1) for ease of reference, are as follows (*see infra* at ¶ 35):<br><br>(1) 20200509_601_Seclusion_Ln_003,<br>(2) 20200509_601_Seclusion_Ln_004,<br>(3) 20200509_601_Seclusion_Ln_006,<br>(4) 20200509_601_Seclusion_Ln_008,<br>(5) 20200509_601_Seclusion_Ln_009,<br>(6) 20200509_601_Seclusion_Ln_023,<br>(7) 20200509_601_Seclusion_Ln_012,<br>(8) 20200509_601_Seclusion_Ln_015,<br>(9) 20200509_601_Seclusion_Ln_019,<br>(10) 20200509_601_Seclusion_Ln_026,<br>(11) 20200509_601_Seclusion_Ln_034,<br>(12) 20200509_601_Seclusion_Ln_027,<br>(13) 20200509_601_Seclusion_Ln_029, |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | (14) 20200509_601_Seclusion_Ln_030, (15) 20200509_601_Seclusion_Ln_031, (16) 20200509_601_Seclusion_Ln_032, (17) 20200509_601_Seclusion_Ln_035, (18) 20200509_601_Seclusion_Ln_018, (19) 20200509_601_Seclusion_Ln_038, (20) 20200509_601_Seclusion_Ln_043. |
| 4. (D) | Vogts created the Stanchfield Photographs on the same date.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶ 2; **Dkt. No. 43-4** (Vogts Depo), pp. 37:2-5, 90:20-92:17, 116:12-117:13, 119:19-120:12; **Dkt. No. 59-1** (the Stanchfield Invoice); **Dkt. No. 59-3** (the Stanchfield Registration). | Undisputed that Vogts captured his photos of different aspects of 601 Seclusion Lane, including Subject Photographs 1-20, in one day for efficiency, and that the value of those photos would not change if Vogts took one photo a day. *See infra* at ¶ 67. |
| 5. (D) | All of the Stanchfield Photographs depict various areas of the Stanchfield Property.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶¶ 2-3; **Dkt. No. 43-4** (Vogts Depo), pp. 100:6-109:22; **Dkt. No. 43-5** (Responses to RFAs), No. 20, pp. 10:21-11:4; **Dkt. No. 59-2** (the Stanchfield Photographs) | Undisputed that Subject Photographs 1-20 are 20 of 44 photos that Vogts created of different aspects of 601 Seclusion Lane. *See infra* at ¶¶ 32-33. |
| 6. (D) | Vogts first published all of the Stanchfield Photographs together on the same date.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶¶ 2-4; **Dkt. No. 43-4** (Vogts Depo), 116:12-117:13, 124:2-125:1, 187:15-24; **Dkt. No. 43-5** (Responses to RFAs) No. 21, p. 11:5-15; **Dkt. No. 43-6** (Responses to Interrogatories), No. 6, p. 7:9-27; **Dkt. No. 59-3** (Stanchfield Registration) | Undisputed that Vogts initially delivered his photos of different aspects of 601 Seclusion Lane to his initial commissioning client in one download link for efficiency, and that the value of those photos would not change if Vogts sent one download link per photo. *See infra* at ¶ 68. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 7. (D) | Vogts first provided the Stanchfield Photographs to the real estate agent for the Stanchfield Property to facilitate its sale via real estate listings and marketing materials.<br><br>**Dkt. No. 43-3** (LB Decl), ¶¶ 2, 6; **Dkt. No. 43-4** (Vogts Depo), pp. 34:11-25, 41:17-22, 44:16-45:13, 47:5-48:9, 57:2-58:6, 90:20-94:11, 95:14-96:9; **Dkt. No. 43-8,** (VOGTS000867-71 (the "Invoices")); **Dkt. No. 59-1** (the Stanchfield Invoice). | Undisputed that Vogts authorized his initial commissioning client to make limited use of his photos of different aspects of 601 Seclusion Lane, including Subject Photographs 1-20—specifically, by displaying them on a Multiple Listing Service ("MLS") database, on the agents' real estate agency websites, in the agents' property brochures, and on the properties' listings on real estate listing websites such as redfin.com and realtor.com—to market that property for lease, sale, or purchase; and that no other uses were authorized. *See infra* ¶ 69. |
| 8. (D) | Vogts did not subsequently license (nor did anyone demonstrate interest in licensing) the Stanchfield Photographs after Vogts initially provided them to the real estate agent for use in selling the Stanchfield Property.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶¶ 2, 4, 6; **Dkt. No. 43-4** (Vogts Depo), pp. 61:4-13, 112:5-10 & 211:3-15; **Dkt. No. 43-6** (Responses to Interrogatories) No. 6, p. 7:9-27; **Dkt. No. 43-8** (Invoices). | Disputed on the ground that Vogts photos of 601 Seclusion Lane, including Subject Photographs 1-20, are available for licensing on a per-photo basis, among numerous other bases. *See infra* ¶¶ 70-74. |
| 9. (D) | Exhibit 7 to the Vogts Deposition are photographs (the "O'Dowd Photographs") created by Vogts of the property located at 713 N. Alta Vista Blvd (the "O'Dowd Property"). | Undisputed that Vogts created Subject Photographs 21-38, and that Subject Photographs 21-38 are of different aspects of a property located at 713 North Alta Vista Boulevard. *See infra* at ¶¶ 42-43. Vogts only disputes the PMC Defendants' characterizations "the |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. No. 43-3** (LB Decl.), ¶¶ 2-3; **Dkt. No. 43-4** (Vogts Depo), pp. 140:14-144:13; **Dkt. No. 43-5** (Responses to RFAs) No. 27, pp. 12:28-13:11; **Dkt. No. 59-5** (the O'Dowd Photographs) | O'Dowd Property," "the O'Dowd Photographs," and "the O'Dowd Registration." |
| 10. (D) | Vogts registered the O'Dowd Photographs under a single copyright registration (the "O'Dowd Registration"). <br><br> **Dkt. No. 43-3** (LB Decl.), ¶¶ 2-4, 7; **Dkt. No. 43-4** (Vogts Depo), pp. 146:8-147:12; **Dkt. No. 43-5** (Responses to RFAs) No. 27, pp. 12:28-13:11; **Dkt. No. 43-6** (Responses to Interrogatories), No. 11, pp. 9:28-10:14; **Dkt. No. 43-9** (VOGTS000027-33 *i.e.*, the O'Dowd Registration)); **Dkt. No. 59-6** (the O'Dowd Registration) | Undisputed that Vogts' photos of different aspects of 713 North Alta Vista Boulevard, including Subject Photographs 21-38, are registered with the U.S. Copyright Office under Reg. No. VA 2-227-873, among many other photos. *See infra* at ¶ 36. |
| 11. (D) | In the O'Dowd Registration, Vogts titled the O'Dowd Photographs by: (1) the date Vogts created the O'Dowd Photographs; (2) the address of the O'Dowd Property; and (3) an individualized number. <br><br> **Dkt. No. 43-3** (LB Decl.), ¶ 2; **Dkt. No. 43-4** (Vogts Depo), pp.118:19-119:20, 146:8-147:12; **Dkt. No. 59-6** (the O'Dowd Registration). | Undisputed that the titles of Subject Photographs 21-38, listed in the same order as shown in Exhibit 1 to the Complaint (Dkt. 1-1) for ease of reference, are as follows (*see infra* at ¶ 45): <br><br> (21) 20200831_713_N_Alta_Vista_Blvd_009, <br> (22) 20200831_713_N_Alta_Vista_Blvd_013, <br> (23) 20200831_713_N_Alta_Vista_Blvd_006, <br> (24) 20200831_713_N_Alta_Vista_Blvd_014, <br> (25) 20200831_713_N_Alta_Vista_Blvd_011, <br> (26) 20200831_713_N_Alta_Vista_Blvd_010, <br> (27) 20200831_713_N_Alta_Vista_Blvd_020, <br> (28) 20200831_713_N_Alta_Vista_Blvd_017, <br> (29) 20200831_713_N_Alta_Vista_Blvd_022, <br> (30) 20200831_713_N_Alta_Vista_Blvd_023, <br> (31) 20200831_713_N_Alta_Vista_Blvd_029, <br> (32) 20200831_713_N_Alta_Vista_Blvd_032, <br> (33) 20200831_713_N_Alta_Vista_Blvd_033, |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | (34) 20200831_713_N_Alta_Vista_Blvd_027, (35) 20200831_713_N_Alta_Vista_Blvd_007, (36) 20200831_713_N_Alta_Vista_Blvd_003, (37) 20200831_713_N_Alta_Vista_Blvd_002, (38) 20200831_713_N_Alta_Vista_Blvd_008. |
| 12. (D) | Vogts created all the O'Dowd Photographs on the same date.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶ 2; **Dkt. No. 43-4** (Vogts Depo), pp.118:19-119:20, 146:8-147:12; **Dkt. No. 59-6** (the O'Dowd Registration). | Undisputed that Vogts captured his photos of different aspects of 713 North Alta Vista Boulevard, including Subject Photographs 21-38, in one day for efficiency, and that the value of those photos would not change if Vogts took one photo a day. *See infra* at ¶ 67. |
| 13. (D) | All of the O'Dowd Photographs depict various areas of the O'Dowd Property.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶¶ 2-3; **Dkt. No. 43-4** (Vogts Depo), pp. 140:14-144:13; **Dkt. No. 43-5** (Responses to RFAs) No. 27, pp. 12:28-13:11; **Dkt. No. 59-5** (the O'Dowd Photographs) | Undisputed that Subject Photographs 21-38 are 18 of 36 photos that Vogts created of different aspects of 713 North Alta Vista Boulevard. *See infra* at ¶¶ 42-43. |
| 14. (D) | Vogts first published all of the O'Dowd Photographs together on the same date.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶ 2; **Dkt. No. 43-4** (Vogts Depo), pp. 146:8-148:21; **Dkt. No. 59-6** (O'Dowd Registration) | Undisputed that Vogts initially delivered his photos of different aspects of 713 North Alta Vista Boulevard to his initial commissioning client in one download link for efficiency, and that the value of those photos would not change if Vogts sent one download link per photo. *See infra* at ¶ 68. |
| 15. (D) | Vogts first provided the O'Dowd Photographs to the real estate agents for the O'Dowd Property to | Undisputed that Vogts authorized his initial commissioning client to make limited use of his photos of different aspects of 713 North Alta |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | facilitate its sale via real estate listings and marketing materials.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶¶ 2, 4, 6; **Dkt. No. 43-4** (Vogts Depo), pp. 34:11-15, 37:23-38:6, 41:23-42:3, 44:16-45:13, 47:5-48:9, 57:2-58:6, 124:7-12 & 132:14-133:11; **Dkt. No. 43-6** (Responses to Interrogatories) No. 6, p. 7:9-27; **Dkt. No. 43-8** (the Invoices); **Dkt. No. 59-4** (the O'Dowd Invoice) | Vista Boulevard, including Subject Photographs 21-38—specifically, by displaying them on a Multiple Listing Service ("MLS") database, on the agents' real estate agency websites, in the agents' property brochures, and on the properties' listings on real estate listing websites such as redfin.com and realtor.com—to market that property for lease, sale, or purchase; and that no other uses were authorized. *See also infra* ¶ 69. |
| 16. (D) | Vogts did not subsequently license (nor did anyone demonstrate interest in licensing) the O'Dowd Photographs after Vogts initially provided them to the real estate agents for use in selling the O'Dowd Property.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶¶ 2, 4, 6; **Dkt. No. 43-4** (Vogts Depo), pp. 61:4-13, 132:25-134:20 & 211:3-15; **Dkt. No. 43-6** (Response to Interrogatory) No. 6, p. 7:9-27; **Dkt. No. 43-8** (the Invoices) | Disputed on the ground that Vogts photos of 713 North Alta Vista Boulevard, including Subject Photographs 21-38, are available for licensing on a per-photo basis, among numerous other bases. *See infra* ¶¶ 70-74. |
| 17. (D) | Exhibit 11 to the Vogts Deposition are photographs (the "Williams Photographs") created by Vogts of the property located at 4047 Dixie Canyon Ave. (the "Williams Property").<br><br>**Dkt. No. 43-3** (LB Decl.) ¶¶ 2-3; **Dkt. No. 43-4** (Vogts Depo), pp. 180:4-184:20; **Dkt. No. 43-5** | It does not appear that the PMC Defendants actually put "Exhibit 11" in the record, as Ex. A to the Bandlow Decl. only consists of excerpts of the transcript to Vogts' deposition. Nevertheless, undisputed that Vogts created Subject Photographs 39-53, and that Subject Photographs 39-53 are of different aspects of a property located at 4047 |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | (Responses to RFAs) No. 34, p. 15:7-18; **Dkt. No. 59-8** (the Williams Photographs) | Dixie Canyon Avenue. *See infra* at ¶¶ 52-53. Vogts only disputes the PMC Defendants' characterizations "the Williams Property," "the Williams Photographs," and "the Williams Registration." |
| 18. (D) | Vogts registered the Williams Photographs under a single copyright registration (the "Williams Registration").<br><br>**Dkt. No. 43-3** (LB Decl.), ¶¶ 2, 4, 8; **Dkt. No. 43-4** (Vogts Depo), pp. 185:23-187:9; **Dkt. No. 43-6** (Responses to Interrogatories) No. 11, pp. 10:15-11:1; **Dkt. No. 43-10** (VOGTS000034-41 – *i.e.*, the Williams Registration); **Dkt. No. 59-9** (the Williams Registration) | Undisputed that Vogts' photos of different aspects of 4047 Dixie Canyon Avenue, including Subject Photographs 39-53, are registered with the U.S. Copyright Office under Reg. No. VA 2-230-981, among many other photos. *See infra* at ¶ 46. |
| 19. (D) | In the Williams Registration, Vogts titled the Williams Photographs by: (1) the date Vogts created the Williams Photographs; (2) the address of the Williams Property; and (3) an individualized number.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶ 2; **Dkt. No. 43-4** (Vogts Depo), pp. 118:19-119:20, 185:23-187:9; **Dkt. No. 59-9** (the Williams Registration). | Undisputed that the titles of Subject Photographs 39-53, listed in the same order as shown in Exhibit 1 to the Complaint (Dkt. 1-1) for ease of reference, are as follows (*see infra* at ¶ 55):<br><br>(39) 20201215_4047_Dixie_Canyon_Ave_025,<br>(40) 20201215_4047_Dixie_Canyon_Ave_022,<br>(41) 20201215_4047_Dixie_Canyon_Ave_005,<br>(42) 20201215_4047_Dixie_Canyon_Ave_006,<br>(43) 20201215_4047_Dixie_Canyon_Ave_009,<br>(44) 20201215_4047_Dixie_Canyon_Ave_011,<br>(45) 20201215_4047_Dixie_Canyon_Ave_008,<br>(46) 20201215_4047_Dixie_Canyon_Ave_012,<br>(47) 20201215_4047_Dixie_Canyon_Ave_015,<br>(48) 20201215_4047_Dixie_Canyon_Ave_018,<br>(49) 20201215_4047_Dixie_Canyon_Ave_019,<br>(50) 20201215_4047_Dixie_Canyon_Ave_020,<br>(51) 20201215_4047_Dixie_Canyon_Ave_021,<br>(52) 20201215_4047_Dixie_Canyon_Ave_024,<br>(53) 20201215_4047_Dixie_Canyon_Ave_026. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 20. (D) | Vogts created all of the Williams Photographs on the same date.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶ 2; **Dkt. No. 43-4** (Vogts Depo), pp. 179:16-180:7, 185:23-186:20; **Dkt. No. 59-9** (the Williams Registration). | Undisputed that Vogts captured his photos of different aspects of 4047 Dixie Canyon Avenue, including Subject Photographs 39-53, in one day for efficiency, and that the value of those photos would not change if Vogts took one photo a day. *See infra* at ¶ 67. |
| 21. (D) | All of the Williams Photographs depict various areas of the Williams Property.<br><br>**Dkt. No. 43-3** (LB Decl.) ¶¶ 2-3; **Dkt. No. 43-4** (Vogts Depo), pp. 180:4-184:20; **Dkt. No. 43-5** (Responses to RFAs) No. 34, p. 15:7-18; **Dkt. No. 59-8** (the Williams Photographs). | Undisputed that Subject Photographs 39-53 are 15 of 26 photos that Vogts created of different aspects of 4047 Dixie Canyon Avenue. *See infra* at ¶¶ 52-53. |
| 22. (D) | Vogts first published all of the Williams Photographs together on the same date.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶¶ 2-3; **Dkt. No. 43-4** (Vogts Depo), pp. 186:8-187:14; **Dkt. No. 43-5** (Responses to RFAs) No. 35, pp. 15:19-16:3. | Undisputed that Vogts initially delivered his photos of different aspects of 4047 Dixie Canyon Avenue to his initial commissioning client in one download link for efficiency, and that the value of those photos would not change if Vogts sent one download link per photo. *See infra* at ¶ 68. |
| 23. (D) | Vogts first provided the Williams Photographs to the real estate agents of the Williams Property to facilitate its sale via real estate listing and marketing materials.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶¶ 2, 4, 6; **Dkt. No. 43-4** (Vogts Depo), pp. 34:11-15, 39:10-15, 42:4-8, 44:16- | Undisputed that Vogts authorized his initial commissioning client to make limited use of his photos of different aspects of 4047 Dixie Canyon Avenue, including Subject Photographs 39-53—specifically, by displaying them on a Multiple Listing Service ("MLS") database, on the agents' real estate agency |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | 45:13, 47:5-48:9, 57:2-58:6, 164:20-166:16 & 176:1-16; **Dkt. No. 43-6** (Responses to Interrogatories) No. 6, p. 7:9-27; Dkt. No. 43-8 (the Invoices); **Dkt. No. 59-7** (Williams Invoice) | websites, in the agents' property brochures, and on the properties' listings on real estate listing websites such as redfin.com and realtor.com—to market that property for lease, sale, or purchase; and that no other uses were authorized. *See also infra* ¶ 69. |
| 24. (D) | Vogts did not subsequently license (nor did anyone demonstrate interest in licensing) the Williams Photographs after Vogts initially provided them to the real estate agent for use in selling the Williams Property.<br><br>**Dkt. No. 43-3** (LB Decl.), ¶¶ 2, 4, 6; **Dkt. No. 43-4** (Vogts Depo), pp. 61:4-13, 164:20-165:2, 176:5-21, 211:3-15; **Dkt. No. 43-6** (Responses to Interrogatories) No. 6, p. 7:9-27; **Dkt. No. 43-8** (the Invoices) | Disputed on the ground that Vogts photos of 4047 Dixie Canyon Avenue, including Subject Photographs 39-53, are available for licensing on a per-photo basis, among numerous other bases. *See infra* ¶¶ 70-74. |
| 25. (P) | **Vogts' registrations covering the Subject Photographs (among many other photos).** | // |
| 26. (P) | Subject Photographs 1-20 are registered with the U.S. Copyright Office under Reg. No. VA 2-213-119.<br><br>**Dkt. 44-33 through 44-34** (Vogts Decl. Ex. 1: Reg. No. VA 2-213-119 and Subject Photographs 1-20 in Dkt. 1-1) | Undisputed. |
| 27. (P) | VA 2-213-119 is a copyright registration for a group of published | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | photos issued pursuant to 37 C.F.R. § 202.4(i).<br><br>**Dkt. 44-33** (Vogts Decl. Ex. 1: Reg. No. VA 2-213-119 covering Subject Photographs 1-20) | |
| 28. (P) | VA 2-213-119 consists of 187 photos published at different times between March-June 2020.<br><br>**Dkt. 44-33** (Vogts Decl. Ex. 1: Reg. No. VA 2-213-119 covering Subject Photographs 1-20) | Disputed: (1) insofar as this statement implies that the 187 were published individually and at different times as the material does not support the assertion; and (2) insofar as this statement implies the Subject Photographs were published at different times.<br><br>F.R.C.P. 56(c)(1); **Section II, D. SUF**, ¶¶ 6, 14, 22, *supra*. |
| 29. (P) | The title of the group of photos registered under VA 2-213-119 is "2020_Real Estate and Commercial_002."<br><br>**Dkt. 44-33** (Vogts Decl. Ex. 1: Reg. No. VA 2-213-119 covering Subject Photographs 1-20) | Undisputed. |
| 30. (P) | The 187 photos registered under VA 2-213-119 are registered as individual photos.<br><br>**Dkt. 44-33** (Vogts Decl. Ex. 1: Reg. No. VA 2-213-119 covering Subject Photographs 1-20) | Disputed as to "individual photos" as: (1) an immaterial legal conclusion and argument; and (2) the material cited does not establish the fact asserted.<br><br>F.R.C.P. Rule 56(c)(1); *Burch v. Regents of University of California*, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006) ("objections to evidence on the ground that it is irrelevant, |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself. … Instead of **objecting**, parties should simply **argue** that the facts are not material." (original emphasis). |
| 31. (P) | The 187 photos registered under VA 2-213-119 include photos of different aspects of at least six unrelated properties.<br><br>**Dkt. 44-33** (Vogts Decl. Ex. 1: Reg. No. VA 2-213-119 covering Subject Photographs 1-20) | Disputed insofar as this statement implies that the 187 photos depicted more than six properties as the material cited does not establish the fact asserted.<br><br>F.R.C.P. Rule 56(c)(1). |
| 32. (P) | 44 of the 187 photos registered under VA 2-213-119 are photos of different aspects of a property located at 601 Seclusion Lane.<br><br>**Dkt. 44-33 through 44-34** (Vogts Decl. Ex. 1: Reg. No. VA 2-213-119 and Subject Photographs 1-20 in Dkt. 1-1) | Undisputed. |
| 33. (P) | At issue in this case are 20 of those 44 photos, identified in the Complaint as Subject Photographs 1-20.<br><br>**Dkt. 44-33 through 44-34** (Vogts Decl. Ex. 1: Reg. No. VA 2-213-119 and Subject Photographs 1-20 in Dkt. 1-1) | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 34. (P) | Subject Photographs 1-20 are not required to be selected, coordinated, or arranged in any particular way, they are just the 20 photos, of the 44 photos of different aspects of 601 Seclusion Lane registered under VA 2-213-119, that the PMC Defendants chose to access and copy.<br><br>**Dkt. 57-3 ¶ 2**; **Dkt. 1-1**; **Dkt. 42 ¶¶ 2-3**; **Dkt. 44-33 through 44-34** (Vogts Decl. Ex. 1: Reg. No. VA 2-213-119 and Subject Photographs 1-20 in Dkt. 1-1). | Disputed (1) as to this statement insofar as it implies that Vogts did not select, coordinate, and arrange the 44 photographs of 601 Seclusion Lane (the "Stanchfield Photographs") in any particular way; and (2) as to "Subject Photographs 1-20 are not required to be selected, coordinated, or arranged in any particular way" as an immaterial legal conclusion and argument and immaterial to whether Vogts selected, coordinated and arranged the Stanchfield Photographs and the material cited cannot be presented in a form that would be admissible in evidence.<br><br>**Section II D. SUF** , ¶¶ 1-8, *supra*; Federal Rule of Evidence ("F.R.E."), 403, 701-702; F.R.C.P. Rule 56(c)(2); *Burch*, 433 F.Supp.2d at 1119. |
| 35. (P) | The titles of Subject Photographs 1-20, listed in the same order as shown in Exhibit 1 to the Complaint (Dkt. 1-1) for ease of reference, are as follows:<br><br>(1) 20200509_601_Seclusion_Ln_003,<br>(2) 20200509_601_Seclusion_Ln_004,<br>(3) 20200509_601_Seclusion_Ln_006,<br>(4) 20200509_601_Seclusion_Ln_008,<br>(5) 20200509_601_Seclusion_Ln_009,<br>(6) 20200509_601_Seclusion_Ln_023,<br>(7) 20200509_601_Seclusion_Ln_012,<br>(8) 20200509_601_Seclusion_Ln_015,<br>(9) 20200509_601_Seclusion_Ln_019,<br>(10) 20200509_601_Seclusion_Ln_026,<br>(11) 20200509_601_Seclusion_Ln_034,<br>(12) 20200509_601_Seclusion_Ln_027, | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | (13) 20200509_601_Seclusion_Ln_029,<br>(14) 20200509_601_Seclusion_Ln_030,<br>(15) 20200509_601_Seclusion_Ln_031,<br>(16) 20200509_601_Seclusion_Ln_032,<br>(17) 20200509_601_Seclusion_Ln_035,<br>(18) 20200509_601_Seclusion_Ln_018,<br>(19) 20200509_601_Seclusion_Ln_038,<br>(20) 20200509_601_Seclusion_Ln_043.<br><br>Dkt. 1-1; **Dkt. 44-33** (Vogts Decl. Ex. 1: Reg. No. VA 2-213-119 covering Subject Photographs 1-20). | |
| 36. (P) | Subject Photographs 21-38 are registered with the U.S. Copyright Office under Reg. No. VA 2-227-873.<br><br>**Dkt. 44-35 through Dkt. 44-37** (Vogts Decl. Ex. 2: Reg. No. VA 2-227-873 and Subject Photographs 21-38 in Dkt. 1-1) | Undisputed. |
| 37. (P) | VA 2-227-873 is a copyright registration for a group of published photos issued pursuant to 37 C.F.R. § 202.4(i).<br><br>**Dkt. 44-35 through Dkt. 44-37** (Vogts Decl. Ex. 2: Reg. No. VA 2-227-873 and Subject Photographs 21-38 in Dkt. 1-1). | Undisputed. |
| 38. (P) | VA 2-227-873 consists of 558 photos published at different times between July-September 2020.<br><br>**Dkt. 44-35** (Vogts Decl. Ex. 2: Reg. No. VA 2-227-873 covering Subject Photographs 21-38) | Disputed: (1) insofar as this statement implies that the 558 were published individually and at different times as the material does not support the assertion; and (2) that the Subject Photographs were published at different days and times. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | F.R.C.P. 56(c)(1); **Section II D. SUF,** ¶¶ 6, 14, 22, *supra*. |
| 39. (P) | The title of the group of photos registered under VA 2-227-873 is "2020_Real Estate and Commercia1_003."<br><br>**Dkt. 44-35** (Vogts Decl. Ex. 2: Reg. No. VA 2-227-873 covering Subject Photographs 21-38) | Undisputed. |
| 40. (P) | The 558 photos registered under VA 2-227-873 are registered as individual photos.<br><br>**Dkt. 44-35** (Vogts Decl. Ex. 2: Reg. No. VA 2-227-873 covering Subject Photographs 21-38) | Disputed as to "individual photos" as: (1) an immaterial legal conclusion and argument and the material cited cannot be presented in a form that would be admissible in evidence; and (2) the material cited does not establish the fact asserted.<br><br>F.R.C.P. Rule 56(c)(1-2); F.R.E. Rule 403, 701-702; *Burch*, 433 F.Supp.2d at 1119 |
| 41. (P) | The 558 photos registered under VA 2-227-873 includes photos of different aspects of at least 15 unrelated properties.<br><br>**Dkt. 44-35** (Vogts Decl. Ex. 2: Reg. No. VA 2-227-873 covering Subject Photographs 21-38) | Disputed insofar as this statement implies that the 558 photos depicted more than 15 properties as the material cited does not establish the fact asserted.<br><br>F.R.C.P. Rule 56(c)(1). |
| 42. (P) | 36 of the 558 photos registered under VA 2-227-873 are photos of different aspects of a property located at 713 North Alta Vista Boulevard. | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. 44-35 through Dkt. 44-37** (Vogts Decl. Ex. 2: Reg. No. VA 2-227-873 and Subject Photographs 21-38 in Dkt. 1-1) | |
| 43. (P) | At issue in this case are 18 of those 36 photos, identified in the Complaint as Subject Photographs 21-38.<br><br>**Dkt. 1-1**; **Dkt. 44-35 through Dkt. 44-37** (Vogts Decl. Ex. 2: Reg. No. VA 2-227-873 and Subject Photographs 21-38 in Dkt. 1-1) | Undisputed. |
| 44. (P) | Subject Photographs 21-38 are not required to be selected, coordinated, or arranged in any particular way, they are just the 18 photos, of the 36 photos of different aspects of 713 North Alta Vista Boulevard registered under VA 2-227-873, that the PMC Defendants chose to access and copy.<br><br>**Dkt. 57-3 ¶ 3**; **Dkt. 1-1**; **Dkt. 42 ¶¶ 2-3**; **Dkt. 44-35 through Dkt. 44-37** (Vogts Decl. Ex. 2: Reg. No. VA 2-227-873 and Subject Photographs 21-38 in Dkt. 1-1). | Disputed (1) as to this statement insofar as it implies that Vogts did not select, coordinate, and arrange the 36 photographs of 713 North Alta Vista Boulevard (the "O'Dowd Photographs") in any particular way; and (2) as to "Subject Photographs 21-38 are not required to be selected, coordinated, or arranged in any particular way" as an immaterial legal conclusion and argument and immaterial to whether Vogts selected, coordinated and arranged the O'Dowd Photographs and the material cited cannot be presented in a form that would admissible in evidence.<br><br>**Section II D. SUF**, ¶¶ 9-16, *supra*; F.R.C.P. Rule 56(c)(2); F.R.E. Rule 403, 701-702; *Burch*, 433 F.Supp.2d at 1119. |

CONSOLIDATED STATEMENT OF FACTS

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 45. (P) | The titles of Subject Photographs 21-38, listed in the same order as shown in Exhibit 1 to the Complaint (Dkt. 1-1) for ease of reference, are as follow:<br><br>(21) 20200831_713_N_Alta_Vista_Blvd_009,<br>(22) 20200831_713_N_Alta_Vista_Blvd_013,<br>(23) 20200831_713_N_Alta_Vista_Blvd_006,<br>(24) 20200831_713_N_Alta_Vista_Blvd_014,<br>(25) 20200831_713_N_Alta_Vista_Blvd_011,<br>(26) 20200831_713_N_Alta_Vista_Blvd_010,<br>(27) 20200831_713_N_Alta_Vista_Blvd_020,<br>(28) 20200831_713_N_Alta_Vista_Blvd_017,<br>(29) 20200831_713_N_Alta_Vista_Blvd_022,<br>(30) 20200831_713_N_Alta_Vista_Blvd_023,<br>(31) 20200831_713_N_Alta_Vista_Blvd_029,<br>(32) 20200831_713_N_Alta_Vista_Blvd_032,<br>(33) 20200831_713_N_Alta_Vista_Blvd_033,<br>(34) 20200831_713_N_Alta_Vista_Blvd_027,<br>(35) 20200831_713_N_Alta_Vista_Blvd_007,<br>(36) 20200831_713_N_Alta_Vista_Blvd_003,<br>(37) 20200831_713_N_Alta_Vista_Blvd_002,<br>(38) 20200831_713_N_Alta_Vista_Blvd_008.<br><br>Dkt. 1-1; **Dkt. 44-35 through Dkt. 44-37** (Vogts Decl. Ex. 2: Reg. No. VA 2-227-873 and Subject Photographs 21-38 in Dkt. 1-1). | Undisputed. |
| 46. (P) | Subject Photographs 39-53 are registered with the U.S. Copyright Office under Reg. No. VA 2-230-981.<br><br>**Dkt. 44-38 through 44-39** (Vogts Decl. Ex. 3: Reg. No. VA 2-230-981 and Subject Photographs 39-53 in Dkt. 1-1) | Undisputed. |
| 47. (P) | VA 2-230-981 is a copyright registration for a group of published photos issued pursuant to 37 C.F.R. § 202.4(i). | Undisputed. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. 44-38** (Vogts Decl. Ex. 3: Reg. No. VA 2-230-981 covering Subject Photographs 39-53) | |
| 48. (P) | VA 2-230-981 consists of 544 photos published at different times between October-December 2020.<br><br>**Dkt. 44-38** (Vogts Decl. Ex. 3: Reg. No. VA 2-230-981 covering Subject Photographs 39-53) | Disputed: (1) insofar as this statement implies that the 544 were published individually and at different times as the material does not support the assertion; and (2) insofar as this statement asserts that the Subject Photographs were published on different dates.<br><br>F.R.C.P. 56(c)(1)**; Section II. D. SUF**, ¶¶ 6, 14, 22, *supra*. |
| 49. (P) | The title of the group of photos registered under VA 2-230-981 is "2020_Real Estate and Commercial_004."<br><br>**Dkt. 44-38** (Vogts Decl. Ex. 3: Reg. No. VA 2-230-981 covering Subject Photographs 39-53) | Undisputed. |
| 50. (P) | The 544 photos registered under VA 2-230-981 are registered as individual photos.<br><br>**Dkt. 44-38** (Vogts Decl. Ex. 3: Reg. No. VA 2-230-981 covering Subject Photographs 39-53) | Disputed as to "individual photos" as: (1) an immaterial legal conclusion and argument; and (2) the material cited does not establish the fact asserted.<br><br>F.R.C.P. Rule 56(c)(1); *Burch*, 433 F.Supp.2d at 1119 |
| 51. (P) | The 544 photos registered under VA 2-230-981 include photos of different aspects of at least 23 unrelated properties. | Disputed insofar as this statement implies that the 544 photos depicted more than 23 properties as the material cited does not establish the fact asserted. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. 44-38** (Vogts Decl. Ex. 3: Reg. No. VA 2-230-981 covering Subject Photographs 39-53) | F.R.C.P. Rule 56(c)(1). |
| 52. (P) | 26 of the 544 photos registered under VA 2-230-981 are photos of different aspects of a property located at 4047 Dixie Canyon Avenue.<br><br>**Dkt. 44-38 through 44-39** (Vogts Decl. Ex. 3: Reg. No. VA 2-230-981 and Subject Photographs 39-53 in Dkt. 1-1) | Undisputed. |
| 53. (P) | At issue in this case are 15 of those 26 photos, identified in the Complaint as Subject Photographs 39-53.<br><br>**Dkt. 44-38 through 44-39** (Vogts Decl. Ex. 3: Reg. No. VA 2-230-981 and Subject Photographs 39-53 in Dkt. 1-1) | Undisputed. |
| 54. (P) | Subject Photographs 39-53 are not required to be selected, coordinated, or arranged in any particular way, they are just the 15 photos, of the 26 photos of different aspects of 4047 Dixie Canyon Avenue registered under VA 2-230-981, that the PMC Defendants chose to access and copy.<br><br>**Dkt. 57-3 ¶ 4**; **Dkt. 1-1**; **Dkt. 42 ¶¶ 2-3**; **Dkt. 44-38 through 44-39** (Vogts Decl. Ex. 3: Reg. No. VA 2-230-981 and Subject Photographs 39-53 in Dkt. 1-1). | Disputed (1) as to this statement insofar as it implies that Vogts did not select, coordinate, and arrange the 26 photographs of 4047 Dixie Canyon Avenue (the "Williams Photographs") in any particular way; and (2) as to "Subject Photographs 39-53 are not required to be selected, coordinated, or arranged in any particular way" as an immaterial legal conclusion and argument and immaterial to whether Vogts selected, coordinated and arranged the Williams Photographs. **Section II D. SUF,** ¶¶ 17-24, *supra*; *Burch*, 433 F.Supp.2d at 1119. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 55. (P) | The titles of Subject Photographs 39-53, listed in the same order as shown in Exhibit 1 to the Complaint (Dkt. 1-1) for ease of reference, are as follows:<br><br>(39) 20201215_4047_Dixie_Canyon_Ave_025,<br>(40) 20201215_4047_Dixie_Canyon_Ave_022,<br>(41) 20201215_4047_Dixie_Canyon_Ave_005,<br>(42) 20201215_4047_Dixie_Canyon_Ave_006,<br>(43) 20201215_4047_Dixie_Canyon_Ave_009,<br>(44) 20201215_4047_Dixie_Canyon_Ave_011,<br>(45) 20201215_4047_Dixie_Canyon_Ave_008,<br>(46) 20201215_4047_Dixie_Canyon_Ave_012,<br>(47) 20201215_4047_Dixie_Canyon_Ave_015,<br>(48) 20201215_4047_Dixie_Canyon_Ave_018,<br>(49) 20201215_4047_Dixie_Canyon_Ave_019,<br>(50) 20201215_4047_Dixie_Canyon_Ave_020,<br>(51) 20201215_4047_Dixie_Canyon_Ave_021,<br>(52) 20201215_4047_Dixie_Canyon_Ave_024,<br>(53) 20201215_4047_Dixie_Canyon_Ave_026.<br><br>**Dkt. 1-1**; **Dkt. 44-38 through 44-39** (Vogts Decl. Ex. 3: Reg. No. VA 2-230-981 and Subject Photographs 39-53 in Dkt. 1-1). | Undisputed. |
| 56. (P) | The titles of the Subject Photographs listed above have no significance other than to help Vogts stay organized. Those titles simply reflect the naming convention that Vogts uses for ease of referencing the date each photo was captured, the address of the property depicted therein, and the serialized number for identifying a particular photo. Vogts generally uses this naming convention in part because of the large number of photos he regularly registers using group registrations. Vogts generally registers his photos every three months or 750 photos, whichever comes first. | Disputed as to the assertion that "[t]he titles of the Subject Photographs listed above have no significance other than to help Vogts stay organized" and "Those titles simply reflect the naming convention that Vogts uses for ease of reference" as: (1) an immaterial legal conclusion and argument and is material that cannot be presented in a form that would be admissible in evidence; and (2) contradicted by Vogts' testimony.<br>**Section II D. SUF**, ¶¶ 1-5, 9-13, 17-21; F.R.E. 401, 403, 701-702; F.R.C.P. Rule 56(c)(2); *Burch*, 433 F.Supp.2d at 1119. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **Dkt. 57-3 ¶ 5**; **Dkt. 44-33** (registration covering Subject Photographs 1-20); **Dkt. 44-35** (registration covering Subject Photographs 21-38); **Dkt. 44-38** (registration covering Subject Photographs 39-53). | |
| 57. (P) | The individual photos registered in the above-identified groups are also titled to comply with the Copyright Office's administrative requirement for a sequentially numbered list of photos containing the title, file name, and month of publication for each photo included in the group.<br><br>**Dkt. 57-3 ¶ 6**; **Dkt. 44-33** (registration covering Subject Photographs 1-20); **Dkt. 44-35** (registration covering Subject Photographs 21-38); **Dkt. 44-38** (registration covering Subject Photographs 39-53). | Disputed as to "individual photos" as: (1) an immaterial legal conclusion and argument and is material that cannot be presented in a form that would be admissible in evidence; and (2) the material cited does not establish the fact asserted.<br><br>F.R.C.P. Rule 56(c)(1-2); F.R.E. 403, 701-702; *Burch*, 433 F.Supp.2d at 1119. |
| 58. (P) | If Vogts titled all photos on a group registration as, e.g., "Kitchen 2" or "Bathroom 1," or "IMG_7057," identifying a particular photo would be exceedingly difficult, if not functionally impossible.<br><br>Dkt. 57-3 ¶ 7. | Disputed as: (1) the material cited cannot be presented in a form that would be admissible in evidence; and (2) immaterial to the issue of whether the Subject Photographs comprise three compilations for purposes of statutory damages.<br><br>F.R.C.P. Rule 56(c)(1-2); F.R.E. 401, 403, 701-702; 17 U.S.C. § 504(c)(1); *Burch*, 433 F.Supp.2d at 1119. |
| 59. (P) | **Vogts' publication of each of the Subject Photographs (among** | // |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **other photos) and their availability for licensing on a per-photo basis.** | |
| 60. (P) | Vogts invoiced his photos of 601 Seclusion Lane, including Subject Photographs 1-20, to his client by listing them as line items:<br><br>(1) Photography – Twilight photography;<br>(2) Aerial – Aerial drone photography;<br>(3) Aerial – Aerial drone photography;<br>(4) Aerial – Aerial drone music video license;<br>(5) Photography – Economy: interior + exterior photography;<br>(6) 3D Walkthroughs – Matterport 3D – scan deposit;<br>(7) 3D Walkthroughs – Matterport 3D – cloud processing;<br>(8) 3D Walkthroughs – Matterport 3D – online hosting;<br>(9) 3D Walkthroughs – schematic floor plan;<br>(10) Add-Ons – 1 year of premium single property website with a custom web domain;<br>(11) Custom – Free PDF flyer and website rider;<br>(12) Custom – Aerial – Aerial drone video graphics/branding;<br>(13) Custom – 3D Matterport scan deposit difference.<br><br>**Dkt. 43-8 at 1 of 5**. | Disputed as: (1) the material cited only contains two line items (Line Item 1 and 5) that encompass all of the Stanchfield Photographs, which are not listed individually; and (2) the remaining line items are immaterial to whether the Stanchfield Photographs constitute as a compilation for purposes of statutory damages under 17 U.S.C. Section 504(c)(1).<br><br>F.R.C.P. Rule 56(c)(1); *Burch*, 433 F.Supp.2d at 1119; **Dkt. No. 43-8**, p. 1 (Invoices). |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 61. (P) | Of the twilight photos of 601 Seclusion Lane that were separately priced and itemized (Vogts created and delivered five twilight photos), only one is a Subject Photograph—i.e., Subject Photograph 20. The Subject Photographs do not include any of the aerial drone photos or 3D walkthroughs.<br><br>**Dkt. 1-1**; **Dkt. 43-8 at 1 of 5**; **Dkt. 57-3 ¶ 8**. | Disputed: (1) insofar as this statement implies that the twilight photographs of 601 Seclusion Lane (the "Stanchfield Property") were individually priced and itemized as they were grouped together; and (2) as immaterial because the PMC Defendants' use of the Stanchfield Photographs and other materials created by Vogts of the Stanchfield Property are not material to whether the Stanchfield Photographs constitute a compilation for statutory damages under 17 U.S.C. Section 504(c)(1).<br><br>**Dkt. No. 43-3** (LB Decl.), ¶ 2; **Dkt. No. 43-4** (Vogts Depo), p. 131:1-14; **Dkt. No. 43-8**, p. 1 (Invoices); |
| 62. (P) | Vogts invoiced his photos of 713 North Alta Vista Boulevard, including Subject Photographs 21-38, to his client by listing them as line items:<br><br>(1) Rephoto – Real estate listing photos;<br>(2) Rephoto – TW1 – Twilight photos;<br>(3) Revstage.<br><br>**Dkt. 43-8 at 2 of 5**. | Disputed as: (1) the material cited only contains two line items (Line Item 1 and 2) that encompass all of the O'Dowd Photographs, which are not listed individually; and (2) the remaining line items are immaterial to whether the O'Dowd Photographs constitute as a compilation for purposes of statutory damages under 17 U.S.C. Section 504(c)(1).<br><br>F.R.C.P. Rule 56(c)(1); *Burch*, 433 F.Supp.2d at 1119; **Dkt. No. 43-8** (Invoices), p. 2. |
| 63. (P) | Of the twilight photos of 713 North Alta Vista Boulevard that were separately priced and itemized (Vogts created and delivered nine | Disputed: (1) insofar as this statement implies that the twilight photographs of 713 North Alta Vista Boulevard (the "O'Dowd Property") |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | twilight photos), only three are Subject Photographs—i.e., Subject Photographs 32-33 and 36.<br><br>**Dkt. 1-1**; **Dkt. 43-8 at 2 of 5**; **Dkt. 57-3 ¶ 9**. | were individually priced and itemized as they were grouped together; and (2) as immaterial because the PMC Defendants' use of the O'Dowd Photographs and other materials created by Vogts of the O'Dowd Property are not material to whether the O'Dowd Photographs constitute a compilation for statutory damages under 17 U.S.C. Section 504(c)(1).<br><br>**Dkt. No. 43-3** (LB Decl.), ¶ 2, **Dkt. No. 43-4** (Vogts Depo), p. 131:1-14; F.R.C.P. Rule 56(c)(1); *Burch*, 433 F.Supp.2d at 1119 |
| 64. (P) | Vogts invoiced his photos of 4047 Dixie Canyon Avenue, including Subject Photographs 39-53, to his client by listing them as line items:<br><br>(1) Rephoto – Real estate listing photos;<br>(2) Reweb – Property website.<br><br>**Dkt. 43-8 at 3 of 5**. | Disputed as: (1) the material cited only contains one line item (Line Item 1) that encompass all of the Williams Photographs, which are not listed individually; and (2) the remaining line items are immaterial to whether the Williams Photographs constitute as a compilation for purposes of statutory damages under 17 U.S.C. Section 504(c)(1).<br><br>F.R.C.P. Rule 56(c)(1); *Burch*, 433 F.Supp.2d at 1119; **Dkt. No. 43-8** (Invoices), p. 3. |
| 65. (P) | The photos of the above-identified properties were not preexisting photos that Vogts compiled. Vogts captured each of those photos one by one.<br><br>**Dkt. 42 ¶ 1**; *supra*, **Section I ¶¶ 11-13**. | Disputed insofar as: (1) this statement is immaterial because it is a legal argument and legal conclusion; (2) this statement is immaterial to whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | Section 504(c)(1); and (3) the material cited in this statement cannot be presented in a form that would be admissible in evidence. F.R.C.P. Rule 56(c)(2); F.R.E. 403, 701-702; *Burch*, 433 F.Supp.2d at 1119 |
| 66. (P) | With respect to invoicing the photos of 601 Seclusion Lane and 713 North Alta Vista Boulevard, respectively, Vogts' clients requested and paid for twilight photos—different expressions of those properties—to portray those properties under different lighting and environmental conditions. The twilight photos were itemized and priced separately. **Dkt. 57-3 ¶ 10**; **Dkt. 43-8 at 1-2 of 5**. | Disputed: (1) Vogts itemized twilight photographs on his invoices separately because it requires him to stay "at the property a lot longer" and described it as "overtime"; (2) the twilight photographs were taken the same day as the non-twilight photographs and issued to the real estate agents on the same day as the non-twilight photographs; (3) the twilight photographs are not itemized per each photograph; and (4) immaterial as itemized invoicing is irrelevant to determine the existence of a compilation for 17 U.S.C. Section 504(c)(1) absent separate creation and issuance. **Dkt. No. 43-3** (LB Decl), ¶ 2, **Dkt. No. 43-4** (Vogts Depo), p. 131:1-14; **Dkt. No. 43-8** (Invoices), pp. 1-2; F.R.C.P. Rule 56(c)(1); 17 U.S.C. Section 504(c)(1); *Burch*, 433 F.Supp.2d at 1119. |
| 67. (P) | Vogts captured his photos of different aspects of the above-identified properties in one day, respectively, for efficiency. The value of those photos would not | Disputed: (1) whether Vogts took the Stanchfield Photographs, O'Dowd Photographs and Williams Photographs in one day due to "efficiency" is immaterial to whether the Subject Photographs constitute |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | change if Vogts took one photo a day.<br><br>**Dkt. 57-3 ¶ 11**. | three compilations for purposes of statutory damages under 17 U.S.C. Section 504; (2) to the statement "The value of those photos would not change if Vogts took one photo a day" as immaterial on the grounds that it is a legal argument and conclusion; and (3) the material cited cannot be presented in a form that would be admissible in evidence.<br><br>F.R.C.P. Rule 56(c)(1-2); 17 U.S.C. Section 504(c)(1); F.R.E. 401, 403, 701-702; *Burch*, 433 F.Supp.2d at 1119. |
| 68. (P) | Vogts initially delivered his photos of different aspects of the above-identified properties to his initial commissioning clients in one download link, respectively, for efficiency. The value of those photos would not change if Vogts sent one download link per photo.<br><br>**Dkt. 57-3 ¶ 12**. | Disputed: (1) whether Vogts delivered the Stanchfield Photographs, O'Dowd Photographs and Williams Photographs in one download link due to "efficiency" is immaterial to whether the Subject Photographs constitute three compilations for purposes of statutory damages under 17 U.S.C. Section 504; (2) to the statement "The value of those photos would not change if Vogts  sent one download link per photo" as immaterial on the grounds that it is a legal argument and conclusion; and (3) the material cited cannot be presented in a form that would be admissible in evidence.<br><br>F.R.C.P. Rule 56(c)(1-2); F.R.E. 401, 403, 701-702; 17 U.S.C. Section 504(c)(1); F.R.E. 401; *Burch*, 433 F.Supp.2d at 1119. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 69. (P) | The photos Vogts created of the above-identified properties were not initially published to his initial commissioning clients in any required order or arrangement. His clients were authorized to use however many of those photos they believed was best to market those properties for sale, purchase, or lease—whether it was one, some, or all—in whatever order or arrangement they preferred.<br><br>**Dkt. 57-3 ¶ 13**. | Disputed: (1) as immaterial because the statement is an improper legal conclusion and argument; (2) as immaterial because whether Vogts intended the real estate agents to select, coordinate and arrange which Subject Photographs to use to market the property is irrelevant to whether Vogts selected, coordinated and arranged the Subject Photographs into compilation to facilitate that purpose; and (3) the material cited cannot be presented in a form that would be admissible at trial.<br><br>F.R.C.P. Rule 56(c)(1-2); 17 U.S.C. Section 504(c)(1); F.R.E. 401, 403, 701-702; *Burch*, 433 F.Supp.2d at 1119. |
| 70. (P) | Notwithstanding how they may be initially delivered to clients, Vogts' photos, including each of the Subject Photographs, are available for licensing individually. Those photos can also be licensed based on focal points of a particular property or different properties—e.g., photos that prominently feature the exterior(s), the interior(s), particular details or design elements, the landscaping, the windows, the kitchen(s), the pool(s), etc. And those photos can also be licensed to mix-and-match properties, such as based on architectural styles of properties, the interior designer(s) or staging compan(y/ies) who styled | Disputed: (1) the evidence Vogts cites as an example of this assertion does not contain any information on licensing or display the Subject Photographs; (2) Vogts does not explain how he communicated licensing opportunities for his photographs (in general) and the Subject Photographs (in particular) to third parties; and (3) the Subject Photographs are of celebrity owned houses and, generally speaking, Vogts does not license such photographs – particularly without the commissioning real estate agent's permission; and (4) Vogts has never subsequently licensed photographs commissioned by real estate agents |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | properties, the geographic location(s) of properties, etc.<br><br>**Dkt. 57-3 ¶ 14**. | and the Subject Photographs are no exception.<br><br>**Dkt. No. 57-3** (Declaration of Brandon Vogts ("Vogts Decl."), ¶¶ 14-18, **Dkt. No. 57-4** (Ex. 1 to Vogts Decl. (the "Vogts Website (Part 1)"), **Dkt. No. 57-5** (Ex. 2 to Vogts Decl. ("Vogts Website (Part 2)"), **Dkt. No. 57-6** (Ex. 3 to Vogts Decl. ("Vogts Website Part 3)"); **Section II D. SUF**, ¶¶ 6-8, 14-16, 22-24, *supra*; **Section I D. SUF**, ¶¶ 113-119, 121, 123, 125-126, 128, 130, 132, 136, 138, 140, 142, *supra*. |
| 71. (P) | For example, on his website, Vogts promotes a "portfolio" of selections of his photos divided into three categories: (1) exteriors, (2) interiors, and (3) details.<br><br>**Dkt. 57-3 ¶ 15**. | Disputed: (1) the evidence Vogts cites as an example of individual licensing of Vogts' photographs (in general) and the Subject Photographs (in particular) does not contain any information on licensing or display the Subject Photographs; (2) Vogts does not explain how the evidence cited communicates licensing opportunities for his photographs (in general) and the Subject Photographs (in particular) to third parties; and (3) the Subject Photographs are of celebrity owned houses and, generally speaking, Vogts does not license such photographs – particularly without the commissioning real estate agent's permission; and (4) Vogts has never subsequently licensed photographs commissioned by real estate agents and the Subject Photographs are no exception. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | **Section II D. SUF**, ¶¶ 6-8, 14-18, 22-24 *surpa*; **Dkt. No. 57-4** (Vogts Website (Part 1)); **Dkt. No. 57-5** (Vogts Website (Part 2)); **Dkt. No. 57-6** (Vogts Website (Part 3)); **Section I D. SUF**, ¶¶ 113-119, 121, 123, 125-126, 128, 130, 132, 136, 138, 140, 142, *supra*. |
| 72. (P) | The "exteriors" category shows, as the name suggests, the exteriors of different properties as captured by Vogts.<br><br>**Dkt. 57-3 ¶ 16**; **Dkt. 57-4** (Vogts Decl. Ex. 1). | Disputed: (1) the evidence Vogts cites as an example of individual licensing of Vogts' photographs (in general) and the Subject Photographs (in particular) does not contain any information on licensing or display the Subject Photographs; (2) Vogts does not explain how the evidence cited communicates licensing opportunities for his photographs (in general) and the Subject Photographs (in particular) to third parties; and (3) the Subject Photographs are of celebrity owned houses and, generally speaking, Vogts does not license such photographs – particularly without the commissioning real estate agent's permission; and (4) Vogts has never subsequently licensed photographs commissioned by real estate agents and the Subject Photographs are no exception.<br><br>**Dkt. No. 57-3** (Vogts Decl), ¶¶ 14-18, **Dkt. No. 57-4** (Vogts Website (Part 1)), **Dkt. No. 57-5** (Vogts Website (Part 2)), **Dkt. No. 57-6** (Vogts Website (Part 3); **Section II,** |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | **D. SUF**, ¶¶ 6-8, 14-16, 22-24, *supra*; **Section I, D. SUF**, ¶¶ 113-119, 121, 123, 125-126, 128, 130, 132, 136, 138, 140, 142, *supra*. |
| 73. (P) | The "interior" category shows, as the name suggests, the interiors of different properties as captured by Vogts.<br><br>**Dkt. 57-3 ¶ 17**; **Dkt. 57-5** (Vogts Decl. Ex. 2). | Disputed: (1) the evidence Vogts cites as an example of individual licensing of Vogts' photographs (in general) and the Subject Photographs (in particular) does not contain any information on licensing or display the Subject Photographs; (2) Vogts does not explain how the evidence cited communicates licensing opportunities for his photographs (in general) and the Subject Photographs (in particular) to third parties; and (3) the Subject Photographs are of celebrity owned houses and, generally speaking, Vogts does not license such photographs – particularly without the commissioning real estate agent's permission; and (4) Vogts has never subsequently licensed photographs commissioned by real estate agents and the Subject Photographs are no exception.<br><br>**Dkt. No. 57-3** (Vogts Decl.), ¶¶ 14-18, **Dkt. No. 57-4** (Vogts Website (Part 1)); **Dkt. No. 57-5** (Vogts Website (Part 2); **Dkt. No. 57-6** (Vogts Website (Part 3), **Section II, D. SUF**, ¶¶ 6-8, 14-16, 22-24, *supra*; **Section I, D. SUF**, ¶¶ 113-119, 121, 123, 125-126, 128, 130, 132, 136, 138, 140, 142. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 74. (P) | The "details" category shows, as the name suggests, detailed shots of design elements within different properties—such as a library, a kitchen, and more—as captured by Vogts.<br><br>**Dkt. 57-3 ¶ 18; Dkt. 57-6 (Vogts Decl. Ex. 3).** | Disputed: (1) the evidence Vogts cites as an example of individual licensing of Vogts' photographs (in general) and the Subject Photographs (in particular) does not contain any information on licensing or display the Subject Photographs; (2) Vogts does not explain how the evidence cited communicates licensing opportunities for his photographs (in general) and the Subject Photographs (in particular) to third parties; and (3) the Subject Photographs are of celebrity owned houses and, generally speaking, Vogts does not license such photographs – particularly without the commissioning real estate agent's permission; and (4) Vogts has never subsequently licensed photographs commissioned by real estate agents and the Subject Photographs are no exception.<br><br>**Dkt. No. 57-3** (Vogts Decl.), **¶¶** 14-18, **Dkt. No. 57-4** (Vogts Website (Part 1)); **Dkt. No. 57-5** (Vogts Website (Part 2)); **Dkt. No. 57-6** (Vogts Websie (Part 3); **Section II D. SUF**, **¶¶** 6-8, 14-16, 22-24, *supra*; **Section I D. SUF**, **¶¶** 113-119, 121, 123, 125-126, 128, 130, 132, 136, 138, 140, 142. |
| 75. (P) | **The PMC Defendants selected each Subject Photograph because each captured different subject matter, and each generated** | // |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | **separate revenue for the PMC Defendants.** | |
| 76. (P) | The PMC Defendants' Website is commercial and generate revenues for PMC from page views.<br><br>*Supra*, **Section I ¶¶ 30-32, 36, 41.** | Disputed: (1) as immaterial because the PMC Defendants' website has not bearing on whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial.<br><br>F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119. |
| 77. (P) | Each web address generates revenue for PMC when it is viewed.<br><br>*Supra*, **Section I ¶ 41.** | Disputed as: (1) because the PMC Defendants' website and how it generates revenue has no bearing on whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); (2) insofar as the material cited from Section I P. SUF ¶ 41 is disputed; and (3) the material cited cannot be presented in a form that would be admissible in evidence at trial.<br><br>F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119; Section I P. SUF, ¶ 41, *supra*. |
| 78. (P) | The posts on the PMC Defendants' Website displaying the Subject Photographs generated page views, and thus revenue. | Disputed: (1) as immaterial because the PMC Defendants' use of the Subject Photographs has no bearing on whether the Subject Photographs |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
|  | *Supra*, **Section I ¶¶ 35-36**. | constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial.<br><br>F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119. |
| 79. (P) | The galleries displaying the Subject Photographs had their own web addresses, and each of the Subject Photographs displayed in those galleries had its own web address.<br><br>*Supra*, **Section I ¶¶ 35-36, 40-41, 44-45**. | Disputed: (1) as immaterial because the PMC Defendants' use of the Subject Photographs has no bearing on whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); (2) insofar as the statements cited in Section I P. SUF, ¶¶ 40-41 and 44 are disputed; and (3) the material cited cannot be presented in a form that would be admissible in evidence at trial.<br><br>F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119; **Section I P. SUF**, ¶¶ 40-41, 44, *supra*. |
| 80. (P) | Only Subject Photographs 1, 32, and 40—by themselves, with no other Subject Photographs—were used as the standalone "feature images" used in "header photos" in the "text sides" of the posts on the PMC Defendants' Website that displayed the Subject Photographs. | Disputed: (1) as immaterial because the PMC Defendants' use of the Subject Photographs has no bearing on whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | *Supra*, **Section I ¶¶ 46, 51**. | presented in a form that would be admissible in evidence at trial. F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119. |
| 81. (P) | Vogts' photos of different aspects of 601 Seclusion Lane were displayed (with limited authorization) on the realtor.com listing for that property. **Dkt. 57-3 ¶ 19**; *supra*, **Section I ¶ 53**. | Undisputed. |
| 82. (P) | The PMC Defendants selected and downloaded Subject Photographs 1-20 from that realtor.com listing, and chose not to use the other photos of 601 Seclusion Lane that were also displayed as part of that listing. *Supra*, **Section I ¶¶ 53-54**; **Dkt. 44-19**; **Dkt. 44-33 through 44-34**. | Disputed: (1) as immaterial because the PMC Defendants' selection and downloading of the Stanchfield Photographs is immaterial to whether the Stanchfield Photographs qualify as a compilation for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial. F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119. |
| 83. (P) | Vogts' photos of different aspects of 713 North Alta Vista Boulevard were displayed (with limited authorization) on the redfin.com listing for that property. **Dkt. 57-3 ¶ 20**; *supra*, **Section I ¶ 57**. | Undisputed. |
| 84. (P) | The PMC Defendants selected and downloaded Subject Photographs | Disputed: (1) as immaterial because the PMC Defendants' selection and |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | 21-38 from that redfin.com listing, and chose not to use the other photos of 713 North Alta Vista Boulevard that were also displayed as part of that listing.<br><br>*Supra*, **Section I ¶¶ 57-58**; **Dkt. 44-20**; **Dkt. 44-35 through 44-37**. | downloading of the O'Dowd Photographs is immaterial to whether the O'Dowd Photographs qualify as a compilation for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial.<br><br>F.R.C.P. Rule 56(c)(2);  17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119. |
| 85. (P) | Vogts' photos of different aspects of 4047 Dixie Canyon Avenue were displayed (with limited authorization) on the redfin.com listing for that property.<br><br>**Dkt. 57-3 ¶ 21**; *supra*, **Section I ¶ 61**. | Undisputed. |
| 86. (P) | The PMC Defendants selected and downloaded Subject Photographs 39-53 from that redfin.com listing, and chose not to use the other photos of 713 North Alta Vista Boulevard that were also displayed as part of that listing.<br><br>*Supra*, **Section I ¶¶ 61-62**; **Dkt. 44-21**; **Dkt. 44-38 through 44-39**. | Disputed: (1) as immaterial because the PMC Defendants' selection and downloading of the Williams or O'Dowd Photographs is immaterial to whether the Williams Photographs and O'Dowd Photographs qualify as a compilation for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial.<br><br>F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119. |

CONSOLIDATED STATEMENT OF FACTS

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| 87. (P) | The PMC Defendants selected the Subject Photographs because, unlike the other available photos (i.e., the other photos of the above-identified properties on the realtor.com and redfin.com listings from which the PMC Defendants obtained the Subject Photographs), each Subject Photograph showed a particular aspect of the depicted property that the unselected photos did not, and in a way the PMC Defendants thought would interest readers.<br><br>**Dkt. 44-19 through 44-21**; **Dkt. 57-2** (Doniger Decl. Ex. 1: McClain Dep. 105:6-106:4, 115:10-116:6, 129:24-130:11). | Disputed as immaterial because the PMC Defendants' selection of the Subject Photographs has no bearing on whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); (2) the material cited cannot be presented in a form that would be admissible in evidence at trial; and (3) insofar as this statement asserts that the Subject Photographs were used merely to interest readers.<br><br>F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119;<br><br>**Dkt. No. 53-6** (Voss Decl), ¶¶ 2, 5, 11-12, 14-15, 18-19, 21-22; **Dkt. No. 53-11** (Stanchfield Article Text Only); **Dkt. No. 53-12** (Stanchfield Article With Photos); **Dkt. No. 53-13** (Stanchfield Article Cover Photo); **Dkt. No. 53-18** (O'Dowd Article Text Only); **Dkt. No. 53-19** (O'Dowd Article With Photos); **Dkt. No. 53-20** (O'Dowd Article Cover Photo); **Dkt. No. 53-23** (McClain Decl.), ¶¶ 2, 5, 13-14, 16-17; **Dkt No. 53-24** (Williams Article Text Only); **Dkt. No. 53-25** (Williams Article With Photos). |
| 88. (P) | The PMC Defendants chose and used Subject Photographs 1, 32, and 40 as "feature images" because of their angles, respectively. | Disputed: (1) as immaterial because the PMC Defendants' selection and use of the Subject Photographs has no bearing on whether the Subject Photographs constitute as three |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | *Supra*, **Section I ¶ 51**; **Dkt. 57-2** (Doniger Decl. Ex. 1: McClain Dep. 105:6-106:4, 115:10-116:6, 129:24-130:11). | compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial.<br><br>F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401; *Burch*, 433 F.Supp.2d at 1119; **Section I D. SUF, ¶¶** 155, 157-158, 166, 176, 187, *supra*. |
| 89. (P) | The PMC Defendants did not select the other available photos of the above-identified properties because those photos did not depict the properties in the way that the PMC Defendants wanted their posts at issue to portray those properties.<br><br>**Dkt. 57-2** (Doniger Decl. Ex. 1: McClain Dep. 105:6-106:4, 115:10-116:6, 129:24-130:11). | Disputed: (1) as immaterial because the PMC Defendants' selection of the Subject Photographs (or decision not to use other photographs) has no bearing on whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial.<br><br>F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119;<br><br>**Dkt. No. 53-6** (Voss Decl), ¶¶ 2, 5, 11-12, 14-15, 18-19, 21-22; **Dkt. No. 53-11** (Stanchfield Article Text Only); **Dkt. No. 53-12** (Stanchfield Article With Photos); **Dkt. No. 53-13** (Stanchfield Article Cover Photo); **Dkt. No. 53-18** (O'Dowd Article Text Only); **Dkt. No. 53-19** (O'Dowd Article With Photos); **Dkt.** |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | **No. 53-20** (O'Dowd Article Cover Photo); **Dkt. No. 53-23** (McClain Decl.), ¶¶ 2, 5, 13-14, 16-17; **Dkt No. 53-24** (Williams Article Text Only); **Dkt. No. 53-25** (Williams Article With Photos). |
| 90. (P) | The PMC Defendants publish posts on their Website that focus on particular rooms of homes, such as their June 24, 2020 post titled "Inside the Snazzy Kitchens of Eight Hollywood Stars." That post displays photos of eight different kitchens in eight different properties—one photo per property. Each photo has its own web address.<br><br>**Dkt. 58-1** (Request for Judicial Notice ("RJN") Ex. 1). | Disputed: (1) as immaterial because the PMC Defendants' use of photographs not at issue in this dispute and articles that are not at issue in this dispute have no bearing on whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial.<br><br>F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119; **Dkt. No. 60-2** (Opposition to Request for Judicial Notice ("Opp. to RJN"). |
| 91. (P) | Another example is a September 20, 2020 post on the PMC Defendants' Website titled "Peek Inside These Celebrity Home Offices." The post displays photos of eight offices in eight properties—one photo per property, each depicting that property's office.<br><br>**Dkt. 58-2** (RJN Ex. 2). | Disputed: (1) as immaterial because the PMC Defendants' use of photographs not at issue in this dispute and articles that are not at issue in this dispute have no bearing on whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial. |

CONSOLIDATED STATEMENT OF FACTS

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119; **Dkt. No. 60-2** (Opp. to RJN). |
| 92. (P) | And yet another example is a February 4, 2022 post on the PMC Defendants' Website titled "Fifteen Trailblazing Black Architects You Should Know, Past and Present." The post displays 15 "header photos"—i.e., an inset headshot of the individual discussed in the post superimposed over a "feature image" of the property discussed in the post—of each architect/property combination. There is one photo per property, and each photo depicts that property's exterior.<br><br>**Dkt. 58-2** (RJN Ex. 3). | Disputed: (1) as immaterial because the PMC Defendants' use of photographs not at issue in this dispute and articles that are not at issue in this dispute have no bearing on whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial.<br><br>F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119; **Dkt. No. 60-2** (Opp. to RJN). |
| 93. (P) | The PMC Defendants' newsletter dated August 11, 2020 displayed a copy of Subject Photograph 1 and no other photos of 601 Seclusion Lane.<br><br>*Supra*, **Section I ¶ 76**. | Disputed: (1) as immaterial because the PMC Defendants' use of the Subject Photographs has no bearing on whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial.<br><br>F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119. |
| 94. (P) | The PMC Defendants' newsletter dated September 18, 2020 displayed a copy of Subject Photograph 32 | Disputed: (1) as immaterial because the PMC Defendants' use of the Subject Photographs has no bearing |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | and no other photos of 713 North Alta Vista Boulevard.<br><br>*Supra*, **Section I ¶ 77**. | on whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial.<br><br>F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 40, 4031; *Burch*, 433 F.Supp.2d at 1119. |
| 95. (P) | The PMC Defendants' newsletter dated March 12, 2021 displayed a copy of Subject Photograph 40 and no other photos of 4047 Dixie Canyon Avenue.<br><br>*Supra*, **Section I ¶ 78**. | Disputed: (1) as immaterial because the PMC Defendants' use of the Subject Photographs has no bearing on whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial.<br><br>F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119. |
| 96. (P) | The PMC Defendants' Twitter and Facebook posts dated March 12, 2021 displayed a copy of Subject Photograph 40 and no other photos of 4047 Dixie Canyon Avenue.<br><br>*Supra*, **Section I ¶ 84**. | Disputed: (1) as immaterial because the PMC Defendants' use of the Subject Photographs has no bearing on whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial. |

| Fact No. | Fact | Counterparty's Response, Including Evidentiary Objections |
|---|---|---|
| | | F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119. |
| 97. (P) | PMC distributed the posts displaying the Subject Photographs 1-20, 21-38, and 39-53, respectively, to PMC's third-party syndication partners pursuant to revenue-share agreements.<br><br>*Supra*, **Section I ¶¶ 91-94**. | Disputed: (1) as immaterial because the PMC Defendants' use of the Subject Photographs has no bearing on whether the Subject Photographs constitute as three compilations for purposes of statutory damages under 17 U.S.C. Section 504(c)(1); and (2) the material cited cannot be presented in a form that would be admissible in evidence at trial.<br><br>F.R.C.P. Rule 56(c)(2); 17 U.S.C. § 504(c)(1); F.R.E. Rule 401, 403; *Burch*, 433 F.Supp.2d at 1119. |

Respectfully submitted,

Dated: May 12, 2023           By:     */s/ Stephen M. Doniger*
                                      Stephen M. Doniger, Esq.
                                      Benjamin F. Tookey, Esq.
                                      DONIGER / BURROUGHS
                                      Attorneys for Plaintiff

Dated: May 12, 2023           By:     */s/ Lincoln Bandlow*

                                      Lincoln Bandlow
                                      Rom Bar-Nissim
                                      Law Offices of Lincoln Bandlow
                                      Attorneys for Defendants

Pursuant to Civil L.R. 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.