1   Lincoln D. Bandlow (SBN: 170449)
    Lincoln@BandlowLaw.com
2   Rom Bar-Nissim (SBN: 293356)
    Rom@BandlowLaw.com
3   **Law Offices of Lincoln Bandlow, P.C.**
    1801 Century Park East, Suite 2400
4   Los Angeles, CA 90067
    Telephone: 310.556.9680
5   Facsimile: 310.861.5550

6   Attorneys for Defendants
    Penske Media Corporation
7   and Dirt.com, LLC

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12  BRANDON VOGTS, an individual,        Case No.:  2:22-cv-01153-FWS-PVC

13                    Plaintiff,
                                         **THE PMC DEFENDANTS'**
14                                       **MEMORANDUM OF POINTS AND**
         v.                              **AUTHORITIES IN SUPPORT OF**
15                                       **THEIR MOTION FOR PARTIAL**
                                         **SUMMARY JUDGMENT**
16  PENSKE MEDIA CORPORATION,
    a Delaware Corporation; DIRT.COM,    [Concurrently-filed with Notice of
17  LLC, a Delaware Limited Liability    Motion; Separate Statement; Declaration
    Company; MOVE, INC., a Delaware      of Lincoln Bandlow; [Proposed] Order]
18  Corporation, d/b/a Realtor.com; and
    DOES 1 through 10,                   Assigned to: Hon. Fred W. Slaughter
19
                      Defendants.
20                                       Date: April 27, 2023
                                         Time: 10:00 a.m.
21                                       Courtroom: 10D

22

23

24

25

26

27

28

MPA ISO THE PMC DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION………………………………………………...1

II.    STATEMENT OF FACTS ……...………………………….………3

    A. Vogts' Photography Career…...……………………………….....3

    B. The Stanchfield Photographs...............................................................3

    C. The O'Dowd Photographs…………………….....…………….…4

    D. The Williams Photographs……………………....………………5

III.   LEGAL STANDARD…………………………………..………...5

IV.   LEGAL ARGUMENT………………………………..…………6

    A. The Ninth Circuit Law on Statutory Damages and Compilations….6

    B. Vogts is Only Entitled to Three Statutory Damages Awards
       Under the Statutory Definition Test …………………………….8

    C. The Independent Economic Value Test Emphasizes that Vogts
       is Only Entitled to Three Statutory Damages Awards..………...9

    D. The Registrations of the Subject Photographs Emphasizes that
       Vogts is Only Entitled to Three Statutory Damages Awards …….12

V.    CONCLUSION …………………………………………………13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..................................................................................5, 6

*Bryant v. Media Right Productions, Inc.*,
  603 F.3d 135 (2d Cir. 2010) .....................................................................8, 9

*Columbia Pictures Television, Inc. v. Krypton Broadcasting of
  Birmingham*, *Inc.*,
  259 F.3d 1186 (9th Cir. 2001) ...................................................................7, 9

*Coogan v. Avnet, Inc.*,
  Case No. CV040621PHXSRB, 2005 WL 2789311 (D. Ariz. Oct.
  24, 2005) ......................................................................................................10

*Desire, LLC v. Manna Textiles, Inc.*,
  986 F.3d 1253 (9th Cir. 2021) ...................................................................6, 7

*Friedman v. Live Nation Merchandise, Inc.*,
  833 F.3d 1180 (9th Cir. 2016) ...................................................................6, 7

*Gamma Audio & Video, Inc. v. Ean-Chea*,
  11 F.3d 1106 (1st Cir. 1993) ....................................................................9, 10

*Kennedy v. Gish, Sherwood & Friends, Inc.*,
  143 F.Supp.3d 898 (E.D. Mo. 2015) .............................................................8

*Lee Middleton Original Dolls, Inc. v. Seymour Mann, Inc.*,
  299 F.Supp.2d 892 (D. Kan. 2004) ..............................................................10

*Matsushita Electronic Industries Co. v. Zenith Radio Corp.*,
  475 U.S 574 (1986) .........................................................................................6

*MCA Television Ltd. v. Feltner*,
  89 F.3d 766 (11th Cir. 1996) ........................................................................10

*McIndoe v. Huntington Ingalls, Inc.*,
  817 F.3d 1170 (9th Cir. 2016) ........................................................................6

*Minden Pictures, Inc. v. Buzzfeed, Inc.*,
  390 F.Supp.3d 461 (S.D.N.Y. 2019) ............................................................ 7, 12

*Momox-Caselis v. Donahue*,
  987 F.3d 835 (9th Cir. 2021) ...................................................................... 5, 6

*Monge v. Maya Magazines, Inc.*,
  688 F.3d 1164 (9th Cir. 2012) ........................................................................ 8

*Ochoa v. City of Mesa*,
  26 F.4th 1050 (9th Cir. 2022) ......................................................................... 6

*Playboy Enterprises, Inc. v. Sanfilippo*,
  Case No. 97-0670-IEG (LSP), 1998 WL 207856 (S.D. Cal. Mar 24,
  1998) ......................................................................................................... 10

*R.W. Beck & Associates v. City & Borough of Sitka*,
  27 F.3d 1475 (9th Cir. 1994) .......................................................................... 6

*Robert Stigwood Group, Ltd. v. O'Reilly*,
  530 F.2d 1096 (2d Cir. 1976) .......................................................................... 9

*Sony Music Entertainment v. Cox Communications, Inc.*,
  464 F.Supp.3d 795 (W.D. Va. 2020).......................................................... 8, 9, 10

*Tang v. Putruss*,
  521 F.Supp.2d 600 (E.D. Mich. 2007) .......................................................... 10

*Tattoo Art, Inc. v. TAT International*,
  794 F.Supp.2d 634 (E.D. Va. 2011) ............................................................... 8

*VHT, Inc. v. Zillow Group, Inc.*
  461 F.Supp.3d 1025 (W.D. Wash. 2020) ...................................................... 8, 9

*VHT, Inc. v. Zillow Group, Inc.*,
  918 F.3d 723 (9th Cir. 2019).................................................................... 7, 9, 12

*VHT, Inc. v. Zillow Group, Inc. et al*
  (Case No. 22-35200) ..................................................................................... 8

*Walt Disney Co. v. Powell*,
  897 F.2d 565 (D.C. Cir. 1990) .................................................................... 9, 10

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
  795 F.3d 1255 (11th Cir. 2015)................................................................ *passim*

**Statutes**

17 U.S.C. § 101.................................................................................................7, 8, 12

17 U.S.C. § 501(c) ................................................................................................... 6

17 U.S.C. § 504(c)(1) ....................................................................................6, 7, 8, 12

**Court Rules**

F.R.C.P. Rule 56(a)............................................................................................... 5, 6

**Other Authorities**

H.R. Rep. No. 1476, 94th Cong., 2d Sess. 162, *reprinted in* 1976
    U.S.C.C.A.N. 5659 ........................................................................................... 8

MPA ISO THE PMC DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.      <u>INTRODUCTION</u>**

This case involves three sets of photographs that appeared in three separate news articles about three separate real estate transactions involving celebrities. Plaintiff Brandon Vogts ("Vogts") seeks 53 separate statutory damages awards for the photographs that Vogts alleges were infringed (the "Subject Photographs") by the PMC Defendants.[1] The law of statutory damages is clear: Vogts is not entitled to 53 separate statutory damages awards, rather, Vogts is only entitled to three statutory damages awards as explained in detail below.

Vogts is only entitled to three statutory damages awards because the Subject Photographs constitute three "compilations" under the Copyright Act. While the Copyright Act authorizes statutory damages per work infringed, the Copyright Act also limits the number of statutory damages awards when the works at issue are part of a compilation. The Ninth Circuit has recently held that the statutory definition of "compilation" is dispositive of whether the Subject Photographs constitute "compilations" for purposes of statutory damages, but that this Court may also consider whether the Subject Photographs have "independent economic value" and how Vogts registered the Subject Photographs.

To determine whether the Subject Photographs meet the statutory definition of "compilation," this Court must decide on whether Vogts issued the Subject Photographs separately or as a unit. Here, Vogts did not issue the individual Subject Photographs separately. Instead, he issued them in three units: (1) the Subject

---

[1] The term "PMC Defendants" shall collectively refer to defendants Penske Media Corporation ("PMC") and Dirt.com, LLC ("Dirt"). As set forth in the parties' February 24, 2023 joint stipulation (Dkt. No. 40) – which this Court granted on February 28, 2023 (Dkt. No. 41), both Vogts and the PMC Defendants are seeking summary judgment on whether the PMC Defendants made a fair use of the Subject Photographs. For purposes of this Motion for Partial Summary Judgment ("Motion") only, the PMC Defendants shall assume that use of the Subject Photographs did not constitute fair use and, therefore, are liable for copyright infringement. In the event this Court finds that the PMC Defendants did make a fair use of the Subject Photographs, this Motion will be rendered moot.

Photographs that depict 601 Seclusion Lane (the "Stanchfield Photographs"); (2) the Subject Photographs that depict 713 N. Alta Vista Blvd. (the "O'Dowd Photographs"); and (3) the Subject Photographs that depict 4047 Dixie Canyon Ave. (the "Williams Photographs"). Therefore, under the statutory definition test, Vogts is only entitled to three statutory damages awards because the Subject Photographs constitute as three compilations under the Copyright Act.

Under the "independent economic value" test, this Court should examine: (1) how the Subject Photographs were produced and intended to be consumed; and/or (2) whether the Subject Photographs were created by different photographers and depict different locations. Here, Vogts is the photographer of all the Subject Photographs. The Stanchfield Photographs depict a single location (*i.e.*, 601 Seclusion Lane (the "Stanchfield Property")); they were created on the same date; and they were intended to be viewed together on marketing materials advertising the sale of the Stanchfield Property. The O'Dowd Photographs also depict a single location (*i.e.*, 713 N. Alta Vista Blvd. (the "O'Dowd Property")); they were created on the same date; and they were intended to be viewed together on marketing materials advertising the sale of the O'Dowd Property. Further, the Williams Photographs depict a single location (*i.e.*, 4047 Dixie Canyon Ave. (the "Williams Property")); they were created on the same date; and they were intended to be viewed together on marketing materials advertising the sale of the Williams Property. Finally (and most revealing), nobody has licensed – or even approached Vogts to license – the Subject Photographs after they were initially used to facilitate the sale of the three properties depicted in the Subject Photographs. Therefore, the independent economic value test further confirms that Vogts is only entitled to three statutory damages awards because the individual Subject Photographs do not have independent economic value outside of the three compilations of the Stanchfield Photographs, the O'Dowd Photographs and the Williams Photographs.

The manner in which Vogts registered the Subject Photographs with the

1   Copyright Office further emphasizes that he is only entitled to three statutory

2   damages awards. Here, Vogts registered (1) the Stanchfield Photographs under a

3   single registration; (2) the O'Dowd Photographs under a single registration; and

4   (3) the Williams Photographs under a single registration. In the copyright

5   registrations, the individual Subject Photographs are labeled by: (1) the date that

6   Vogts created the Subject Photographs; (2) the property depicted in the Subject

7   Photographs; and (3) and an individualized number. Therefore, the manner of

8   registration and how the individual Subject Photographs were labeled further

9   establishes that the Subject Photographs constitute three "compilations" under the

10  Copyright Act for purposes of statutory damages.

11          For these reasons and those set forth in greater detail below, the PMC

12  Defendants respectfully request that this Court grant the Motion.

13  **II.      STATEMENT OF FACTS**

14          **A.      Vogts' Photography Career**

15          Vogts is a photographer who specializes in photographing real estate.

16  Declaration of Lincoln Bandlow ("LB Decl."), ¶ 2, Ex. A, pp. 14:20-24, 15:14-16:5;

17  17:2-4; Complaint (Dkt. No. 1) ("Cmpt."), ¶ 4. The vast majority of Vogts' clients

18  are real estate agents (and occasionally homeowners) who retain Vogts to

19  photograph a property to facilitate the sale of that property. LB Decl., ¶ 2, Ex. A, pp.

20  20:6-21:16, 23:20-24:19, 25:4-16, 38:15-21, 40:17-41:6, 47:5-48:9, 50:21-51:5,

21  57:2-58:6. Occasionally, Vogts is retained by interior designers to highlight the

22  interior designer's work. *Id.*, Ex. A, p. 25:17-20.

23          Vogts does not photograph real estate without being retained to do so. LB

24  Decl., ¶ 2, Ex. A, pp. 24:20-25:3. Nor has Vogts been retained to photograph real

25  estate for any other purpose than to facilitate the sale of a property or highlight an

26  interior designer's work. *Id.*, Ex. A., pp. 25:13-26:4.

27          **B.      The Stanchfield Photographs**

28          The Stanchfield Photographs are photographs created by Vogts of the

1   Stanchfield Property. Separate Statement of Uncontroverted Facts ("SUF"), ¶ 1.

2   Vogts registered the Stanchfield Photographs under a single copyright registration

3   (the "Stanchfield Registration"). *Id.*, ¶ 2. In it, Vogts titled the Stanchfield

4   Photographs by: (1) the date Vogts created the Stanchfield Photographs; (2) the

5   address of the property; and (3) an individualized number. *Id.*, ¶ 3. Vogts created the

6   Stanchfield Photographs on the same date. *Id.*, ¶ 4. All the Stanchfield Photographs

7   depict various areas of the Stanchfield Property. *Id.*, ¶ 5.

8          Vogts first published all of the Stanchfield Photographs together on the same

9   date. SUF, ¶ 6. Vogts first provided the Stanchfield Photographs to the real estate

10  agent for the Stanchfield Property to facilitate that agent's sale via real estate listings

11  and marketing materials. *Id.*, ¶ 7. Vogts charged a flat fee of $▨ to create and

12  license the Stanchfield Photographs. LB Decl., ¶ 2, Ex. A, 90:20-94:11, Ex. 3. Vogts

13  did not subsequently license (nor did anyone demonstrate interest in licensing) the

14  Stanchfield Photographs after Vogts initially provided them to the real estate agent

15  for use in selling the Stanchfield Property. SUF, ¶ 8.

16         **C.     The O'Dowd Photographs**

17         The O'Dowd Photographs are photographs created by Vogts of the O'Dowd

18  Property. SUF, ¶ 9. Vogts registered the O'Dowd Photographs under a single

19  copyright registration (the "O'Dowd Registration"). *Id.*, ¶ 10. In it, Vogts titled the

20  O'Dowd Photographs by: (1) the date Vogts created the O'Dowd Photographs;

21  (2) the address of the property; and (3) an individualized number. *Id.*, ¶ 11. Vogts

22  created the O'Dowd Photographs on the same date. *Id.*, ¶ 12. All the O'Dowd

23  Photographs depict various areas of the O'Dowd Property. *Id.*, ¶ 13.

24         Vogts first published all of the O'Dowd Photographs together on the same

25  date. SUF, ¶ 14. Vogts first provided the O'Dowd Photographs to the real estate

26  agents for the O'Dowd Property to facilitate that agent's sale via real estate listings

27  and marketing materials. *Id.*, ¶ 15. Vogts charged a flat fee of $▨ to create and

28  license O'Dowd Photographs. LB Decl., ¶ 2, Ex. A, pp. 124:7-12, 130:23-131:3, Ex.

6. Vogts did not subsequently license (nor did anyone demonstrate interest in licensing) the O'Dowd Photographs after Vogts initially provided them to the real estate agents for use in selling the O'Dowd Property. SUF, ¶ 16.

### D. The Williams Photographs

The Williams Photographs are photographs created by Vogts of the Williams Property. SUF, ¶ 17. Vogts registered the Williams Photographs under a single copyright registration (the "Williams Registration"). *Id.*, ¶ 18. In it, Vogts titled the Williams Photographs by: (1) the date Vogts created the Williams Photographs; (2) the address of the property; and (3) an individualized number. *Id.*, ¶ 19. Vogts created the Williams Photographs on the same date. *Id.*, ¶ 20. All the Williams Photographs depict various areas of the Williams Property. *Id.*, ¶ 21.

Vogts first published all of the Williams Photographs together on the same date. SUF, ¶ 22. Vogts first provided the Williams Photographs to the real estate agents for the Williams Property to facilitate that agent's sale via real estate listings and marketing materials. *Id.*, ¶ 23. Vogts charged a flat fee of $███ to create and license the Williams Photographs. LB Decl., ¶ 2, Ex. A, pp. 164:20-165:2, 169:14-20, Ex. 10. Vogts did not subsequently license (nor did anyone demonstrate interest in licensing) the Williams Photographs after Vogts initially provided them to the real estate agents for use in selling the Williams Property. SUF, ¶ 24.

## III.   LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or part of each claim or defense – on which summary judgment is sought." Federal Rule of Civil Procedure ("F.R.C.P.") Rule 56(a). "The court shall grant [partial] summary judgment if the movant shows that there is no genuine dispute as to any material fact." *Id.*

The mere existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Momox-Caselis v. Donahue*, 987 F.3d 835, 941 (9th Cir. 2021) (*quoting Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Rather, to defeat summary judgment, "the alleged factual dispute must be both genuine and material to the nonmoving party's claims." *Momox*, 987 F.3d at 841 (9th Cir. 2021) (*citing* F.R.C.P. Rule 56(a)).

A "material fact is one that is needed to prove (or defend against) a claim, as determined by the applicable substantive law." *Ochoa v. City of Mesa*, 26 F.4th 1050, 1055-56 (9th Cir. 2022) (*citing Anderson*, 477 U.S. at 255). "'Only disputes over facts that might affect the outcome of the action under the governing law will properly preclude the entry of summary judgment' for purposes of materiality." *Momox*, 987 F.3d at 841 (*quoting Anderson*, 477 U.S. at 248).

A "factual issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Ochoa*, 26 F.4th at 1055 (*quoting Anderson*, 477 U.S. at 248). This requires the non-moving party to "produce specific facts, affidavit or other evidentiary materials, to show that there is a ***genuine*** issue for trial." *Momox,* 987 F.3d at 841 (original emphasis) (*citing Matsushita Electronic Industries Co. v. Zenith Radio Corp.*, 475 U.S 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment will be granted." *Friedman v. Live Nation Merchandise, Inc.*, 833 F.3d 1180, 1185 (9th Cir. 2016) (*quoting McIndoe v. Huntington Ingalls, Inc.,* 817 F.3d 1170, 1173 (9th Cir. 2016); *R.W. Beck & Associates v. City & Borough of Sitka*, 27 F.3d 1475, 1480 fn. 4 (9th Cir. 1994)).

## IV.     LEGAL ARGUMENT

### A.     Ninth Circuit Law on Statutory Damages and Compilations

"Section 504(c)(1) permits an owner to recover 'an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally.'" *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1264 (9th Cir. 2021) (*quoting* 17 U.S.C. § 501(c)). Thus, the "number of awards available under this provision depends not on the number of separate

infringements, but rather on (1) the number of individual 'works' infringed and (2) the number of separate infringers." *Desire*, 986 F.3d at 1264 (emphasis added) (quoting *Friedman*, 833 F.3d at 1189-90).

"For purposes of statutory damages, '***all the parts of a compilation … constitute one work.***'" *VHT, Inc. v. Zillow Group, Inc.* ("*VHT I*"), 918 F.3d 723, 747 (9th Cir. 2019) (emphasis added) (*quoting* 17 U.S.C. § 504(c)(1)). The Copyright Act defines a "compilation" as: "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."[2] *VHT I*, 918 F.3d at 747 (*quoting* 17 U.S.C. § 101).

For purposes of statutory damages, "[u]ltimately, what counts is the statutory definition" of a compilation. *VHT I*, 918 F.3d at 748. While courts may consider whether a work (or works) within a compilation have "independent economic value," it is "not a dispositive factor" because it "does not answer the question [of] whether something is a compilation." *Id.* at 747 (*citing Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1193 (9th Cir. 2001)). The "registration label" of the copyright registration "is not controlling," but "may be considered by the court when assessing whether a work is a compilation." *VHT I*, 918 F.3d at 748 (*citing Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1277 (11th Cir. 2015) ("Although the manner of copyright registration is not dispositive of the works issue, this Court has previously considered it to be at least a relevant factor.")).[3]

---

[2] Under the Copyright Act, the "term 'compilation' includes collective works." 17 U.S.C. § 101 (definition of "compilation"). The Copyright Act defines a "collective work" as one "in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." *Id.* (definition of "collective work).

[3] *See also Minden Pictures, Inc. v. Buzzfeed, Inc.,* 390 F.Supp.3d 461, 469 (S.D.N.Y. 2019) ("where a copyright holder chooses to 'assemble into a collective whole' certain photographs during the registration of its copyright, i.e. registering them in sets rather than as individual photographic works – the copyright holder has created a 'collective work' and 'compilation' as those terms are defined in § 101.").

**B.** **Vogts is Only Entitled to Three Statutory Damages Awards Under the Statutory Definition Test**

The Second Circuit's "method of determining whether something is a 'compilation'" is "persuasive" in the Ninth Circuit. *VHT, Inc. v. Zillow Group, Inc.* ("*VHT II*") 461 F.Supp.3d 1025, 1044 (W.D. Wash. 2020)[4] (*citing Bryant v. Media Right Productions, Inc.*, 603 F.3d 135 (2d Cir. 2010)). The Second Circuit "focuse[s] on whether 'the plaintiff—the copyright holder—***issued its works separately, or together as a unit***.'" *VHT II*, 461 F.Supp.3d at 1044 (emphasis added) (*quoting Bryant*, 603 F.3d at 141). The legislative history of the Copyright Act demonstrates that a "compilation" "results from a process of selecting, bringing together, organizing, and arranging previously existing material of all kinds**, *regardless of whether the individual items in the material have been or ever could have been subject to copyright***." *Bryant*, 603 F.3d at 140 (original emphasis) (*quoting* H.R. Rep. No. 1476, 94th Cong., 2d Sess. 162, *reprinted in* 1976 U.S.C.C.A.N. 5659).

The Second Circuit's "focus on how the copyright holder arranges its own materials hews closely to the statutory language that addresses how the materials at issue are 'selected, coordinated, or arranged.'" *VHT II,* 461 F.Supp.3d at 1044 (emphasis added) (*quoting* 17 U.S.C. § 101; *citing Bryant*, 603 F.3d 135).[5] Further,

[4] In the interest of full disclosure, the decision in *VHT II* has been appealed to the Ninth Circuit. *See VHT, Inc. v. Zillow Group, Inc. et al* (Case No. 22-35200). The case is fully briefed and oral argument occurred on February 27, 2023.

[5] *See also Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1180 (9th Cir. 2012) (images on a disk were not "selected, coordinated, or arranged" to create "an original work of authorship"); *Yellow Pages Photos*, 795 F.3d at 1277 (holding "collection of photos" arranged by "subject matter" were "selected, coordinated, or arranged in a way that results in an original work of authorship"); *Sony Music Entertainment v. Cox Communications, Inc.*, 464 F.Supp.3d 795, 821 (W.D. Va. 2020) (the Second Circuit's "emphasis" in *Bryant* on "how a work is issued to consumers is most persuasive in defining 'compilation' under 504(c)(1)."); *Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F.Supp.3d 898 (E.D. Mo. 2015) ("Courts addressing the issue of what constitutes a compilation subject to the one-award restriction of § 504(c)(1) focus on whether the copyright holder issued its works separately, or together as a unit."); *Tattoo Art, Inc. v. TAT International*, 794 F.Supp.2d 634, 654 (E.D. Va. 2011) (finding plaintiff's works were compilations because, even though the plaintiff "***created*** the various tattoo flash sheets comprising each book at different times [Citation], it does not appear from [plaintiff's] testimony that he ***issued*** those sheets (continued).

the Second Circuit's statutory definition test dovetails with the independent economic value test:

> Under [the Second Circuit's] analysis, it may be possible for materials to have independent economic value *if* issued separately (and therefore potentially constitute separate "works"), but *in fact* not be issued separately (and therefore constitute a "compilation").

*VHT II*, 461 F.Supp.3d at 1044 (original emphasis).[6]

Here, there can be no dispute that Vogts issued: (1) the Stanchfield Photographs as a unit (SUF, ¶¶ 6-8); (2) the O'Dowd Photographs as a unit (*id.*, ¶¶ 14-16; and (3) the Williams Photographs as a unit (*id.*, ¶¶ 22-24). Therefore, under the statutory definition test, Vogts is entitled to only three statutory damages awards.

## C. The Independent Economic Value Test Emphasizes that Vogts is Only Entitled to Three Statutory Damages Awards

"[T]he independent economic value test is not clearly defined, and its application varies." *Sony Music Entertainment*, 464 F.Supp.3d at 818. Fundamentally, the test treats "separate copyrights" within a compilation as "not distinct works unless they can 'live their own copyright life.'" *Columbia Pictures Television*, 259 F.3d at 1193 (*quoting Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990); *Robert Stigwood Group, Ltd. v. O'Reilly*, 530 F.2d 1096, 1105 (2d Cir. 1976)). In other words, the plaintiff must show each work has "an independent economic value and is, in itself, viable." *Columbia Pictures Television*, 259 F.3d at 1193 (*quoting Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1117 (1st Cir. 1993); *citing Walt Disney*, 897 F.2d at 569). Further, the mere fact "a separate unit in a multi-work project could possibly have some independent economic value if in any economically meaningful way—*i.e.*, for sale or licensing on a separate, sheet-by-sheet or image-by-image basis") (original emphasis).

[6] Where the Second Circuit and Ninth Circuit part ways is whether "the independent economic value test" plays any role in the analysis. *Bryant*, 603 F.3d at 142. In the Second Circuit, whether a work within a compilation has independent economic value plays no role in the analysis, while the Ninth Circuit has held it may be considered. *Compare Id. with VHT I*, 918 F.3d at 747.

1  sold separately" is insufficient to demonstrate independent economic value. *Yellow*
2  *Pages Photos*, 795 F.3d at 1281 (plaintiff failed to demonstrate economic value with
3  evidence of "some instances where it sold its photos individually" because "the
4  record reveals that such instances are outliers.").

5       Courts take two approaches to determining whether a constituent work has
6  independent economic value for purposes of statutory damages: (1) focusing on
7  "how the constituent parts were produced, and the method of consumption of the
8  works";[7] or (2) whether "each image represents a singular and copyrightable effort
9  concerning a particular model, photographer, and location." [8] *Sony Music*
10 *Entertainment*, 464 F.Supp.3d at 818.

11      Here, the manner in which Vogts produced the Subject Photographs supports
12 the finding that Vogts is only entitled to three statutory damages awards because

13 [7] *See Yellow Pages Photos*, 795 F.3d at 1278 (plaintiff's photos were compilations
   because he "create[d], market[ed], and register[ed] his photos as collections
14 organized by subject matter heading, he almost exclusively distributed them as
   collections to his customers on hard drives, CDs or DVDs or through a web portal.");
15 *cf. MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996) (each
   television episode had independent economic value because each was "produced
16 independently from the other episodes" was "aired independently from preceding
   and subsequent episodes," and was "individually copyrighted" by the owner);
17 *Gamma Audio*, 11 F.3d at 1117-18 (television episodes had independent economic
   value because each was "produced independently from the other episodes, and each
18 episode … was aired on television independently from the preceding and subsequent
   episodes.")

19 [8] *See Walt Disney*, 897 F.2d at 570 (images of "Mickey and Minnie [Mouse] in
   various poses" did not have independent economic value because "Mickey is still
20 Mickey whether he is smiling or frowning, running or walking, waving his left hand
   or his right."); *Tang v. Putruss*, 521 F.Supp.2d 600, 609-10 (E.D. Mich. 2007) (series
21 of photos of models wearing a line of dresses taken at a single session, by a single
   photographer, for a single purposes (to advertise a clothing line) was a single
22 compilation for purposes of statutory damages); *Lee Middleton Original Dolls, Inc.*
   *v. Seymour Mann, Inc.*, 299 F.Supp.2d 892, 898 (D. Kan. 2004) (separately
23 registered portions of a single doll did not have independently "viable economic life"
   because "it is only when these parts of the collection are assembled as a whole can
24 they be considered to have a viable economic life."); *Coogan v. Avnet, Inc.*, Case No.
   CV040621PHXSRB, 2005 WL 2789311, at *5-6 (D. Ariz. Oct. 24, 2005) (photos
25 taken of a company's CEO at a single session, by a single photographer, for a single
   purpose, and subject to a single license agreement, was a single compilation for
26 purposes of statutory damages); *cf. Playboy Enterprises, Inc. v. Sanfilippo,* Case No.
   97-0670-IEG (LSP), 1998 WL 207856, at *5 (S.D. Cal. Mar 24, 1998) (photos
27 involving different models, photographers and locations were not a compilation for
   purposes of statutory damages).
28

Vogts created: (1) the Stanchfield Photographs on the same date (SUF, ¶ 4); (2) the O'Dowd Photographs on the same date (*id.*, ¶ 12); and (3) the Williams Photographs on the same date (*id.*, ¶ 20).[9] Further, the number of locations depicted in Subject Photographs supports the finding that Vogts is only entitled to three statutory damages awards because: (1) the Stanchfield Photographs depict various areas of the Stanchfield Property (*id.*, ¶ 5); (2) the O'Dowd Photographs depict various areas of the O'Dowd Property (*id.*, ¶ 13); and (3) the Williams Photographs depict various areas of the Williams Property (*id.*, ¶ 21).[10]

Additionally, the method by which the Subject Photographs were consumed demonstrate that Vogts is only entitled to three awards of statutory damages. Vogts solely licensed: (1) the Stanchfield Photographs as a unit to the real estate agent for the Stanchfield Property to facilitate that agent's sale through real estate listings and marketing materials (SUF, ¶¶ 6-8); (2) the O'Dowd Photographs as a unit to the real estate agents for the O'Dowd Property to facilitate that agent's sale through real estate listings and marketing materials (*id.*, ¶¶ 14-16); and (3) the Williams Photographs as a unit to the real estate agent for the Williams Property to facilitate that agent's sale through real estate listings and marketing materials (*id.*, ¶¶ 22-24).

Finally (and most revealing), it is clear that the individual Subject Photographs lack independent economic value because Vogts did not license (nor did anyone attempt to license) any of the Subject Photographs after they were initially used to facilitate the sale of the property depicted in the Subject Photographs. SUF, ¶¶ 6-8; 14-16; 22-24.

Therefore, there can be no dispute that Vogts is only entitled to three statutory damages awards because: (1) the individual Stanchfield Photographs did

[9] This is further reinforced by the copyright registrations for the Subject Photographs because Vogts titled the individual Subject Photographs by the date that they were created. SUF, ¶¶ 3, 11, 19.

[10] This is also further reinforced by the copyright registrations for the Subject Photographs because Vogts titled the individual Subject Photographs by the address of the property depicted in the particular Subject Photographs. SUF, ¶¶ 3, 11, 19.

not have independent economic value; (2) the individual O'Dowd Photographs did not have independent economic value; and (3) the individual Williams Photographs did not have independent economic value.

### D.    The Registrations of the Subject Photographs Emphasizes that Vogts is Only Entitled to Three Statutory Damages Awards

As previously discussed in Section IV.A., the copyright registrations for the Subject Photographs "may be considered by the court when assessing whether a work is a compilation" though it is "not controlling." *VHT I*, 918 F.3d at 748 (*citing Yellow Pages Photos*, 795 F.3d at 1277 ("Although the manner of the registration is not dispositive of the works issue, this Court has previously considered it to be at least a relevant factor"); *see also Minden Pictures,* 390 F.Supp.3d at 469 ("where a copyright holder choses to 'assemble into a collective whole' certain photographs during the registration of its copyright, i.e. registering them in sets rather than as individual photographic works – the copyright holder has created a 'collective work' and 'compilation' as those terms are defined in § 101").

*Yellow Pages Photos* is highly instructive. In that case, the plaintiff asserted that "the district court erred in ruling that each of its 178 collections of photos organized by heading name, rather than each of its 10,411 individual photos, was a 'work' for the purpose of computing statutory damages under § 504(c)(1) of the Copyright Act." *Yellow Pages Photos,* 795 F.3d at 1276. The Eleventh Circuit upheld the district court's finding because plaintiff's "customers bought collections" and plaintiff "registered [the] images the same way … grouping various title collections together on 44 registration applications." *Id.* at 1277. "As noted on the registrations, each collection of photos was taken by the same photographer, shared the same subject matter, and was published on the same date." *Id.*

Here, Vogts registered the Subject Photographs in a near identical manner as the plaintiff in *Yellow Pages Photos.* As discussed in Section IV.B., Vogts issued the Subject Photographs in three units based on the property depicted in the Subject

Photographs – *i.e.*, the "customers bought collections" and not individual photographs based on the property depicted in the Subject Photographs. *See Yellow Pages Photos*, 795 F.3d at 1277. Vogts "registered" the Subject Photographs in "the same way" – *i.e.*, by "grouping various title collections together on [3] registration applications" based on the property depicted in the Subject Photographs.  the Subject Photographs by the property depicted in the Subject Photographs. *See Id.*; SUF, ¶¶ 2-4, 10-12, 18-20. Further, "[a]s noted on the registrations, each collection of" the Subject Photographs "was taken by the same photographer" (*i.e.*, Vogts), "shared the same subject matter" (*i.e.*, the Stanchfield Property, the O'Dowd Property and the Williams Property) and each collection "was published on the same date." *See Id.; Yellow Pages Photos,* 795 F.3d at 1277.

Therefore, Vogts' copyright registrations for the Subject Photographs further emphasizes that – for purposes of statutory damages – Vogts is only entitled to three statutory damages awards because the Subject Photographs are three compilations.

## V.   **CONCLUSION**

For the reasons set forth above, the PMC Defendants respectfully request that this Court grant their Motion and enter partial summary judgment that – if the PMC Defendants engaged in copyright infringement (which they did not based on the doctrine of fair use) – Vogts is only entitled to three statutory damages awards because the Subject Photographs constitute three compilations for purposes of statutory damages.

Dated:  March 9, 2023                                   **Law Offices of Lincoln Bandlow**

By  _____

LINCOLN D. BANDLOW
ROM BAR-NISSIM
Attorneys for Defendants
Penske Media Corporation and
Dirt.com, LLC