Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON VOGTS,<br><br>Plaintiff,<br><br>v.<br><br>PENSKE MEDIA CORPORATION; DIRT.COM, LLC; et al.,<br><br>Defendants. | Case No. 2:22-cv-01153-FWS-PVC<br><u>Hon. Fred W. Slaughter Presiding</u><br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (REGARDING THE NINTH CIRCUIT'S DECISION IN *VHT, INC. V. ZILLOW GROUP, INC.*)** |

Pursuant to this Court's June 9, 2023 Order (Dkt. 96), Vogts hereby submits this supplemental brief as to why the Ninth Circuit's June 7, 2023 decision in *VHT, Inc. v. Zillow Grp., Inc.*, No. 22-35147, 2023 WL 3857495 (9th Cir. June 7, 2023), reinforces that each of Vogts' 53 individual Subject Photographs is entitled to a separate statutory damages award in this case.

At issue in *VHT* was whether a real estate photography studio could recover separate statutory damages awards for each of its 2,700 copyrighted property photos that Zillow infringed, or whether VHT was limited to a single award. *Id*. at *4. VHT stored those photos in an electronic database and registered that database (and all of the photos therein) as a single compilation. While the parties agreed that the works were part of a compilation (which the Subject Photographs in the present action are not to begin with), the Ninth Circuit explained that "[a]lthough the Copyright Act states that 'all parts of a compilation . . . constitute one work,' it does not say that any work included in a compilation cannot also exist as a separate, independent work." *Id*. at *5-6 (internal citations omitted). Based thereon, the Ninth Circuit found that VHT could seek a separate statutory damages award for each photo because what Zillow copied was a series of individual photos, *not* any particular original selection, coordination, or arrangement of those photos—i.e., not anything that made those individual works a compilation under the statutory definition. *Id*. As the Ninth Circuit stated, "[t]he statutory text, caselaw, and common sense compel one result: the infringed works were not the database but instead were the 2,700 individual photographs, and VHT is entitled to an award for each of the 2,700 infringements." *Id*. at *9.

The Ninth Circuit explained that "VHT has not claimed that Zillow infringed the aspects of its database that make it a compilation, i.e., the selection, coordination, and arrangement of preexisting pictorial works" or "the creative selection, coordination, or arrangement of the photographs within a database"; rather, "[t]he gravamen of VHT's claim has always been the infringement of 2,700

individual images." *Id*. at *5-6. According to the Ninth Circuit, "Section 504(c) thus requires us to determine whether the photos at issue qualify as 'one work.' The distinction is crucial: If the 'one work' subject to the defendant's infringements is a compilation, Section 504(c) limits the copyright holder to a single statutory award. If the works infringed are not a compilation, they are eligible for individual damage awards." *Id*. at *5.

Based on that framework, the Ninth Circuit rejected Zillow's argument that "the photos were part of a compilation and eligible for only one award" purportedly because "the photos were housed in a database" and "the database was registered as a compilation." *Id*. at *5-6. Instead, the Ninth Circuit held that "the individual photos" were not a compilation because, like the Subject Photographs in this case, they "were created at the request of a listing agent or broker, then licensed and published to that agent or broker for marketing an individual listing" and "[t]he photos had independent economic value separate from the database," including "[b]ecause VHT licensed the photos on a per-image or per-property basis." *Id*. That is, VHT's licensing of the photos further showed that each of the photos was "valuable on its own," *not* that the photos were "per-property" compilations. *See id*. at *6.

Moreover, how Zillow *itself* used the asserted photos—also factually similar to this case—was critical to the Ninth Circuit's conclusion:

> Zillow used each photo independently to market home designs. Zillow selected photos based on the content of the images: it sought 'photos of artfully-designed rooms' for its Digs platform. It was not selecting on the authorship or arrangement of the photos within the database. Instead, it obtained images from feed providers based on the photos themselves. Zillow infringed the individual photos, not the database. Importantly, the individual infringed photos were not "in any way selected, coordinated, or arranged to create an original work of authorship," *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1180 (9th Cir. 2012) (internal quotation marks omitted), and Zillow did not

> copy any selection, coordination, or arrangement of the photos from the database.

*Id*. (internal citations omitted).

Based on the foregoing, *VHT* compels the rejection of the PMC Defendants' argument that the Subject Photographs are only three compilations rather than 53 individual works.

As an initial matter, unlike in *VHT*, the Subject Photographs were registered as individual photos (*see* Dkt. 83, Section II ¶¶ 30, 40, 50), not as databases or otherwise as compilations. As previously briefed, that photos may be related in some general way (e.g., sharing common subject matter) does *not* automatically convert those photos into a compilation. *See* Dkt. 57 at 11:3-18, 17:16-18:2. Rather, for that to be so, preexisting materials must be selected, coordinated, and arranged in an original way and into a new work. Here, there is no particular selection, coordination, or arrangement of the Subject Photographs in an original way or into a new work. *See id*. at 8:3-13, 8:19-9:16. And the PMC Defendants have made no effort to identify exactly what they allege to be the compilations. *See id*. at 7:14-8:2, 8:14-18. Crucially, just as Zillow did not copy any particular selection, coordination, or arrangement of photos, the PMC Defendants did not *and could not have* copied any particular selection, coordination, or arrangement of the Subject Photographs because there was none to copy. The defining aspect of what makes something a compilation is entirely missing in this case. Consequently, the Subject Photographs can only be properly deemed individual works.

Relatedly, Vogts has not claimed that the PMC Defendants infringed an original selection, coordination, or arrangement of preexisting materials. The PMC Defendants did not infringe, e.g., portions of a coffee-table book with photos that were selected, coordinated, or arranged in an original way, or a video where photos are displayed in a particular order, or anything else that could be considered a "new work" based on what is otherwise just individual photos. Rather, the gravamen of

Vogts' claim has always been the infringement of 53 of his individual photos, as the PMC Defendants themselves have conceded (*see* Dkt. 53-6 ¶¶ 15, 22; Dkt. 53-23 ¶ 17).

Just as in *VHT*, the 53 individual Subject Photographs (among other photos of the properties that Vogts took and licensed but that the PMC Defendants chose not to copy) were created at the request of listing agents and then licensed and published to those agents to show the properties depicted therein in real estate listings. In doing so, Vogts did not license an original selection, coordination, or arrangement of preexisting materials, but rather separate pictorial works which his clients were free to use as they wished within the bounds of their license (*see* Dkt. 83, Section II ¶¶ 34, 44, 54, 69).

And *VHT* further teaches that the PMC Defendants' uses of the Subject Photographs reinforce that they are 53 individual works. The PMC Defendants admit that they selected each of the Subject Photographs for its individual content and characteristics (and chose *not* to select Vogts' other photos of the properties for the same reasons). *See, e.g.*, Dkt. 53-6 ¶¶ 14, 21; Dkt. 53-23 ¶ 16; Dkt. 61 at 3-4; Dkt. 83, Section I ¶ 95; Dkt. 83, Section II ¶¶ 82, 84, 86-87, 89. The PMC Defendants used Subject Photographs 1, 32, and 40 as "feature images" by themselves (i.e., with no other Subject Photographs) because of their individual content and characteristics. Dkt. 83, Section I ¶¶ 51-52, 76-78, 84; *id.*, Section II ¶¶ 80, 88, 93-96. And the PMC Defendants generated revenue separately from each individual Subject Photograph (i.e., literal independent economic value), as each was displayed at a discrete URL and each of those URLs separately generated revenue for the PMC Defendants. Dkt. 83, Section II ¶¶ 76-79.

In sum, *VHT* reinforces that there is no genuine dispute that the Subject Photographs are, and that the PMC Defendants infringed, 53 individual works, not three compilations.

\*     \*     \*

The Ninth Circuit's ruling in *VHT* lays bare the flaws in the PMC Defendants' argument that the Subject Photographs should be treated as three compilations. The PMC Defendants have not defined what preexisting materials comprise each purported compilation; what original selection, coordination, or arrangement of those materials comprises each purported compilation; or how they copied any such selection, coordination, or arrangement when they admit to having selected each of the Subject Photographs for its individual content and characteristics. In the end, the PMC Defendants infringed 53 individual pictorial works and used those works in different ways to generate different income. *VHT* demonstrates that separate awards reflecting those uses are proper.

Respectfully submitted,

Dated: June 23, 2023   By:   */s/ Stephen M. Doniger*
Stephen M. Doniger, Esq.
Benjamin F. Tookey, Esq.
DONIGER/BURROUGHS
Attorneys for Plaintiff