UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                              Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Melissa H. Kunig | N/A |
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiff:                    Attorneys Present for Defendants:

Not Present                                                  Not Present

**PROCEEDINGS: ORDER RE: MOTIONS FOR SUMMARY JUDGMENT [43][44][53]
AND APPLICATIONS TO SEAL [46][54][84]**

  Before the court are several matters in which the parties seek summary judgment resolving Plaintiffs' claims. Defendants Penske Media Corporation ("PMC") and Dirt.com, LLC ("Dirt.com" or "Dirt") (collectively, "Defendants") move for summary judgment on the number of works at issue in this matter under the Copyright Act. (Dkt. 43.) Plaintiff Brandon Vogts ("Plaintiff") opposes that motion. (Dkt. 57.) In a separate motion, Plaintiff affirmatively seeks summary judgment on his claim for copyright infringement, and argues that Defendants' fair use defense fails as a matter of law. (Dkt. 44.) In response, Defendants cross-move for summary judgment that they are entitled to fair use as a complete defense to Plaintiff's copyright infringement claim. (Dkt. 53.)[1] Also pending in connection with these motions are applications to file documents under seal. (Dkts. 46, 54, 84.)

  Based on the state of the record, as applied to the applicable law, the court orders as follows. The court **DENIES** Defendants' motion seeking to establish the number of works at issue for purposes of statutory damages under the Copyright Act. The court **GRANTS** Plaintiff's motion seeking to establish Defendants' liability for copyright infringement and as to the unavailability of the affirmative defense of fair use, and **DENIES** Defendants' cross-motion

---

[1] Further citations to Defendant's briefing in support of this motion are to the corrected version filed at Dkt. 62.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                          Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

on the latter subject.  The court **GRANTS IN PART, DENIES IN PART, AND DEFERS IN PART** the parties' respective sealing applications, and consequently issues further orders.  The court's rulings are set forth in more detail at the end of this Order.

## I.     Applications to Seal

### A.     Legal Standard

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'"  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)).  The "starting point" of the court's analysis is the "strong presumption in favor of access."  *Id.* (citation and internal quotation marks omitted).  "A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard."  *Id.* (citation and internal quotation marks omitted).  The party seeking to seal a record "must articulate[] compelling reasons supported by specific factual findings."  *Id.* (citation and internal quotation marks omitted).  "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets."  *Id.* at 1179 (quoting *Nixon*, 435 U.S. at 598).  But the "mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."  *Id.* (citation omitted).  Ultimately, "[w]hat constitutes a 'compelling reason'" is "'left to the sound discretion of the trial court.'"  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon*, 435 U.S. at 599).

"[T]he strong presumption of access to judicial records applies fully to dispositive pleadings, including motions for summary judgment and related attachments."  *Kamakana*, 447 F.3d at 1179.  However, "[t]he public policies that support the right of access to dispositive motions, and related materials, do not apply with equal force to non-dispositive materials."  *Id.* (citation omitted).  In the latter instance, "[m]uch of the information that surfaces during pretrial

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                            Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1983)). Thus, "a particularized showing, under the good cause standard of Rule 26(c) will suffice to warrant preserving the secrecy of sealed discovery material attached to non-dispositive motions." *Kamakana*, 447 F.3d at 1180 (cleaned up). The Ninth Circuit has clarified that the compelling reasons standard applies to any sealing request made in connection with a motion that is "more than tangentially related to the merits of a case," whether or not the motion is strictly "dispositive." *Ctr. For Auto Safety*, 809 F.3d at 1099, 1101.

Local Rule 79.5.2.2(b) requires that a party seeking to file a document under seal containing information previously designated as confidential by another pursuant to a protective order: (1) at least three days before seeking to file under seal, confer with the person that designated the material confidential; and (2) attempt to eliminate or minimize the need for filing under seal by means of redaction. L. R. 79-5.2.2(b). If the document(s) cannot be suitably redacted by agreement, the filing party may file an application to seal the document and supporting declaration. *Id.* The declaration must identify the material previously designated as confidential, designating party, and describe in detail the efforts made to resolve the issue. *Id.*

B.    <u>Application</u>

The parties seek to redact or seal several documents submitted to the court in connection with their motions. First, Plaintiff seeks to seal Exhibits 9, 10, 11, 21, 25, 26, and 27 to the declaration of his counsel filed in support of his motion regarding Defendants' liability for copyright infringement. (Dkt. 46 ("Plaintiff's Sealing Application").) Plaintiff further requests to file Exhibit 4 to his declaration filed in support of the same motion as redacted. (*Id.*) Second, Defendants seek to seal Exhibits V, X, Z, and AA to their counsel's declaration filed in support of their cross-motion and opposition as to liability for copyright infringement. (Dkt. 54 ("Defendants' First Sealing Application").) Defendants further request to file Exhibits U and CC to the same declaration, as well as their supporting memorandum of points of authorities and separate statement of facts, as redacted. (*Id.*; Dkt. 84 ("Defendants' Second Sealing

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                     Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

Application").)  In sum, the parties seek to seal these materials on the basis that (1) the materials were designated confidential pursuant to the parties' stipulated protected order; and/or (2) the disclosure of the contain confidential business information each contains would cause prejudice.

As an initial matter, designation as confidential under a protective order alone is an insufficient reason to seal materials filed in connection with a *dispositive* motion.  A protective order may be issued where "good cause" exists.  Fed. R. Civ. P. 26(c).  In some instances, a stipulated protective order may not itself suffice as the necessary "good cause."  *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("[B]ecause the protective order was a stipulated blanket order, [the party] never had to make a 'good cause' showing under Fed. R. Civ. P. 26(c) of the need for protection . . . .").  More importantly, the standard in applicable to the pending motions seeking case-dispositive relief is the heightened "compelling reasons" standard.  *See Ctr. for Auto Safety*, 809 F.3d at 1097-98; *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir. 2010) (noting a "determination by the district court that good cause exists for sealing [a party's] documents does not establish that there are 'compelling reasons' to do so") (citation omitted).  That notwithstanding, "sources of business information that might harm a litigant's competitive standing" may constitute a compelling reason justifying sealing.  *See Nixon*, 435 U.S. at 598.

The court **GRANTS IN PART, DENIES IN PART, AND DEFERS IN PART** Plaintiff's Sealing Application.  (Dkt. 46)  The court **DENIES WITHOUT PREJUDICE** Plaintiff's Sealing Application as to Exhibits 25, 26, 27 because Plaintiff filed these licensing agreements under seal in their entirety, but the parties do not sufficiently indicate how disclosure of these agreements may cause harm to an individual or entity's business interests and why that harm could not be mitigated through more narrowly tailored redactions.  *See Cypress Semiconductor Corp. v. Fujitsu Semiconductor Ltd.*, 2020 WL 11567020, at *2 (N.D. Cal. Feb. 26, 2020) ("[T]hat a contract contains certain confidential terms does not itself justify sealing of the entire contract.").  The court **GRANTS** Plaintiff's Sealing Application as to Exhibits 9, 10, 11, 21, which are comprised of confidential analytics related to Defendants' website business.  *See Universal Life Church Monastery Storehouse v. Am. Marriage Ministries*, 2022 WL 971561, at *2 (W.D. Wash. Mar. 31, 2022) (finding compelling reasons to seal party's internal website analytics bearing on movant's business).  The court **DEFERS**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

ruling on sealing Exhibit 4 to Plaintiff's declaration because the sealing application appears to cite an exhibit slated to be filed entirely under seal rather than redacted as stated.  (*See* Dkts. 46-1, 44-40.)

The court **GRANTS IN PART, DENIES IN PART, AND DEFERS IN PART** Defendants' Sealing Applications.[2]  (Dkts. 54, 84.)  Exhibit Z is a text message with no apparent "compelling reasons" to seal this document in their entirety.  *See Kamakana*, 447 F.3d at 1178-79.  Accordingly, the court **DENIES** Defendants' Sealing Applications as to Exhibit Z. The court **GRANTS** Sealing Applications as to Defendants' memorandum of points and authorities, accompanying Separate Statement of Uncontroverted Facts and Conclusions of Law, and Exhibits U, V, X, Z, and AA to the declaration of their counsel.  These documents consist narrowly redacted mentions of confidential pricing information or confidential invoices provided to specific customers pursuant to a licensing agreement with respect to which more limited redaction is not feasible.  Courts have previously found compelling reasons to seal such documents as "business information that might harm a litigant's competitive strategy" or "trade secrets."  *See Sumotext Corp. v. Zoove, Inc.*, 2020 WL 836737, at *2 (N.D. Cal. Feb. 20, 2020) (citing *Apple Inc. v. Samsung Electronics Co.*, 727 F.3d 1214, 1223 (Fed. Cir. 2013) and *In re Electronic Arts*, 298 Fed. App'x 568, 569 (2008)).  Finally, the court **DEFERS** ruling on Exhibit CC, because it is a duplicate of Exhibit 4 to Plaintiff's declaration and appears to be filed completely under seal at the cited location like Exhibit 4.  (*See* Dkts. 54-9, 53-37.)

**II.    Motions for Summary Judgment**

    A.    <u>Record</u>

        1.    *Evidentiary Objections*

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also In re*

---

[2] Defendants' Supplementary Sealing Application only contains their statement of facts and memorandum of points and authorities that are materially indistinguishable from those attached to their First Sealing Application for present purposes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                          Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

*Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010) ("A district court's ruling on a motion for summary judgment may only be based on admissible evidence."). In the context of a summary judgment, a district court "must also rule on evidentiary objections that are material to its ruling." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). "A court can award summary judgment only when there is no genuine dispute of material fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); *accord Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021). Additionally, "when evidence is not presented in an admissible form in the context of a motion for summary judgment, but it may be presented in an admissible form at trial, a court may still consider that evidence." *Burch*, 433 F. Supp. 2d at 1120; *see Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

"'[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion, are all duplicative of the summary judgment standard itself' and unnecessary to consider here." *Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019) (alteration omitted) (quoting *Burch*, 433 F. Supp. 2d at 1119) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)); *see also Sandoval*, 985 F.3d at 665. "Similarly, the [c]ourt will not consider the parties' objections to the characterization of or purported misstatement of the evidence represented." *Holt*, 370 F. Supp. 3d at 1164 (citing *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1126 n.1 (E.D. Cal. 2008)). "Moreover, Federal Rule of Evidence 403 objections are unnecessary at the summary judgment stage because there is no jury that can be misled and no danger of confusing the issues." *Id*. (citing *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 994 (C.D. Cal. 2013)).

"At the summary judgment stage," the court "do[es] not focus on the admissibility of the evidence's form" but "instead focus[es] on the admissibility of its contents." *Fraser*, 342 F.3d at 1036 (citations omitted). Accordingly, except in the rare instances in which the objecting party demonstrates with specificity that the subject evidence could not be produced in a proper format at trial, the court does not consider any objections on the grounds that the evidence "constitutes hearsay or inadmissible lay opinion, or that there is a lack [of] personal knowledge." *Holt*, 379 F. Supp. 3d at 1164 (citing *Burch*, 433 F. Supp. 2d at 1122); *see also*

**CIVIL MINUTES – GENERAL**                                                            **6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

*Sandoval*, 985 F.3d at 665-67; *id*. at 667 (objections for foundation "provide[] no basis for excluding the evidence" where objecting party does not provide counterparty with "notice of the specific ground of objection and, consequently, what could be done to cure any defects"). Relatedly, objections based on a failure to comply with the technicalities of authentication requirements or the best evidence rule are inappropriate. *See Adams v. Kraft*, 828 F. Supp. 2d 1090, 1108 n.5 (N.D. Cal. 2011) ("On summary judgment, unauthenticated documents may be considered where it is apparent that they are capable of being reduced to admissible evidence at trial."); *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) (holding that court was not precluded from considering declaration in awarding summary judgment even if declaration violated best evidence rule if the underlying facts would be admissible as evidence).

Plaintiff objects to statements in two supporting declarations submitted by Defendants, namely those submitted by Mark David Voss (Dkt. 53-6 ("Voss Declaration" or "Voss Decl.")) and James McClain (Dkt. 53-23 ("McClain Declaration" or "McClain Decl.")).[3] (Dkt. 61-2.) Mr. Voss is Dirt's co-founder, its editor-in-chief, and one of its writers. (Voss Decl. ¶ 1.) Mr. McClain is also a co-founder of Dirt, its editor-at-large, and one of its writers. (McClain Decl. ¶ 1.) Plaintiff's Objections Nos. 1-19 pertain to the McClain Declaration, and Plaintiff's Objections Nos. 21-48 relate to the Voss Declaration. Considering the applicable standards, the court rules on those objections as follows.[4]

Plaintiff's Objections Nos. 1-13, 16, 18-19, 21-30, 32-35, 38-41, and 44-48 are **OVERRULED**. To the extent these objections rely on relevance grounds or that a particular statement is an improper legal conclusion or lay witness testimony, the court does not separately address them here because such objections are duplicative of the summary judgment standard, i.e., that the court may only grant summary judgment where no genuine dispute of

---

[3] Per the court's previous order accepting Defendant's errata as filed, (Dkt. 68 at 1-2), Plaintiff's Objection No. 50 is **OVERRULED**.

[4] Objections to immaterial facts—including Plaintiffs Objections Nos. 15, 36, 37, 42, 43 in their entirety and his remaining objections to the extent they concern immaterial statements included in the Voss and McClain Declarations—are **OVERRULED AS MOOT**. *See Doe v. Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                     Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

material fact exists. *See Holt*, 370 F. Supp. 3d at 1164. Separately, the court does not observe a sufficient defect in authentication or violation of the rule against hearsay demonstrating the objected-to evidence could not be reduced to an admissible format at trial. *See id.*; *Adams*, 828 F. Supp. at 1108 n.5. Nor does the court find a defect in these declarants' foundation or personal knowledge that warrants exclusion of the underlying evidence. Though Plaintiff takes issue with the fact neither Mr. Voss nor Mr. McClain was designated as Dirt's 30(b)(6) witness, their testimony regarding matters related to Dirt that are otherwise within the scope of their respective personal knowledge in their capacity as co-founders, editors, and writers is still admissible. *See In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal knowledge may be inferred from a declarant's position."); *Los Angeles Times Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880, 886 (C.D. Cal. 2006) ("[A] declarant can testify about practices or procedures in place before the witness was employed with the organization about which he is relating information.") (citation omitted); *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 504098, at *4 (N.D. Cal. Feb. 19, 2008) (stating "the rules of evidence have long permitted a person to testify to opinions about their own businesses based on their personal knowledge of their business"); *United States v. Maher*, 454 F.3d 13, 24 (1st Cir. 2006) ("Rule 701 . . . is meant to admit testimony based on the lay expertise a witness personally acquires through experience, often on the job."); *see also Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc.*, 84 F.3d 1186, 1193 (9th Cir. 1996) (corporation's general manager's personal knowledge of hiring events could be presumed).

Several of these objections rely on the application of the "sham affidavit rule," or the "general rule in the Ninth Circuit [] that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Invocation of that rule requires (1) "a factual determination that the [asserted] contradiction is a sham"; and (2) an "inconsistency between a party's deposition testimony and subsequent affidavit [that is] clear and unambiguous to justify striking the affidavit." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (citation omitted). The sham affidavit rule "should be applied with caution" given it "is in tension with the principle that a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir.

**CIVIL MINUTES – GENERAL**                                                    **8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                            Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

2009) (citation omitted).  With one exception,[5] the court does not find a "sham" contradiction or one of such clarity and unambiguity that justifies striking the challenged statements in the Voss and McClain Declarations.  *See Van Asdale*, 577 F.3d at 999 ("[T]he non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.") (alteration adopted) (quoting *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995)); *Yeager*, 693 F.3d at 1081 (cautioning that "newly-remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham") (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999)); *see also Kennedy*, 952 F.2d at 266-67 (clarifying that the sham affidavit rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony").

      2.     *Judicial Notice*

In support of his motion regarding Defendants' liability for copyright infringement, Plaintiff seeks judicial notice of five press releases hosted on Defendants' website and the terms of use for their website.  (Dkt. 45 ("First RJN").)  Defendants argue six of these seven webpages are not relevant because they relate to matters beyond the scope of the issues presented in this action, but do not contest judicial notice of Exhibit 2, a post on Defendant Penske Media Corporation announcing Variety's Launch of Dirt.com.  (*See* Dkt. 53-3.)

In support of his opposition to Defendants' motion regarding the number of works at issue, Plaintiff seeks judicial notice of three articles published on Defendants' website, which he asserts are relevant to the alleged use of his photographs.  (Dkt. 58 ("Second RJN").)

---

[5] Plaintiff's Objection No. 31 is **SUSTAINED**.  Mr. Voss testified at his deposition he has "run articles without pictures," (Dkt. 61-5 at 102:16-18); however, he subsequently stated in his declaration that "Dirt has always used photographs with its articles."  (Voss Decl. ¶ 8.)  The court finds this testimony meets the requirements for exclusion under the sham affidavit rule.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                          Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

Defendants also oppose this request, asserting the photographs are not relevant because they do not include the photographs Plaintiff alleges they have infringed.  (Dkt. 60-2.)

Courts may take judicial notice of facts that are "not subject to reasonable dispute" because (1) they are "generally known within the trial court's territorial jurisdiction" or (2) can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  As relevant here, facts taken from a party's website may be proper subjects for judicial notice so long as authenticity is not questioned.  *See Matthews v. NFL Mgmt. Council*, 688 F.3d 1107, 1113 n.5 (9th Cir. 2012).  But a court need not take judicial notice of irrelevant facts.  *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (declining to take judicial notice of materials "not relevant to the resolution" of the matter before the court").

Turning first to Plaintiff's First RJN, the court **GRANTS** Plaintiff's unopposed request as to Exhibit 2 and **DENIES** Plaintiff's opposed requests as to Exhibits 1 and 3-7.  Exhibit 2 is a statement from Defendants' website announcing the formation of Dirt's website, its authenticity is undisputed, and its admissibility is unopposed.  *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time.") (citations and internal quotation marks omitted).  However, the court agrees with Defendants that the remaining exhibits are not relevant to the Motion.  Exhibits 1, 4, 5, and 6 are announcements of licensing deals or business partnerships between Defendants and third parties in 2022, 2015, 2018, and 2014, respectively.  Exhibit 3 concerns Defendants' hiring of a photographer in 2015.  Exhibit 7 is a copy of the terms and conditions of Defendant Penske Media Corporation's website, as updated on March 16, 2022.  Each Exhibit concerns Defendants' business dealings with a nonparty to this litigation and with regard to matters separate from the alleged instances of copyright infringement asserted by Plaintiff.  None of them, therefore, materially bears on the court's analysis of the issues presented in the parties' motions.  Accordingly, the court will not take judicial notice of Exhibits 1 and 3-7 to Plaintiff's First RJN.  *See Santa Monica Food Not Bombs*, 450 at 1025 n.2.

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                          Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

Considering next Plaintiff's Second RJN, the court **DENIES** Plaintiff's opposed requests
as to Exhibits 1-3. The court agrees with Defendants that these are also irrelevant to the court's
analysis. These Exhibits are Dirt.com articles that are not the articles at issue in this case or
otherwise do not feature Plaintiff's photographs he claims Defendants infringed. Thus, they are
not relevant to the court's analysis below. Consequently, the court will not take judicial notice
of Exhibits 1-3 to Plaintiff's Second RJN. *See id.*

3.     *Relevant Background*

i.     *The Parties*

Plaintiff is a professional photographer specializing in residential and commercial
interiors, luxury real estate, and architecture. (Dkt. 83 ("Consolidated Statement of Facts") P
No. 2.)[6] His photos have been featured in numerous publications and media outlets, including
the Wall Street Journal, Los Angeles Times, and several others. (*Id.* P No. 3.)

PMC is one of the largest digital media and publishing companies in the world. (*Id.* P
No. 20.) In June 2014, PMC launched "Dirt," a new "section" focused on high end real estate
transactions through its Variety brand. (*Id.* P No. 20.) After page views on Variety's Dirt
column "were good" from 2014 through 2018, PMC explored creating a spinoff website to
"monetize it." (*Id.* P Nos. 26-27.) PMC then made Dirt its wholly owned subsidiary and added
"Dirt.com" to its portfolio of brands. (*Id.* P No. 28.)

---

[6] Unless otherwise noted with a parenthetical designation corresponding to the separate section
in the parties' Consolidated Statements of Facts (i.e., ("II") to designate citation to the facts
submitted in connection with Defendants' motion as to the number of works at issue), citations
to the record are to the parties' facts submitted in connection with their cross-motions as to fair
use and liability in the Consolidated Statement. The court relies on the underlying admissible
evidence supporting the parties' statements of facts rather than the parties' characterizations of
that evidence in its recitation of the record.

---

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

Defendants own, operate, and control Dirt.com, its related and affiliated subdomains, mobile websites, and applications (collectively, "PMC Website").  (*Id.* P No. 30.)  The PMC Website is commercial and features real estate-related content.  (*Id.* P No. 31.)  The PMC Website and the posts on its platform generate revenue from page views, advertisements, and syndication.  (*Id.* P Nos. 32-36.)

         *ii.*    *Plaintiff's Photography, Generally*

Plaintiff's clients include real estate companies, real estate agents, and interior designers.  (*Id.* P No. 4.)  The majority of these clients are real estate agents who retain Plaintiff to photograph a property to facilitate its sale.  (*Id.* D No. 103.)  Plaintiff has never been retained to photograph real estate for any purpose other than to facilitate the sale of a property or highlight an interior designer's work.  (*Id.* D No. 105.)  Plaintiff has received requests from Daily Mail, Redfin, Wall Street Journal, and Zillow.  (*Id.* D No. 113.)

Plaintiff's clients receive a limited license for authorized uses of Plaintiff's photographs, and any use beyond that scope requires additional permission.  (*Id.* P No. 5.)  As relevant here, where Plaintiff has authorized his clients to use his photos in connection with the sale of a property, he has subsequently provided separate licenses to media publications to use those photos in articles about those properties.  (*Id.* P No. 6.)  Plaintiff also requires permission and negotiates terms for use of his photographs on social media.  (*Id.* P No. 7.)

Plaintiff does not specifically photograph celebrities, though he has taken photographs of properties owned by celebrities.  (*Id.* D Nos. 101, 104.)  Generally, Plaintiff does not know whether the owner or buyer of a property he is retained to photograph is a celebrity.  (*Id.* D No. 108.)  He has, however, received requests to photograph properties owned by entertainers Kathy Griffin and Neal Patrick Harris.  (*Id.* D Nos. 113, 117.)  Plaintiff's other requests for permission to use his photographs have come from real estate agents.  (*Id.* D No. 113.)  Plaintiff does not affirmatively market his photographs to the media for licenses on an unsolicited basis.  (*Id.* D No. 116.)

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                           Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

Plaintiff does not "stage" his photographs by moving furniture or items in the property prior to taking pictures, but does determine the photographs' composition, lighting, framing, perspective, angles, lines, depth, foreground and background, and what equipment to use.  (*Id.* D No. 109.)  When Plaintiff's photographs are uploaded to a Multiple Listing Service ("MLS") in connection with a real estate listing, the MLS does not permit Plaintiff to receive a photo credit.  (*Id.* D Nos. 111-12.)

          *iii.*    *Defendants' Articles, Generally*

Dirt reports on real estate transactions involving celebrities and individuals prominent in business, entertainment, and other industries.  (*Id.* D No. 143.)  Per Mr. Voss and Mr. McClain, Dirt's co-founders and two of its writers, Dirt's articles are intended to provide a unique peek into those individuals' lifestyles through commentary and critique.  (*Id.* D No. 144.)

Dirt's writers discover that a public figure is involved in a real estate transaction through a variety of methods.  (*Id.* D No. 145.)  In certain instances, including with respect to two properties at issue here, real estate listings do not contain information on the identity of who bought or sold the property in the real estate listing or depicted in the related photographs.  (*Id.* D Nos. 146-47.)  Dirt's writers typically discover the identity of the public figure that is involved in the transaction by reviewing public records and utilizing third-party sources.  (*Id.* D No. 48.)

The PMC Website is run through and powered by WordPress.  (*Id.* P No. 37.)  Additionally, the posts that appear on the PMC Website are created in and published from WordPress.  (*Id.*)  Some of those posts include photographs.  (*See id.* P No. 38; Dkt. 61-5 at 102:16-18.)  The posts that use photographs consist of a "text side" and an "image side" (or "gallery"), which are separately created and published in WordPress.  (Consolidated Statement of Facts P No. 39.)

Generally, Dirt's articles follow a certain format: (1) a headline; (2) followed by the name of the writer and date of the article; (3) followed by an image of the featured property

**CIVIL MINUTES – GENERAL**

13

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

with an image of the public figure's face superimposed on the property ("Cover Picture"); (4) followed by thumbnails and, upon clicking the thumbnails, a photo gallery opens up that displays the various pictures of the property; (6) followed by data points, such as, the buyer/seller, and the property's location, sale price, square footage, the number of bedrooms and bathrooms and/or lot size; (7) followed by the text of the article, which is comprised of several paragraphs; (8) followed by the images of the property. (*Id.* D No. 155.) Dirt does not publish standalone galleries of photographs; however, a user can access photographs by themselves if the user knows the direct URL link to the photographs. (*Id.* D No. 156.)

A gallery created in WordPress has its own title, date and time stamp, and web address separate from the linked text. (*Id.* P No. 40.) In the gallery, a user can zoom in on the photographs to make them appear larger, up to their full resolution. (*Id.*) However, a user cannot view the photographs without also viewing the text article unless the user manually inputs the URL for the photograph itself. (*Id.* P Nos. 40, 42.)

Certain posts from the PMC Website that perform well and attract users to the website are promoted in Dirt newsletters. (*Id.* P Nos. 69, 71-72.) Those newsletters contain the "header photos"[7] from, and links to, the promoted posts. (*Id.* P No. 70.) They are distributed via email to individuals who sign up to receive them. (*Id.* P No. 73.) Similarly, certain posts that perform well and attract users are promoted on Dirt's social media channels. (*Id.* P Nos. 80, 82-83.) As with the newsletters, the social media posts contain the "header photos" from, and links to, the subject posts on the PMC Website. (*Id.* P No. 82.)

PMC also syndicates certain content from the PMC Website to other brands within PMC's portfolio as well as third parties pursuant to revenue-share agreements. (*Id.* P Nos. 85-86, 88-90, 95.)

       iv.    *Use of Plaintiff's Photographs in Defendants' Articles at Issue in this Case*

---

[7] "Header photos" are "feature images" of a property. (*See id.* P No. 51.)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

Vogts took and owns the 53 photographs at issue in this case ("Subject Photographs"), which are registered with the U.S. Copyright Office.  (*Id.* P Nos. 11-13.)  He authorized certain of his real estate agent clients to use those Subject Photographs for the limited purpose of marketing the properties by displaying them on an MLS, their property brochures, and other property listings.  (*Id.* P No. 14.)  Defendants accessed the subject photographs through the property listings on realtor.com and redfin.com.  (*Id.* P No. 15.)  Defendants did not obtain Plaintiff's authorization to use, display, or distribute the Subject Photographs.  (*Id.* P No. 16.)

          a.    *The Stanchfield Photographs and Article*

Plaintiff was hired by a real estate photographer to take photographs of a property located at 601 Seclusion Lane ("Stanchfield Property"), on a flat-fee basis.  (*Id.* D Nos. 119-20.)  When he took the photographs, Plaintiff did not know that Darby Stanchfield and Joseph Gallegos owned the Stanchfield Property, nor was he aware that they had careers in the entertainment industry.  (*Id.* D Nos. 121-22.)  Plaintiff also did not know how they acquired the property; how it was built; the agents involved in its sale; or its sale price.  (*Id.* D No. 122.)  Twenty of Plaintiff's photographs of the property, Subject Photographs 1-20 ("Stanchfield Photographs"), are at issue in this litigation.  (*See id.* P No. 53 (II); D No. 1 (II).)

Plaintiff registered the Stanchfield Photographs, in addition to 167 other photographs taken across six different properties, as a group of published photographs under a single copyright registration, Reg. No. VA 2-213-119.  (*Id.* P Nos. 26-28 (II).)  Each photograph is individually titled by date, address, and a sequential number.  (*Id.* D No. 3 (II).)  The Stanchfield Photographs all depict various areas of the Stanchfield Property.  (*Id.* P Nos. 32-33.)

Plaintiff only licensed the Stanchfield Photographs to the real estate agent to facilitate the Stanchfield Property's sale through real estate listings and marketing materials.  (*Id.* D No. 123.)  The Stanchfield Photographs were then posted on an MLS; Plaintiff did not ask for nor receive photo credit for the posting.  (*Id.* D No. 124.)  Plaintiff submits the photographs remain available for licensing in his declaration, but also testified at his deposition he did not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                              Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

license the Stanchfield Photographs to others or receive inquiries from other individuals seeking
to license them.  (*Id.* D No. 125.)

On August 6, 2020, Mr. Voss received an email from one of his sources that Ms.
Stanchfield recently sold the Stanchfield Property.  (*Id.* D No. 161.)  After reviewing the real
estate listings for the Stanchfield Property, Mr. Voss noted they did not contain information on
the property's owners or the Stanchfield Photographs' copyright owner.  (*Id.* D Nos. 162-63.)
The next day, Mr. Voss accessed the Stanchfield Photographs on realtor.com.  (*Id.* P No. 53.)
Mr. Voss accessed them by right-clicking on them, saving them, cropping out MLS watermarks
from the bottom righthand corners of them, changing their file names, and then uploading them
to Defendants' media servers.  (*Id.* P No. 54.)

At 12:24 p.m. that same day, that same day, Mr. Voss published a gallery of Subject
Photographs 1-20 on the PMC Website titled "'Scandal' Star Darby Stanchfield Sheds Glendale
Home."  (*Id.* P No. 55.)  At 12:45 p.m., Mr. Voss published the text side (i.e., a written article)
linked to that gallery titled "Darby Stanchfield Sells Secluded Glendale Traditional"
("Stanchfield Article").  (*Id.* P No. 56.)  The Stanchfield Article stated that Ms. Stanchfield
owned the Stanchfield Property with Mr. Gallegos; provided details about the couple's
entertainment industry careers; included its sale and original purchase prices; discussed its
location; described its size and features; listed the representative agents; and provided examples
of other properties owned by Ms. Stanchfield.  (*Id.* D No. 164.)  As noted, the Stanchfield
Article included a gallery of the Stanchfield Photographs.  (*Id.* D No. 165.)  Mr. Voss submits
he included the Stanchfield Photographs to provide readers with what he believed was a unique
insight into the lifestyles of Ms. Stanchfield and Mr. Gallegos, including contextualizing his
commentary and critique of the Stanchfield Property.  (*Id.* D No. 167.)  Mr. Voss submits he
used the twenty photographs he "believed were necessary" to do so.  (*Id.* D No. 168.)

b.   *The O'Dowd Photographs and Article*

As with the Stanchfield Photographs, Plaintiff was hired by a real estate photographer to
take photographs of a property located at 713 N. Alta Vista ("O'Dowd Property"), on a flat-fee

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

basis.  (*Id.* D Nos. 126-27.)  And, as before, Plaintiff did not know the O'Dowd Property was owned by Chris O'Dowd and Dawn O'Porter or that they had careers in the entertainment industry.  (*Id.* D No. 128.)  Plaintiff was also unaware of how the O'Dowd Property was acquired or its history.  (*Id.* D No. 129.)  Eighteen of Plaintiff's photographs of the property, Subject Photographs 21-38 ("O'Dowd Photographs"), are at issue in this litigation.  (*See id.* P No. 43 (II); D No. 9 (II).)

Plaintiff registered the O'Dowd Photographs, in addition to 540 other photographs, as a group of published photographs under a single copyright registration, Reg. No. VA 2-227-873.  (*Id.* P Nos. 36-38 (II).)  Each photo is individually titled by date, address, and a sequential number.  (*Id.* D No. 11 (II).)  The O'Dowd Photographs all depict various areas of the O'Dowd Property.  (*Id.* P Nos. 42-43 (II).)

Plaintiff only licensed the O'Dowd Photographs to the real estate agent to facilitate the sale of the O'Dowd Property through real estate listings and marketing materials.  (*Id.* D No. 130.)  Plaintiff did not ask for nor receive photo credit for the O'Dowd Photographs when they were posted on an MLS.  (*Id.* D No. 131.)  As with the Stanchfield Photographs, Plaintiff submits the photographs remain available for licensing in his declaration, but also testified at his deposition he did not license the O'Dowd Photographs to others or receive inquiries from other individuals seeking to license them.  (*Id.* D No. 132.)

On September 4, 2020, Mr. Voss received a tip from a source that Mr. O'Dowd and Ms. O'Porter were selling the O'Dowd Property.  (*Id.* D No. 171.)  Mr. Voss found the real estate listings for the O'Dowd Property, which did not state who owned the O'Dowd Property or the O'Dowd Photographs' copyright owner.  (*Id.* D Nos. 172-73.)  Later, on September 15, 2020, Mr. Voss accessed the O'Dowd Photographs from redfin.com and saved, cropped, and uploaded them in the same manner as the Stanchfield Photographs.  (*Id.* P Nos. 57-58.)

At 4:52 p.m. that day, Mr. Voss published a gallery of the O'Dowd Photographs on the PMC Website titled "Look Around Chris O'Dowd's L.A. Bungalow."  (*Id.* P No. 59.)  Three minutes later, he published a text side linked to that gallery and titled it "Chris O'Dowd, Dawn

_____

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                          Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

O'Porter List Melrose District Bungalow" ("O'Dowd Article"). (*Id.* P No. 60.)  The O'Dowd Article stated that Mr. O'Dowd and Ms. O'Porter owned the O'Dowd Property; provided details about their entertainment industry careers; specified the date it was built; its purchase price, size, and listing agents; and opined on its features and the new property Mr. O'Dowd and Ms. O'Porter acquired. (*Id.* D No. 174.)  As with the Stanchfield Article, Mr. Voss submits he included the O'Dowd Photographs to provide readers a unique insight into the lifestyles of Mr. O'Dowd and Ms. O'Porter, as well his commentary and critique of the Williams Property. (*Id.* D No. 177.)  Mr. Voss states he used the eighteen photographs he "believed were necessary" to achieve those purposes. (*Id.* D No. 178.)

c.   *The Williams Photographs and Article*

As was the case with the previous two sets of photographs, Plaintiff was hired by a real estate photographer to take photographs of a property located at 4047 Dixie Canyon Ave. ("Williams Property"), on a flat-fee basis. (*Id.* D Nos. 136-37.)  Plaintiff did not know that Zak Williams, actor Robin William's son, had bought the Williams Property. (*Id.* D No. 139.)  Fifteen of Plaintiff's photographs of the property, Subject Photographs 39-53 ("Williams Photographs"), are at issue in this litigation. (*See id.* P No. 53 (II); D No. 17 (II).)

Plaintiff registered the Williams Photographs, in addition to 529 other photographs, as a group of published photographs under a single copyright registration, Reg. No. VA 2-227-873. (*Id.* P Nos. 51-53 (II).)  Each photo is individually titled by date, address, and a sequential number. (*Id.* D No. 19 (II).)  The Williams Photographs all depict various areas of the Williams Property. (*Id.* D No. 21 (II).)

As with the preceding sets of photographs, Plaintiff only licensed the Williams Photographs to the real estate agent to facilitate the sale of the Williams Property through real estate listings and marketing materials, and did not ask for nor receive photo credit when they were posted on an MLS. (*Id.* D Nos. 140-41.)  And, as previously, Plaintiff submits the photographs remain available for licensing in his declaration, but also testified at his deposition

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

he did not license the Williams Photographs to others or receive inquiries from other individuals seeking to license them.  (*Id.* D No. 142.)

While reviewing public records "[s]hortly prior" to March 10, 2021, Mr. McClain discovered Zak Williams purchased the Williams Property.  (*Id.* D No. 182.)  Mr McClain then found the real estate listings for the Williams Property, which, as above, did not state who owned the Williams Property or who held the copyright to the Williams Photographs.  (*Id.* D Nos. 183-84.)  On or about March 10, 2021, Mr. McClain accessed the Williams Photographs from redfin.com and saved, cropped, and uploaded them in the same manner as the Stanchfield and O'Dowd Photographs.  (*Id.* P Nos. 61-62.)

The same day, Mr. McClain published a gallery of the Williams Photographs on the PMC Website, and then published a text side linked to that gallery titled "Robin Williams' Son Zak Buys French Country-Inspired L.A. Villa" ("Williams Article").  (*Id.* P Nos. 63-64.)  The Williams Article discussed Zak's purchase of the Williams Property, his background, father, and inheritance; how much he paid for the Williams Property; features of the Williams property and its neighborhood; when the Williams Property was built; and its size.  (*Id.* D No. 185.)  Like the preceding articles, Mr. McClain submits he included the Williams Photographs to provide readers a unique insight into the lifestyle of Zak Williams as well his commentary and critique of the Williams Property, and that he used the fifteen photographs he "believed were necessary" to do so.  (*Id.* D Nos. 188-89.)

> d.   *Elements Common to Each Article and the Subject Photographs*

Each of the above articles' "text side" and gallery were created and published separately.  (*Id.* P Nos. 44-45.)  Each also included a "header photo," which were Subject Photographs 1, 32, and 40.  (*Id.* P No. 51.)  Dirt licensed headshots of the individuals that were discussed in the text sides of those posts, which were superimposed over the "header photos" of Subject Photographs 1, 32, and 40.  (*Id.* P No. 52.)

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

Each of the articles were promoted in a Dirt newsletter.  (*Id.* P No. 74.)  Those newsletters displayed Subject Photographs 1, 32, and 40, respectively (i.e., the header photos from the posts displaying the Subject Photographs), and were distributed via email to subscribers as detailed above.  (*Id.* P Nos. 76-79.)  All three posts were also distributed to PMC's third-party syndication partners.  (*Id.* P Nos. 91-94.)  Additionally, the post featuring the Williams Article and Photographs was promoted on Dirt's Twitter and Facebook pages on March 12, 2021, with those social media posts displaying a copy of Subject Photograph 40.  (*Id.* P No. 84.)  Plaintiff was not credited or otherwise mentioned by Defendant in connection with these uses.  (*Id.* P No. 95.)

Plaintiff submits he titled the Subject Photographs in the with reference to date, address, and an individual number to stay organized and not for an artistic purpose.  (*Id.* P Nos. 24, 44, 54, 56-58.)  He took each photograph individually.  (*Id.* P Nos. 65, 67.)  Plaintiff invoiced his photos of different aspects of the Stanchfield, O'Dowd, and Williams Properties as line items by category, such as "twilight photos" or "real estate listing photos," but did not break them out on a per-photo basis.  (*Id.* P Nos. 61-62, 64, 66.)

Plaintiff's photography, including the Subject Photographs, are available for licensing on an individual basis, though Defendants emphasize that the record is deficient as to both how those licensing opportunities are communicated to third parties and instances in which Plaintiff subsequently licensed photographs commissioned by real estate professionals.  (*Id.* P No. 70.)  However, Plaintiff notes he "promotes a 'portfolio' of selections of [his] photos" on his website, categorized as "exteriors," "interiors," and "details."  (*Id.* P No. 71.)  Each of these categories, as their respective names suggest, includes pictures of the exteriors of different properties, their interiors, or design elements like libraries or kitchens.  (*Id.* P Nos. 72-74.)

>          *v.*      *Relevant Procedural History*

The court held oral argument on these matters on May 4, 2023.  (Dkt. 67.)  While they were submitted, the Ninth Circuit and the Supreme Court issued *VHT, Inc. v. Zillow Grp., Inc.* ("*Zillow III*"), 69 F.4th 983 (9th Cir. 2023) and *Andy Warhol Found. for the Visual Arts, Inc. v.*

---

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                           Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

*Goldsmith*, 143 S. Ct. 1258 (2023), respectively.  Pursuant to Plaintiff's unopposed request to brief the import of these cases on the instant motions, the court ordered the parties to submit supplemental briefing on June 9, 2023.  (Dkt. 96.)  The court has since received those submissions, (Dkts. 99-101), and now proceeds to the merits of the parties' motions.

B.      Legal Standard for Rule 56 Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the case, and the "substantive law [] identif[ies] which facts are material."  *Id.*  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*

The moving party bears the initial burden of identifying the elements of the claim or defense on which summary judgment is sought and evidence that it believes demonstrates the absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party will have the burden of proof at trial, the movant can satisfy its initial burden by demonstrating that there is an absence of evidence to support the non-moving party's case.  *Id.* at 325; *see also Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ("The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.").

The non-moving party then "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (citation omitted); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (In opposing summary judgment, "the non-moving party must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial'"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir. 1990) ("The non-moving party may not oppose summary judgment by allegations but must

---

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

show specific trial-worthy facts.").  "Where the record taken as a whole could not lead a
rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat.
Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  "In judging evidence at the
summary judgment stage, the court does not make credibility determinations or weigh
conflicting evidence."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).
The court must draw all reasonable inferences in the non-moving party's favor.  *In re Oracle
Corp.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 255).

Nevertheless, "inferences are not drawn out of thin air, but from evidence."  *Richards v.
Nielsen Freight Lines*, 602 F. Supp. 1224, 1247 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.
1987).  "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists"
does not preclude summary judgment.  *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.
1989).  "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is,
if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."
*Anderson*, 477 U.S. at 248 (internal quotation marks omitted).  "By its very terms, this standard
provides that the mere existence of some alleged factual dispute between the parties will not
defeat an otherwise properly supported motion for summary judgment; the requirement is that
there be no genuine issue of material fact."  *Id.* at 247-48; *see also United States v. Fred A.
Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978) ("A summary judgment cannot be granted if a
genuine issue as to any material fact exists.").

In *In re Oracle Corp.*, the Ninth Circuit described the burdens of proof in the summary
judgment process:

The moving party initially bears the burden of proving the absence of a genuine issue
of material fact.  Where the non-moving party bears the burden of proof at trial, the
moving party need only prove that there is an absence of evidence to support the
non-moving party's case.  Where the moving party meets that burden, the burden
then shifts to the non-moving party to designate specific facts demonstrating the
existence of genuine issues for trial.  This burden is not a light one.  The non-moving

---

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

party must show more than the mere existence of a scintilla of evidence.  The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue.  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor.

627 F.3d at 387 (citations omitted).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (citation omitted).  "Where no such showing is made, the moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Id.* (cleaned up).

C.    Discussion

1.    *Copyright Infringement*

A prima facie case of direct copyright infringement requires a plaintiff to demonstrate (1) ownership of the allegedly infringed material and (2) that the alleged infringer(s) committed an act of copying the material by violating an exclusive right granted to the plaintiff under 17 U.S.C. § 106.  *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017).  Direct infringement requires the plaintiff to show "volitional conduct" by the alleged infringer.  *VHT, Inc. v. Zillow Grp., Inc.* (*Zillow I*), 918 F.3d 723, 731-32 (9th Cir. 2019).  For its part, "the word 'volition'" in the context of direct infringement "does not really mean an 'act of willing or choosing' or an 'act of deciding,'" but instead "simply stands for the unremarkable proposition

---

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

that proximate causation historically underlines copyright infringement liability no less than
other torts." *Giganews*, 847 F.3d at 666 (citations omitted).

   A plaintiff is "required to show registration as an element of an infringement claim."
*Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017) (citations omitted);
*see also Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019)
("[A]lthough an owner's rights exist apart from registration, registration is akin to an
administrative exhaustion requirement that the owner must satisfy before suing to enforce
ownership rights.") (citations omitted).  "A certificate of registration from the U.S. Copyright
Office raises the presumption of copyright validity and ownership." *Unicolors*, 853 F.3d at 988
(citation omitted); *see also* 17 U.S.C. § 410(c).

   Defendants do not dispute that Plaintiff has established a prima facie case of direct
infringement; they instead argue their asserted copying qualifies as fair use.  (*See generally* Dkt.
62.)  Accordingly, the court briefly addresses these threshold requirements.  The record
demonstrates that the Subject Photographs are registered with the U.S. Copyright Office as a
group across three different registrations.  Accordingly, the registration requirement and
ownership element are satisfied.  *See Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir.
1998) (stating a "copyright registration creates a presumption of ownership") (citation omitted).
It is likewise undisputed that Defendants accessed the Subject Photographs from a website,
saved them, cropped them in minor respects, and uploaded them to the PMC Website for public
viewing alongside the Stanchfield, O'Dowd, and Williams Articles.  As such, Plaintiff has
shown at least the infringement of his right to create derivative works based on the preexisting
Subject Photographs, *see* 17 U.S.C. § 101, and that the volitional conduct element applicable to
direct infringement is met, *see Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1081-82 (9th
Cir. 2021) (holding defendant that managed a website that hosted copyrighted photograph on
the website's servers in a manner accessible to the public was "plainly volitional for purposes of
copyright infringement" where the website "did not merely function as an online platform
where third-party users independently upload and share materials" but also "assum[ed]
responsibility for and maintaining the server"); *see also Unicolors*, 853 F.3d at 987 ("Where the
extrinsic similarity is so strong that the works are near duplicates save for superficial

_____

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                            Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

differences, the court may properly conclude that no reasonable jury could find that the works
are not substantially similar in their overall concept and feel.")  Having found Plaintiff has
established a prima facie case of infringement, the court turns to the essence of the parties'
dispute: which party, if any, is entitled to summary judgment on the issue of fair use.

  2. *Fair Use*

  "[T]he fair use of a copyrighted work, including such use by reproduction in copies or
phonorecords or by any other means specified by that section, for purposes such as criticism,
comment, news reporting, teaching (including multiple copies for classroom use), scholarship,
or research, is not an infringement of copyright."  17 U.S.C. § 107.  "To determine whether a
work constitutes fair use, [courts] engage in a case-by-case analysis and a flexible balancing of
relevant factors."  *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 800 (9th Cir. 2003)
(citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994)).  These four factors are:

  (1) the purpose and character of the use, including whether such use is of a
  commercial nature or is for nonprofit educational purposes;
  (2) the nature of the copyrighted work;
  (3) the amount and substantiality of the portion used in relation to the copyrighted
  work as a whole; and
  (4) the effect of the use upon the potential market for or value of the copyrighted
  work.

17 U.S.C. § 107.  Though "fair use is a mixed question of law and fact," the court may decide
fair use as a matter of law so long as no material "historical facts" are disputed even if the
parties disagree on "the ultimate conclusions to be drawn from the admitted facts."  *Fisher v.
Dees*, 794 F.2d 432, 436 (9th Cir. 1986) (citing *Harper & Row Publishers, Inc. v. Nation
Enters.*, 471 U.S. 539 560 (1985)).

  a. *First Factor*

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                              Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

"[T]he first factor assesses the character of the use, including whether it is commercial in nature, and, critically, whether it is 'transformative.'" *Zillow I*, 918 F.3d at 742. The "central purpose" of this inquiry is to see "whether the new work merely supersedes the objects of the original creation or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. at 579 (cleaned up). The first factor "asks whether and to what extent the use at issue has a purpose or character different from the original. The larger the difference, the more likely the first factor weighs in favor of fair use." *Andy Warhol Found.*, 143 S. Ct. at 1274-75.

In *Andy Warhol Found.*, Lynn Goldsmith, a professional photographer, took photographs of Prince Rogers Nelson, then an "up and coming" musician, one of which she licensed to Vanity Fair for one publication in its November 1984 issue. 143 S. Ct. at 1266-67. Andy Warhol, a well-known artist, created an illustration from that photograph per Vanity Fair's request, in addition to fifteen other works based on the photograph. *Id.* at 1268. At issue in *Andy Warhol Found.* was one of those Warhol works, "Orange Prince," which "crops, flattens, traces, and colors the [Goldsmith] photo but otherwise does not alter it." *Andy Warhol Found.*, 143 S. Ct. at 1270. In 2016, Goldsmith sued the Andy Warhol Foundation for infringement of her photograph based on its commercial licensing of Orange Prince to Condé Nast. *Id.* at 1277-78.

The Supreme Court ultimately found that the first fair use factor, the "purpose and character of the use," favored Goldsmith and did not reach the remaining factors. *Id.* at 1272, 1287. At the outset, the Court noted "new expression may be relevant to whether a copying use has a sufficiently distinct purpose or character," but "it is not, without more, dispositive of the first factor." *Id.* at 1273. The Court first found that the Foundation's use was of a commercial nature, which weighed against fair use, because it, like Goldsmith, licensed the work to a magazine for profit. *Id.* at 1278-80. The Court distinguished from Warhol's iconic prints based on Campbell's soup cans, noting they "use[d] Campbell's copyrighted work for an artistic commentary on consumerism, a purpose that is orthogonal to advertising soup." *Id.* at 1281.

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                          Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

The Supreme Court then considered the Foundation's argument Orange Prince had a "new meaning or message" which militated towards a finding of fair use. *Id.* While acknowledging that "*Campbell* did describe a transformative use as one that 'alter[s] the first [work] with new expression, meaning, or message,'" *id.* at 1282 (quoting 510 U.S. at 579), the Court cautioned that "*Campbell* cannot be read to mean that § 107(1) weighs in favor of any use that adds some new expression, meaning, or message," *id.* Instead, "the meaning of a secondary work, as reasonably can be perceived, should be considered to the extent necessary to determine whether the purpose of the use is distinct from the original, for instance, because the use comments on, criticizes, or provides otherwise unavailable information about the original." *Id.* at 1284.

Applying the standard to the facts of the case, the Supreme Court acknowledged that "Orange Prince reasonably can be perceived to portray Prince as iconic, whereas Goldsmith's portrayal is photorealistic" but emphasized that such "difference must be evaluated in the context of the specific use at issue." *Id.* at 1284. The Court noted that the "purpose of [the] use [was], still, to illustrate a magazine about Prince with a portrait of Prince," and the difference between "illustrating a magazine about Prince with a portrait of Prince" and "portray[ing] Prince somewhat differently from Goldsmith's photograph" with "no [attendant] critical bearing on her photograph" was "not enough" to favor the Foundation. *Id.* at 1284-85.

*Andy Warhol Found.* is, at minimum, factually similar to this case. Here, Plaintiff, a professional photographer, asserts Defendants infringed his copyright in the Subject Photographs by accessing them from real estate listing website, minorly cropping them, and publishing them on their website next to articles discussing the properties and their owners' lives. Defendants posted the articles and galleries on the PMC website, and, like Plaintiff's licensing to real estate agents for use on the MLS listings, generated revenue by displaying them to the public. Thus, the undisputed evidence demonstrates Defendants' use of the Subject Photographs was for a commercial purpose. *See id.* at 1278-80; *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1158 (9th Cir. 2022) ("For-profit news articles are generally considered commercial uses.") (citation omitted). However, this case does vary from *Andy Warhol Found.* in certain respects. Defendants have not changed the portrayal of the photographs themselves;

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

that is, the images Defendants used in the Stanchfield, O'Dowd, and Williams Articles are
essentially carbon copies of the Subject Photographs. And they have produced evidence
supporting their argument that they have transposed them to a different context than Plaintiff's
business, i.e., from portrayals of houses for properties of their sale to commentary on the
lifestyles of various celebrities.

But that stated, Defendants' use does not comment on Plaintiff's *photographs* at all. In
*Andy Warhol Found.*, the Court noted that, notwithstanding the susceptibility of interpreting
Warhol's works as commenting on celebrities by "depicting them [as] commodities," this
"asserted commentary is at *Campbell*'s lowest ebb." *Id.* at 1285. Crucially, the court reasoned
that, "[b]ecause it 'has no critical bearing on" *Goldsmith's* photograph, [that] commentary's
'claim to fairness in borrowing from' her work 'diminishes accordingly (if it does not vanish).'"
*Id.* (quoting *Campbell*, 510 U.S. at 580). So too, here. Crediting Defendants' assertion their
use provides unique commentary, criticism, and discussion, the court nevertheless places little
value on this messaging because they are untethered from the Subject Photographs themselves.
*See id.* n.21 (noting "targeting" of commentary is important given the "first factor's attention to
justification").

The court makes one final observation. The Supreme Court in *Andy Warhol Found.*
warned against a situation implicated here: "[a]s long as the user somehow portrays the subject
of the photograph differently, he could make modest alterations to the original, sell it to an
outlet to accompany a story about the subject, and claim transformative use." *Id.* at 1285. That
is essentially what the undisputed facts in this case show. Dirt's authors made minor alterations
to Plaintiffs' photographs, accompanied them alongside articles describing the authors, and now
seek to claim their use was transformative. In light of the Supreme Court's recent guidance in
*Andy Warhol Found.* and established fair use precedent, the court finds the purpose and
character of Defendants' use clearly favors Plaintiff, difference in context notwithstanding. *See
also De Fontbrune v. Wofsy*, 39 F.4th 1214, 1225 (9th Cir. 2022) ("Adding informative captions
does not necessarily transform copyrighted works."); *Monge v. Maya Mags., Inc.*, 688 F.3d
1164, 1174 (9th Cir. 2012) ("[N]either minor cropping nor the inclusion of headlines or

---

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                                        Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

captions transformed the copyrighted works."); *McGucken*, 42 F.4th at 1158 (holding article did
"not meaningfully transform the photos by embedding them within the text of the article").

      b.  *Second Factor*

The second factor, the nature of the copyrighted work, turns on whether the work is
informational or creative.  *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227
F.3d 1110, 1118 (9th Cir. 2000).  That is because "creative works are closer to the core of
intended copyright protection than informational and functional works."  *Tresóna Multimedia,
LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 650 (9th Cir. 2020) (citation and
internal quotation marks omitted).  Whether a work is published or unpublished is also relevant
under this factor, in that "the scope of fair use is narrower with respect to unpublished works."
*Harper & Row*, 471 U.S. at 564.

The undisputed evidence shows Plaintiff, a professional photographer, took the Subject
Photographs and determined their features such as their composition, lighting, framing,
perspective, angles, lines, depth, foreground, and background.  Accordingly, they are creative
works within the meaning of second factor.  *See Zillow I*, 918 F.3d at 743 ("[P]hotographers'
images are creative, especially when they are created for public viewing.") (citing *Perfect 10,
Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1167 (9th Cir. 2007) and *Kelly v. Arriba Soft Corp.*,
336 F.3d 811, 820 (9th Cir. 2003)); *see also Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1119 (9th
Cir. 2018) (describing "creative choices" of photographs as those "related to subject matter,
pose, lighting, camera angle, depth of field, and the like") (citation omitted), *overruled on other
grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir.
2020).

However, this factor "operates 'with less force'" in favor of Plaintiff because it is
undisputed that Defendants pulled each of the Subject Photographs from an MLS listing, i.e.,
each was published.  *See Zillow I*, 918 F.3d at 744 (citing *Kelly*, 336 F.3d at 820).  So, this
factor favors Plaintiff and further cuts against a finding of fair use, but "only slightly."  *See id.*

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

c. *Third Factor*

The third factor asks whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586 (quoting 17 U.S.C. § 107(3)). The "extent of permissible copying varies with the purpose and character of the use." *Id.* at 586-87; *see also Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1205 (2021) ("[E]ven a small amount of copying may fall outside of the scope of fair use where the excerpt copied consists of the 'heart' of the original work's creative expression. On the other hand, copying a larger amount of material can fall within the scope of fair use where the material copied captures little of the material's creative expression or is central to a copier's valid purpose.") (citations and some internal quotation marks omitted). Courts "examine both the quantitative and qualitative aspects of the portion of the copyrighted material taken." *Monge*, 688 F.3d at 1179. Generally, "copying an entire work militates against a finding of fair use." *Zillow I*, 918 F.3d at 744 (quoting *Worldwide Church of God*, 227 F.3d at 1118). However, "this factor will not weigh against an alleged infringer, even when [they] cop[y] the whole work, if [they] take[] no more than is necessary for [their] intended use." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013) (citing *Kelly*, 336 F.3d at 820-21).

Quantitatively, Defendants selected a subset of each of Plaintiff's total photography of the Stanchfield, O'Dowd, and Williams Properties. Specifically, Defendants used 20 of Plaintiff's 187 photographs of the Stanchfield Property; 18 of Plaintiff's 558 photographs of the O'Dowd Property; and 15 of Plaintiff's 544 photographs of the Williams Property. However, it is undisputed that Defendants used essentially the entirety of the Subject Photographs taken by Plaintiff, and aside from minor cropping, left the pictures of the Stanchfield, O'Dowd, and Williams Properties intact. "Qualitatively, the minimal cropping of each picture demonstrates that the 'heart' of each individual copyrighted picture was published." *Monge*, 688 F.3d at 1178. Defendants, pointing to the Voss and McClain Declarations, maintain that the two took no more than was "necessary" for their intended use in creating the respective articles. In particular, Defendants principally point to their statements that the two used the amount of photographs they "believed were necessary" to "effectively provide readers a unique . . . insight

_____

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

into the lifestyle" of the properties' celebrity owners, as well as to "contextualiz[e] [their] commentary and critique" of the properties.  (McClain Decl. ¶ 16; Voss Decl. ¶¶ 14, 21.)

However, these conclusory statements do not establish the necessity of the total use of the Subject Photographs.  *Monge* is instructive.  In that case involving news provider covering a clandestine wedding of two celebrities, the Ninth Circuit held the defendant's "reporting purpose could have been served through publication of the couple's marriage certificate or other sources rather than copyrighted photos."  *Monge*, 688 F.3d at 1179.  Even assuming photographs were necessary, the panel noted that "one clear portrait depicting the newly married couple in wedding garb with the priest would certainly have sufficed to verify the clandestine wedding."  *Id.*  Here, Mr. Voss and McClain maintain they only used the number of photographs they believed was necessary to maintain their message.  But their statements are conclusory; they have not sufficiently explained *why* they needed to use 20, 18, and 15 photographs of the Stanchfield, O'Dowd, and Williams Properties, respectively, to critique and comment on those properties, or *why* any was necessary to comment on their owners' separate lifestyles.  *See McGucken*, 42 F.4th at 1162 (reasoning, as to article incorporating twelve of the plaintiff's photographs, that "[e]ven assuming [Defendants] [were] justified in using some portion of the photos, copying the entirety of twelve of them would be far more than was necessary") (citation and internal quotation marks omitted); *see also F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir.1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.") (citations omitted).

Accordingly, because Defendants copied the "heart" of 53 of Plaintiff's photographs for use across three articles and have not adequately demonstrated justification for doing so, the third factor favors Plaintiff.  *See Monge*, 688 F.3d at 1180 (holding that, even if treating "the grouping of wedding photos" as a "compilation," the defendant's "use was not just substantial, it was total" and therefore the third factor weighed "decisively" against fair use); *McGucken*, 42 F.4th at 1163 (finding defendant "copied extensively without justification" in similar circumstances and concluding the factor weighed against fair use).

---

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                                      Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

d.  *Fourth Factor*

The fourth fair use factor concerns "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).  "The Supreme Court declared in *Harper & Row* that '[t]his last factor is undoubtedly the single most important element of fair use,'" *Monge*, 688 F.3d at 1180 (citing 471 U.S. at 566), though the Court has also stated that "[m]arket harm is a matter of degree, and the importance of this factor will vary, not only with the amount of harm, but also with the relative strength of the showing on the other factors," *Campbell*, 510 U.S. at 590 n.21.  Where "the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred."  *Monge*, 688 F.3d at 1181 (quoting *Campbell*, 510 U.S. at 591); *see also SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013) ("Where the secondary use is not a substitute for the original and does not deprive the copyright holder of a derivative use, the fourth factor weighs in favor of fair use.") (citing *Campbell*, 510 U.S. at 591).  "However, a presumption of market harm 'makes common sense[] when a commercial use amounts to mere duplication of the entirety of an original.'" *Monge*, 688 F.3d at 1181 (quoting *Campbell*, 510 U.S. at 591).  Accordingly, "the market harm analysis is affected by whether the harm is caused by commercial use of a mere duplicate or by commercial use post-transformation."  *Id.* (citation omitted).

Defendants reference evidence that Plaintiff has only received two inquiries, in 2014 and 2016, to photograph celebrity residences for the purpose of promoting the properties, and otherwise only takes pictures on behalf of real estate professionals for the purpose of marketing and sale.  Defendants emphasize, therefore, that Plaintiff's business is licensing photographs of real estate properties for their sale through real estate professionals and is not engaged in the market of licensing photographs for articles providing critique and commentary on celebrities' lifestyles.  However, Plaintiff urges that the more relevant considerations are the effect on the potential market for Plaintiff to license the photographs, including the evidence that Plaintiff currently licenses photographs for a limited purpose and accordingly usurps Plaintiff's ability to control the licensing of his photographs.

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

Ultimately, the evidence Defendants rely on tends to show Plaintiff has not historically licensed his photographs to individuals or entities in the business of providing commentary on celebrity lifestyles. However, "[t]o defeat a fair use defense, 'one need only show that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work.'" *Zillow I*, 918 F.3d at 744 (quoting *Harper & Row*, 471 U.S. at 568); *but see* Pierre N. Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1124 (1990) ("By definition every fair use involves some loss of royalty revenue because the secondary user has not paid royalties.").

Thus, although Plaintiff has little evidence of demand or precedent for licensing his photographs for use specifically in celebrity-focused articles, he has produced evidence of limited business inquiries to photograph celebrity properties, which is sufficient to establish the market is "more than hypothetical." *See Zillow I*, 918 F.3d at 744 (holding that licensing "a handful of photos" established the "market was more than 'hypothetical'"). Regardless, similar Ninth Circuit precedent instructs that widespread reproduction of copyrighted photographs in news articles, even if unrelated in subject matter to the plaintiff's primary licensing clients, would damage the plaintiff's market to license those photographs. *See Monge*, 688 F.3d at 1182 ("Unrestricted and widespread reproduction of [Defendants'] conduct would not only undermine the ability of celebrities to market images of [their properties], but would also create incentives to pirate intellectual property."); *McGucken*, 42 F.4th at 1163 (stating defendant's conduct, "[i]f carried out in a widespread and unrestricted fashion . . . would destroy [plaintiff's] licensing market" where defendant "made the same use of [the] photos as the publications that obtained licenses," i.e., "copying them in an online article"). Moreover, "where the allegedly infringing use is both commercial and non-transformative, a presumption of market harm arises." *De Fontbrune*, 39 F.4th at 1226 (citing *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 861 (9th Cir. 2017)). "Nor does the decision by secondary users to pay, or not pay, establish whether fair use exists." *Tresóna*, 953 F.3d at 652 (citing *Campbell*, 510 U.S. at 585 n.18).

Additionally, Defendants have not produced expert reports or economic analyses indicting the potential market effect Defendants' use has on the Plaintiff's potential ability to

---

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                                      Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

license his photography of real estate residences.  It is Defendant's burden, "as the proponent of
the affirmative defense of fair use," to "bring forward favorable evidence about relevant
markets."  *See Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020)
(citation and internal quotation marks omitted); *see also Campbell*, 510 U.S. at 590 ("Since fair
use is an affirmative defense, its proponent would have difficulty carrying the burden of
demonstrating fair use without favorable evidence about relevant markets.").  As noted,
Defendants' evidence generally concerns *Plaintiff's* participation in the market for photograph
copyright licenses rather than data materially relating to that market itself.

In light of the foregoing considerations, the court concludes the fourth factor favors
Plaintiff.

e.  *Conclusion*

"[T]he four statutory fair use factors may not 'be treated in isolation, one from another.
All are to be explored, and the results weighed together, in light of the purposes of copyright.'"
*Andy Warhol Found.*, 143 S. Ct. at 1287 (quoting *Campbell*, 510 U.S. at 578).  In that respect,
the Copyright Act "reflects a balance" between the "competing claims upon the public interest"
of "encourag[ing] and reward[ing]" creative work and ensuring "private motivation []
ultimately serves the cause of promoting broad public availability of literature, music, and the
other arts."  *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975); *see also
Stewart v. Abend*, 495 U.S. 207, 236 (1990) (fair use "is an equitable rule of reason" that
"permits courts to avoid rigid application of the copyright statute when, on occasion, it would
stifle the very creativity which that law is designed to foster") (citations and internal quotation
marks omitted).

In sum, based on the record before the court, all four fair use factors favor Plaintiff.  The
court finds no principled reason to deviate from the weight of the statutory factors and therefore
concludes Plaintiff has adequately shown Defendant's fair use defense fails as a matter of law.
*See, e.g.*, *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008) ("Fair use is a
mixed question of law and fact, but it is well established that a court can resolve the issue of fair

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                                  Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

use on a motion for summary judgment when no material facts are in dispute.").  Consequently, Plaintiff's Motion for Summary Judgment as to Defendants' Liability for Copyright Infringement (Dkt. 44) is **GRANTED** and Defendant's Motion for Summary Judgment under the Doctrine of Fair Use (Dkt. 53) is **DENIED**.

3.    *Number of Works*

As noted, Defendants seek summary judgment that Plaintiff is entitled to only three awards under the Copyright Act's statutory damages provision, asserting each of the Stanchfield, O'Dowd, and William Photographs, is a single compilation.  (Dkt. 43.)  Plaintiff maintains each individual photograph is a standalone work entitled to a separate award.  (Dkt. 57.)

In lieu of actual damages, the Copyright Act permits a copyright holder to seek "an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000."  17 U.S.C. § 504(c)(1); *see also Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1271 (9th Cir 2021) ("Statutory damages are available in order to effectuate two purposes underlying the remedial provisions of the Copyright Act: to provide adequate compensation to the copyright holder and to deter infringement.") (quoting *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1554 (9th Cir. 1989)).  "This provision ties statutory damages to the term 'work,' which is undefined, except in a circular manner: copyright law protects 'original works of authorship.'"  *Zillow I*, 918 F.3d at 747 (citing 17 U.S.C. § 102(a)).

The Copyright Act defines a compilation as "work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole."  17 U.S.C. § 101.  For purposes of a statutory damages award, "all the parts of a compilation or derivative work constitute one work."  *Id.* § 504(c)(1).

---

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

"The question of whether a work constitutes a 'compilation' for the purposes of statutory damages pursuant to Section 504(c)(1) of the Copyright Act is a mixed question of law and fact." *Zillow I*, 918 F.3d at 747 (quoting *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 140 (2d Cir. 2010)). "The independent economic value" of the work "informs [the court's] analysis," and "the form of registration may be considered," but "neither factor is dispositive." *Zillow III*, 69 F.4th at 988.

*Zillow I* and *Zillow III* provide useful guidance in this case. There, Zillow, an online real estate marketplace, sourced photographs from VHT, a company that provides professional photographs of new listings to its clients for marketing purposes. *Zillow I*, 918 F.3d at 730. VHT alleged Zillow infringed its copyrights in those photographs by using them on one of Zillow's online platforms. *Id.* As relevant here, VHT alleged infringement of numerous photographs that displayed different properties listed on Zillow's website, asserting Zillow infringed on VHT's copyrights by also listing the photographs on its platform "geared toward home improvement and remodeling," thus exceeding the scope of VHT's licenses with brokers, agents, and listing services who provided the photographs to Zillow's separate listing platform. *Id.* at 703, 732. "[T]housands" of VHT's photographs were registered as "compilations" with the Copyright Office. *Id.* at 747.

In *Zillow I*, the Ninth Circuit noted that both whether individual copyrighted works have "independent economic value" or are registered as a group with the Copyright Office as a "compilation" are factors courts may consider in assessing whether a work is a compilation, but neither is dispositive. 918 F.3d 723, 747-48. The Ninth Circuit made no determination on the compilation issue on appeal in *Zillow I*, remanding to the district court for further proceedings. *Id.* at 748.

The inquiry resurfaced on appeal recently, however, in *Zillow III*. In that opinion, the panel noted the photographs at issue "were created at the request of a listing agent or broker, then licensed and published to that agent or broker for marketing an individual listing" and were licensed on an individual basis. *Zillow III*, 69 F.4th at 990. Zillow then "used each photo independently to market home designs," selecting "photos based on the content of the images."

**CIVIL MINUTES – GENERAL**

36

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

*Id.* Zillow argued that, because the photographs were "housed in a database, the database was registered as a compilation, [and] therefore the photos were part of a compilation and eligible for only one award." *Id.* at 989. In rejecting this argument, the panel found it "[i]mportant[]" that "the individual infringed photos were not "in any way selected, coordinated, or arranged to create an original work of authorship, and Zillow did not copy any selection, coordination, or arrangement of the photos from the database." *Id.* at 990 (citation and internal quotation marks omitted). Additionally, "[t]he photos had independent economic value separate from the database" in light of VHT's "market[ing] and licens[ing] [of] individual photos that existed as separate pictorial works." *Id.*

*Zillow I* and *Zillow III* directly bear on this case, at least insofar as they provide answers to the compilation question. Plaintiff is a professional photographer who licenses his copyrighted photographs of properties to real estate companies, including—as fate would have it—Zillow. It is materially undisputed that Plaintiff's photographs of the same properties differ among themselves in features such as composition, angle, lighting, location, and the like. The Subject Photographs in this case comprise 53 separate photographs but were registered collectively per property, for a total of three copyright registrations. Plaintiff states in his declaration that they remain available for individual licensing; however, his invoices to the real estate professionals indicate Plaintiff licensed the Subject Photographs in bulk by property, distinguishing between daytime and "twilight" shots. Relatedly, Plaintiff took some subsets of the Subject Photographs in one trip to a property, although he took shots during the day and at twilight of each property.

So too, here, the court considers the fact that Plaintiff registered the Subject Photographs as "groups" with the copyright office. It is undisputed that Plaintiff registered each set of the Stanchfield, O'Dowd, and Williams Photographs under a single registration, for a total of three. However, the *Zillow I* and *Zillow III* opinions instruct that registration alone is not dispositive, and, to that end, it is further worth noting Plaintiff did not register them as a "compilation," but as "groups." (*See* SUF P Nos. 27, 37, 47.)

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

Further, the evidence bearing on the independent economic value of the Subject Photographs is disputed.  To frame the court's analysis, the court borrows an analogy *Zillow III* pulled from a recent Seventh Circuit decision on the subject:

> [T]hink in the first instance of the multiple protected works as a quilt and then ask whether any one individual patch has discernable, independent economic value— whether once separated from the quilt a particular patch lives its own copyright life (as "one work")—or instead whether the value lies in the patches' combined assembly into the quilt as a whole (as a "compilation").

> *Id.* (quoting *Sullivan v. Flora, Inc.*, 936 F.3d 562, 572 (7th Cir. 2019)).

The record indicates that Plaintiff's photographs may have independent value based on the evidence that Plaintiff created the Subject Photographs individually, each varies in the aspects of the property it depicts, and each remains available for licensing on a per-photo basis. *See Zillow III*, 69 F.4th at 990 ("Because VHT licensed the photos on a per-image or per-property basis, rather than licensing the database itself, each 'patch' was valuable on its own."). Additionally, Plaintiff's evidence demonstrates he did not arrange, name, or otherwise decide to register the Subject Photographs under the same group registrations for a creative purpose.  *See id.* at 991-93 (affirming district court's conclusion that the photographs were infringed on an individual basis even though VHT registered the photographs as a "database," which Copyright Office guidance warned could "limit damages in an infringement action," considering that "[u]nlike creators of other copyrightable works, photographers can create hundreds, and sometimes thousands, of photographs per day").

To be sure, Defendant have submitted evidence in their favor on the issue.  For instance, Defendants note the Subject Photographs are organized and registered by the property to which each relates and were invoiced to real estate professionals by property (albeit separately between "twilight" and daytime photographs).  *See Yellow Pages Photos, Inc. v. Ziplocal*, LP, 795 F.3d 1255, 1277-78 (11th Cir. 2015) (holding photographs that "shared the same subject matter" which were organized "by subject matter," were "taken by the same photographer," and

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

registered "collections rather than and individual photos" supported conclusion that the works were a "compilation"). But, as noted, determining what weight to afford competing evidence is the function of a jury, not the court's on summary judgment. *See Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1144 (7th Cir. 2023) (holding district court weighing competing evidence pertaining to independent economic value "alone require[d] reversing the district court's summary judgment decision"); *see also First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513-14 (N.D. Cal. 1995) ("When judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party.").

It is worth explicitly noting that, on this issue, Plaintiff is the nonmovant, and so the court must draw reasonable inferences in his favor. *See, e.g. Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citation omitted); *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (stating a "judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial" by "view[ing] the evidence in the light most favorable to the opposing party") (citations and internal quotation marks omitted). In this posture, the court concludes summary judgment for Defendants on the number of copyrighted works at issue is precluded by genuine issues of material facts. Summary judgment, on this basis, is thus **DENIED**.

### III.   Disposition

For the reasons set forth above, the court:

1. **DENIES** Defendants' Motion for Partial Summary Judgment as to the Number of Works at Issue for Purposes of Statutory Damages (Dkt. 43).

2. **GRANTS** Plaintiff's Motion for Summary Judgment as to Defendants' Liability for Copyright Infringement (Dkt. 44).

---

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01153-FWS-PVC                    Date: August 30, 2023
Title: Brandon Vogts v. Penske Media Corporation *et al.*

3. **DENIES** Defendant's Motion for Summary Judgment under the Doctrine of Fair Use (Dkt. 53).

4. **GRANTS IN PART, DENIES IN PART, AND DEFERS IN PART** Plaintiff's Sealing Application (Dkt. 46). Plaintiff's Sealing Application is **DEFERRED** as to Exhibit 4 to Plaintiff's declaration; **DENIED WITHOUT PREJUDICE** as to Exhibits 25, 26, and 27; and **GRANTED** in its other respects.

5. **GRANTS IN PART, DENIES IN PART, AND DEFERS IN PART** Defendant's Sealing Applications (Dkts. 46, 84.) Defendants' First Sealing Application (Dkt. 46) is **DEFERRED** as to Exhibit CC to Defendants' counsel's declaration; **DENIED** as to Exhibit Z; and **GRANTED** in its other respects. Defendants' Supplemental Sealing Application (Dkt. 84) is **GRANTED**.

6. Plaintiff is **ORDERED** to file a redacted version of Exhibit 4 to Plaintiff's declaration, and Defendant is likewise **ORDERED** to file a redacted version of Exhibit CC to Defendants' counsel's declaration, within **ten (10) days** of this Order. The parties may file the document as a single joint filing.

7. The parties are **ORDERED** to file on the public docket the materials unsealed by this Order within **ten (10) days** of this Order. As to Exhibits 25, 26, and 27 to Plaintiff's counsel's declaration only, any party may re-file an application seeking to seal narrowly redacted versions in lieu of public versions within **ten (10) days** of this Order. That application may be combined with the parties' resubmission of Exhibits 4 and CC in one filing as ordered above.

**IT IS SO ORDERED.**

Initials of Deputy Clerk:  mku

---

**CIVIL MINUTES – GENERAL**